UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                            \*
STEPHEN D. CAIAZZO,                         \*
                                            \*
        Plaintiff,                          \*
v.                                          \*
                                            \*        CIVIL ACTION NO. 04-12627  RCL
THE MEDALLION INSURANCE                     \*
AGENCIES, INC.,                             \*
        Defendant                           \*
                                            \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, The Medallion Insurance Agencies, Inc. ("Medallion"), submits this

Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

1.      Stephen Caiazzo ("Caiazzo") operated Donna's Pub, Inc. d/b/a Cai's Food & Spirit from

        approximately 1990-1997 or 1998.  Exhibit 1, Deposition of Caiazzo, day one, p. 30.

2.      Caiazzo operated Jenna's Pub, Inc. d/b/a Scuttlebutts ("Scuttlebutts") from 1998 through

        September of 2001.  Exhibit 1, Deposition of Caiazzo, day one, p. 31.

3.      Caiazzo, on behalf of Cai's and Scuttlebutts, obtained insurance through Medallion from

        approximately 1994 - 2001.  Exhibit 2, Affidavit of Jean D'Addario, ¶3.

4.      Caiazzo obtained an insurance agent's license in the Commonwealth of Massachusetts.

        Exhibit 1, Deposition of Caiazzo, day one, 18-19.

### "Disability Policy" Claim

5.      Caiazzo claims he had an "Income Disability Package" in effect when he became disabled

        in August 2001.   He said he had this alleged coverage in place for "a good many years",

        probably between 1995 and 2001 through Medallion - - yet in this case has failed to

provide any evidence whatsoever it existed. Exhibit 1, Deposition of Caiazzo, day one, pp. 136-142; Exhibit 3, Deposition of Caiazzo, day two, p. 21.

6.  Caiazzo failed to provide any cancelled checks to reflect he paid for an income disability policy. Exhibit 4, correspondence from counsel.

7.  Caiazzo claims his income disability policy was part of the package policy financed through Standard Funding but the documentation from Standard Funding does not support this assertion. Exhibit 1, Deposition of Caiazzo, day one, pp. 144-45.

8.  The financing agreement clearly indicates the types of insurance being financed (LIAB - general liability; LLL - liquor liability and W/C - worker's compensation) and does not indicate that an income disability policy was financed. Exhibit 5, Standard Funding Agreement dated 3/22/01; Exhibit 1, Deposition of Caiazzo, day one, p. 146; Exhibit 3, Deposition of Caiazzo, p. 17.

9.  Caiazzo has no documentation to support that a disability policy ever existed, or that he made or tried to make any claim under a disability policy with Medallion. Caiazzo's testimony with respect to this purported disability coverage is hopelessly confused, conflicted, and devoid of documentary support. Exhibit 1, Deposition of Caiazzo, pp. 138 - 162.

10. Caiazzo is not able to identify the particular policy which Medallion failed to place, nor is he able to state or identify the extent to which any such policy would have covered his alleged loss of income damages. Exhibit 1, Deposition of Caiazzo, pp. 138 - 162; Exhibit 3, Deposition of Caiazzo, pp. 9-21; Exhibit 5, Caiazzo's Answers to Interrogatories, Answer No. 8.

11.   Attorney Collins never saw a disability policy issued to Caiazzo. He investigated whether a disability policy existed upon which to make a claim on behalf of Caiazzo and determined there was not a policy in existence. Exhibit 24, Deposition of Collins, day two, pp. 14-15; 32.

12.   Caiazzo did have a worker's compensation policy and in fact, made a claim on the worker's compensation policy directly. Exhibit 12, worker's compensation cover letter; Exhibit 26, notice of worker's compensation claim. Caiazzo received a settlement of $24,000 as a result of the worker's compensation claim. Exhibit 1, Deposition of Caiazzo, pp.165-167.

Property Claim

13.   In December 2000, Scuttlebutts' insurance was cancelled due to non-payment to the finance company. Exhibit 6, Cancellation Credit.

14.   Medallion issued Scuttlebutts a quote for rewrite of the package (property and general liability coverage) and liquor liability policies on January 9, 2001. Exhibit 7, Quotations; Exhibit 1, Deposition of Caiazzo, day one, p. 215.

15.   Caiazzo declined the quote as too expensive and wanted to reduce the premium. Exhibit 1, Deposition of Caiazzo, day one, p. 212.

16.   Caiazzo then operated the bar without any insurance at all during the approximate period between January and March 2001, apparently because of financial problems, because he requested a re-quote after reporting that his receipts were "down dramatically." Exhibit 8, Medallion request for re-quote.

17.   Medallion issued a quotation for Scuttlebutts on or about March 15, 2001, which included

3

coverage for general liability and liquor liability. Exhibit 9, Quotation (the quotation stated, "As discussed, prefer to pass on property due to fact that applicant has been bare.").

18.  Caiazzo declined business property coverage. Exhibit 2, Affidavit of Jean D'Addario, ¶8; Exhibit 10, binder; Exhibit 1, Deposition of Caiazzo, day one, p. 224 ("Q: And that's because ultimately you wound up purchasing less coverage than what was reflected in Exhibit 12, correct? A: Correct.").

19.  Scuttlebutts finally secured coverage effective March 22, 2001. Exhibit 10, binder.

20.  Scuttlebutts financed its insurance through Standard Funding and signed a finance agreement. Exhibit 11, Finance Agreement; Deposition of Caiazzo, day one, p. 225.

21.  The general liability, liquor liability and worker's compensation policies were sent to Caiazzo, who testified he would read them. Exhibit 12, cover letters enclosing policies and general liability policy reflecting no property coverage; Exhibit 1, Deposition of Caiazzo, p. 129.

22.  These policies were cancelled for nonpayment by April 27, 2001. Exhibit 13, Cancellation Notice.

23.  Scuttlebutts operated without coverage until June 15, 2001, when Caiazzo asked to reinstate the policies, and signed a reinstatement warranty covering that period and provided a bank check to cover April, May, and June insurance premiums and to reinstate the coverage for the corporation. Exhibit 14, Reinstatement Warranty and bank check.

24.  Jenna's Pub, Inc. d/b/a Scuttlebutts ("Scuttlebutts") declared Chapter 11 bankruptcy on May 31, 2001. Exhibit 15, Bankruptcy Docket Report.

25.   The Bankruptcy Court converted the claim to Chapter 7.  Exhibit 15, Bankruptcy Docket
      Report.

26.   Scuttlebutts filed a schedule of its personal property as part of the bankruptcy proceeding,
      which was signed by Caiazzo under the pains and penalties of perjury.  Exhibit 16,
      Personal Property Schedule.

27.   Caiazzo seeks to recover in this suit for the personal property sold as a result of the
      bankruptcy.  Exhibit 1, Deposition of Caiazzo, p. 42 - 46; Exhibit 17, referenced
      deposition exhibits 3, 23, 24, 25A and 25 B.

28.   Additional personal property claimed in this suit was not listed as assets of Scuttlebutts in
      the bankruptcy.  Exhibit 17.

29.   The Statement of Financial Affairs filed in Bankruptcy Court by Caiazzo under the pains
      and penalties of perjury did not include this loss or claim as an asset of Scuttlebutts.
      Exhibit 18, Statement of Financial Affairs.

30.   The Statement of Financial Affairs was never revised to reflect this lawsuit.  Exhibit 15,
      Bankruptcy Docket Report.

31.   The bankruptcy matter was closed on May 16, 2005.  Exhibit 15, Bankruptcy Docket
      Report.

32.   During the pendency of the bankruptcy, on July 18, 2001, Essex Superior Court ruled that
      Scuttlebutts breached its lease with Salem Laffayette.  Exhibit 19, Docket Report; Exhibit
      1, Deposition of Caiazzo, day one, p. 195)

33.   As a result, the sheriff order Caiazzo to vacate the premises.  Exhibit 1, Deposition of
      Caiazzo, day one, pp. 190-191.

5

34.     Caiazzo claims certain property left at the location to be picked up at a later date, was
        stolen. Exhibit 1, Deposition of Caiazzo, pp. 192 - 194.

35.     Caiazzo, in his individual capacity, makes a claim for this property taken from
        Scuttlebutts. Exhibit 1, Deposition of Caiazzo, day one, p. 198.

36.     Caiazzo's personal property would not be covered under a policy of insurance issued to
        Jenna's Pub, Inc. d/b/a Scuttlebutts. (See Deposition of Caiazzo, day 1, pp. 198-99,
        Exhibit 1).

37.     Attorney Collins investigated whether a policy existed upon which to make a property
        loss claim and concluded there was no policy upon which to make a claim. Collins
        investigated the merits of the property loss claim and determined assets claimed as part of
        Caiazzo's loss were included in the bankruptcy accounting as assets of Scuttlebutts.
        Exhibit 24, Deposition of Collins, day two, pp. 20-25.

38.     Collins investigated whether Caiazzo could personally recover for the property loss and
        determined he did not have a good faith basis to make a claim for the property loss on
        behalf of Caiazzo. Exhibit 24, Deposition of Collins, day two, p. 28; 32.

                                        Liability Claim

39.     In 1998, an individual named Joseph Cuttichia sued a corporation known as Donna's Pub
        Inc. d/b/a Cai's Food & Spirits (hereinafter, "Cai's"), in the Malden District Court.
        Cuttichia alleged he sustained personal injuries on or about September 13, 1996 as a
        result of an altercation at Cai's. Exhibit 20, Cuttichia Complaint.

40.     Service was made in hand at the corporate business address of Cai's. Exhibit 20.

41.     Cai's defaulted, damages were assessed, judgment entered, and an execution issued.

                                             6

Exhibit 21, Court Orders.

42. Cuttichia later filed suit against Caiazzo, individually, in the Essex Superior Court, to pierce the corporate veil and enforce the underlying judgment. Exhibit 22, Complaint.

43. Once again, Caiazzo failed to appear and default judgment was entered against Caiazzo in his individual capacity. Exhibit 22, Court Orders. In her December, 2002 order on the default judgment, Judge Kottmyer specifically found that Mr. Caiazzo did not appear although notices were given. *Id.*

44. Essex Superior Court issued an execution against Caiazzo in the amount of approximately $41,000. Exhibit 22. In connection therewith, Cuttichia obtained a lien against Caizzo's real property.

45. In April, 2003, Caiazzo agreed to pay Cuttichia $35,000 from the sale of his encumbered property and at that time sought reimbursement from his insurance carrier. Exhibit 23.

46. Caiazzo, through his attorney, first reported the Cuttichia matter to Medallion in December 2002. Exhibit 24, Deposition of Attorney Thomas Collins, pp. 41 - 44.

47. Caiazzo lacks any documentation to support his allegation that he reported the claim to Medallion in approximately 1998. Exhibit 1, Deposition of Caiazzo, day one, pp. 59-61; 66.

48. Caiazzo initially claimed he retained a copy of the letter he allegedly forwarded to Medallion and produced it. Then, upon examination of his document production suggested his former attorney retained a copy. Exhibit 1, Deposition of Caiazzo, day one, 59 - 67.

49. This also proved to be untrue following a request for production of documents from

7

Caiazzo's former attorney, Thomas Collins, and the deposition of Thomas Collins. Exhibit 24, Deposition of Collins, pp. 40-41.

50.    Caiazzo claims he did not receive any further notices of the two lawsuits, defaults and judgments because he no longer resided where the notices were being served as he and his wife were divorcing. (See Deposition of Caiazzo, Exhibit 1, pp. 87-88).

51.    When Caiazzo first reported the claim to Medallion, he claimed he had not received prior notice of either action. Exhibit 25, Letter of Thomas Collins. Caiazzo testified he provided this information to Attorney Collins, reviewed this letter before it was sent, and that the letter was accurate. Exhibit 1, Deposition of Caizzo, p 83.

52.    After identifying the company that insured Cai's in 1996, Medallion promptly submitted a Notice of Occurrence to Pacific Insurance Company ("Pacific"). Exhibit 2, Affidavit of Jean D'Addario, ¶13.

53.    Pacific denied the claim because the incident did not arise out of the selling or furnishing of alcohol and was therefore not covered under the policy. Pacific reserved its rights relative to the late notice of the claim. Exhibit 26, Pacific denial.

54.    Upon receiving the denial, Attorney Collins determined he did not have a good faith basis to pursue coverage for the loss. Exhibit 24, Deposition of Collins, pp. 38-39.

THE MEDALLION INSURANCE AGENCIES
By its attorneys,


/s/ Kerry D. Florio
William D. Chapman, BBO# 551261
Kerry D. Florio, BBO# 647489
MELICK, PORTER AND SHEA, LLP
28 State Street
Boston, MA 02109
(617) 523-6200
kflorio@melicklaw.com


## CERTIFICATE OF SERVICE

I, Kerry D. Florio, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.


/s/ Kerry D. Florio
Kerry D. Florio


Date: March 3, 2006

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:04cv12627

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*
                                         \*

STEPHEN D. CAIAZZO,           \*
                                           \*
       Plaintiff,             \*
                                           \*
v.                                  \*
                                           \*
THE MEDALLION INSURANCE     \*
AGENCIES, INC.,              \*
                                           \*
       Defendant.          \*
                                           \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

## AFFIDAVIT OF JEAN D'ADDARIO

I, Jean D'Addario, hereby state under oath and based on my own personal knowledge that:

1.      My name is Jean D'Addario.

2.      I am a customer service representative with The Medallion Insurance Agencies, Inc. ("Medallion") and serviced Stephen Caiazzo's accounts.

3.      Medallion obtained insurance requested by Stephen Caiazzo ("Caiazzo") for Donna's Pub, Inc. d/b/a Cai's Food and Spirits and Jenna's Pub, Inc. d/b/a Scuttlebutts from approximately 1994 - 2001.

4.      Caiazzo never requested a disability policy through Medallion.

5.      Caiazzo did not obtain a disability policy through Medallion upon which to make a claim.

6.      Caiazzo never made a claim to Medallion regarding an alleged disability policy.

7.      At the time of the property loss suffered by Scuttlebutts on or about September 1, 2001, Scuttlebutts did not have personal property coverage.

8.      Caiazzo specifically declined coverage that included personal property coverage for the policy to be effective March 22, 2001.

9.   Caiazzo declined the personal property coverage in an effort to reduce the premium.

10.  Caiazzo failed to report this claim to Medallion until February 28, 2003.

11.  The claim was denied because there was no coverage for personal property under the policy effective March 22, 2001.

12.  Caiazzo first reported a claim for an uninsured personal injury loss, which occurred on September 13, 1996, to Medallion through his attorney in December 2002.

13.  Upon learning of the loss, Medallion immediately undertook to determine who insured Donna's Pub, Inc. d/b/a Cai's Food and Spirits at the time of the loss.

14.  After determining Pacific Insurance Company was the insurer to whom to submit the claim, Medallion submitted the claim.

15.  Pacific denied the claim because there was no coverage for the loss on the subject policy and reserved its rights with respect to the late notice of the claim and lawsuit.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _1ST_ DAY OF MARCH, 2006.

_Jean D'Addario_
Jean D'Addario, CSR

# EXHIBIT 4

RECEIVED

MAY 2 5 2005

# LAW OFFICES OF DEAN CARNAHAN
## 126 BROADWAY, ARLINGTON, MA 02474

Telephone: (781) 641-2825
Facsimile: (781) 641-2825
E-mail: ddcarnahan@rcn.com

May 24, 2005

William D. Chapman, Esquire
Melick, Porter & Shea, LLP
28 State Street
Boston, MA 02109-1775



EXHIBIT
23 (CAIAZZO)
6/10/05   pc

RE: Stephen D. Caiazzo v.
    The Medallion Insurance Agencies, Inc.
OUR FILE #2274

Dear Attorney Chapman:

    During the deposition of Mr. Caiazzo on May 6, 2005, you requested that he produce all letters from Attorney Whitman, all documents received from Attorney Collins and all checks in payment for disability policies or policy provisions. On May 17, 2005, Attorney Florio sent me a letter requesting additional documents.

    Enclosed are additional documents responsive to these requests:

    1.    Letters from Attorney Whitman – see those already produced and others enclosed with Attachment 4 and Attachment 7 to this letter.

    2.    All documents from Attorney Collins – Collins only sent Mr. Caiazzo a few documents. Mr. Caiazzo has none, other than the ones already produced, except for documents relating to his divorce case and to his workers compensation case, which are not within the scope of discovery for this case.

    3.    Regarding checks for disability policies, Mr. Caiazzo has no checks specifically paying for a disability policy or for disability provision in a policy. Payment was made by checks paying for an entire policy package, for which documents have already been produced by Mr. Caiazzo and by Medallion.

    4.    Documents retained by Mr. Caiazzo's wife – enclosed as Attachment 4 are five envelopes with correspondence and one post office attempted delivery notice, as follows:

William D. Chapman, Esquire
May 24, 2005
Page 2

      a.    First Card
      b.    Attorney Whitman
      c.    Business card of investigator
      d.    Attorney Whitman
      e.    Attorney Whitman
      f.    Post office notice of attempted delivery – apparently not picked up by Caiazzo's wife.

5.    Letters given to John D'Addario for personal injury claim – Mr. Caiazzo has none since he gave all of these to D'Addario.

6.    Photos of personal property – enclosed as Attachment 6.

7.    Other relevant documents – enclosed as Attachment 7, consisting of:

      a.    Medical bill and records
      b.    4/20/00 letter from Medallion to Mr. Caiazzo
      c.    Standard Funding notice for 3/99 to 3/00
      d.    2/19/99 quote from RCA Insurance Agency
      e.    Declarations page for Compresensive General Liability Coverage – 3/22/01
      f.    Accord – Commercial General Liability and Liquor Liability – 3/01 to 3/02
      g.    Extended Property Endorsement
      h.    Broad Form Comprehensive General Liability Endorsement
      i.    Request for Reinstatement – 6/19/01
      j.    Special Peril Policy
      k.    Special Multi Peril Policy
      l.    Copies of checks to Cash, John D'Addario, two to Standard Funding and one to Jonathan Yellin
      m.    Bankrupty Court document showing sale of property to Mr. Caiazzo.
      n.    Correspondence from Attorney Whitman dated 12/5/02
      o.    Bankruptcy documents showing disbursements, receipts and insurance payments
      p.    Exhibit A to bankruptcy pleading showing portion of Caiazzo's property
      q.    Document written by Mr. Caiazzo showing portion of personal property.

Please contact me if you have any questions.

William D. Chapman, Esquire
May 24, 2005
Page 3

Very truly yours,

DEAN CARNAHAN

B-2274-WDC

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

STEPHEN D. CAIAZZO,
    Plaintiff

v.

THE MEDALLION INSURANCE
AGENCIES, INC.,
    Defendant

                    CIVIL ACTION NO.
                    04-12627 RCL

## PLAINTIFF'S ANSWERS TO INTERROGATORIES OF DEFENDANT

**1Q.**    Please identify yourself fully, stating your full name, date of birth, social security number, residential address, business address, occupation and job title.

**1A.**    Stephen Dennis Caiazzo; December 4, 1951; 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; 2106 SW 49 Street, Cape Coral, FL 33914; disabled and unemployed.

**2Q.**    Please identify each and every insurance agent and/or insurance broker through whom you obtained any insurance whatsoever from 1990 up to and including the present.

**2A.**    Medallion Insurance Agency
        Joe DeVincentis Insurance Agency

**3Q.**    For each expert witness whom you expect to call at the trial of this action, and/or whom you have retained or specially employed in anticipation of litigation or in preparation for trail who is not expected to be called at the trial of this action, please state:

      a.    the name, business address, residential address, educational and employment history;

      b.    the subject matter on which each such expert is expected to testify or was retained or employed to consider;

      c.    the substance of the facts and opinions to which each such expert is expected to testify or was retained or employed to consider; and

    d.     a detailed summary of all the grounds for each such opinion together with the substance of all facts upon which such opinions are based.

3A.    Not determined at this time.

4Q.    Please state fully and in complete detail each and every fact to support Count I of you Complaint, including any and all facts that support your claim that Medallion alleged failure to report a personal injury claim to your insurer

4A.    John D'Addario completely ignored my calls and correspondence from my attorney regarding this claim. In 2001, John D'Addario, his wife Jean and Joe DeVincentis ignored my calls. I left about thirty messages for Jean D'Addario at the agency and thirty-forty calls for John and Jean D'Addario at their residence. John D'Addario also told me that I didn't have this insurance. Finally, they submitted a letter to the Insurance Board showing cancellation of my policies in November 2001, after the closing of my business.

5Q.    Kindly describe in full and complete detail the notice you received of the personal injury claim set forth in Count I of your Complaint, including in your answer:

    a.     when you received notice of said personal injury claim;

    b.     from who (sic.) did you receive said notice;

    c.     the manner in which said notice was received; and

    d.     each and every action taken by you after receiving said notice.

5A.    a.     I received a letter from the plaintiff's attorney in about 1998, after suit had been filed .

    b.     See my answer to the preceding subpart.

    c.     I do not recall.

    d.     I gave the letter to John D'Addario. I then called him and he told me he would take care of it. I called him again, and the told me he had provided the information to the insurance company. After that, I left numerous messages for him to call me, but he did not return my calls.

6Q.    Kindly describe in full and complete detail reporting the personal injury claim set forth in Count I to Medallion, including in your answer:

    a.     when you reported said personal injury claim to Medallion;

    b.     to whom the claim was reported, including name, address and job title;

c.    the manner in which it was reported; and

d.    any and all conversations with Medallion regarding said personal injury claim.

6A.    See my answer to Interrogatory No. 5.

7Q.    Please state fully and in complete detail each and every fact to support Count II of your Complaint, including but not limited to any and all facts that support your claim that Medallion negligently failed to report your disability claim.

7A.    I requested a disability policy to protect the income I was making and because I moved kegs of beer, cases of beer and liquor, tables and chairs and a stage for bands. John D'Addario came to my restaurant and went over my income figures to compute the amount of coverage. I had to submit tax returns to establish my income. After my knee was reinjured in 2001, I called him regarding my disability policy. He told me I didn't have one. I insisted that I did. He agreed to look in the archives. After this, he would not return my calls.

8Q.    Do you claim you obtained a disability policy from Medallion insurance for the policy year of 2001? If your answer is anything other than an unqualified "no", kindly describe in full and complete detail:

a.    from whom you requested said policy;

b.    when you requested said policy;

c.    whether a copy of said policy was sent to you and if so, where it is located; and

d.    any and all documents that support your claim that you requested said policy.

8A.    a.    John D'Addario

b.    I believe that I had such a policy for more than one year that would pay me $1,500.00 per week if I became disabled. I believe a policy was in effect when I reinjured my knee in 2001.

c.    I saw the policy. I had to produce tax returns for an audit by the company on my income.

d.

9Q.    Did you make a worker's compensation claim for your injury and disability referred to in Paragraph 10 of your Complaint? If your answer is anything other than an unqualified "no", kindly describe in full and complete detail"

a.    when you made said claim;

  b.  who, if anyone, assisted you in making said claim; including name, address and title; and

  c.  the result of said claim, including any monies paid to you as a result.

9A. a.  In 2001 or 2002

  b.  Attorney Tom Collins, 10 Main Street, Andover, MA

  c.  $25,000.00 gross.

10Q. Please state fully and in complete detail each and every fact to support Court III of your Complaint, including but not limited to any and all facts that support your claim that Medallion negligently failed to report your personal injury claim.

10A. Count III does not refer to a personal injury claim.

11Q. Please state fully and in complete detail the time, place, parties to, including each parties' full name, last known address, occupation, and job title, and substance of any communication that was ever held with any Medallion representative concerning any insurance claims, including in your answer:

  a.  the full name, last known address, occupation and job title of the person at Medallion, with whom you spoke regarding obtaining insurance coverage;

  b.  the type or manner of communication;

  c.  the date, time and place of each such communication;

  d.  what documents were forwarded, if any, and by whom; and

  e.  the nature and/or substance of each communication.

11A. Objection on the grounds that this interrogatory is overly broad and unduly burdensome and seeks information not within the scope of discovery.

12Q. Please state the full name, last known address, occupation, and job title of every witness known to you or to your attorneys who has any knowledge regarding the facts and circumstances of the events alleged in your Complaint, including, but not limited to, individuals with knowledge of any and all insurance obtained by you and any claims made by you, including claims referenced in your Complaint.

12A. Myself, Attorney Collins and possibly other individuals unknown to me at this time.

Signing as to objections:

Dean Carnahan, Esq.

Signed under the pains and penalties of perjury this ⹂3 day of April 2005.

Stephen D. Caiazzo

## CERTIFICATE OF SERVICE

I, Dean Carnahan, hereby certify that on this day I served this pleading on defendant by mailing a copy thereof, postage prepaid, to Kerry D. Florio, Esquire, Melick, Porter & Shea, LLP, 28 State Street, Boston, MA 02109

Date: April 7 2005

DEAN CARNAHAN

B-2274-IA

# EXHIBIT 6



DEC 2 0 2001

INSURANCE INNOVATORS
AGENCY OF NEW ENGLAND, INC.
30B Capital Drive
P.O. Box 680
W. Springfield MA 01090

(413) 731-1100

MEDALLION INS AGCYS                    December 19, 2001
P.O. BOX 367
MALDEN          MA 02148

## Invoice

| ACCOUNT NUMBER | 14747 |
| TRANSACTION EFFECTIVE DATE | 12-15-01 |
| EXPIRATION DATE | 3-22-02 |

| Policy Number | Type of Coverage / Description | | Amount |
| --- | --- | --- | --- |
| LGL012603 | Liability | JENNA'S PUB INC | -717.00 |
| LGL012603 | Surplus Lines Tax | | -28.68 |
| | Plus Commission | | 89.63 |
| | | | |
| | CANCELLATION CREDIT | | |
| | CANCELLED NON-PAYMENT FINANCE AGR | | |

Total                                   -656.05

Payment due 20 days from the end of the billing month.

1250000019425030 02        ORIGINAL COPY                Page 1 of 1

(OMNi+011219)



INSURANCE INNOVATORS
AGENCY OF NEW ENGLAND, INC.
30B Capital Drive
P.O. Box 680
W. Springfield MA 01090

(413) 731-1100

MEDALLION INS AGCYS                    December 19, 2001
P.O. BOX 367
MALDEN        MA 02148

| Invoice |
|---|

ACCOUNT NUMBER                14747

TRANSACTION EFFECTIVE DATE    12-15-01

EXPIRATION DATE               3-22-02

| Policy Number | Type of Coverage / Description | | Amount |
|---|---|---|---|
| GHL01342 | Liquor Liability | JENNA'S PUB INC | -956.00 |
| GHL01342 | Surplus Lines Tax | | -38.24 |
|  | Plus Commission | | 119.50 |
|  | CANCELLATION CREDIT | | |
|  | CANCELLED NON-PAYMENT FINANCE AGR. | | |

Total                                      -874.74

Payment due 20 days from the end of the billing month.

| 1250000013819030 02 | ORIGINAL COPY | Page 1 of 1 |
|---|---|---|

(OMNI+011219)

INSURANCE INNOVATORS AGENCY
OF NEW ENGLAND, INC.
30 CAPITAL DR., SUITE P - P.O. BOX 680
WEST SPRINGFIELD, MA 01090-0680

FLE
HOLYOKE MA 01040
5-13/110

35184

12-19-01

PAY TO THE
ORDER OF    STANDARD FUNDING CORP.                                    $ *****1,530.79

The Sum of *****1,530 Dollars and 79 Cents                          DOLLARS

STANDARD FUNDING CORP.
335 CROSSWAYS PARK DRIVE
WOODBURY        NY 11797

TWO SIGNATURES REQUIRED OVER $2,000.00

MEMO  STANDARD FUNDING CORP

⑈035184⑈ ⑆011000138⑆ 05002 40920⑈

© 1984 - 2000 INTUIT INC. • 1-765-15/800-433-8810

---

INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC.                    35184

STANDARD FUNDING CORP.
(    818)              12-19-01
Amount of Check:      $1,530.79

RE: NET RETURN PREMIUM
JENNA'S PUB/SCUTTLEBUTTS
POL.#LGL012603/GHL01342
ACCT.#343095

1,530.79 STANDARD FUND

# EXHIBIT 7

**QUOTATION**

● ● ●
▮▮▮ INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC.
30B Capital Drive, P.O. Box 680
West Springfield, MA 01090
®(413) 731-1100 * (800) 332-3847 * Fax (413) 731-7403 No. 4947397

COVERAGE IS NOT EFFECTED BY THIS DOCUMENT AND MAY BE RENDERED ONLY BY AN AUTHORIZED REPRESENTATIVE OF THE INSURER

```
                                    Named Insured:
                                    JENNA'S PUB INC
                                    DBA SCUTTLEBUTTS
                                    73 LAFAYETTE ST
                                    SALEM       MA 01970

   JEAN D'ADDARIO

   MEDALLION INS AGCYS              Name of Insurer(s)
   P.O. BOX 367          A          UNDERWRITERS AT LLOYDS        100%
   MALDEN       MA 02148


   Fax: (781) 397-9270
```

EXHIBIT 3
Cala 220
5/6/05 ZC

Proposed Term: ANNUAL

```
   COVERAGE: Property        Causes of Loss:SPECIAL
     ( ) Incl. Earthquake and Flood

     Deductible (each occurrence): $1000
     Location: 73 LAFAYETTE ST, SALEM MA
     WARRANTIES: HEAT MAINTENANCE, ANSUL, SPRINKLER, CENTRAL STATION BURG ALARM
                      COINS %     LIMITS
     CONTENTS:        80 %      $150,000
     BUS INCOME:      80 %      $120,000
     AWNING:          80 %      $  2,000    500 DEDUCTIBLE
     DECK:            80%       $ 30,000
     Valuation:  (X) ACV   ( ) RC

   COVERAGE:  Commercial General Liability
     LIMITS:  General Aggregate:                    $2,000,000
              Products/Completed Operations Aggregate: $1,000,000
              Personal and Advertising Injury:       $1,000,000
              Each Occurrence:                       $1,000,000
              Fire Damage (any one fire):            $  100,000
              Medical Expense (any one person):      $    5,000
   DEDUCTIBLE: $   NIL  Per Claim    ( ) Including Loss Adjustment Expense
   YEAR ROUND TAVERN OPERATION WITH ENTERTAINMENT BASED ON $800,000 SALES
   SUBJ TO AUDIT? YES, QUOTE IS SUBJECT TO SATISFACTORY LOSS/CLAIM INFORMATION
```

```
                                          PREMIUM        $7,450.00
                                     Inspection Fee          $85.00
                                   Surplus Lines Tax        $298.00

              Commission: 12.50%         TOTAL          $7,833.00
```

CONDITIONS
This quote is valid 30 days from the issue date. This quote covers those coverages
and limits indicated and may not be those requested. Please review carefully and advise
us of the outcome of this quote. Coverage is not bound until a written binder or
policy is issued.

Certain policies written by Insurance Innovators Agency of N.E. can be financed through
R.S.B. Ask your underwriter for details.
Date January 9, 2001        Authorized Representative:

(OMNI+0494 01/90)010109-001    Agent Copy              Contact: Deborah E. Czerwiec

# QUOTATION

**INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC.**
30B Capital Drive, P.O. Box 680
West Springfield, MA 01090
® (413)731-1100 * (800)332-3847 * Fax (413)731-7403 No. 4947398

COVERAGE IS NOT EFFECTED BY THIS DOCUMENT AND MAY BE RENDERED ONLY BY AN AUTHORIZED REPRESENTATIVE OF THE INSURER

Named Insured:
JENNA'S PUB INC
DBA SCUTTLEBUTTS
73 LAFAYETTE ST
SALEM         MA 01970

JEAN D'ADDARIO

MEDALLION INS AGCYS                    Name of Insurer(s)
P.O. BOX 367            A              UNDERWRITERS AT LLOYDS          100%
MALDEN        MA 02148

Fax: (781) 397-9270

**Proposed Term: ANNUAL**

COVERAGE:   LIQUOR LIABILITY

LIMITS:    Each Common Cause:        $1,000,000
           Aggregate:               $1,000,000

Subject to Audit. Rate:                    1.50
Rates Apply per $100 sales.  Sales: $ 600,000

CONDITION:  Premises Liability is in force and will be maintained at
limits equal to or greater than those provided hereunder during the entire
term of this policy.
QUOTE IS SUBJECT TO SATISFACTORY CLAIM INFORMATION.
IF COVERAGE IS DESIRED:
  (X) Signed and Fully Completed Application
  (X) Signed and Fully COmpleted Affidavit
  (X) Minimum Earned Premium: 25 %
THIS PREMIUM APPLIES ONLY IF ORDERED IN CONJUNCTION WITH ACCOMPANYING
PACKAGE QUOTATION & VICE VERSA.
EXCLUSIONS: ABSOLUTE POLLUTION, PUNITIVE DAMAGES, YEAR 2000 & OTHER
COMPUTER RELATED PROBLEMS, EMPLOYMENT RELATED PRACTICES, ASSAULT &
BATTERY/NEGLIGENT HIRING

                                           PREMIUM        $9,000.00
                                  Surplus Lines Tax         $360.00

             Commission: 12.50%           TOTAL          $9,360.00

**CONDITIONS**
This quote is valid  30 days from the issue date. This quote covers those coverages
and limits indicated and may not be those requested. Please review carefully and advise
us of the outcome of this quote.  Coverage is not bound until a written binder or
policy is issued.

Certain policies written by Insurance Innovators Agency of N.E. can be financed through
R.S.B.  Ask your underwriter for details.
Date  January 9, 2001          Authorized Representative:

(OMNT=0494-01/98)010109-001      Agent Copy            Contact: Deborah E. Czerwiec

# EXHIBIT 8



180 Exchange Street
PO Box 367
Malden, MA  02148

(781)324-4118
(781)397-9270



**The Medallion
Insurance Agencies,
Inc.**



| | | | | |
|---|---|---|---|---|
| **To:** | Deb Czerwiec | **From:** | Jean D'Addario | |
| **Cc:** | Insurance Innovators | **Email:** | | |
| **Fax:** | 413-731-7403 | **Pages:** | 7 | |
| **Phone:** | (978)741-3850 | **Date:** | 3/15/2001 | |
| **Insured:** | Jenna's Pub Inc | **CC:** | | |
| **RE:** | Package, Policy #S007808 | | | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

Dear Deb:

Per the applications attached, please provide a revised quote for the captioned risk.  You quoted this for me about a month ago.  The app that I used was the expiring information.  According to the insured, receipts are down dramatically, (knows that policy is auditable).  Please quote with and without liquor.

Thank you.  You'r e the greatest.

Please call with any questions.

Sincerely,

Jean D'Addario

| | |
|---|---|
| **DATE (MM/DD/YY)** | 01/09/2001 |

**PRODUCER PHONE (A/E, No, Ext):** (781)324-4118
**FAX** (781)324-7189

The Medallion Insurance Agencies, Inc.
180 Exchange Street
P.O. Box 367
Malden, MA 02148

CODE: _____ SUB CODE: _____
AGENCY
CUSTOMER ID: 00004065

**APPLICANT (First Named Insured)** Jenna's Pub Inc

| EFFECTIVE DATE | EXPIRATION DATE | DIRECT BILL | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 03/16/2001 | 03/16/2002 | X AGENCY BILL | | |

FOR COMPANY USE ONLY

## COVERAGES

X COMMERCIAL GENERAL LIABILITY
CLAIMS MADE   X OCCURRENCE
OWNER'S & CONTRACTOR'S PROTECTIVE

DEDUCTIBLES
PROPERTY DAMAGE $ _____
BODILY INJURY $ _____  PER CLAIM
$ _____  PER OCCURRENCE

OTHER COVERAGES, RESTRICTIONS AND/OR ENDORSEMENTS (For hired/non-owned auto coverages attach the Business Auto Section, ACORD 127)

## LIMITS

| | | |
|---|---|---|
| GENERAL AGGREGATE | $ | 1,000,000 |
| PRODUCTS & COMPLETED OPERATIONS AGGREGATE | $ | 1,000,000 |
| PERSONAL & ADVERTISING INJURY | $ | 1,000,000 |
| EACH OCCURRENCE | $ | 1,000,000 |
| FIRE DAMAGE (Any one fire) | $ | 50,000 |
| MEDICAL EXPENSE (Any one person) | $ | 5,000 |

PREMIUMS
PREMISES/OPERATIONS

PRODUCTS

OTHER

TOTAL

## SCHEDULE OF HAZARDS

| LOCATION # | CLASSIFICATION | CLASS CODE | PREMIUM BASIS | TERR | RATE PREM/OPS | RATE PRODUCTS | PREMIUM PREM/OPS | PREMIUM PRODUCTS |
|---|---|---|---|---|---|---|---|---|
| 00001 | Restaurants w/sales >75% Total sales w/ dance floor | 16817 | S) 300,000 | | | | | |
| 00001 | Food | | S) 50,000 | | | | | |
| 00001 | Liquor | | S) 250,000 | | | | | |

### RATING AND PREMIUM BASIS

(S) GROSS SALES - PER $1,000/SALES     (A) AREA - PER 1,000/SQ FT     (M) ADMISSIONS - PER 1,000/ADM     (T) OTHER
(P) PAYROLL - PER $1,000/PAY          (C) TOTAL COST - PER $1,000/COST     (U) UNIT - PER UNIT

## CLAIMS MADE (Explain all "Yes" responses)

1. PROPOSED RETROACTIVE DATE:

2. ENTRY DATE INTO UNINTERRUPTED CLAIMS MADE COV:

3. HAS ANY PRODUCT, WORK, ACCIDENT, OR LOCATION BEEN EXCLUDED, UNINSURED OR SELF-INSURED FROM ANY PREVIOUS COVERAGE?   YES NO

4. WAS TAIL COVERAGE PURCHASED UNDER ANY PREVIOUS POLICY?

REMARKS

## TRANSITION

1. HAS THIS RISK OR ANY LOCATION NOT QUALIFIED FOR TRANSITION?   YES NO

2. IF THIS RISK QUALIFIES FOR TRANSITION, INDICATE THE YEAR IT FIRST QUALIFIED:   AND:

| LOCATION | NEW CLASS | PREV BASE | PREVIOUS EXPOSURE | APPLICABLE COVERAGE | |
|---|---|---|---|---|---|
| | | | | PREMISES | PRODUCTS |
| | | | | PREMISES | PRODUCTS |
| | | | | PREMISES | PRODUCTS |
| | | | | PREMISES | PRODUCTS |
| | | | | PREMISES | PRODUCTS |
| | | | | PREMISES | PRODUCTS |

ACORD 126-S (3/93)     PLEASE COMPLETE REVERSE SIDE     © ACORD CORPORATION 1993

## CONTRACTORS

| EXPLAIN ALL "YES" RESPONSES (For past or present operations) | YES | NO | EXPLAIN ALL "YES" RESPONSES (For past or present operations) | YES | NO |
|---|---|---|---|---|---|
| 1. DOES APPLICANT DRAW PLANS, DESIGNS, OR SPECIFICATIONS? | | | 4. DO YOUR SUBCONTRACTORS CARRY COVERAGES OR LIMITS LESS THAN YOURS? | | |
| 2. DO ANY OPERATIONS INCLUDE BLASTING OR UTILIZE OR STORE EXPLOSIVE MATERIAL? | | | 5. ARE SUBCONTRACTORS ALLOWED TO WORK W/O CERT OF INS? | | |
| 3. DO ANY OPERATIONS INCLUDE EXCAVATION, TUNNELING, UNDERGROUND WORK OR EARTH MOVING? | | | 6. DOES APPLICANT LEASE EQUIPMENT TO OTHERS WITH OR WITHOUT OPERATORS? | | |

REMARKS/DESCRIBE THE TYPE OF WORK SUBCONTRACTED

% OF WORK SUBCONTRACTED:    # FULL TIME STAFF:    # PART TIME STAFF:

## PRODUCTS/COMPLETED OPERATIONS

| PRODUCTS | ANNUAL GROSS SALES | # OF UNITS | TIME IN MARKET | EXPECTED LIFE | INTENDED USE | PRINCIPAL COMPONENTS |
|---|---|---|---|---|---|---|
| Food | 50,000 | | | | | |
| Liquor | 250,000 | | | | | |

| EXPLAIN ALL "YES" RESPONSES (For any past or present product or operation) | YES | NO | EXPLAIN ALL "YES" RESPONSES (For any past or present product or operation) | YES | NO |
|---|---|---|---|---|---|
| 1. DOES APPLICANT INSTALL, SERVICE OR DEMONSTRATE PRODUCTS? | | X | 6. PRODUCTS RECALLED, DISCONTINUED, CHANGED? | | X |
| 2. FOREIGN PRODUCTS SOLD, DISTRIBUTED, USED AS COMPONENTS? | | X | 7. PRODUCTS OF OTHERS SOLD OR RE-PACKAGED UNDER APPLICANT LABEL? | | X |
| 3. RESEARCH AND DEVELOPMENT CONDUCTED OR NEW PRODUCTS PLANNED? | | X | 8. PRODUCTS UNDER LABEL OF OTHERS? | | X |
| 4. GUARANTEES, WARRANTIES, HOLD HARMLESS AGREEMENTS? | | X | 9. VENDORS COVERAGE REQUIRED? | | X |
| 5. PRODUCTS RELATED TO AIRCRAFT/SPACE INDUSTRY? | | X | 10. DOES ANY NAMED INSURED SELL TO OTHER NAMED INSUREDS? | | X |

PLEASE ATTACH LITERATURE, BROCHURES, LABELS, WARNINGS, ETC

## ADDITIONAL INTERESTS/CERTIFICATE RECIPIENTS (Attach ACORD 45 for additional names)

| INTEREST | RANK: | NAME AND ADDRESS    REFERENCE #: | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|
| X | ADDITIONAL INSURED | Salem Lafayette LLC | | LOCATION: 00001  BUILDING: 00001 |
| | LOSS PAYEE | C/O Steven Faber | | VEHICLE:    BOAT: |
| | MORTGAGEE | 1238 Washington Street | | SCHEDULED ITEM NUMBER: |
| | LIENHOLDER | Canton, MA 02021 | | OTHER |
| | EMPLOYEE AS LESSOR | | | |

Add1 interest-1  ITEM DESCRIPTION: Building Owner

## GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES (For all past or present operations) | YES | NO | EXPLAIN ALL "YES" RESPONSES (For all past or present operations) | YES | NO |
|---|---|---|---|---|---|
| 1. ANY MEDICAL FACILITIES PROVIDED OR MEDICAL PROFESSIONALS EMPLOYED OR CONTRACTED? | | X | 9. RECREATION FACILITIES PROVIDED? | | X |
| | | | 10. IS THERE A SWIMMING POOL ON THE PREMISES? | | X |
| 2. ANY EXPOSURE TO RADIOACTIVE/NUCLEAR MATERIALS? | | X | 11. SPORTING OR SOCIAL EVENTS SPONSORED? | | X |
| 3. DO/HAVE PAST, PRESENT OR DISCONTINUED OPERATIONS INVOLVE(D) STORING, TREATING, DISCHARGING, APPLYING, DISPOSING, OR TRANSPORTING OF HAZARDOUS MATERIAL? (e.g. landfills, wastes, fuel tanks, etc) | | X | 12. ANY STRUCTURAL ALTERATIONS CONTEMPLATED? | | X |
| | | | 13. ANY DEMOLITION EXPOSURE CONTEMPLATED? | | X |
| 4. ANY OPERATIONS SOLD, ACQUIRED, OR DISCONTINUED IN LAST 5 YEARS? | | X | 14. HAS APPLICANT BEEN ACTIVE IN OR IS CURRENTLY ACTIVE IN JOINT VENTURES? | | X |
| | | | 15. DO YOU LEASE EMPLOYEES TO OR FROM OTHER EMPLOYERS? | | X |
| 5. MACHINERY OR EQUIPMENT LOANED OR RENTED TO OTHERS? | | X | 16. IS THERE A LABOR INTERCHANGE WITH ANY OTHER BUSINESS OR SUBSIDIARIES? | | X |
| 6. ANY WATERCRAFT, DOCKS, FLOATS OWNED, HIRED OR LEASED? | | X | 17. ARE DAY CARE FACILITIES OPERATED OR CONTROLLED? | | X |
| 7. ANY PARKING FACILITIES OWNED/RENTED? | | X | | | |
| 8. IS A FEE CHARGED FOR PARKING? | | X | | | |

REMARKS

ACORD 126-S (3/93)    ATTACH TO APPLICANT INFORMATION SECTION

# EXHIBIT 9

INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC.
30B Capital Drive P.O. Box 680
West Springfield, MA 01090
®(413)731-1100 * (800)332-3847 * Fax (413)731-7403 No. 4948868
**Q U O T A T I O N**
COVERAGE IS NOT EFFECTED BY THIS DOCUMENT AND MAY BE RENDERED ONLY BY AN AUTHORIZED REPRESENTATIVE OF THE INSURER

Named Insured:
JENNA'S PUB INC
DBA SCUTTLEBUTTS
73 LAFAYETTE ST
SALEM        MA 01970

JEAN D'ADDARIO

MEDALLION INS AGCYS                    AM Best    Name of Insurer(s)                    100%
P.O. BOX 367                           A          UNDERWRITERS AT LLOYDS
MALDEN        MA 02148

Fax: (781) 397-9270

Proposed Term: ANNUAL

COVERAGE:   Commercial General Liability
  LIMITS:   General Aggregate:                          $2,000,000
            Products/Completed Operations Aggregate:    $1,000,000
            Personal and Advertising Injury:            $1,000,000
            Each Occurrence:                            $1,000,000
            Fire Damage (any one fire):                 $  100,000
            Medical Expense (any one person):           $    5,000
DEDUCTIBLE:  $   NIL  Per Claim      ( ) Including Loss Adjustment Expense
SUBJ TO AUDIT? YES. TAVERN WITH ENTERTAINMENT BASED ON $300,000 SALES.
INCL LANDLORD AS ADDL INSD. QUOTE IS SUBJECT TO CURRENT RESERVES FOR
CLAIMS ON FILE. AS DISCUSSED, PREFER TO PASS ON PROPERTY DUE TO FACT THAT
APPLICANT HAS BEEN BARE.
IF COVERAGE IS DESIRED:
   (X) Signed and Fully Completed Application
   (X) Signed and Fully COmpleted Affidavit
   (X) Minimum Earned Premium: 25 %
EXCLUSIONS:
YEAR 2000                 EMPLOYMENT RELATED PRACTICES
PUNITIVE DAMAGES          LEAD CONTAMINATION
PARTICIPANTS              LIQUOR LIABILITY
INDEPENDENT CONTRACTORS   SEXUAL MOLESTATION
ABSOLUTE POLLUTION        ASBESTOS
NEGLIGENT HIRING/         ASSAULT & BATTERY
CLASSIF. LIMITATION

EXHIBIT *H*
Caiazzo
5/6/05 xc

                                              PREMIUM      $3,000.00
                                       Inspection Fee         $85.00
                                    Surplus Lines Tax        $120.00

                 Commission: 12.50%            TOTAL      $3,205.00

CONDITIONS
This quote is valid  30 days from the issue date. This quote covers those coverages
and limits indicated and may not be those requested. Please review carefully and advise
us of the outcome of this quote.  Coverage is not bound until a written binder or
policy is issued.

Certain policies written by Insurance Innovators Agency of N.E. can be financed through
R.S.B.  Ask your underwriter for details.
Date  January 9, 2001         Authorized Representative:

(OMNI-0494-01/98)010316-001      Agent Copy              Contact: Deborah E. Czerwiec

# EXHIBIT 10

INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC.   **BINDER**
30B Capital Drive, P.O. Box 680
West Springfield, MA 01090
®(413)731-1100 * (800)332-3847 * Fax (413)731-7403 No. LGL012603          Previous No.

---

MA SL Tax# 01/1103

Named Insured:
JENNA'S PUB INC
DBA SCUTTLEBUTTS
73 LAFAYETTE ST
SALEM          MA 01970

JEAN D'ADDARIO

MEDALLION INS AGCYS          AM Best    Name of Insurer(s)
P.O. BOX 367                 A          UNDERWRITERS AT LLOYDS          100%
MALDEN          MA 02148

Fax: (781) 397-9270

Binder Effective: 03-22-01 to 04-21-01
Policy Effective: 03-22-01 to 03-22-02
          12:01 A.M. Standard Time

---

COVERAGE:   Commercial General Liability
LIMITS:     General Aggregate:                              $2,000,000
            Products/Completed Operations Aggregate:        $1,000,000
            Personal and Advertising Injury:                $1,000,000
            Each Occurrence:                                $1,000,000
            Fire Damage (any one fire):                     $  100,000
            Medical Expense (any one person):               $    5,000
DEDUCTIBLE: $   NIL  Per Claim     ( ) Including Loss Adjustment Expense
SUBJ TO AUDIT? YES. TAVERN WITH ENTERTAINMENT BASED ON $300,000 SALES.
INCL LANDLORD AS ADDL INSD.BINDER IS SUBJECT TO CURRENT RESERVES FOR
CLAIMS ON FILE. *for GL + liquor*

IF COVERAGE IS DESIRED:
    (X) Signed and Fully Completed Application
    (X) Signed and Fully Completed Affidavit
    (X) Minimum Earned Premium: 25 %
EXCLUSIONS:
YEAR 2000                 EMPLOYMENT RELATED PRACTICES
PUNITIVE DAMAGES          LEAD CONTAMINATION
PARTICIPANTS             LIQUOR LIABILITY
INDEPENDENT CONTRACTORS   SEXUAL MOLESTATION
ABSOLUTE POLLUTION        ASBESTOS
NEGLIGENT HIRING/        ASSAULT & BATTERY
CLASSIF. LIMITATION

                                        PREMIUM      $3,000.00
                                    Inspection Fee       $85.00
                              Surplus Lines Tax         $120.00

                                        TOTAL       $3,205.00

---

CONDITIONS:
This Binder covers those perils and limits indicated and may not be those requested.  Please
review carefully. This Binder is your evidence of insurance and is valid for  30 days.

Date   March 22, 2001          Authorized Representative:

(OMNI-0404-01/98)010322-001     ORIGINAL Copy          Contact: Deborah E. Czerwiec

# EXHIBIT 11

EXHIBIT 15
Cajazzo
5/6/05 7c





MAR 2 2 2001

MEDALLION INS. AGENCIES
180 EXCHANGE ST.
MALDEN, MA.
02148

ATTSN. JOHN B.

THE BANK OF NEW YORK
WHITE PLAINS, N.Y. 10602

STANDARD
FUNDING CORP.
P.O. BOX 304, SYOSSET, NY. 11791

AGENT DRAFT    559781    50-828
219

INSURED - NAME & ADDRESS
JENNA'S PUB DBA SCUTTLEBUTTS
73 LAFAYETTE ST
SALEM, MA 01970
(978) 741-3850

| TOTAL PREMIUM | DATE |
|---|---|
| 9,191.00 | 3/22/01 |

POLICY NUMBER OR RENEWAL OF
TBI

EFFECTIVE DATE OF POLICY

IMPORTANT
CHECK WILL NOT BE HONORED IF SUBMITTED PRIOR
TO EFFECTIVE DATE OF POLICY.
1 - CHECK WILL NOT BE HONORED WITHOUT POLICY #.

PAY TO THE ORDER OF
MEDALLION INSURANCE AGENCIES, INC

SIX THOUSAND EIGHT HUNDRED NINETY THREE AND 25/100    Dollars

PAY THIS AMOUNT
$ 6,893.25

NON-NEGOTIABLE

FOR AUTHENTICATION PURPOSES ONLY.
MUST BE SIGNED BY A PRINCIPAL OF THE AGENCY FOR MEDALLION INS) AGENCIES
OFFICER OF THE AGENCY

AUTHORIZED SIGNATURE

PRESIDENT

AGENTS COPY - RETAIN IN YOUR FILE

# STANDARD
## FUNDING CORP.

335 Crossways Park Drive
Woodbury, N.Y. 11797
(516) 364-0200

**PREMIUM FINANCE AGREEMENT**
**COMMERCIAL FINANCE AGREEMENT**

ACCOUNT NO.

| | | | | |
|---|---|---|---|---|
| **A** | CASH PRICE (TOTAL PREMIUMS) | $ 9,191.00 | AGENT (Name and place of business)<br>MEDALLION INSURANCE AGENCIES<br>180 EXCHANGE STREET<br>PO BOX 367<br>MALDEN        MA    02148<br>5182<br>(781) 324-4118 | INSURED (Name and residence or business address)<br>Jenna's Pub.Inc. dba Scuttlebutts<br>73 Lafayette Street<br>Salem        MA    01970<br>(978) 741-3850 |
| **B** | CASH DOWN PAYMENT | $ 2,297.75 | | |

### LOAN DISCLOSURE

| Amount Financed<br>The amount of credit provided to you or on your behalf. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. |
|---|---|---|---|
| $ 6,893.25 | $ 239.16 | $ 7,132.41 | 8.250 % |

**YOUR PAYMENT SCHEDULE WILL BE**

Quote Number:    1026

| Number of Payments | Amount of Payments | When Payments are Due: |
|---|---|---|
| 9 | $792.49 | ( Monthly )<br>BEGINNING:  03/23/2001 |

**DEFINITIONS:** STANDARD FUNDING CORP. will be herein after referred to as STANDARD. The words "the insured", "I", "you", "me", "my" mean the person borrowing the money to pay for the insurance policies listed on this **PREMIUM FINANCE AGREEMENT.**
**PROMISE TO PAY:** In return for the payment(s) that STANDARD has advanced to pay my insurance on the policy(ies) listed below, I promise to make monthly payments as shown. I will make these payments until I have paid the full amount advanced for me, plus the Finance Charges and any other charges I may owe as shown on this agreement. I understand payments will be made to:
STANDARD FUNDING CORP. 335 Crossways Park Drive, Woodbury, N.Y. 11797 and will be deemed made when actually received by STANDARD.
**SECURITY:** I am giving a security interest in all unearned premiums and / or dividends which may become payable under said policies which reduce the unearned premiums. I agree not to assign the policy, except for the interest of mortgagees and loss payees, without written consent of STANDARD.
**NOTE:** See both pages of this agreement for any additional information about non-payment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES<br>NAME OF INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL. TERMS | PREMIUM |
|---|---|---|---|---|---|
| TBI | 03-22-2001 | LLO - LLOYDS OF LONDON<br><br>INN - INSURANCE INNOVATORS | LIAB<br>FIN TXS/FEES<br>ERN TXS/FEES | 12 | 3,000.00<br>205.00<br>0.00 |
| TBI | 03-22-2001 | LLO - LLOYDS OF LONDON<br><br>INN - INSURANCE INNOVATORS | LLL<br>FIN TXS/FEES<br>ERN TXS/FEES | 12 | 4,000.00<br>160.00<br>0.00 |
| | | NY Section 2119 Insurance Law charge* | | | none |
| | | | | | (If none, so state) |
| | | (POLICIES CONTINUED ON NEXT PAGE.) | (A ABOVE) TOTAL $ | | 9,191.00 |

* The service for which the charge pursuant to insurance law, section 2119, is imposed in connection with obtaining and servicing the policies listed herein.
SN:2744  EXE:0812980O700  V:3.01  PRN:0322O1@1339  CFG:092498@1019*PREFERRED  RT:PREF  CRD:0  BP:Bill  P/F:0.00
**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ BOTH PAGES OF IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE/SERVICE CHARGE. 4. KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS.**

I, THE INSURED HAVE READ THIS AGREEMENT, UNDERSTAND IT CLEARLY AND AGREE TO THE TERMS AND CONDITIONS ON BOTH PAGES. (ALL INSUREDS DESIGNATED IN THE POLICY(IES) MUST SIGN. IF THE INSURED IS A CORPORATION, AN OFFICER MUST SIGN.) I ALSO ACKNOWLEDGE AS TO THE RECEIPT OF AN EXECUTED COPY OF THIS AGREEMENT AT THE TIME OF EXECUTION THEREOF AND REPRESENT I HAVE AUTHORITY TO SIGN ON BEHALF OF THE INSURED.

| | | | |
|---|---|---|---|
| _Kevin Caiazzo_ | _signature_ | _Pres_ | |
| INSURED NAME | SIGNATURE OF THE BORROWER OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |

**BLANK SPACES:** I hereby agree to allow STANDARD to fill in those spaces which refer to the name of the insurer, the policy number(s) and the due date of the first installment if the insurance policy(ies) have not been issued at the time of my signing this agreement.
**LATE PAYMENTS, DEFAULTS:** If I do not pay as agreed, I APPOINT STANDARD AS MY ATTORNEY-IN-FACT. This means that STANDARD may legally cancel the insurance policy(ies) shown on the agreement, and receive any unearned premiums from the insurance company(ies), which shall be applied to my loan balance. Any sums that have not been covered by the unearned premium shall be due and payable immediately.
(a)  I understand no payment received after STANDARD has mailed me a Notice of Cancellation, will cause my insurance to be reinstated and that such payment will only be applied to reduce the loan balance I owe. I also understand that STANDARD, at its option, may enforce payment of this debt without proceeding against the security given STANDARD. A credit balance of mine on another account may be applied to satisfy the balance due on this account.
(b)  To the extent permitted by State or D.C. Law, if cancellation occurs, I will be resonsible to pay interest on the balance due at the contract rate of interest or maximum rate permitted by State or D.C. Law, whichever is less until that balance is paid in full, or until such other date as is designated by applicable law.

| | | | |
|---|---|---|---|
| _Joseph DelVecenti_ | _signature_ | _V-P_ | 3/22/01 |
| AGENT OR BROKER | SIGNATURE OF AGENT OR BROKER | TITLE | DATE |
| SFC REV 11/97 CFI | **PAGE 1 OF 2** | | |

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES NAME OF INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL. TERMS | PREMIUM |
|---|---|---|---|---|---|
| WC6-0291018 | 02-23-2001 | LEG - LEGION INSURANCE COMPANY | W/C<br>FIN TXS/FEES<br>ERN TXS/FEES | 12 | 1,826.00<br>0.00<br>0.00 |

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

**FINANCE CHARGE:** The finance charge shown on the first page of this agreement begins to accrue as of the earliest policy effective date indicated in the Schedule of policies. The finance charge includes a predetermined interest rate plus a non-refundable service fee/charge of $10.00 in all states except $16.00 in MA, $15.00 in VT, RI, VA, SC and NC; $20.00 in MD, District of Columbia (herein after referred to as D.C.), $18.00 in MI, $25.00 in ME and $30.00 in IL on financing up to $999.00 and $40.00 on financing of $1000.00 or more. 2% up to a $120 maximum in MO and IA, and $33 in IN.

**PREPAYMENT:** I may prepay the full amount due on this contract and receive a rebate of a portion of the finance charge in accordance with the Rule of 78's in all states except that the refund shall be computed by the actuarial method on a 360 day year basis in IA, PA, NJ, VT, ME, CT and MA, short rate in S.C. or such other method as authorized by applicable D.C. or state law. Refunds of less than a $1.00 will not be made.

**CANCELLATION CHARGES:** If a default by me results in cancellation of any insurance policy listed herein, after legal notice is given, I shall pay a cancellation charge of $15.00 in WY, NH, RI, ME, WI and MO; $10.00 less late charge in DC and MD; of $5.00 less late charge on installment in default in DE, NJ, NY, IL, MI; the greater of $5.00 or 2% of the unpaid balance in MA.

**DELINQUENCY CHARGES:** For installments which are in default not less than five days, insureds in all states except those listed in this paragraph will pay a late charge of 5 percent of any installment which is in default (not to exceed $5.00 in MD) and after 10 days in MA, MI and ME and after 8 days in VA. For installments which are in default 10 days or more insureds will pay a late charge of 5 percent of the payment which is in default in VA, but not to exceed $5.00 in DE and IN and $20 in IA; in NJ 1.5% with a minimum charge of $25.00. The acceptance by STANDARD of one or more late payments from me shall not estop STANDARD or be a waiver by STANDARD to exercise all of its rights hereunder in the event of any subsequent late payment.

**INSUFFICIENT OR UNCOLLECTED CHARGES:** A charge of $20.00 shall be made for each returned check except:$10.00 in MA; actual expenses not to exceed $25.00 in MD; or as otherwise limited by applicable D.C. or state law.

**REPRESENTATION OF SOLVENCY:** I represent that I am not insolvent or presently the subject of a bankruptcy and/or insolvency proceeding of any kind.

**NOT A CONDITION OF OBTAINING INSURANCE:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**LIMITATION OF LIABILITY:** I agree that STANDARD's liability to me, any person or corporation for breach of any of the terms of this agreement or the wrongful exercise of the right or authority of cancellation shall be limited to the amount of principal balance outstanding except in the event of willful misconduct or as otherwise limited by D.C. or state law.

**COLLECTION COSTS:** I agree to pay the attorney's fees and costs of STANDARD, as permitted by law if this agreement is referred to an attorney, not the employee of Standard, for collection, not to exceed reasonable fees in NH, 15% in ME, 25% in VT and 20% in all other states and DC or as otherwise limited by applicable law..

**ENTIRE DOCUMENT-GOVERNING LAW:** This document is the entire agreement between STANDARD and me and can only be changed in writing and signed by both parties except that the laws of D.C. or the state indicated in the insured's address as set forth on page 1 will govern this agreement unless otherwise stated. If any provision of this agreement is proved to be in violation of any statute, and or regulations it shall not prevent the enforcement of any other provisions of this agreement pursuant to the laws of D.C. or the state governing.

**ACCEPTANCE:** I UNDERSTAND THAT THE BROKER OR AGENT WHOSE NAME APPEARS BELOW IS NOT A REPRESENTATIVE OF STANDARD AND HAS NO AUTHORITY TO PROMISE ANYTHING ON BEHALF OF STANDARD. This agreement shall not be valid until accepted by STANDARD. If my down payment is made by a check, I understand that it is accepted subject to collection and that if the check is dishonored, this agreement shall be deemed not to have been accepted, even if a notification of acceptance has been issued by STANDARD.
The insured understands that STANDARD may transfer and/or assign this agreement to another duly licensed premium finance agency, bank, or financial institution.

**ADDITIONAL PREMIUMS:** The money paid by STANDARD is only for the premium as determined at the time this agreement is accepted by STANDARD. STANDARD'S payment shall not be applied by the insurance company to pay for any additional premiums owed by me as a result of any type of misclassification of the risk. I agree to pay the company any additional premiums which become due for any reason including, but not limited to an audit. STANDARD may however, at its option, finance the additional premium according to a written agreement of amendment. STANDARD, may assign to the insurance company any rights it has against me for premiums due the company in excess of the premium returned to you.

**WARRANTY OF ACCURACY:** I warrant to STANDARD that the insurance policies listed in the schedule on page 1, have been issued to me and are in full force and effect and that I have not assigned any interest in the policies except for the interest of mortgagees and loss payees.

**SPECIAL INSURANCE POLICIES:** If the insurance policy issued to me is auditable or is a reporting form policy or subject to retrospective rating, then I promise to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by STANDARD.

---

**CERTIFICATION AND WARRANTY OF AGENT/BROKER:** The broker/agent indicated on the reverse side is the producer of the transaction and represents, certifies and warrants to STANDARD that the signature(s) indicated are those of the insured's maker(s) and are genuine. The agent/broker further warrants: the truth of the facts shown on this contract; that the insured has received a copy of this contract, and any down payment has been paid accompanies this contract. Upon cancellation of any policy(ies) financed, the broker/agent will remit to STANDARD any unearned premium(s) including unearned commissions, returned by the Insurance Company(ies), without regard as to whether these monies were returned on a gross or net basis.
Broker/Agent further agrees that no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included in this Agreement except as indicated and that the Deposit or Provisional Premiums for the indicated policies are not less than the anticipated premiums to be earned for the full terms of the policies. If policy is subject to minimum earned premium the minimum premium is $_____.
None of the policies contain provisions which prohibit cancellation by the insured or STANDARD within 10 days except as indicated, nor except as indicated in the unearned premium on the scheduled policies to be computed by other than the standard short rate or pro rata table.
None of the policies indicated above are for less than one year except: _____
The broker/agent also represents that no proceeding in bankruptcy, receivership or insolvency has been instituted by or against the named insured or if the named insured is the subject of such a proceeding, it is noted on the premium finance agreement in the space in which the insured's name and address is placed. Broker/Agent agrees that if any of the warranties contained in this agreement are found to be untrue, to immediately purchase this premium finance agreement from STANDARD for the full amount then remaining unpaid.

---

**BROKER'S RECOURSE**
GUARANTORS SIGN HERE:
The undersigned, jointly and severally, hereby unconditionally guaranty and warrant the full and complete payment and performance of this Premium Finance Agreement in accordance with the terms thereof and any and all renewals, continuations, modifications, extensions, compromises, supplements and amendments thereof, without deduction by reason of set-off, defense, or counterclaim. The liability of each of the undersigned is direct and unconditional and may be enforced without requiring STANDARD to first resort to any other right, remedy or security whether or not such constitutes an election of remedies, against insured; nothing shall discharge or satisfy our liability hereunder except the full performance and payment of the unpaid balance within ten days from the date STANDARD demands payment of the Premium Finance Agreement which has been read and is hereby ratified and confirmed.

_____ (L.S.)    _____ (L.S.)
          (GUARANTOR)                              (GUARANTOR)



# STANDARD
## FUNDING CORP.

335 Crossways Park Drive
Woodbury, N.Y. 11797
(516) 364-0200

**PREMIUM FINANCE AGREEMENT**
**COMMERCIAL FINANCE AGREEMENT**

**ACCOUNT NO.**

| | | | |
|---|---|---|---|
| **A** | CASH PRICE (TOTAL PREMIUMS) | $ 9,191.00 | AGENT (Name and place of business) MEDALLION INSURANCE AGENCIES 10 HOLDEN STREET MALDEN   MA   02148 5182 (781) 324-4118 |
| **B** | CASH DOWN PAYMENT | $ 2,297.75 | INSURED (Name and residence or business address) Jenna's Pub Inc. dba Scuttlebutts 73 Lafayette Street Salem   MA   01970 (978) 741-3850 |

## LOAN DISCLOSURE

| Amount Financed The amount of credit provided to you or on your behalf. | FINANCE CHARGE The dollar amount the credit will cost you. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. |
|---|---|---|---|
| $ 6,893.25 | $ 239.16 | $ 7,132.41 | 8.250 % |

**YOUR PAYMENT SCHEDULE WILL BE**

Quote Number: 1026

| Number of Payments | Amount of Payments | When Payments are Due: |
|---|---|---|
| 9 | $792.49 | ( Monthly ) BEGINNING: 03/23/2001 |

**DEFINITIONS: STANDARD FUNDING CORP.** will be herein after referred to as **STANDARD.** The words "the insured", "I", "you", "me", "my" mean the person borrowing the money to pay for the insurance policies listed on this **PREMIUM FINANCE AGREEMENT.**
**PROMISE TO PAY:** In return for the payment(s) that STANDARD has advanced to pay my insurance on the policy(ies) listed below, I promise to make monthly payments as shown. I will make these payments until I have paid the full amount advanced for me, plus the Finance Charges and any other charges I may owe as shown on this agreement. I understand payments will be made to:
STANDARD FUNDING CORP. 335 Crossways Park Drive, Woodbury, N.Y. 11797 and will be deemed made when actually received by STANDARD.
**SECURITY:** I am giving a security interest in all unearned premiums and / or dividends which may become payable under said policies which reduce the unearned premiums. I agree not to assign the policy, except for the interest of mortgagees and loss payees, without written consent of STANDARD.
**NOTE:** See both pages of this agreement for any additional information about non-payment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES NAME OF INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL. TERMS | PREMIUM |
|---|---|---|---|---|---|
| TBI | 03-19-2001 | LLO - LLOYDS OF LONDON INN - INSURANCE INNOVATORS | LIAB FIN TXS/FEES ERN TXS/FEES | 12 | 3,000.00 205.00 0.00 |
| TBI | 03-19-2001 | LLO - LLOYDS OF LONDON INN - INSURANCE INNOVATORS | LLL FIN TXS/FEES ERN TXS/FEES | 12 | 4,000 160 0 |
| | | NY Section 2119 insurance Law charge* | | | none (If none, so state) |
| | | (POLICIES CONTINUED ON NEXT PAGE.) | (A ABOVE) TOTAL $ | | 9,191.00 |

* The service for which the charge pursuant to insurance law, section 2119, is imposed are in connection with obtaining and servicing the policies listed herein.
SN:274 - BSE:081:9BR070: V:3.01 MRO:03160101612 CEG:09249981019*PREFERRED RT:PREF CRD:0 BE:Bill E/F:0.00
NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ BOTH PAGES OF IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE/SERVICE CHARGE. 4. KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS.

I, THE INSURED HAVE READ THIS AGREEMENT, UNDERSTAND IT CLEARLY AND AGREE TO THE TERMS AND CONDITIONS ON BOTH PAGES (ALL INSUREDS DESIGNATED IN THE POLICY(IES) MUST SIGN. IF THE INSURED IS A CORPORATION, AN OFFICER MUST SIGN.) I ALSO ACKNOWLEDGE AS TO THE RECEIPT OF AN EXECUTED COPY OF THIS AGREEMENT AT THE TIME OF EXECUTION THEREOF AND REPRESENT I HAVE AUTHORITY TO SIGN ON BEHALF OF THE INSURED.

| Scuttlebutts | | OWNED | 3-18-01 |
|---|---|---|---|
| INSURED NAME | SIGNATURE OF THE BORROWER OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |

**BLANK SPACES:** I hereby agree to allow STANDARD to fill in those spaces which refer to the name of the insurer, the policy number(s) and the due date of the first installment if the insurance policy(ies) have not been issued at the time of my signing this agreement.

**LATE PAYMENTS, DEFAULTS:** If I do not pay as agreed, I APPOINT STANDARD AS MY ATTORNEY-IN-FACT. This means that STANDARD may legally cancel the insurance policy(ies) shown on the agreement, and receive any unearned premiums from the insurance company(ies), which shall be applied to my loan balance. Any sums that have not been covered by the unearned premium shall still be due and payable immediately.

(a) I understand no payment received after STANDARD has mailed me a Notice of Cancellation, will cause my insurance to be reinstated and that such payment will only be applied to reduce the loan balance I owe. I also understand that STANDARD, at its option, may enforce payment of this debt without proceeding against the security given STANDARD. A credit balance of mine on another account may be applied to satisfy the balance due on this account.
(b) To the extent permitted by State or D.C. Law, if cancellation occurs, I will be responsible to pay interest on the balance due at the contract rate of interest or maximum rate permitted by State or D.C. Law, whichever is less until that balance is paid in full, or until such other date as is designated by applicable law.

| | | | |
|---|---|---|---|
| AGENT OR BROKER | SIGNATURE OF AGENT OR BROKER | TITLE | DATE |

SFC REV 11/97 CFI
**PAGE 1 OF 2**



■ Security enhanced document. See back for details. ■

**JENNA'S PUB INC.**
**DBA SCUTTLEBUTTS**
73 LAFAYETTE ST.
SALEM, MA  01970

1252

5-7017/2110
788

DATE _3-20-01_

PAY TO THE ORDER OF _MEDALLION INS. AGENCY_          $2297.75

_TWENTY TWO HUNDRED NINETY SEVEN & 75/100_          DOLLARS

**CITIZENS BANK**
Massachusetts

FOR _INS. policy Scuttlebutts_          _SNO_

⑈0012521⑈ ⑆211070175⑆ 1132498063⑈

---

**THE BANK OF NEW YORK**
WHITE PLAINS, N.Y. 10602

**STANDARD**
**FUNDING CORP.**
P.O. BOX 304, SYOSSET, NY 11791

**AGENT DRAFT** 559781

50-828
219

| INSURED – NAME & ADDRESS | POLICY NUMBER OR RENEWAL OF | TOTAL PREMIUM | DATE |
|---|---|---|---|
| JENNA'S PUB DBA SCUTTLEBUTTS 73 LAFAYETTE ST SALEM, MA 01970 (978) 741-3850 | TBI | 9,191.00 | 3/22/01 |
| | EFFECTIVE DATE OF POLICY | IMPORTANT: 1 - CHECK WILL NOT BE HONORED IF SUBMITTED PRIOR TO EFFECTIVE DATE OF POLICY. 2 - CHECK WILL NOT BE HONORED WITHOUT POLICY # | |

PAY TO THE ORDER OF
MEDALLION INSURANCE AGENCIES, INC

SIX THOUSAND EIGHT HUNDRED NINETY THREE AND 25/100          **Dollars**

**PAY THIS AMOUNT**
$ 6,893.25

FOR AUTHENTICATION PURPOSES ONLY:
MUST BE SIGNED BY A PRINCIPAL OR
OFFICER OF THE AGENCY  MEDALLION INS. AGENCIES

AUTHORIZED SIGNATURE

⑈055978 1⑈ ⑆021908288⑆ ⑈0098122893⑈

# EXHIBIT 12



# The Medallion Insurance Agencies, Inc.

5/3/2001


Jenna's Pub Inc
73 Lafayette Street
Salem, MA  01970

Re: Workers Compensation Policy #WC60934301
Effective: 03/23/2001-03/23/2002

Dear Steve:

We are pleased to enclose your copy of the above referenced
renewal.  Please take a moment to review the policy and let us
know as soon as possible if you find that any changes or
corrections need to be made.

Your policy has been set up on a direct billing basis from the
carrier.  They will invoice you directly and your payment(s)
should be made to them.

We appreciate your continued confidence in our agency and the
opportunity to assist you with your insurance needs.  If you
have any questions or we may be of assistance to you in any
way, please do not hesitate to call.

Sincerely,



Jean D'Addario
Commercial Account Executive

Chesley & Kenty Insurance Agency Inc.
MacKenzie & Duval Insurance Agency Inc.
180 Exchange Street, Malden, MA 02148 • 781-324-4118

Donnelly & Reed Insurance Agency Inc.
Joseph A. DeVincentis Insurance Agency Inc.
781-324-1809 • Fax: 781-324-7189

**GU 207 A**
(Ed 6-78)

## ENDORSEMENT

This endorsement, effective     03/23/2001     at 12:01 A.M. standard time, forms a part of
on

Policy     WC6-**0934301**     of the     Legion Insurance Company  NCCI No 10901
No
                                                (NAME OF INSURANCE COMPANY)

Issued to   JENNA'S PUB, INC.

By

_____
                                                Authorized Representative


# SCHEDULE OF ENDORSEMENTS

| | |
|---|---|
| GU207E | ALL STATES ENDORSEMENT |
| WC000000A | CONDITIONS |
| WC000001 | EXTENSION SCHEDULE |
| WC000001A | INFORMATION PAGE |
| WC000303B | EMPLOYERS LIABILITY COVERAGE ENDORSEMENT |
| WC000404 | PENDING RATE CHANGE |
| WC000414 | NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT |
| WC200301 | MASSACHUSETTS LIMITS OF LIABILITY ENDORSEMENT |
| WC200302 | MASSACHUSETTS ASSESSMENT CHARGE |
| WC200303B | NOTICE TO POLICYHOLDERS ENDORSEMENT |
| WC200401 | MASSACHUSETTS PENDING PREMIUM CHANGE ENDORSEMENT |
| WC200601 | CANCELLATION ENDORSEMENT |



PO Box 6519
Freehold, NJ 07728

Phone: (800) 203-1144
Fax: (732) 863-7177
WC 00 00 01
Page 1 of 1

## WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE POLICY

### EXTENSION SCHEDULE

Policy No.: WC6 - 0934301

Insured: JENNA'S PUB, INC.
SCUTTLEBUTTS

From 03/23/2001 To 03/23/2002

MA-20
73 LAFAYETTE STREET SALEM, MA 01970

| Classifications | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| RESTAURANT | 9079 | $70,000 | 2.08 | $1,456 |
| CLERICAL OFFICE EMPLOYEES NOC | 8810 | $52,000 | 0.18 | $94 |
| ESTIMATED ANNUAL PREMIUM | | | | $1,550 |
| UNMODIFIED PREMIUM | | | | $1,550 |
| MODIFIED PREMIUM | | | | $1,550 |
| TOTAL ESTIMATED STANDARD PREMIUM | | | | $1,550 |
| EXPENSE CONSTANT | 0900 | | | $214 |
| TOTAL ESTIMATED PREMIUM | | | | $1,764 |
| DEPT. OF INDUSTRIAL ACCIDENTS ASSESSMENT | | 4.0% | | $62 |
| TOTAL ESTIMATED PREMIUM COST | | | | $1,826 |

<u>ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)</u>

THIS POLICY DOES NOT COVER ANY LOSS, DAMAGE, COST , CLAIM
OR EXPENSE, WHETHER PREVENTATIVE, REMEDIAL OR
OTHERWISE, DIRECTLY OR INDIRECTLY ARISING OUT OF OR
RELATING TO:

    a) THE CALCULATION, COMPARISON, DIFFERENTIATION,
       SEQUENCING OR PROCESSING OF DATA INVOLVING THE
       DATE CHANGE TO THE YEAR 2000, OR ANY OTHER DATE
       CHANGE, INCLUDING LEAP YEAR CALCULATIONS, BY
       ANY COMPUTER SYSTEM, HARDWARE, PROGRAMME OR
       SOFTWARE AND/OR ANY MICROCHIP, INTEGRATED
       CIRCUIT OR SIMILAR DEVICE IN COMPUTER EQUIPMENT
       OR NON-COMPUTER EQUIPMENT, WHETHER THE
       PROPERTY OF THE INSURED OR NOT; OR

    b) ANY CHANGE, ALTERATION, OR MODIFICATION
       INVOLVING THE DATE CHANGE TO THE YEAR 2000,
       OR ANY OTHER DATE CHANGE, INCLUDING LEAP YEAR
       CALCULATIONS, TO ANY SUCH COMPUTER SYSTEM,
       HARDWARE, PROGRAMME OR SOFTWARE AND/OR ANY
       MICROCHIP, INTEGRATED CIRCUIT OR SIMILAR DEVICE IN
       COMPUTER EQUIPMENT OR NON-COMPUTER EQUIPMENT,
       WHETHER THE PROPERTY OF THE INSURED  OR NOT.

THIS CLAUSE APPLIES, REGARDLESS OF ANY OTHER CAUSE  OR
EVENT THAT CONTRIBUTES CONCURRENTLY OR IN ANY
SEQUENCE TO THE LOSS, DAMAGE, COST, CLAIM OR EXPENSE.

NMA2802
(17/12/1997)





5/8/2001


Jenna's Pub Inc
73 Lafayette Street
Salem, MA  01970

Re: General Liability Policy #GHL01342
Effective: 03/22/2001-03/22/2002


Dear Steve:

We are pleased to enclose your copy of the above referenced
renewal.  Please take a moment to review the policy and let us
know as soon as possible if you find that any changes or
corrections need to be made.

Your policy has been financed with Standard Funding.

We appreciate your continued confidence in our agency and the
opportunity to assist you with your insurance needs.  If you
have any questions or we may be of assistance to you in any
way, please do not hesitate to call.

Sincerely,


Jean D'Addario
Commercial Account Executive

CERTIFICATE OF INSURANCE
**COMMERCIAL LINES**
**COMMON DECLARATIONS**

NO. GHL01342

PREVIOUS NO: NEW

EFFECTED WITH UNDERWRITERS AT LLOYD'S, LONDON, ENGLAND (NOT INCORPORATED)

IN ACCORDANCE WITH LIMITED AUTHORIZATION GRANTED TO INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. BY CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

UNDER CONTRACT NO. 01GHL891

(SUCH UNDERWRITERS BEING HEREINAFTER CALLED THE "UNDERWRITERS"), THE UNDERWRITERS DO HEREBY BIND THEMSELVES IN THE PROPORTIONS UNDERWRITTEN BY THEM, EACH FOR HIS OWN PART, AND NOT FOR ANOTHER, THEIR HEIRS, EXECUTORS AND ADMINISTRATORS, IN FAVOR OF:

JENNA'S PUB, INC.
DBA SCUTTLEBUTTS
73 LAFAYETTE ST.
SALEM, MA 01970

| 03/22/01 | 03/22/02 | ONE | INCEPTION AND EXPIRATION |
|---|---|---|---|
| INCEPTION (MO. DAY YR.) | EXPIRATION (MO. DAY YR.) | YEAR | (AT 12:01 AM STANDARD TIME AT LOCATION OF DESCRIBED PROPERTY |

IN CASE OF LOSS, NOTIFY INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. AT ONCE IN WRITING

BUSINESS DESCRIPTION: TAVERN

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS CERTIFICATE, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED  IN THIS CERTIFICATE.

THIS CERTIFICATE CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

PREMIUM

COMMERCIAL PROPERTY COVERAGE PART                 $_____

COMMERCIAL GENERAL LIABILITY COVERAGE PART        $_____

COMMERCIAL CRIME COVERAGE PART                    $_____

LIQUOR LIABILITY COVERAGE PART                    $ 4,000.00*

      TOTAL ADVANCE PREMIUM PAYABLE AT INCEPTION   $ 4,000.00*

    * MINIMUM AND DEPOSIT

FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS AND MADE A PART OF THIS CERTIFICATE AT TIME OF ISSUE:CERTIFICATE PROVISIONS, LL170(1/86), CG0033(1/96), CG2806(1/96), NMA2341(24/11/88), LIA-102(5/77), LIA-103(10/97), NMA2802(17/12/1997)

25% MINIMUM AND FULLY EARNED PREMIUM IN THE EVENT OF CANCELLATION BY THE INSURED.

THIS CERTIFICATE OF INSURANCE IS MADE AND ACCEPTED SUBJECT TO THE FOREGOING STIPULATIONS AND CONDITIONS, AND TO THE CONDITIONS ATTACHED HERETO, WHICH ARE SPECIFICALLY REFERRED TO AND MADE A PART OF THE CERTIFICATE OF INSURANCE, TOGETHER WITH SUCH OTHER PROVISIONS, AGREEMENTS OR CONDITIONS AS MAY BE ENDORSED OR ADDED HERETO.

DATED AT WEST SPRINGFIELD, MA

INSURANCE INNOVATORS AGENCY OF
NEW ENGLAND, INC.

     APRIL 12, 2001   SS

BY: _Brenda LaBrie_

# CERTIFICATE PROVISIONS

1.  THIS INSURANCE MAY BE CANCELLED ON THE CUSTOMARY SHORT RATE BASIS BY THE ASSURED AT ANY TIME BY SURRENDER OF THIS CERTIFICATE TO INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. THIS CERTIFICATE MAY ALSO BE CANCELLED WITH OR WITHOUT THE RETURN OR TENDER OF THE UNEARNED PREMIUM BY THE UNDERWRITERS (OR BY INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. IN THEIR BEHALF, BY DELIVERY TO THE ASSURED OR BY SENDING TO THE ASSURED BY CERTIFIED MAIL, AT THE ASSURED'S ADDRESS AS SHOWN THEREIN, NOT LESS THAN TEN DAYS' WRITTEN NOTICE   STATING WHEN THE CANCELLATION SHALL BE EFFECTIVE AND, IN SUCH CASE, THE UNDERWRITERS SHALL REFUND THE PAID PREMIUM LESS THE EARNED PORTION THEREOF ON DEMAND, SUBJECT ALWAYS   TO THE RETENTION BY UNDERWRITERS HEREON ANY MINIMUM PREMIUM STIPULATED HEREIN (OR PROPORTION THEREOF PREVIOUSLY AGREED UPON) IN THE EVENT OF CANCELLATION EITHER BY UNDERWRITERS OR ASSURED.

2.  SERVICE OF SUIT CLAUSE (U.S.A.) N.M.A. 1998(24/4/86)
    IT IS AGREED THAT IN THE EVENT OF THE FAILURE OF THE UNDERWRITERS HEREON TO PAY ANY AMOUNT CLAIMED TO BE DUE HEREUNDER, THE UNDERWRITERS HEREON, AT THE REQUEST OF THE INSURED (OR REINSURED) WILL SUBMIT TO THE JURISDICTION OF A COURT OF COMPETENT JURISDICTION WITHIN THE UNITED STATES. NOTHING IN THIS CLAUSE CONSTITUTES OR SHOULD BE UNDERSTOOD TO CONSTITUTE A WAIVER OF UNDERWRITERS' RIGHTS TO COMMENCE AN ACTION IN ANY COURT OF COMPETENT JURISDICTION IN THE UNITED STATES, TO REMOVE AN ACTION TO A UNITED STATES DISTRICT COURT OR TO SEEK A TRANSFER OF A CASE TO ANOTHER COURT AS PERMITTED BY THE LAWS OF THE UNITED STATES OR OF ANY STATE IN THE UNITED STATES.
    IT IS FURTHER AGREED THAT SERVICE OF PROCESS IN SUCH SUIT MAY BE MADE UPON MENDES & MOUNT, 750 SEVENTH AVENUE, NEW YORK, NY 10019-6829 AND THAT IN ANY SUIT INSTITUTED AGAINST ANY ONE OF THEM UPON THIS CONTRACT, UNDERWRITERS WILL ABIDE BY THE FINAL DECISION OF SUCH COURT OR OF ANY APPELLATE COURT IN THE EVENT OF AN APPEAL.
    THE ABOVE NAMED ARE AUTHORIZED AND DIRECTED TO ACCEPT SERVICE OF PROCESS ON BEHALF OF UNDERWRITERS IN ANY SUCH SUIT AND/OR UPON THE REQUEST OF THE INSURED (OR REINSURED) TO GIVE A WRITTEN UNDERTAKING TO THE INSURED (OR REINSURED) THAT THEY WILL ENTER A GENERAL APPEARANCE UPON UNDERWRITERS' BEHALF IN THE EVENT SUCH A SUIT SHALL BE INSTITUTED.
    FURTHER, PURSUANT TO ANY STATUTE OF ANY STATE, TERRITORY OR DISTRICT OF THE UNITED STATES WHICH MAKES PROVISION THEREFORE, UNDERWRITERS HEREON HEREBY DESIGNATE THE SUPERINTENDENT, COMMISSIONER OR DIRECTOR OF INSURANCE OR OTHER OFFICER SPECIFIED FOR THAT PURPOSE IN THE STATUTE, OR HIS SUCCESSOR OR SUCCESSORS IN OFFICE, AS THEIR TRUE AND LAWFUL ATTORNEY UPON WHOM MAY BE SERVED ANY LAWFUL PROCESS IN ANY ACTION, SUIT OR PROCEEDING INSTITUTED BY OR ON BEHALF OF THE INSURED (OR REINSURED) OR ANY BENEFICIARY HEREUNDER ARISING OUT OF THIS CONTRACT OF INSURANCE (OR REINSURANCE) AND HEREBY DESIGNATE THE ABOVE NAMED AS THE PERSON TO WHOM THE SAID OFFICER IS AUTHORIZED TO MAIL SUCH PROCESS OR A TRUE COPY THEREOF.

3.  IF THE ASSURED SHALL MAKE ANY CLAIM KNOWING THE SAME TO BE FALSE OR FRAUDULENT, AS REGARDS AMOUNT OR OTHERWISE, THIS INSURANCE SHALL BECOME VOID AND ALL CLAIMS HEREUNDER SHALL BE FORFEITED.

4.  THE ASSURED SHALL IMMEDIATELY REPORT TO INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. ANY OCCURRENCE LIKELY TO RESULT IN A CLAIM UNDER THIS INSURANCE AND SHALL ALSO FILE WITH INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. OR THE UNDERWRITERS, A DETAILED, SWORN PROOF OF LOSS WITHIN SIXTY DAYS FROM THE DATE OF LOSS. FAILURE BY THE ASSURED EITHER TO REPORT THE SAID LOSS OR DAMAGE OR TO FILE SUCH WRITTEN PROOF OF LOSS AS ABOVE PROVIDED, SHALL INVALIDATE ANY CLAIM UNDER THIS INSURANCE.

5.  LOSS, IF ANY, TO BE PAYABLE IN UNITED STATES CURRENCY.

6.  NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THIS INSURANCE DOES NOT COVER LOSS OR DAMAGE DIRECTLY OR INDIRECTLY OCCASIONED BY, HAPPENING THROUGH OR IN CONSEQUENCE OF WAR, INVASION, ACTS OF FOREIGN ENEMIES, HOSTILITIES (WHETHER WAR BE DECLARED OR NOT), CIVIL WAR, REBELLION, REVOLUTION, INSURRECTION, MILITARY OR USURPED POWER OR CONFISCATION OR NATIONALIZATION OR REQUISITION OR DESTRUCTION OR DAMAGE TO PROPERTY BY OR UNDER THE ORDER OF ANY GOVERNMENT OR PUBLIC OR LOCAL AUTHORITY.

7.  RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-PHYSICAL DAMAGE-DIRECT.
    THIS INSURANCE DOES NOT COVER ANY LOSS OR DAMAGE ARISING DIRECTLY OR INDIRECTLY FROM NUCLEAR REACTION, NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION HOWEVER SUCH NUCLEAR REACTION, NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION MAY HAVE BEEN CAUSED. NEVERTHELESS, IF FIRE IS AN INSURED PERIL, AND A FIRE ARISES DIRECTLY OR INDIRECTLY FROM NUCLEAR REACTION, NUCLEAR RADIOACTIVE CONTAMINATION, ANY LOSS OR DAMAGE ARISING DIRECTLY FROM THAT FIRE SHALL (SUBJECT TO THE PROVISIONS OF THIS POLICY) BE COVERED EXCLUDING HOWEVER ALL LOSS OR DAMAGE CAUSED BY NUCLEAR REACTION, NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION ARISING DIRECTLY OR INDIRECTLY FROM THAT FIRE. NOTE: IF FIRE IS NOT AN INSURED PERIL UNDER THIS INSURANCE, THE WORDS FROM NEVERTHELESS TO THE END OF THE CLAUSE DO NOT APPLY AND SHOULD BE DISREGARDED.

8.  THIS INSURANCE IS MADE AND ACCEPTED SUBJECT TO ALL THE PROVISIONS, CONDITIONS AND WARRANTIES SET FORTH HEREIN OR ENDORSED HEREON OR APPEARING ON THE DECLARATIONS, ALL OF WHICH ARE TO BE CONSIDERED AS INCORPORATED HEREIN.

9.  ANY PROVISIONS OR CONDITIONS APPEARING IN ANY FORMS ATTACHED HERETO AND MADE A PART THEREOF WHICH CONFLICT WITH OR ALTER THE INSURING PROVISIONS STATED ABOVE, SHALL SUPERSEDE THE PROVISIONS APPEARING IN THIS DOCUMENT, INSOFAR AS THE LATTER ARE INCONSISTENT WITH THE PROVISIONS APPEARING IN SUCH ATTACHED FORM.

10. THIS INSURANCE SHALL NOT BE ASSIGNED EITHER IN WHOLE OR IN PART WITHOUT THE WRITTEN CONSENT OF INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. ENDORSED HEREON.

11. THIS INSURANCE SHALL NOT BE VALID UNLESS SIGNED BY INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC.

12. IT IS EXPRESSLY UNDERSTOOD AND AGREED BY THE ASSURED THAT INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. IS NOT AN ASSURER HEREUNDER AND THAT NEITHER IS NOR SHALL BE IN ANY WAY OR TO ANY EXTENT LIABLE FOR ANY LOSS OR CLAIM WHATEVER.

LIQUOR LIABILITY

## EXTENSION OF DECLARATIONS

Policy Number   GHL01342

| LOCATION OF PREMISES |
|---|

Location of All Premises You Own, Rent or Occupy:

73 Lafayette St., Salem, MA 01970

| LIMITS OF LIABILITY |
|---|

$ 1,000,000.    EACH COMMON CAUSE

$ 1,000,000.    AGGREGATE

| PREMIUM |
|---|

| Classification | Premium Basis | RATE | PREMIUM |
|---|---|---|---|
| Bars with liquor constituting more than 50% of total liquor and food receipts | $250,000. Liquor Receipts | 1.60 per $100. Liquor Receipts | $ 4,000.* |

* Minimum & Deposit

FORMS AND ENDORSEMENTS APPLICABLE TO THIS EXTENSION PAGE:

SEE COMMON DECLARATIONS PAGE

Extension of Declarations—Total Advance Premium  $ 4,000.00*

LL 170 (Ed. 1-86) UNIFORM PRINTING AND SUPPLY, INC.

COMMERCIAL GENERAL LIABILITY
CG 00 33 01 96

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section V).

## SECTION I - LIQUOR LIABILITY COVERAGE

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

b. This insurance applies to "injury" which occurs during the policy period in the "coverage territory".

### 2. Exclusions

This insurance does not apply to:

a. **Expected or Intended Injury**

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

c. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

d. **Liquor License Not in Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is suspended or after such license expires, is cancelled or revoked.

e. **Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

POLICY NUMBER:  GHL01342

COMMERCIAL GENERAL LIABILITY<br>CG 28 06 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO INSURED PREMISES

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of "Insured Premises":**    Bars with liquor constituting more than 50% of total liquor and food receipts

LOCATION: 73 Lafayette St., Salem, MA 01970

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** This insurance only applies to damages arising out of your "insured premises".

**B.** The following definition is added to the DEFINITIONS Section:

"Insured premises" means:

**1.** The premises shown in the Schedule; and

**2.** Any premises you acquire during the policy period for use in manufacturing, distributing, selling, serving or furnishing alcoholic beverages if:

**a.** You notify us within 30 days after the acquisition, and

**b.** You have no other valid and collectible insurance applicable to the loss.

          Copyright, Insurance Services Office, Inc., 1994           ☐

U.S.A. & Canada

LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

N.M.A. 2341 (24/11/88)

## TERM SUBSTITUTION

It is hereby agreed and understood that the
term "certificate" shall be substituted for
the term "policy" when hereinafter referred to
in all contract wording.  All other terms and
conditions remain unchanged.

LIA-102 (5/77)

## LIA-103 (10/97)

IF THE WORD "APPLICABLE" IS TYPED ON THE LINE BEFORE A LISTED ENDORSEMENT, SUCH ENDORSEMENT SHALL BE APPLICABLE AND BE PART OF THE POLICY.

**APPLICABLE**   ASSAULT & BATTERY/NEGLIGENT HIRING EXCLUSION

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, IT IS UNDERSTOOD AND AGREED THAT THIS POLICY EXCLUDES CLAIMS ARISING OUT OF:
1. ASSAULT & BATTERY, WHETHER CAUSED BY OR AT THE INSTRUCTIONS OF, OR AT THE DIRECTION OF OR NEGLIGENCE OF THE INSURED, HIS EMPLOYEES, PATRONS OR ANY CAUSES WHATSOEVER AND
2. ALLEGATIONS OF NEGLIGENT ACT OR OMISSION BY OR ON BEHALF OF THE INSURED IN CONNECTION WITH HIRING, RETENTION OR CONTROL OF EMPLOYEES, SUPERVISION OR PREVENTION OR SUPPRESSION OF SUCH ASSAULT AND BATTERY.

**APPLICABLE**   PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

IT IS UNDERSTOOD AND AGREED THAT THIS INSURANCE DOES NOT APPLY TO LEGAL LIABILITY AWARDED FOR PUNITIVE OR EXEMPLARY DAMAGES BY A COURT OF LAW OR JURY OR AGREED TO IN ADVANCE BY THE INSURED.

IT IS UNDERSTOOD AND AGREED THAT BELOW IS A DEFINITION OF PUNITIVE AND EXEMPLARY DAMAGES: PUNITIVE DAMAGES: RELATED MISCONDUCT THAT IS INTENTIONAL, MALICIOUS OR CONSISTS OF ACTION OR INACTION WHICH IS SO GROSS, WILLFUL OR WHICH INDICATES SUCH A CONSCIOUS OR AN AGGRAVATED DISREGARD OF OTHERS THAT A JURY COULD CONCLUDE THAT THE CONDUCT TAKES ON A CRIMINAL CHARACTER, WHETHER OR NOT IT IS PUNISHABLE AS AN OFFENSE AGAINST THE STATED. EXEMPLARY DAMAGES: DAMAGES THAT ARE AWARDED BY A COURT IN EXCESS OF ACTUAL LOSS IN ORDER TO PUNISH.

IT IS UNDERSTOOD AND AGREED THAT THIS IS A DEFINITION OF PUNITIVE AND EXEMPLARY DAMAGES BUT IT IS NOT THE ONLY OR SOLE DEFINITION ACCEPTED BY LEGAL AUTHORITIES.

**APPLICABLE**   ABSOLUTE POLLUTION EXCLUSION

IN CONSIDERATION OF THE PREMIUM PAID AND NOTWITHSTANDING ANYTHING CONTAINED IN THIS POLICY TO THE CONTRARY, IT IS AGREED AS FOLLOWS:
1. THE COVERAGE AFFORDED BY THIS POLICY DOES NOT APPLY TO:
   A. THE CONTAMINATION OF ANY ENVIRONMENT BY POLLUTANTS THAT ARE INTRODUCED AT ANY TIME, ANYWHERE, IN ANY WAY;
   B. ANY BODILY INJURY, PERSONAL INJURY, PROPERTY DAMAGE, COSTS OR OTHER LOSS OR DAMAGE ARISING OUT OF SUCH CONTAMINATION, INCLUDING BUT NOT LIMITED TO, CLEANING UP, REMEDYING OR DETOXIFYING SUCH CONTAMINATION; OR
   C. PAYMENT FOR THE INVESTIGATION OR DEFENSE OF ANY LOSS, INJURY OR DAMAGE OR ANY COST, FINE OR PENALTY OR FOR ANY EXPENSE OR CLAIM OR SUIT RELATED TO ANY OF THE ABOVE.
2. AS USED IN THIS ENDORSEMENT, THE FOLLOWING TERMS WILL HAVE THE FOLLOWING MEANINGS:
   A. "CONTAMINATION" MEANS ANY UNCLEAN OR UNSAFE OR DAMAGING OR INJURIOUS OR UNHEALTHFUL CONDITION ARISING OUT OF THE PRESENCE OF POLLUTANTS, WHETHER PERMANENT OR TRANSIENT IN ANY ENVIRONMENT.
   B. "ENVIRONMENT" INCLUDES ANY PERSON, ANY MANMADE OBJECT OR FEATURE, ANIMALS, CROPS AND VEGETATION, LAND, BODIES OF WATER, UNDERGROUND WATER OR WATER TABLE SUPPLIES, AIR AND ANY OTHER FEATURE OF THE EARTH OR ITS ATMOSPHERE, WHETHER OR NOT ALTERED, DEVELOPED OR CULTIVATED, INCLUDING BUT NOT LIMITED TO, ANY OF THE ABOVE.
   C. "POLLUTANTS" MEANS SMOKE, VAPORS, SOOT, FUMES, ACIDS, SOUNDS, ALKALIES, CHEMICALS, LIQUIDS, SOLIDS, GASES, THERMAL POLLUTANTS AND ALL OTHER IRRITANTS OR CONTAMINANTS.



# COMMONWEALTH OF MASSACHUSETTS
### Office of Consumer Affairs and Business Regulation
### DIVISION OF INSURANCE
One South Station • Boston, MA  02110-2208
(617) 521-7777 • FAX (617) 521-7575
Springfield Office (413) 785-5526
TTY/TDD (617) 521-7490
http://www.state.ma.us/doi

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

BETH LINDSTROM
DIRECTOR, CONSUMER AFFAIRS
AND BUSINESS REGULATION

JULIANNE M. BOWLER
COMMISSIONER OF INSURANCE

April 8, 2004

Mr. Stephen Caiazzo
P.O. Box 100526
Cape Coral, FL  33914

RE:     Medallion Insurance Company

Dear Mr. Caiazzo:

Please be informed that information provided to the Consumer Service Section indicates that the above-captioned matter is pending before a court of law.  As such, the Consumer Service Section is restricted from assisting you further.  If my understanding is not correct, then kindly contact me at 617-521-7465 or, in the alternative, at Richard.Rose@state.ma.us.

For the reason stated above, the file on this matter will be closed.

Sincerely,

£examinersignature

Enclosure(s)





5/8/2001


Jenna's Pub Inc
73 Lafayette Street
Salem, MA   01970

Re: General Liability Policy #LGL012603
Effective: 03/22/2001-03/22/2002


Dear Steve:

We are pleased to enclose your copy of the above referenced
renewal.  Please take a moment to review the policy and let us
know as soon as possible if you find that any changes or
corrections need to be made.

Your policy has been financed with Standard Funding.

We appreciate your continued confidence in our agency and the
opportunity to assist you with your insurance needs.  If you
have any questions or we may be of assistance to you in any
way, please do not hesitate to call.

Sincerely,


Jean D'Addario
Commercial Account Executive



EXHIBIT 16

**COMMERCIAL LINES**
**COMMON DECLARATIONS**

NO. LGL012603

PREVIOUS NO: NEW

EFFECTED WITH UNDERWRITERS AT LLOYD'S, LONDON, ENGLAND (NOT INCORPORATED)

IN ACCORDANCE WITH LIMITED AUTHORIZATION GRANTED TO INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. BY CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

UNDER CONTRACT NO. NAC0259/01

(SUCH UNDERWRITERS BEING HEREINAFTER CALLED THE "UNDERWRITERS"), THE UNDERWRITERS DO HEREBY BIND THEMSELVES IN THE PROPORTIONS UNDERWRITTEN BY THEM, EACH FOR HIS OWN PART, AND NOT FOR ANOTHER, THEIR HEIRS, EXECUTORS AND ADMINISTRATORS, IN FAVOR OF:

JENNA'S PUB, INC.
DBA SCUTTLEBUTTS
73 LAFAYETTE ST.
SALEM, MA 01970

| 03/22/01 | 03/22/02 | ONE | INCEPTION AND EXPIRATION |
|---|---|---|---|
| INCEPTION (MO. DAY YR.) | EXPIRATION (MO. DAY YR.) | YEAR | (AT 12:01 AM STANDARD TIME AT LOCATION OF DESCRIBED PROPERTY |

IN CASE OF LOSS, NOTIFY INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. AT ONCE IN WRITING

BUSINESS DESCRIPTION:    TAVERN

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS CERTIFICATE, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED  IN THIS CERTIFICATE.

THIS CERTIFICATE CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

PREMIUM

COMMERCIAL PROPERTY COVERAGE PART                  $_____

COMMERCIAL GENERAL LIABILITY COVERAGE PART         $ 3,000.00*

COMMERCIAL CRIME COVERAGE PART                     $_____

$_____

TOTAL ADVANCE PREMIUM PAYABLE AT INCEPTION    $ 3,000.00*

* MINIMUM AND DEPOSIT

FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS AND MADE A PART OF THIS CERTIFICATE AT TIME OF ISSUE:CERTIFICATE PROVISIONS, IL0017(11/85), LIA-102(5/77), NMA2802(17/12/1997), CL150(11/85)
25% MINIMUM AND FULLY EARNED PREMIUM IN THE EVENT OF CANCELLATION BY THE INSURED.

THIS CERTIFICATE OF INSURANCE IS MADE AND ACCEPTED SUBJECT TO THE FOREGOING STIPULATIONS AND CONDITIONS, AND TO THE CONDITIONS ATTACHED HERETO, WHICH ARE SPECIFICALLY REFERRED TO AND MADE A PART OF THE CERTIFICATE OF INSURANCE, TOGETHER WITH SUCH OTHER PROVISIONS, AGREEMENTS OR CONDITIONS AS MAY BE ENDORSED OR ADDED HERETO.

DATED AT WEST SPRINGFIELD, MA

INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC.

APRIL 12. 2001  SS                    BY: _Brenda Labrie_

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

**Policy No.** LGL012603

**Effective Date:** 03/22/01    **

12:01 A.M., Standard Time

---

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products—Completed Operations) | $ 2,000,000. |
| Products—Completed Operations Aggregate Limit | $ 1,000,000. |
| Personal and Advertising Injury Limit | $ 1,000,000. |
| Each Occurrence Limit | $ 1,000,000. |
| Fire Damage Limit | $ 100,000. Any One Fire |
| Medical Expense Limit | $ 5,000. Any One Person |

---

### RETROACTIVE DATE (CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: _____ NONE
<small>(Enter Date or "None" if no Retroactive Date applies)</small>

---

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:        Corporation

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (Other than Partnership or Joint Venture)

Business Description*:   Tavern

Location of All Premises You Own, Rent or Occupy:

73 Lafayette St., Salem, MA 01970

---

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Restaurants—with sales of alcoholic beverages that are 75% or more of the total annual receipts of the restaurants—with dance floor | 16817 | Sales: $300,000. | INCL. | 10.00 $ | INCL. | $ 3,000.* |
| Additional Insured-per form CG2011(1/96), attached | | | | | | INCL. |

\* Minimum and Deposit

Total Advance Premium $ INCL.    $ 3,000.*

---

### FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

IL0021(11/85), LIA-103(11/94), CG2147 (10/93), CG0001(1/96), CG0212(11/85), CG2407(1/96), CG2011(1/96)

---

*Information omitted if shown elsewhere in the policy.      **Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

CL 150 (Ed. 11-85)   Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc. 1983, 1984

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material," "special nuclear material" or "by-product material."

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    Copyright, Insurance Services Office, Inc., 1984, 1991    IL 00 21 11 85    □

## LIA-103 (11/94)

IF THE WORD "APPLICABLE" IS TYPED ON THE LINE BEFORE A LISTED ENDORSEMENT, SUCH ENDORSEMENT SHALL BE APPLICABLE AND BE PART OF THE POLICY.

APPLICABLE

ASSAULT & BATTERY/NEGLIGENT HIRING EXCLUSION
NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, IT IS UNDERSTOOD AND AGREED THAT THIS POLICY EXCLUDES CLAIMS ARISING OUT OF:
1. ASSAULT & BATTERY, WHETHER CAUSED BY OR AT THE INSTRUCTIONS OF, OR AT THE DIRECTION OF OR NEGLIGENCE OF THE INSURED, HIS EMPLOYEES, PATRONS OR ANY CAUSES WHATSOEVER OR
2. ALLEGATIONS OF NEGLIGENT ACT OR OMISSION BY OR ON BEHALF OF THE INSURED IN CONNECTION WITH HIRING, RETENTION OR CONTROL OF EMPLOYEES, SUPERVISION OR PREVENTION OR SUPPRESSION OF SUCH ASSAULT AND BATTERY.

APPLICABLE

PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION
IT IS UNDERSTOOD AND AGREED THAT THIS INSURANCE DOES NOT APPLY TO LEGAL LIABILITY AWARDED FOR PUNITIVE OR EXEMPLARY DAMAGES BY A COURT OF LAW OR JURY OR AGREED TO IN ADVANCE BY THE INSURED.
IT IS UNDERSTOOD AND AGREED THAT BELOW IS A DEFINITION OF PUNITIVE AND EXEMPLARY DAMAGES:
PUNITIVE DAMAGES: RELATED MISCONDUCT THAT IS INTENTIONAL, MALICIOUS OR WHICH INDICATES SUCH A CONSCIOUS OR AN AGGRAVATED DISREGARD OF OTHERS THAT A JURY COULD CONCLUDE THAT THE CONDUCT TAKES ON A CRIMINAL CHARACTER, WHETHER OR NOT IT IS PUNISHABLE AS AN OFFENSE AGAINST THE STATED.
EXEMPLARY DAMAGES: DAMAGES THAT ARE AWARDED BY A COURT IN EXCESS OF ACTUAL LOSS IN ORDER TO PUNISH.
IT IS UNDERSTOOD AND AGREED THAT THIS IS A DEFINITION OF PUNITIVE AND EXEMPLARY DAMAGES BUT IT IS NOT THE ONLY OR SOLE DEFINITION ACCEPTED BY LEGAL AUTHORITIES.

APPLICABLE

LIQUOR LIABILITY EXCLUSION
IT IS AGREED THAT THIS POLICY SHALL NOT APPLY TO BODILY INJURY OR PROPERTY DAMAGE FOR WHICH THE INSURED OR HIS INDEMNITEE MAY BE HELD LIABLE OR NEGLIGENT (1) AS A PERSON OR ORGANIZATION ENGAGED IN THE BUSINESS OF MANUFACTURING, DISTRIBUTING, SELLING OR SERVING ALCOHOLIC BEVERAGES, OR (2) IF NOT SO ENGAGED, AS AN OWNER OR LESSOR OF PREMISES USED FOR SUCH PURPOSES, BY REASON OF THE SELLING, SERVING OR GIVING OF ANY ALCOHOLIC BEVERAGE:
(A) IN VIOLATION OF ANY STATUTE, ORDINANCE OR REGULATION,
(B) TO A MINOR,
(C) TO A PERSON UNDER THE INFLUENCE OF ALCOHOL, OR
(D) WHICH CAUSES OR CONTRIBUTES TO THE INTOXICATION OF ANY PERSON.
THIS EXCLUSION APPLIES REGARDLESS OF WHETHER THE INSURED OR THE INSURED'S INDEMNITEE IS IN THE BUSINESS OF MAKING A PROFIT FROM THE SELLING OR SERVING OF SUCH ALCOHOLIC BEVERAGE AND THE COMPANY SHALL HAVE NO OBLIGATION TO DEFEND ANY LOSS EXCLUDED UNDER THIS ENDORSEMENT AGAINST THE INSURED SEEKING DAMAGES BY REASON OF SUCH BODILY INJURY OR PROPERTY DAMAGE, EVEN IF ANY OF THE ALLEGATIONS OF THE SUIT ARE GROUNDLESS, FALSE OR FRAUDULENT.

APPLICABLE

LEAD EXCLUSION
IT IS AGREED THAT THIS INSURANCE DOES NOT APPLY TO BODILY INJURY OR PROPERTY DAMAGE WITH RESPECT TO OPERATIONS ARISING FROM MANUFACTURING, SELLING, DISTRIBUTING, STORING OR HANDLING, INSTALLING, REPAIRING, REMOVING, DISPOSING OR OTHER USE OF, EXPOSURE TO, OR CONTACT WITH ANY GOODS, PRODUCTS, MATERIALS OR STRUCTURES THAT CONTAIN LEAD IN ANY FORM.
THIS INSURANCE WILL NOT PAY FOR ANY INVESTIGATION OR DEFENSE OF ANY CLAIM, FINE OR PENALTY OR OTHER SUCH COST THAT IS RELATED TO ANY CLAIM RESULTING FROM THE USE OF, EXPOSURE TO, OR CONTACT WITH LEAD.
THIS EXCLUSION APPLIES REGARDLESS OF WHETHER THE CONTACT WITH LEAD RESULTS FROM INHALING, EATING, DRINKING, PHYSICAL CONTACT OR ANY OTHER MEANS OF CONTAMINATION.

APPLICABLE

ASBESTOS EXCLUSION
IT IS HEREBY UNDERSTOOD AND AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS POLICY FOR BODILY INJURY AND PROPERTY DAMAGE LIABILITY IS SUBJECT TO THE FOLLOWING EXCLUSION:
THIS INSURANCE DOES NOT APPLY TO ANY LIABILITY FOR PROPERTY DAMAGE, BODILY INJURY, SICKNESS, DISEASE, OCCUPATIONAL DISEASE, DISABILITY, SHOCK, DEATH, MENTAL ANGUISH AND MENTAL INJURY AT ANY TIME ARISING OUT OF THE MANUFACTURE OF, MINING OF, USE OF, SALES OF, INSTALLATION OF, DISTRIBUTION OF OR EXPOSURE TO ASBESTOS PRODUCTS, ASBESTOS FIBERS OR ASBESTOS DUST, OR TO ANY OBLIGATION OF THE INSURED TO INDEMNIFY ANY PARTY BECAUSE OF DAMAGES ARISING OUT OF SUCH PROPERTY DAMAGE, BODILY INJURY, SICKNESS, DISEASE, OCCUPATIONAL DISEASE, DISABILITY, SHOCK, DEATH, MENTAL ANGUISH OR MENTAL INJURY AT ANY TIME AS A RESULT OF THE MANUFACTURE OF, MINING OF, USE OF, SALES OF, INSTALLATION OF, DISTRIBUTION OF, OR EXPOSURE TO ASBESTOS PRODUCTS, ASBESTOS FIBERS OR ASBESTOS DUST.
IT IS FURTHER UNDERSTOOD AND AGREED THAT THE COMPANY SHALL NOT BE OBLIGATED TO DEFEND ANY SUIT OR CLAIM AGAINST THE INSURED ALLEGING BODILY INJURY OR PROPERTY DAMAGE AND SEEKING DAMAGES, IF SUCH SUIT OR CLAIM ARISES FROM BODILY INJURY OR PROPERTY DAMAGE RESULTING FROM, OR CONTRIBUTED TO, BY ANY AND ALL MANUFACTURE OF, MINING OF, USE OF, SALES OF, INSTALLATION OF, DISTRIBUTION OF, OR EXPOSURE TO ASBESTOS PRODUCTS, ASBESTOS FIBERS OR ASBESTOS DUST.

APPLICABLE

ABSOLUTE POLLUTION EXCLUSION
IN CONSIDERATION OF THE PREMIUM PAID AND NOTWITHSTANDING ANYTHING CONTAINED IN THIS POLICY TO THE CONTRARY, IT IS AGREED AS FOLLOWS:
1. THE COVERAGE AFFORDED BY THIS POLICY DOES NOT APPLY TO:
A. THE CONTAMINATION OF ANY ENVIRONMENT BY POLLUTANTS THAT ARE INTRODUCED AT ANY TIME, ANYWHERE, IN ANY WAY;
B. ANY BODILY INJURY, PERSONAL INJURY, PROPERTY DAMAGE, COSTS OR OTHER LOSS OR DAMAGE ARISING OUT OF SUCH CONTAMINATION, INCLUDING BUT NOT LIMITED TO, CLEANING UP, REMEDYING OR DETOXIFYING SUCH CONTAMINATION; OR
C. PAYMENT FOR THE INVESTIGATION OR DEFENSE OF ANY LOSS, INJURY OR DAMAGE OR ANY COST, FINE OR PENALTY OR FOR ANY EXPENSE OR CLAIM OR SUIT RELATED TO ANY OF THE ABOVE.
2. AS USED IN THIS ENDORSEMENT, THE FOLLOWING TERMS WILL HAVE THE FOLLOWING MEANINGS:
A. "CONTAMINATION" MEANS ANY UNCLEAN OR UNSAFE OR DAMAGING OR INJURIOUS OR UNHEALTHFUL CONDITION ARISING OUT OF THE PRESENCE OF POLLUTANTS, WHETHER PERMANENT OR TRANSIENT IN ANY ENVIRONMENT.
B. "ENVIRONMENT" INCLUDES ANY PERSON, ANY MANMADE OBJECT OR FEATURE, ANIMALS, CROPS AND VEGETATION, LAND, BODIES OF WATER, UNDERGROUND WATER OR WATER TABLE SUPPLIES, AIR AND ANY OTHER FEATURE OF THE EARTH OR ITS ATMOSPHERE, WHETHER OR NOT ALTERED, DEVELOPED OR CULTIVATED, INCLUDING BUT NOT LIMITED TO, ANY OF THE ABOVE.
C. "POLLUTANTS" MEANS SMOKE, VAPORS, SOOT, FUMES, ACIDS, SOUNDS, ALKALIES, CHEMICALS, LIQUIDS, SOLIDS, GASES, THERMAL POLLUTANTS AND ALL OTHER IRRITANTS OR CONTAMINANTS.

APPLICABLE

CLASSIFICATION LIMITATION ENDORSEMENT
IT IS HEREBY AGREED THAT COVERAGE AS PROVIDED BY THIS POLICY APPLIES ONLY TO THOSE OPERATIONS AS DESCRIBED UNDER THE DESCRIPTION OF HAZARDS SECTION OF THE APPLICABLE COVERAGE PART OR COVERAGE FORM.

APPLICABLE

PARTICIPANTS EXCLUSION
THIS INSURANCE EXCLUDES BODILY INJURY, SICKNESS OR DISEASE INCLUDING DEATH AT ANY TIME RESULTING THEREFROM, SUSTAINED BY ANY PERSON WHILE:
A) PARTICIPATING IN ANY ACTIVITIES ON BEHALF OF THE NAMED INSURED (PAID OR UNPAID)
B) PRACTICING FOR OR PARTICIPATING IN A CONTEST OR EXHIBITION SPONSORED BY THE INSURED.

# LIA-103 (11/94).

IF THE WORD "APPLICABLE" IS TYPED ON THE LINE BEFORE A LISTED ENDORSEMENT, SUCH ENDORSEMENT SHALL BE APPLICABLE AND BE PART OF THE POLICY.

APPLICABLE

**SEXUAL MOLESTATION EXCLUSION**
IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT SUCH COVERAGE AS IS PROVIDED BY THIS POLICY SHALL NOT APPLY TO ANY CLAIM, DEMAND AND/OR CAUSES OF ACTION ARISING OUT OF OR RESULTING FROM EITHER SEXUAL ABUSE OR ANY LICENTIOUS, IMMORAL OR SEXUAL ACT, WHETHER CAUSED BY OR AT THE INSTIGATION OF OR OMISSION BY THE INSURED, HIS EMPLOYEES, PATRONS, OR ANY CAUSE WHATSOEVER.

**PERSONAL INJURY EXCLUSION**
THIS INSURANCE DOES NOT APPLY TO PERSONAL INJURY.   PERSONAL INJURY MEANS INJURY, OTHER THAN BODILY INJURY, ARISING OUT OF ONE OR MORE OF THE FOLLOWING OFFENSES:
A.     FALSE ARREST, DETENTION OR IMPRISONMENT;
B.     MALICIOUS PROSECUTION;
C.     THE WRONGFUL EVICTION FROM, WRONGFUL ENTRY INTO, OR INVASION OF THE RIGHT OF PRIVATE OCCUPANCY OF A ROOM, DWELLING OR PREMISES THAT A PERSON OCCUPIES BY OR ON BEHALF OF ITS OWNER, LANDLORD OR LESSOR;
D.     ORAL OR WRITTEN PUBLICATION OF MATERIAL THAT SLANDERS OR LIBELS A PERSON OR ORGANIZATION OR DISPARAGES A PERSON'S OR ORGANIZATION'S GOODS, PRODUCTS OR SERVICES; OR
E.     ORAL OR WRITTEN PUBLICATION OF MATERIAL THAT VIOLATES A PERSON'S RIGHT OF PRIVACY.

APPLICABLE

**INDEPENDENT CONTRACTORS EXCLUSION ENDORSEMENT**
IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE COVERAGE AFFORDED BY THIS POLICY DOES NOT APPLY TO BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF OPERATIONS PERFORMED FOR THE NAMED INSURED BY INDEPENDENT CONTRACTORS OR ACTS OR OMISSIONS OF THE NAMED INSURED IN CONNECTION WITH HIS GENERAL SUPERVISION OF SUCH OPERATIONS.

**ANIMAL EXCLUSION**
IT IS AGREED THAT THE COVERAGE AFFORDED BY THIS POLICY DOES NOT APPLY TO ANY CLAIM OR ANY SUIT ARISING OUT OF AND/OR CONNECTED WITH AND/OR CAUSED BY AND/OR IS ALLEGED TO HAVE BEEN CAUSED, IN WHOLE OR IN PART, BY AN ANIMAL OWNED BY, LEASED TO OR IN THE CARE, CUSTODY OR CONTROL OF THE NAMED INSURED.

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY IN-JURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employ-ment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, hu-miliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is di-rected.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Sec-tion I - Coverages):

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employ-ment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, hu-miliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "per-sonal injury" to that person at whom any of the employment-related practices de-scribed in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1992

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" occurs during the policy period.

    c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

    This insurance does not apply to:

    a. **Expected or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1994       □

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants,

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it, or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96     □

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

Copyright, Insurance Services Office, Inc., 1994

# SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Copyright, Insurance Services Office, Inc., 1994

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage C;

    b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage A; and

    b. Medical expenses under Coverage C

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

    (2) The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96 ☐

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

 Copyright, Insurance Services Office, Inc., 1994

**5. Premium Audit**

   **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

   By accepting this policy, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   **a.** As if each Named Insured were the only Named Insured; and

   **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

   **a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **b.** Oral or written publication of material that violates a person's right of privacy;

   **c.** Misappropriation of advertising ideas or style of doing business; or

   **d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

   **c.** All parts of the world if:

     **(1)** The injury or damage arises out of:

       **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

Copyright, Insurance Services Office, Inc., 1994

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above, maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   (a) When all of the work called for in your contract has been completed.

   (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   Copyright, Insurance Services Office, Inc., 1994   CG 00 01 01 96   □

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

  **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(1)** You;

   **(2)** Others trading under your name; or

   **(3)** A person or organization whose business or assets you have acquired; and

  **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

  **a.** Work or operations performed by you or on your behalf; and

  **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **b.** The providing of or failure to provide warnings or instructions.

POLICY NUMBER:                                              COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION BY US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART.
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART.

**SCHEDULE**

**Number of Days** _____

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

Paragraph 2. of CANCELLATION (Common Policy Conditions) is replaced by the following:

2. We may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non payment of premium; or

   b. The number of days shown in the Schedule before the effective date of cancellation if we cancel for any other reason.

CG 02 12 11 85           Copyright, Insurance Services Office, Inc., 1984

POLICY NUMBER:  LGL012603

**COMMERCIAL GENERAL LIABILITY**
**CG 24 07 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Premises and Operations:**   Restaurants—with sales of alcoholic beverages that are 75% or more of the total annual receipts of the restaurants—with dance floor

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products - completed operations hazard" in the DEFINITIONS Section is replaced by the following:

    "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

**CG 24 07 01 96**

Copyright, Insurance Services Office, Inc., 1994

**Page 1 of 1**   ☐

POLICY NUMBER:  LGL012603

COMMERCIAL GENERAL LIABILITY
CG 20 11 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

1. Designation of Premises (Part Leased to You):  73 Lafayette St., Salem, MA 01970
2. Name of Person or Organization (Additional Insured):  Salem Lafayette LLC
3. Additional Premium:  INCL.          c/o Steven Faber
                                      1238 Washington St., Canton MA 02021

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

CG 20 11 01 96          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 1    □

# EXHIBIT 13



EXHIBIT

APR 3 0 2001

IF THE INSURANCE CONTRACT OR CONTRACTS PROVIDE MOTOR VEHICLE LIABILITY INSURANCE, PROOF OF FINANCIAL SECURITY IS REQUIRED TO BE MAINTAINED CONTINUOUSLY THROUGHOUT THE REGISTRATION PERIOD AND FAILURE TO MAINTAIN PROOF OF SUCH FINANCIAL SECURITY REQUIRES REVOCATION OF THE REGISTRATION OF THE MOTOR VEHICLE, UNLESS THE REGISTRATION CERTIFICATE AND NUMBER PLATE OF SUCH VEHICLE HAVE BEEN SURRENDERED TO THE COMMISSIONER OF MOTOR VEHICLES PRIOR TO THE TIME AT WHICH CANCELLATION BECOMES EFFECTIVE.

F I L E D  APR 3 0 2001

$792.95

BROKER'S NAME AND ADDRESS
FEDERATED INSURANCE AGENCIES
180 EXCHANGE STREET
P.O. BOX 367
MALDEN, MA          02148

BROKER'S COPY

---

**STANDARD FUNDING CORP.**
P.O. BOX 304, SYOSSET, N.Y. 11791
(516) 364-0200

| DATE OF NOTICE | ACCOUNT NUMBER |
|---|---|
| 4/26/01 | 343095 |

# INSURED'S NOTICE OF CANCELLATION

| | EFFECTIVE DATE OF CANCELLATION | 4/27/01 |
|---|---|---|
| FOR NON-PAYMENT OF PREMIUM INSTALLMENT THAT WAS DUE ON | ↑ | 3/23/01 |
| INSTALLMENT AMOUNT OVERDUE | ↑ | 1,777.25 |
| ACCOUNT BALANCE | ↑ | 7,324.68 |

TO THE INSURED: You are hereby notified, in accordance with the authority given us by you, because of our financing the premiums, that policy / ies listed below, IS / ARE CANCELLED EFFECTIVE 12:00 A.M STANDARD TIME as of date of the cancellation shown above.

**CONTACT YOUR INSURANCE BROKER IMMEDIATELY**
regarding replacement of these CANCELLED POLICIES

NAME AND ADDRESS OF INSURED
SCUTTLEBUTTS
JENNA'S PUB INC.
73 LAFAYETTE STREET
SALEM MA 01970

POLICY NO(S). and/or POLICY RENEWAL NO(S). BEING CANCELLED

LGL012603
GHL013342
WC60291018

I hereby certify I and declare that on the date written, I duly mailed to the named assured, a NOTICE OF CANCELLATION of which this is a true copy, placed in a self mailer, properly addressed and carrying sufficient postage, and depositing same in a mail box of the UNITED STATES GOVERNMENT

CAROL MCWILLIAM

Signed _____

Witness _____

# EXHIBIT 14



POLICY #  *LGL 0.12603*
*G4L01342*
*WC 60291018*    REINSTATEMENT WARRANTY

I/we *Scuttlebutt's Jenna's Park Inc*  the named
insured in the above policy of *Lloyds of London* Insurance Company
warrant that there have been no accidents, damages, or happenings whatso-
ever during the period from 12:01 A.M. (Date) *4/27/01*  to
12:01 A.M. (Date) *6/15/01*  that have resulted or may
result in claims against *Lloyds of London Ins. Co.*  for any
loss and/or expense for which said company would be liable under the
above policy if it is reinstated, except:  (A full and complete descrip-
tion of any exceptions is to be given.)

*NO Losses for that period*

It is understood that the above statement is the consideration for rein-
statement of the above numbered policy as of the date of cancellation if
acceptable to

Signed _____

Address *73-75 LAFAYETTE ST*
*SALEM MA*    Date *6/12/01*
(City)        (State)    (Zip Code)

**OFFICIAL CHECK**

**CITIZENS BANK**
Boston, Massachusetts

6981 38554 - 2

PAY

DOLLARS

***STANDARD FUNDING***

TO THE
ORDER OF

MEMO: APRIL/MAY/JUNE INS. pmts

Jenna's Pub Inc/Scottlebetts
ACCT#343095

Issued By: Integrated Payment Systems Inc.; Englewood, Colorado
KeyBank National Association; Denver, Colorado

Drawer: Citizens Bank of Massachusetts

AUTHORIZED SIGNATURE

⑈220184⑈ ⑆102003918⑆ 680069813 8554⑈

THE VARIABLE TONE BACKGROUND AREA OF THIS DOCUMENT CHANGES COLOR GRADUALLY AND SMOOTHLY FROM DARKER TONES AT BOTH TOP AND BOTTOM TO THE LIGHTEST TONE IN THE MIDDLE.


EXHIBIT 18
Calazzo

# EXHIBIT 15

**CONVERTED, CLOSED**

# United States Bankruptcy Court
## District of Massachusetts (Boston)
### Bankruptcy Petition #: 01-14500

*Assigned to:* Judge William C. Hillman
Chapter 7
Previous chapter 11
Voluntary
Asset

*Date Filed:* 05/31/2001
*Date Converted:* 08/29/2001
*Date Terminated:*
05/16/2005

**Jenna's Pub, Inc.**
73 Lafayette St.
Salem, MA 01970
Tax id: 04-3426339
*Debtor*
*dba*
**Scuttlebutt's**

represented    **Carolyn A. Bankowski**
by Deutsch Williams Brooks DeRensis
& Holland, P.C.
99 Summer Street
Boston, MA 02110-1235
(617) 951-2300
Email: cab@dwboston.com

**Joseph Braunstein**
Reimer and Braunstein
3 Center Plaza
Boston, MA 02108
617-523-9000
*Trustee*

represented    **Riemer & Braunstein**
by Three Center Plaza
Boston, MA 02108
(617) 523-9000

**Christopher M. Condon**
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA 02108
(617) 880-3408
Email: ccondon@riemerlaw.com

| Filing Date | # | Docket Text |
|---|---|---|
| 05/31/2001 | 1 | Voluntary Chapter 11 Petition ( Filing Fee $ 830.00 Rcpt # 467727) missing documents: All Schedules a-h Statement of Financial Affairs Exhibit A 20 Largest Creditors Disclosure of Aty Compensation Due on 4:30 6/15/01 (kpm) (Entered: 05/31/2001) |
| 05/31/2001 | 2 | Order to Update Petition. Incomplete Filing; missing documents: All Schedules a-h Statement of Financial Affairs Disclosure of Aty Compensation Exhibit A 20 Largest Creditors ; Missing Documents Due 4:30 6/15/01 ; Matrix Due 4:30 6/5/01 (kpm) (Entered: 05/31/2001) |

| 06/01/2001 | | First Meeting of Creditors scheduled For 1:45 7/5/01 At 10 Causeway Street, Room 1190 Notice to be mailed within two weeks. (lml) (Entered: 06/01/2001) |
|---|---|---|
| 06/04/2001 | | Matrix. (mjv) (Entered: 06/04/2001) |
| 06/07/2001 | 3 | First Meeting Certificate of Mailing. (auto) (Entered: 06/07/2001) |
| 06/10/2001 | 4 | First Meeting Certificate of Mailing. (auto) (Entered: 06/10/2001) |
| 06/11/2001 | 5 | Motion By Salem Lafayette, LLC For Relief from Automatic Stay, or in the alternative, for determination that the stay is inapplicable (To prceed with a State Court Action) c/s (caf) (Entered: 06/11/2001) |
| 06/11/2001 | 6 | Motion By Salem Lafayette, LLC To Expedite Hearing Re: ([5-1] Motion For Relief from Stay) Affidavit & c/s (caf) (Entered: 06/11/2001) |
| 06/11/2001 | 7 | Notice of Appearance And Request For Service Of Notice By Anthony M. Metaxas for Creditor Salem Lafayette, LLC . (caf) (Entered: 06/11/2001) |
| 06/12/2001 | 8 | ENDORSEMENT ORDER: Grantedg [6-1] Motion To Expedite Hearing Re: ([5-1] Motion For Relief from Stay) Hrg: 6/20/01 at 9:30am (caf) (Entered: 06/12/2001) |
| 06/12/2001 | | Hearing Re: [5-1] Motion For Relief from Automatic Stay; Objections at hearing: 6/20/01 9:30 at Courtroom 3 (caf) (Entered: 06/12/2001) |
| 06/13/2001 | 9 | Debtor's Motion To Employ Curran Coffey, LLP as counsel affidavit & c/s (caf) (Entered: 06/14/2001) |
| 06/15/2001 | 10 | Debtor's Motion To Extend Time To file schedules c/s (caf) (Entered: 06/15/2001) |
| 06/18/2001 | 11 | ENDORSEMENT ORDER: Granting [10-1] Motion To Extend Time To file schedules. Missing Docs due 6/20/01 at 4:30 . (mok) (Entered: 06/18/2001) |
| 06/18/2001 | 12 | Certificate Of Service By Anthony M. Metaxas Of Hrg 6/20/01 at 9:30 am Re:[5-1] Motion For Relief from Automatic Stay, or in the alternative, for determination that the stay is inapplicable by Salem Lafayette, LLC . (mok) (Entered: 06/18/2001) |
| 06/20/2001 | 13 | Debtor's Objection To [5-1] Motion For Relief from Stay c/s (caf) |

|  |  |  |
|---|---|---|
|  |  | (Entered: 06/20/2001) |
| 06/20/2001 |  | Hrg Held on 6/20/01 at 9:30 am Re: [5-1] Motion For Relief from Automatic Stay, or in the alternative, for deter. that the is inapplicable by Salem Lafayette, LLC. (mok) (Entered: 06/20/2001) |
| 06/20/2001 | 14 | ORDER: Granting [5-1] Motion For Relief from Automatic Stay, or in the alternative, for determination that the stay is inapplicable by Salem Lafayette, LLC. #5 Motion granted as motion for relief from stay to proceed to judgment in the sate court . (mok) (Entered: 06/20/2001) |
| 06/20/2001 | 16 | Stop payment checks filed in open court 6/20/01 (caf) (Entered: 06/21/2001) |
| 06/20/2001 | 17 | Schedules A through J (mjt) (Entered: 06/22/2001) |
| 06/20/2001 | 18 | Statement of Financial Affairs. (mjt) (Entered: 06/22/2001) |
| 06/20/2001 | 19 | List of 20 largest creditors filed. (mjt) (Entered: 06/22/2001) |
| 06/20/2001 | 20 | Disclosure of Compensation filed by Attorney Carolyn A. Bankowski for the Debtor in the amount of $ 5,000.00. (mjt) (Entered: 06/22/2001) |
| 06/21/2001 | 15 | Imaged Certificate of Mailing. (auto) (Entered: 06/21/2001) |
| 06/21/2001 | 21 | Debtor's Motion To Amend matrix c/s. (caf) (Entered: 06/22/2001) |
| 06/24/2001 | 22 | Imaged Certificate of Mailing. (auto) (Entered: 06/24/2001) |
| 06/25/2001 | 23 | Notice of Added Creditors by the Court re: Schedules [17-1] (caf) (Entered: 06/25/2001) |
| 06/25/2001 | 24 | Filing Fee Not Paid re: [17-1] Schedules (adding creditors) Fee due on 7/5/01 (caf) (Entered: 06/25/2001) |
| 06/28/2001 | 25 | Courts Certificate of Mailing Re: Added Creditors Notice [23-1] (auto) (Entered: 06/28/2001) |
| 06/29/2001 | 26 | Certificate Of Service By Mark S. Scott for Debtor Jenna's Pub, Inc. Of [23-1] Notice to added creditors. (mok) (Entered: 07/02/2001) |
| 07/03/2001 | 27 | Notice Fee bill paid (Of: $20 Receipt # 469273) re: #17 (caf) (Entered: 07/03/2001) |
|  |  |  |

| 07/03/2001 | 28 | Motion by Debtor Jenna's Pub, Inc. To Clarify [14-1] Order Granting [5-1] Motion For Relief from Stay c/s (caf) (Entered: 07/03/2001) |
|---|---|---|
| 07/05/2001 | 29 | ENDORSEMENT ORDER: Granted [21-1] Motion To Amend matrix (caf) (Entered: 07/05/2001) |
| 07/05/2001 | 30 | Objection By Salem Lafayette, LLC To [28-1] Debtor's Motion To Clarify [14-1] Order re: [5-1] Motion to lift Stay c/s (caf) (Entered: 07/05/2001) |
| 07/09/2001 | 31 | ENDORSEMENT ORDER: Denied pur. to the court order of 6/20/01, the parties are to proceed to judgment in the state court re: [28-1] Motion To Clarify [14-1] Order re: [5-1] Motion For Relief (caf) (Entered: 07/10/2001) |
| 07/10/2001 | 32 | Schedule h & ex. a (caf) (Entered: 07/10/2001) |
| 07/14/2001 | 33 | Imaged Certificate of Mailing. (auto) (Entered: 07/14/2001) |
| 07/24/2001 | 34 | Debtor's Motion To Extend Time Within which to assume or reject pre-petition commercial lease c/s (caf) (Entered: 07/24/2001) |
| 07/24/2001 | 35 | Debtor's Motion For emergency hearing Re: ( [34-1] Motion To extend time within which to assume or reject pre-petition commercial lease. c/s. (caf) (Entered: 07/24/2001) |
| 07/24/2001 | 36 | ORDER: Granted [9-1] Application To Employ Counsel (caf) (Entered: 07/24/2001) |
| 07/24/2001 | 37 | Motion by Salem Lafayette, LLC To Convert Case From Chapter 11 to 7 c/s (caf) (Entered: 07/25/2001) |
| 07/24/2001 | 38 | Motion by Salem Lafayette, LLC To enforce state court order c/s (caf) (Entered: 07/25/2001) |
| 07/26/2001 | | Hearing Re: [34-1] Debtor's Motion To Extend; Objections at hrg: 7/31/01 10am at Courtroom 3 (caf) (Entered: 07/26/2001) |
| 07/26/2001 | 39 | ENDORSEMENT ORDER: Granted as to request for hrg re: [35-1] Debtor's Motion For emergency hr Re: ( [34-1] Motion (caf) (Entered: 07/26/2001) |
| 07/26/2001 | | Hearing Re: [38-1] Motion To enforce state court order by Salem Lafayette, LLC & [37-1] Motion To Convert Case to ch. 7; Objections: 8/24/01 noon; hrg: 8/29/01 9:30am at Courtroom 3 (caf) (Entered: 07/26/2001) |

| 07/26/2001 | 41 | Objection By Salem Lafayette, LLC To [35-1] Debtor's Motion For emergency hearing Re: ( [34-1] Motion c/s (caf) (Entered: 07/27/2001) |
|---|---|---|
| 07/27/2001 | 40 | Imaged Certificate of Mailing. (auto) (Entered: 07/27/2001) |
| 07/27/2001 | | Complaint (01-1339) Jenna's Pub, Inc. vs. Salem Lafayette, LLC . NOS 434 Injunctive Relief . ( Filing Fee $ 150.00 Receipt # 470397) (kpm) (Entered: 07/27/2001) |
| 07/27/2001 | 42 | Debtor's Objection To [37-1] Motion To Convert Case to 7 c/s (caf) (Entered: 07/27/2001) |
| 07/27/2001 | 43 | Debtor's Objection To [38-1] Motion To enforce state court order by Salem Lafayette, LLC c/s (caf) (Entered: 07/27/2001) |
| 07/30/2001 | 44 | Debtor's Motion To Assume Unexpired lease with Salem Lafayette, LLC c/s. (caf) (Entered: 07/31/2001) |
| 07/30/2001 | 45 | Debtor's Certificate Of Service and notice Of 7/31/01 hearings (caf) (Entered: 07/31/2001) |
| 07/30/2001 | 46 | Debtor's Amended [45-1] Notice of hearing (caf) (Entered: 07/31/2001) |
| 07/31/2001 | 47 | ORDER: (hrg held) Re: [34-1] Debtor's Motion To Extend (Continued Generally (caf) (Entered: 08/01/2001) |
| 08/04/2001 | 48 | Imaged Certificate of Mailing. (auto) (Entered: 08/04/2001) |
| 08/08/2001 | 49 | Debtor's Motion To Set Bar Date for filing proofs of Claim c/s (caf) (Entered: 08/08/2001) |
| 08/09/2001 | 50 | ORDER: Granted [49-1] Motion To Set Bar Date Bar date: 9/14/01 (caf) (Entered: 08/09/2001) |
| 08/09/2001 | | Update Deadline On Proof of Claim due on 9/14/01 (caf) (Entered: 08/09/2001) |
| 08/13/2001 | 51 | Imaged Certificate of Mailing. (auto) (Entered: 08/13/2001) |
| 08/13/2001 | 52 | Withdrawal Of Debtor's [44-1] Motion To Assume Unexpired lease with Salem Lafayette, LLC.. c/s.. (mkp) (Entered: 08/13/2001) |
| 08/16/2001 | 53 | Debtor's Certificate Of Service Of [50-1] Order and notice re: deadline for filing proofs of claim (caf) (Entered: 08/16/2001) |

| 08/27/2001 | 54 | Motion of Salem Lafayette, LLC For Leave To File Supplemental Memorandum c/s.. (mkp) (Entered: 08/27/2001) |
|---|---|---|
| 08/27/2001 | 55 | Salem Lafayette's Supplemental Memorandum In Support Of [37-1] Motion To Convert Case From Chapter 11 to 7 And [38-1] Motion To Enforce State Court Order. c/s.. (mkp) (Entered: 08/27/2001) |
| 08/28/2001 | 56 | Debtor's Reply To [54-1] Motion For Leave To File Supplemental Memorandum by Salem Lafayette, LLC, [55-1] Memorandum in support of motion to convert case to chapter 7. c/s (caf) (Entered: 08/29/2001) |
| 08/29/2001 | 57 | ORDER: Granted [37-1] Motion To Convert Case to 7; Movant may proceed in the State Court to exercise its rights there Re: [38-1] Motion To enforce state court order by Salem Lafayette, LLC (Hearing Held) (caf) (Entered: 08/29/2001) |
| 08/29/2001 | 58 | Order to Update Petition. Incomplete Filing; missing documents: Schedules a-h, statement of financial affairs, attorney fee disclosure ; Missing Documents Due 9/13/01 ; Corporate Vote 9/5/01 ; Matrix Due 9/4/01 (caf) (Entered: 08/29/2001) |
| 08/29/2001 | 59 | Filing Fee Not Paid re: [37-1] Motion To Convert Case From Chapter 11 to 7 by Salem Lafayette, LLC Fee due on 9/10/01 (caf) (Entered: 08/29/2001) |
| 08/29/2001 | 60 | Debtor's Emergency Motion To Stay [57-1] Order Granting [37-1] Motion To Convert Case to chapter7 pending appeal c/s. (caf) (Entered: 08/30/2001) |
| 08/29/2001 | 61 | Debtor's Motion For Emergency Hearing Re: ( [60-1] Motion To Stay [57-1] Order Granting [37-1] Motion To Convert Case to chapter7 pending appeal c/s (caf) (Entered: 08/30/2001) |
| 08/30/2001 | | First Meeting of Creditors scheduled For 11:30 10/5/01 At 10 Causeway Street, Room 255-B ;Proofs of Claim due on 4:30 1/3/02 ;Proof of Claim (gov. units only) Deadline: 4:30 2/26/02 Notice to be mailed within two weeks. (nr) (Entered: 08/30/2001) |
| 08/30/2001 | 62 | Certificate of Appointment and Acceptance of Trustee Jonathan Yellin and Fixing of Bond. (nr) (Entered: 08/30/2001) |
| 08/30/2001 | 63 | Notice Of Appeal By Jenna's Pub, Inc. Appellant Designation Due: 9/10/01 ; Compiled Records Due by 9/24/01 Transmission Due: 10/1/01 RE: [57-1] Order Granted [37-1] Motion To Convert Case to chapter 7. c/s (caf) (Entered: 08/30/2001) |

| 08/30/2001 | 64 | Notice of Filing of Appeal to Bankruptcy Appellate Panel Re: [63-1] Notice Appeal by Jenna's Pub, Inc. (caf) (Entered: 08/30/2001) |
|---|---|---|
| 08/30/2001 | 65 | ENDORSEMENT ORDER: Denied [60-1] Debtor's Motion To Stay [57-1] Order Granting [37-1] Motion To Convert Case to chapter7 pending appeal (caf) (Entered: 08/30/2001) |
| 08/30/2001 | 66 | ENDORSEMENT ORDER: Denied [61-1] Motion For Emergency Hearing Re: ( [60-1] Motion To Stay [57-1] Order (caf) (Entered: 08/30/2001) |
| 09/02/2001 | 67 | Imaged Certificate of Mailing. (auto) (Entered: 09/02/2001) |
| 09/06/2001 | 68 | Court's Notice of the First Meeting being sent to the Bankruptcy Noticing Center. (auto) (Entered: 09/06/2001) |
| 09/06/2001 | 69 | Court's Notice of the First Meeting being sent to the Bankruptcy Noticing Center. (auto) (Entered: 09/06/2001) |
| 09/09/2001 | 70 | First Meeting Certificate of Mailing. (auto) (Entered: 09/09/2001) |
| 09/10/2001 | 71 | Debtor's Request for 8/29/01 hearing transcript (caf) (Entered: 09/12/2001) |
| 09/10/2001 | 72 | Appellant Designation By Jenna's Pub, Inc. Of Contents For Inclusion In Record On Appeal [63-1] Notice Appeal by Jenna's Pub, Inc. ; Appellee's Designation Due: 9/20/01 (caf) (Entered: 09/12/2001) |
| 09/10/2001 | 73 | Debtor's Statement of Issues filed by Re: [63-1] Notice Appeal. c/s (caf) (Entered: 09/12/2001) |
| 09/25/2001 | | Disposition of Adversary (01-1339) Dismissing [1-1] (Complaint) by motion of defendant ) (caf) (Entered: 09/25/2001) |
| 10/02/2001 | 74 | Clerk's Certificate of Transmission of Record on Appeal to Bankruptcy Appellate Panel Re: [63-1] Notice Appeal by Jenna's Pub, Inc. (caf) (Entered: 10/02/2001) |
| 10/02/2001 | 75 | Notice of Docketing Record on Appeal RE: [63-1] Notice Appeal by Jenna's Pub, Inc. ( MB01-058) (caf) (Entered: 10/02/2001) |
| 10/05/2001 | | First Meeting Held and Examination of Debtor. (mem) (Entered: 10/26/2001) |
| 10/12/2001 | | Adversary Proceeding Closed. (caf) (Entered: 10/12/2001) |
| | | |

| 10/16/2001 | 76 | Trustee's Motion For Authorization To Reject Non-Residential Real Property Lease (if any) between the Debtor and Salem Lafayette LLC . c/s (chy) (Entered: 10/16/2001) |
|---|---|---|
| 10/16/2001 | 77 | Trustee's Motion For Expedited Determination Re: [76-1] Trustee's Motion For Authorization To Reject Non-Residential Real Property Lease (if any) between the Debtor and Salem Lafayette LLC . c/s (chy) (Entered: 10/16/2001) |
| 10/17/2001 | 78 | Motion By Salem Lafayette, LLC For Relief from Automatic Stay ( To preserve and maintain premises at 73-75 Lafayette St., Salem MA ) c/s (caf) (Entered: 10/17/2001) |
| 10/17/2001 | 79 | Trustee's Application To Employ Jonathan D. Yellin and the law firm of Riemer & Braunstein as counsel Affidavit & c/s. (caf) (Entered: 10/18/2001) |
| 10/18/2001 | 80 | Motion By Trustee Jonathan Yellin For Authority To Conduct Private Sale Of Restauarant Property - Certain restaurant equipment and personal property (excluding the liquor license and beer, wine or liquor) located at the Debtor's business premises of 73-75 Lafayette Street in Salem, MA . c/s. (jmd) (Entered: 10/19/2001) |
| 10/23/2001 | 81 | ENDORSEMENT ORDER: Denying [77-1] Motion For Expedited Determination Re: [76-1] Trustee's Motion For Authorization To Reject Non-Residential Real Property Lease (if any) between the Debtor and Salem Lafayette LLC by Jonathan Yellin - Denied as unnecessary . (jmd) (Entered: 10/23/2001) |
| 10/23/2001 | 82 | ENDORSEMENT ORDER: Granting [76-1] Motion For Authorization To Reject Non-Residential Real Property Lease (if any) . (jmd) (Entered: 10/23/2001) |
| 10/23/2001 |  | Hearing Re: [80-1] Motion For Authority To Conduct Private Sale Of Restauarant Property - Certain restaurant equipment and personal property (excluding the liquor license and beer, wine or liquor) located at the Debtor's business premises of 73-75 Lafayette Street in Salem, MA by Jonathan Yellin scheduled For 9:30 11/28/01 at Courtroom 3, Objections to Motion Due On: 4:00 11/21/01 (jmd) (Entered: 10/23/2001) |
| 10/23/2001 | 83 | Notice of Intended Private Sale To Salem Lafayette LLC of Restaurant equipment, chairs, tables and other personal property for the price of $5,000.00 filed by Trustee Jonathan Yellin. Hearing Set for 11/28/01 at 9:30 in Courtroom #3 ; Obj/Responses Due 11/21/01 at 4:00 p.m. ; Counteroffer/Bids Due 11/21/01 at 4:00 p.m. (jmd) (Entered: 10/23/2001) |

| 10/24/2001 | 84 | First Amended Affidavit of Jonathan D. Yellin Pursuant to Bankruptcy Rule 2014(A) and Local Rule 2014-1 In Support of Trustee's [79-1] Application To Employ Counsel (mkp) (Entered: 10/25/2001) |
|---|---|---|
| 10/24/2001 | 85 | Certificate Of Service By Jonathan D. Yellin Of [84-1] First Amended Affidavit. (mkp) (Entered: 10/25/2001) |
| 10/26/2001 | 86 | Imaged Certificate of Mailing. (auto) (Entered: 10/26/2001) |
| 10/26/2001 | 87 | Imaged Certificate of Mailing. (auto) (Entered: 10/26/2001) |
| 10/29/2001 | 89 | Trustee's Certificate Of Service Of 11/28/01 hearing re: Notice and [80-1] Motion For Authority To Conduct Private Sale (caf) (Entered: 10/30/2001) |
| 10/29/2001 | 90 | Bid and Counter Offer by Stephen D. Caizzzo re: [80-1] Motion For Authority To Conduct Private Sale (caf) (Entered: 10/30/2001) |
| 10/30/2001 | 88 | ORDER: Granting [79-1] Application To Employ Jonathan D. Yellin as counsel to trustee (caf) (Entered: 10/30/2001) |
| 11/02/2001 | 91 | Imaged Certificate of Mailing. (auto) (Entered: 11/02/2001) |
| 11/02/2001 | 92 | Exhibit A Re: Notice of Sale By Trustee Jonathan Yellin. c/s. (mok) (Entered: 11/06/2001) |
| 11/05/2001 | 93 | ORDER: Granting [78-1] Motion For Relief from Automatic Stay re: 73-75 Lafayette St., Salem MA (caf) (Entered: 11/06/2001) |
| 11/09/2001 | 94 | Imaged Certificate of Mailing. (auto) (Entered: 11/09/2001) |
| 11/13/2001 | 95 | Motion By Thomas H. Curran for Debtor Jenna's Pub, Inc. To Withdraw As Attorney of Record c/s. (caf) (Entered: 11/13/2001) |
| 11/13/2001 | 97 | Trustee's Notice Of Intent To Abandon Property located at 73 Lafayette St., Salem MA. c/s (caf) (Entered: 11/14/2001) |
| 11/14/2001 | 96 | Supplemental Certificate Of Service By Carolyn A. Bankowski for Debtor Re: [95-1] Motion To Withdraw As Attorney of Record (caf) (Entered: 11/14/2001) |
| 11/14/2001 | 98 | Motion By Standard Funding Corporation For Relief from Automatic Stay or in the alternative adequate protection ( Regarding Insurance Policies ) Affidavit & C/S (caf) (Entered: 11/14/2001) |

| 11/14/2001 | 99 | Filing Fee Not Paid re: [98-1] Motion For Relief from Stay by Standard Funding Corp.; Fee due: 11/26/01 (caf) (Entered: 11/14/2001) |
|---|---|---|
| 11/19/2001 | 101 | Trustee's Objection To [95-1] Motion To Withdraw As Attorney of Record by Thomas H. Curran . c/s (caf) (Entered: 11/20/2001) |
| 11/20/2001 | 100 | Objection By Seaboard Products Co. To Notice re: [80-1] Motion To Conduct Private Sale c/s (caf) (Entered: 11/20/2001) |
| 11/20/2001 | 102 | Trustee's Notice Of Intent To Abandon All Beer and Other Alcohol Products Located at 73 LaFayette St., Salem MA. c/s (caf) (Entered: 11/21/2001) |
| 11/26/2001 | | Hearing Re: [95-1] Motion To Withdraw As Attorney of Record by Thomas H. Curran of Deutsch Williams Brooks DeRensis & Holland; Objections: 12/6/01 noon; hearing: 12/12/01 9:30am at Courtroom 3 (caf) (Entered: 11/26/2001) |
| 11/28/2001 | 103 | ORDER: Approved [80-1] Trustee's Motion For Authority To Conduct Private Sale Of Restauarant Property (Sale approved to Caiazzo for $4,500.00) Trustee may abandon neon signs (Hearing Held). (caf) (Entered: 11/28/2001) |
| 11/28/2001 | 104 | Motion By Trustee Jonathan Yellin To Sell 7 Day all Alcoholic Beverages License and, To Shorten Notice of Objection deadline and counteroffers and to Schedule hearing (Expedited Determination requested) (mok) (Entered: 11/28/2001) |
| 12/01/2001 | 105 | Imaged Certificate of Mailing. (auto) (Entered: 12/01/2001) |
| 12/03/2001 | | Hearing Re: [104-1] Motion To Sell 7 Day all Alcoholic Beverages License by Jonathan Yellin scheduled For 9:30 12/19/01 at Courtroom 3, Objections to Motion Due On: 12:00 12/18/01 (jmd) (Entered: 12/03/2001) |
| 12/03/2001 | 106 | Notice of Intended Private Sale To Mr. John Mahoney of Seven Day All Alcoholic Beverages Common Victualer License For the price of $35,000 filed by Trustee Jonathan Yellin Hearing Set for 12/19/01 9:30 a.m. in Courtroom #3 Obj/Responses Due 12/18/01 at Noon; Counteroffer/Bids Due 12/18/01 at Noon (jmd) (Entered: 12/03/2001) |
| 12/03/2001 | 107 | Filing Fee of $75 Paid Re: #98 Motion for relief. Receipt # 475624 (caf) (Entered: 12/04/2001) |
| 12/03/2001 | 108 | Trustee's Amended [106-1] Notice of Sale of Seven Day All Alcoholic Beverages Common Victualer License c/s (caf) (Entered: |

|  |  | 12/04/2001 |
|---|---|---|
| 12/05/2001 | <u>109</u> | ORDER: Providing [98-1] Motion For adequate protection ( Re: Insurance Policies ) by Standard Funding Corporation . (caf) (Entered: 12/05/2001) |
| 12/08/2001 | <u>110</u> | Imaged Certificate of Mailing. (auto) (Entered: 12/08/2001) |
| 12/10/2001 | <u>111</u> | U.S. Bankruptcy Appelate Panel for the First Circuit; Order: Pursuant to the agreement for voluntary dismissal of appeal (doc# 63) filed with this panel on 10/16/01, the above referenced appeal is hereby Dismissed. Dated: 10/22/01 (caf) (Entered: 12/10/2001) |
| 12/12/2001 |  | Hearing Held Re: [95-1] Motion To Withdraw As Attorney of Record by Thomas H. Curran . (caf) (Entered: 12/13/2001) |
| 12/12/2001 | <u>112</u> | ORDER: Granting [95-1] Motion To Withdraw As Attorney of Record by Thomas H. Curran; No appearance of trustee (caf) (Entered: 12/13/2001) |
| 12/12/2001 | <u>113</u> | Trustee's Motion To Clarify [109-1] Order Providing [98-1] Motion For adequate protection ( Re: Insurance Policies ) by Standard Funding Corporation c/s (caf) (Entered: 12/13/2001) |
| 12/16/2001 | <u>114</u> | Imaged Certificate of Mailing. (auto) (Entered: 12/16/2001) |
| 12/18/2001 | <u>115</u> | ORDER: Granting [104-1] Trustee's Motion To Sell Granting [104-2] Trustee's Motion To Shorten Notice of Objection deadline and counteroffers; No response by any party in interest Hearing of 12/19/01 off (caf) (Entered: 12/18/2001) |
| 12/18/2001 | <u>116</u> | Bid and Counter Offer of $35,000 by Julio C. Sanabia [104-1] Trustee's Motion To Sell 7 Day all Alcoholic Beverages License (caf) (Entered: 12/18/2001) |
| 12/18/2001 | <u>118</u> | Trustee's Motion To Reconsider Order Granting [95-1] Motion To Withdraw As Attorney of Record c/s. (caf) (Entered: 12/21/2001) |
| 12/21/2001 | <u>117</u> | Imaged Certificate of Mailing. (auto) (Entered: 12/21/2001) |
| 12/21/2001 |  | Hearing Re: [118-1] Trustee's Motion To Reconsider Order Granting [95-1] Motion To Withdraw As Attorney of Record; Objections: 1/7/02 noon; hearing: 1/9/02 9:30am at Courtroom 3 (caf) (Entered: 12/21/2001) |
| 12/28/2001 | <u>119</u> | Trustee's Certificate Of Service Of 1/9/02 Hearing re: [118-1] |

| | | Trustee's Motion To Reconsider Order Granting [95-1] Motion To Withdraw As Attorney of Record (caf) (Entered: 01/02/2002) |
|---|---|---|
| 01/02/2002 | 121 | ENDORSEMENT ORDER: Granting Trustee's [113-1] Motion To Clarify [109-1] Order dated 12/5/01 Providing Adequate Protection To A Secured Creditor. "Granted. See Order Dated 12/2/02" (mkp) (Entered: 01/03/2002) |
| 01/02/2002 | 122 | ORDER: The Court's [109-1] Order Of December 12/5/01 is hereby VACATED. Movant is GRANTED Relief From Stay. (mkp) (Entered: 01/03/2002) |
| 01/03/2002 | 120 | Deutsch Williams Brooks Derensis & Holland, P.C.'s Response To Trustee's [118-1] Motion To Reconsider Order Granting [95-1] Motion To Withdraw As Attorney of Record. c/s.. (mkp) (Entered: 01/03/2002) |
| 01/06/2002 | 123 | Imaged Certificate of Mailing. (auto) (Entered: 01/06/2002) |
| 01/08/2002 | 124 | ORDER: Denied re: [118-1] Motion To Reconsider Order Granting [95-1] Motion To Withdraw As Attorney of Record by Yellin (See response #120) Hearing of 1/9/02 off. (caf) (Entered: 01/08/2002) |
| 01/11/2002 | 125 | Imaged Certificate of Mailing. (auto) (Entered: 01/11/2002) |
| 02/01/2002 | 126 | Application By Trustee To Employ Craig R. Jalbert, Accountant Affidavit & c/s. (caf) (Entered: 02/04/2002) |
| 02/07/2002 | 127 | ORDER: Granting [126-1] Application To Employ Craig R. Jalbert, Accountant . (caf) (Entered: 02/07/2002) |
| 02/10/2002 | 128 | Imaged Certificate of Mailing. (auto) (Entered: 02/10/2002) |
| 07/23/2002 | 129 | Request by Trustee for claims register (caf) (Entered: 07/24/2002) |
| 08/08/2002 | 130 | Court's Notice To Trustee Jonathan Yellin re: [129-1] Claims Register Request (caf) (Entered: 08/08/2002) |
| 08/12/2002 | 131 | Imaged Certificate of Mailing. (auto) (Entered: 08/12/2002) |
| 12/04/2002 | 132 | Application By Accountant Craig Jalbert For Compensation (caf) (Entered: 12/05/2002) |
| 12/04/2002 | 133 | Certificate Of Service By Jonathan D. Yellin for Trustee Of [132-1] Application For Compensation by Craig Jalbert . (caf) (Entered: 12/05/2002) |

| | | |
|---|---|---|
| 12/23/2002 | 134 | Application By Jonathan D. Yellin and Reimer and Braunstein Counsel to Trustee For Interim Compensation c/s. (caf) CORRECTIVE ENTRY: Text Modified to Reflect Correct Filer. Modified on 9/8/2003 (mem, ). (Entered: 12/24/2002) |
| 01/16/2003 | 135 | ORDER: Granting [134-1] Application For Interim Compensation by Jonathan D. Yellin and Reimer and Braunstein Counsel to the Trustee payment to Jonathan D. Yellin and Reimer and Braunstein of $14005.30 in fees and $581.82 in expenses . (caf). CORRECTIVE ENTRY: Text Modified to Correct filer. Modified on 9/8/2003 (mem, ). (Entered: 01/21/2003) |
| 01/24/2003 | 136 | Imaged Certificate of Mailing. (auto) (Entered: 01/24/2003) |
| 01/24/2003 | 137 | Imaged Certificate of Mailing. (auto) (Entered: 01/24/2003) |
| 02/12/2003 | 138 | Trustee's Objection To Claim of United Liquors, Claim Numbers 1, 5 and 7: Seaboard Products, claim number 7: Standard Funding Corp., Claim Number 8 c/s (caf) (Entered: 02/13/2003) |
| 02/14/2003 | | Hearing Re: [138-1] Trustee's Objection To Claims ; Objections Due: 12:00 3/24/03 ; hearing scheduled For 9:30am on 3/26/03 at Courtroom 3, (caf) (Entered: 02/14/2003) |
| 02/19/2003 | 139 | Certificate Of Service By Jonathan D. Yellin for Trustee Jonathan Yellin Trustee Jonathan Yellin Of [0-0] Hearing Re:[138-1] Trustee's Objection To Claims Hearing scheduled For 9:30am on 3/26/03 at Courtroom 3 (mjt) (Entered: 02/20/2003) |
| 03/25/2003 | | Hearing Held Re: [138-1] Claims Objection To Claim of United Liquors, Claim Numbers 1, 5 and 7: Seaboard Products, claim number 7: Standard Funding Corp., Claim Number 8 by Jonathan Yellin . (mlm) (Entered: 03/26/2003) |
| 03/25/2003 | 140 | ORDER: Regarding [138-1] Claims Objection To Claim of United Liquors, Claim Numbers 1, 5 and 7: Seaboard Products, claim number 7: Standard Funding Corp., Claim Number 8 by Jonathan Yellin . SUSTAINED. NO RESPONSES BY ANY CREDITOR. (mlm) (Entered: 03/26/2003) |
| 03/29/2003 | 141 | Imaged Certificate of Mailing. (auto) (Entered: 03/29/2003) |
| 06/12/2003 | 142 | Objection to Claim Of Salem Lafayette, LLC Filed by Trustee Jonathan Yellin. c/s (caf, ) (Entered: 06/13/2003) |
| 06/17/2003 | 143 | Hearing Scheduled for 7/9/2003 at 09:30 AM Boston Courtroom 3 - WCH RE: 142 Objection to Claim filed by Trustee Jonathan Yellin. |

| | | |
|---|---|---|
| | | Objections due by 7/7/2003 at 12:00 PM. (caf, ) (Entered: 06/17/2003) |
| 06/17/2003 | 144 | Withdrawal of Claim Filed by Interested Party Massachusetts Department of Revenue. Unsecured Priority in the amount of $15556.50 and Unsecured General in the amount of $2158.69. (caf, ) (Entered: 06/18/2003) |
| 06/17/2003 | 145 | Notice of Appearance and Request for Notice Filed by Interested Party Massachusetts Department of Revenue (caf, ) (Entered: 06/18/2003) |
| 06/17/2003 | 146 | Withdrawal of Claim Filed by Interested Party The Commonwealth of Massachusetts (DOR) Administrative in the amount of $3,258.73 (caf, ) (Entered: 06/18/2003) |
| 06/19/2003 | 147 | Certificate of Service Of Hearing Re: 142 Objection to Claim Filed by Trustee Jonathan Yellin (caf, ) (Entered: 06/20/2003) |
| 07/08/2003 | 148 | Order RE: 142 Objection to Claim filed by Trustee Jonathan Yellin. Sustained. No response by claimant. Hearing off (caf, ) (Entered: 07/08/2003) |
| 07/08/2003 | | Hearing off RE: 142 Objection to Claim filed by Trustee Jonathan Yellin (caf, ) (Entered: 07/08/2003) |
| 07/10/2003 | 149 | BNC Certificate of Mailing - PDF Document. Service Date 07/10/2003. (Related Doc # 148) (Admin.) (Entered: 07/11/2003) |
| 02/12/2004 | 150 | Resignation Report of Trustee and Report of Prior Administration; Order Approving Trustee's Report. With Certificate of Review. (caf, ) (Entered: 02/12/2004) |
| 02/12/2004 | 152 | Notice of Appointment of Successor Trustee . Jonathan Yellin removed from the case. (caf, ) (Entered: 02/17/2004) |
| 02/17/2004 | 151 | Order Dated 2/17/2004 Approving 150 Resignation Report of Trustee and Report of Prior Administration. Filed by Trustee Jonathan Yellin. (caf, ) (Entered: 02/17/2004) |
| 02/19/2004 | 153 | BNC Certificate of Mailing - PDF Document. Service Date 02/19/2004. (Related Doc # 151) (Admin.) (Entered: 02/20/2004) |
| 03/15/2004 | 154 | Withdrawal of Proof Of Claim Filed by Interested Party The Commonwealth of Massachusetts Division of Unemployment Assistance in the amount of $1212.27 (caf, ) (Entered: 03/16/2004) |

| 03/24/2004 | [155](#) | Objection to Claim *of Commonwealth of Massachusetts Department of Revenue* Filed by Trustee Joseph Braunstein. (Braunstein, Joseph) (Entered: 03/24/2004) |
| --- | --- | --- |
| 03/24/2004 | [156](#) | Certificate of Service (Re: [155](#) Objection to Claim). Filed by Trustee Joseph Braunstein (Braunstein, Joseph) (Entered: 03/24/2004) |
| 03/25/2004 | [157](#) | Hearing Scheduled for 4/21/2004 at 09:30 AM Boston Courtroom 3 - WCH RE: [155](#) Objection to Proof Of Claim Number 10 Of Commonwealth of Massachusetts Department of Revenue filed by Trustee Joseph Braunstein. Responses due by 4/19/2004 at 12:00 PM. (caf, ) (Entered: 03/25/2004) |
| 03/25/2004 | [158](#) | Court Certificate of Mailing. RE: [157](#) Hearing Scheduled for 4/21/2004 at 09:30 AM Boston Courtroom 3 - WCH RE: [155](#) Objection to Proof Of Claim Number 10 Of Commonwealth of Massachusetts Department of Revenue filed by Trustee Joseph Braunstein. Responses due by 4/19/2004 at 12:00 PM. (caf, ) (Entered: 03/25/2004) |
| 03/26/2004 | [159](#) | Certificate of Service of Notice of Hearing (Re: [155](#) Objection to Claim). Filed by Trustee Joseph Braunstein (Attachments: # [1](#) Notice of Hearing) (Braunstein, Joseph) (Entered: 03/26/2004) |
| 04/19/2004 | [160](#) | Opposition by Creditor Stephen Caiazzo Re: [155](#) Objection to Proof Of Claim Number 10 Of Commonwealth of Massachusetts Department of Revenue filed by Trustee Joseph Braunstein. c/s (caf, ) (Entered: 04/20/2004) |
| 04/19/2004 | [161](#) | Notice of Appearance and Request for Notice by Jordan L. Shapiro for Creditor Stephen Caiazzo (caf, ) (Entered: 04/20/2004) |
| 04/20/2004 | | Hearing Not Held re: [155](#) Trustee's objection to claim (caf, ) (Entered: 04/20/2004) |
| 04/20/2004 | [162](#) | Order dated 4/20/2004 Re: [155](#) Trustee's Objection to Proof Of Claim #10 Of Mass. Dept. Of Revenue. Sustained. No response by Mass. Dept. of Revenue. (caf, ) (Entered: 04/20/2004) |
| 04/22/2004 | [163](#) | BNC Certificate of Mailing - PDF Document. Service Date 04/22/2004. (Related Doc # [162](#)) (Admin.) (Entered: 04/24/2004) |
| 05/07/2004 | [164](#) | Objection to Claim *of Steven Caiazzo* Filed by Trustee Joseph Braunstein. (Braunstein, Joseph) (Entered: 05/07/2004) |
| 05/07/2004 | [165](#) | Certificate of Service (Re: [164](#) Objection to Claim). Filed by Trustee Joseph Braunstein (Braunstein, Joseph) (Entered: 05/07/2004) |

| 05/10/2004 | 166 | Hearing Scheduled for 6/9/2004 at 09:30 AM Boston Courtroom 3 - WCH RE: 164 Objection to Claim filed by Trustee Joseph Braunstein (caf, ) (Entered: 05/10/2004) |
|---|---|---|
| 05/10/2004 | 167 | Court Certificate of Mailing. RE: 166 Hearing Scheduled for 6/9/2004 at 09:30 AM Boston Courtroom 3 - WCH RE: 164 Objection to Claim filed by Trustee Joseph Braunstein.Hea (caf, ) (Entered: 05/10/2004) |
| 05/10/2004 | 168 | Withdrawal of Claim(s): Filed 11/30/2001 for $502.78. Filed by Interested Party Commonwealth of Mass. Dept of Employment (caf, ) (Entered: 05/11/2004) |
| 05/11/2004 | 169 | Certificate of Service of Notice of Hearing (Re: 164 Objection to Claim). Filed by Trustee Joseph Braunstein (Attachments: # 1 Notice of Nonevidentiary Hearing) (Braunstein, Joseph) (Entered: 05/11/2004) |
| 05/25/2004 | 170 | Application for Compensation for Carolyn A. Bankowski, Debtor's Attorney, Period: 5/31/2001 to 8/29/2001, Fee: $24,577.00, Expenses: $911.95. Filed by Attorney Carolyn A. Bankowski (Attachments: # 1 EXHIBITS A-D) (Bankowski, Carolyn) (Entered: 05/25/2004) |
| 06/01/2004 | 171 | Opposition by Creditor Stephen Caiazzo Re: 164 Objection to Claim of Steven Caiazzo Filed by Trustee Joseph Braunstein. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc. c/s (caf, ) (Entered: 06/01/2004) |
| 06/07/2004 | 172 | Hearing Scheduled for 6/9/2004 at 09:30 AM Boston Courtroom 3 - WCH for 171 Opposition by Creditor Stephen Caiazzo Re: 164 Objection to Claim of Steven Caiazzo Filed by Trustee Joseph Braunstein. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc. (js, USBC) (Entered: 06/07/2004) |
| 06/08/2004 | 173 | Certificate of Service Filed by Creditor Stephen Caiazzo Re: 172Hearing Scheduled for 6/9/2004 at 9:30 AM Boston Courtroom 3 - WCH for 171 Opposition by Creditor Stephen Caiazzo Re: 164 Objection to Claim of Steven Caiazzo Filed by Trustee Joseph Braunstein. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc (mjt, usbc) (Entered: 06/08/2004) |
| 06/08/2004 | 174 | Supplemental 171Objection to Claim *of Steven Caiazzo and Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc* Filed by Trustee Joseph Braunstein. (Condon, Christopher) (Entered: 06/08/2004) |
| 06/08/2004 | 175 | Certificate of Service (Re: 174 Objection to Claim). Filed by Trustee |

| | | |
|---|---|---|
| | | Joseph Braunstein (Condon, Christopher) (Entered: 06/08/2004) |
| 06/08/2004 | | Hearing Held RE: 164 Objection by Trustee Joseph Braunstein to Claim of Steven Caiazzo. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc and 171 Opposition by Creditor Stephen Caiazzo Re: 164 Objection to Claim of Steven Caiazzo. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc. (js, USBC) (Entered: 06/08/2004) |
| 06/08/2004 | 176 | Order dated 6/8/2004 RE: 164 Objection by Trustee Joseph Braunstein to Claim of Steven Caiazzo. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc and 171 Opposition by Creditor Stephen Caiazzo Re: 164 Objection to Claim of Steven Caiazzo. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc. #171 CLAIM OF STEPHEN CAIZZO PERMITTED TO BE FILED AS A LATE FILED GENERAL CLAIM. SEE 1 U.S.C. SEC. 507 (D). (js, USBC) (Entered: 06/08/2004) |
| 06/09/2004 | 177 | BNC Certificate of Mailing - Hearing. Service Date 06/09/2004. (Related Doc # 172) (Admin.) (Entered: 06/10/2004) |
| 06/09/2004 | 179 | Certificate of Service of Notice of Hearing Re: 171 Opposition by Creditor Stephen Caiazzo Re: 164 Objection to Claim of Steven Caiazzo Filed by Trustee Joseph Braunstein. And Motion for Approval of Late Filing of Proof of Claim Nunc Pro Tunc. (caf, ) (Entered: 06/21/2004) |
| 06/10/2004 | 178 | BNC Certificate of Mailing - PDF Document. Service Date 06/10/2004. (Related Doc # 176) (Admin.) (Entered: 06/11/2004) |
| 01/04/2005 | 180 | Trustee's Final Report and Account Before Distribution, Request for Compensation and Report on Claims/Proposed Distribution With Certificate of Review. (caf, ) (Entered: 01/05/2005) |
| 01/04/2005 | 181 | Final Application for Compensation for Joseph Braunstein, Trustee Chapter 7, , For Fees of $1100.00, Expenses: $252.06. filed by Trustee Joseph Braunstein (caf, ) (Entered: 01/05/2005) |
| 01/04/2005 | 182 | Final Application for Compensation for Riemer & Braunstein, Trustee's Attorney, For Fee: $14005.30, Expenses: $20.40. filed by Attorney Riemer & Braunstein (caf, ) (Entered: 01/05/2005) |
| 01/04/2005 | 183 | Final Application for Compensation for Carolyn A. Bankowski, Debtor's Attorney, For Fee: $19577.00, Expenses: $81.95. filed by Attorney Carolyn A. Bankowski (caf, ) (Entered: 01/05/2005) |
| 01/04/2005 | 184 | Application for Compensation for Craig Jalbert, Accountant, For Fee: |

| | | $1075.50, Expenses: $57.07. filed by Accountant Craig Jalbert (caf, ) (Entered: 01/05/2005) |
|---|---|---|
| 01/05/2005 | 185 | Final Hearing scheduled 2/16/2005 at 09:30 AM at Boston Courtroom 3 - WCH. RE: 180 Trustee's Final Report and Account Before Distribution, Request for Compensation and Report on Claims/Proposed Distribution. Objections due by 2/14/2005 at 12:00 PM. (caf, ) (Entered: 01/05/2005) |
| 01/07/2005 | 186 | BNC Certificate of Mailing. RE: 185 Final Hearing Set, Service Date 01/07/2005. (Admin.) (Entered: 01/08/2005) |
| 02/15/2005 | 187 | Order dated 2/15/2005 Approving 180 Trustee's Final Report and Account Before Distribution, Request for Compensation and Report on Claims/Proposed Distribution. (caf, ) (Entered: 02/15/2005) |
| 02/17/2005 | 188 | BNC Certificate of Mailing - PDF Document. RE: 187 Order Service Date 02/17/2005. (Admin.) (Entered: 02/18/2005) |
| 05/13/2005 | 189 | Trustee's Final Report and Account After Distribution and Request for Discharge with UST Certificate of Review filed by US Trustee on behalf of Joseph Braunstein. (caf, ) (Entered: 05/13/2005) |
| 05/16/2005 | 190 | Order dated 5/16/2005 Approving Final Report and Account After Distribution and Discharging Trustee and Closing Case (Case Closed). (caf, ) (Entered: 05/16/2005) |
| 05/18/2005 | 191 | BNC Certificate of Mailing - PDF Document. RE: 190 Order to Close Case (7 Asset) Service Date 05/18/2005. (Admin.) (Entered: 05/19/2005) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/01/2006 09:29:11 | | | |
| **PACER Login:** | mp0366 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 01-14500 Fil or Ent: Fil Doc From: 0 Doc To: 99999999 Links: n Format: HTMLfmt |
| **Billable Pages:** | 9 | **Cost:** | 0.72 |

# **EXHIBIT 16**

In re   **Jenna's Pub, Inc.**
04-3426339

Case No.   **01-14500-WCH**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | | **Claims against landlord for breach of lease, interference with business operations, etc.** | | unknown |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and non-contingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | | **Liquor license** | | 60,000.00 |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles. | X | | | |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | | **Office equipment, fax machine, desks, etc.** | | 300.00 |

Schedule B Page 2 of 3

In re   **Jenna's Pub, Inc.**
        04-3426339

Case No.    **01-14500-WCH**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 27. Machinery, fixtures, equipment and supplies used in business. | | **tables, chairs, cash registers, fixtures and cooking equipment** | | 3,500.00 |
| 28. Inventory. | | **Food and alcohol** | | 3,000.00 |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. Itemize. | X | | | |

Total  >    $ 72,300.00

Schedule B Page 3 of 3

In re    **Jenna's Pub, Inc.**
        **04-3426339**

Case No.    **01-14500-WCH**

# SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand | | Debtors cash | | |
| | | | | 3,000.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Checking account at Citizens Bank (credit card) | | |
| | | | | 900.00 |
| | | Checking account at Citizens Bank (operating) | | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | | Security deposit with Boston Gas | | 300.00 |
| | | | | 700.00 |
| | | Security deposit with Verizon | | |
| | | Sercuity deposit with Mass Electric | | 300.00 |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | 300.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |

Schedule B Page 1 of 3

In re:  Jenna's Pub, Inc.
04-3426339

Case No. 01-14500-WCH

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

(NOT APPLICABLE)

### DECLARATION UNDER PENALTY OF PERJURY
### ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation/partnership named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 13 sheets plus the summary page, and that they are true and correct to the best of my knowledge, information, and belief.

Date  6-18-01

Signature 

Stephen D. Calezzo
President

FILED
BANKRUPTCY OFFICE
2001 JUN 20 P 4: 21
U.S. BANKRUPTCY COURT
DISTRICT OF MASS.

Penalty for making a false statement or concealing property. Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C §§ 152 and 3571.

# EXHIBIT 17

# LAW OFFICES OF DEAN CARNAHAN

## 126 BROADWAY, ARLINGTON, MA 02474
## TELEPHONE (781) 641-2825

EXHIBIT 3
Caiazzo
5/6/05 zc

## FAX COVER SHEET

DATE: 5/3/05

TO: Kerry Florio, Esq

FAX NUMBER: (617) 523-8130

FROM: Dean Carnahan, Esq.

NUMBER OF PAGES (including this page): Two (2)

RE: Caiazzo v. Medallion Ins.

---

I reviewed your document request.
All of the documents that are
responsive to your requests are in
the Initial Disclosure Documents I
sent to you on 3/11/05, except
the attached document (Sportsworld
appraisal of P's property).

THIS MESSAGE IS ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN CONFIDENTIAL AND PRIVILEGED
INFORMATION. Any dissemination, use or copying of this communication other than by the intended recipient is strictly prohibited.
If you receive this communication in error, please notify me immediately by telephone and destroy all copies of this communication.

# SPORTSWORLD

*New England's Largest Sports Memorabilia Shoppe*

**429 BROADWAY (RTE 99) EVERETT, MASSACHUSETTS 02149**
Phone: (617) 387-7220    Fax: (617) 387-6177
www.sportsworld-usa.com    Email: info@sportsworld-usa.com

PHIL CASTINETTI
PRESIDENT

To Whom it may concern,

I, Phil Castinetti, have appraised the items that were owned by Mr. Steve Carazzo as follows.

- LYNDON BYERS GAME USED BRUINS ROAD JERSEY — $2,500.—
- CRAIG JANNEY GAME USED BRUINS HOME JERSEY — $1,500.—
- LYNDON BYERS TEAM SIGNED SHARKS JERSEY — $2,000.—
- DREW BLEDSOE SIGNED PATRIOTS JERSEY — $250.—
- NOLAN RYAN LIMITED EDITION SIGNED PRINT — $500.—
- RAY BOURQUE SIGNED 8×10 PHOTO — $100.—
- CAM NEELY SIGNED 8×10 PHOTO — $75.—
- GERRY CHEEVERS SIGNED 8×10 PHOTO — $50.—
- LYNDON BYERS SIGNED 8×10 PHOTO — $25.—
- KEN HODGE SIGNED 8×10 PHOTO — $25.—
- ANDY MOOG SIGNED 8×10 PHOTO — $40.—
- GARY DOAK SIGNED 8×10 PHOTO — $25.—
- BOBBY ORR SIGNED 8×10 PHOTO — $150.—
- 1 BOX OF 45 LESSER NAME PLAYERS SIGNED PHOTOS @ $15 EA.
- ROBERT URICH SIGNED 8×10 PHOTO — $675.—
- DENNIS LEARY SIGNED 8×10 PHOTO — $100.—
- SYLVESTER STALLONE SIGNED 8×10 PHOTO — $75.—
- LARGE BRUINS PHOTO - NEELY-BYERS etc. — $200.—
- 4 FT. × 7 FT. BRUINS TEAM PHOTO — $200.—
- RAY BOURQUE GAME USED STICK — $1,000.—
- ASST. GAME USED STICKS - NEELY, HODGE etc. — $350.—
- CAM NEELY GAME USED HOCKEY GLOVES — $1,000.—
- 8 FT. FIBERGLASS SHARK - WALL MOUNTED — $1,500.—

TOTAL $13,840.—

Phil Castinetti

OPEN MON. - SAT. AT 9:00 A.M.

TWO MONTH OLD CLOTHING CHEST PURCHASED IN SALEM
@ THE UNFINISHED FURNITURE STORE    500.00 - 600.W

• NEW MOUNTAIN BIKE PURCHASED IN July OF 2001
                                            200.W

1 LEATHER COUCH PURCHASED IN MAY OF 2001.
                                            600.W

1 FAX MACHINE PURCHASED IN MARCH, 2001.
                                            150.W

1 BOX OF COLLECTABLE LIQUORS ?

1 AIR CONDITIONER PURCHASED IN MAY 2001.

1 15'x30" SAFE PURCHASED IN SPRING OF 2001.
                                            200-300.W

• 1 PLATINUM ALBUM SET WITH PICTURES SIGNED   180.W
     BY THE ROCK BAND, EXTREME.

2 AWNINGS CUSTOM MADE By PELLITIER AWNINGS
     IN SALEM, MA. APPROX        3000-4000.W

• ASSORTED NEON LIGHTS ? GIVIN TO ME AS GIFTS.

LEATHER SWIVAL DESK CHAIR. XMAS PRESENT
     FROM EMPLOYEES.  100.W

• COLLECTION OF VIDEOS OF BRUINS AND REST.
   FUNCTIONS HELD @ 3 LOCATIONS. ? — — — —

PARROT STAND  200.W



EXHIBIT
23  Chiazzo
6/10/05   AC

EXHIBIT
24 (PIAZZO
6/10/05   AC

1 - 10 FOOT FIBERGLASS HAMMERHEAD SHARK
$1400.00

1 - SIGNED PICTURE OF BANK "EXTREME" WITH
PLATINUM CD'S ENCASED.

1 - NEW 28" All TERRAIN BIKE (400.00)

- BOX OF COLLECTABLE LIQUORS - (2,000.00)

1 - NEW ARMOUR        ( - 600.00 )

1 - DENNIS LEARY PICTURE SIGNED
1 - ROBERT URICK PICTURE SIGNED

1 - SYLVESTER STALLON PICTURE SIGNED

1 - 3' X 2' PICTURE OF BRUINS,
    CAM NEELY, LYNDON BYERS, BILL O'DWYER
    AND MYSELF

1 - ISLAND OASIS MACHINE - (3,000.00)

- LEATHER COUCH (NEW) 600.00

- AIR CONDITIONER IN WINDOW (OFFICE) 300.00

3 - CUSTOM AWNINGS W/SCUTTLEBUTTS LOGO
    PRINTED - 3,000.00

2 - BOXES OF VARIOUS SPORTS PICTURES

EXHIBIT "A"

EXHIBIT

25A (CHIAZZO)

6/10/05      AC

## SCUTTLEBUTTS, 73 LAFAYETTE STREET, SALEM, MA.

| QTY | DESCRIPTION |
|---|---|
| 1 | 7' BEV. AIRE S/C BEER COOLER |
| 2 | 4' BEV. AIRE S/C BEER COOLER |
| 1 | 3' BEV. AIRE S/C MUG CHILLER |
| 1 | 6' SS 3-COMP BAR SINK |
| 1 | 3' SS BAR SINK |
| 2 | 2' SS BAR SINKS |
| 3 | ASST ECR'S |
| 4 | 6-SPIGOT DRAFT BEER HEADS |
| 72 | WOOD BAR STOOLS |
| 7 | FOEM TOP TABLES |
| 1 | BEV. AIRE SS S/C FREEZER |
| 1 | VULCAN 6-BURNER STOVE |
| 1 | IMPERIAL 3' CHAR GRILLE W/3' SS STAND |
| 1 | BAKERS PRIDE #GP51 SS PIZZA OVEN |
| 1 | PITCO 14"FRYER |
| 1 | KOLD-DRAFT TOP MNTED ICE MAKER |
| 1 | RAETONE 2-DR SS S/C REFRIGERATOR (LEASED?) |
| 1 | 4' HOT FOOD TABLE |
| 1 | 2' SS SINK |
| 1 | 2' SS TABLE |
| 1 | 10' SS HOOD W/SS BACK WALL, FILTERS & FIRE SYSTEM |
| LOT | POTS, PANS, and SMALLWARES |
| 1 | 3' HEAT LAMP |
| LOT | APPX 17 ASST NEON LIGHTS |
| 2 | COLOR TV's |
| 3 | SMOKEATERS |
| 4 | CEILING FANS |
| 16 | HANGING LIGHT FIXTURES |
| 1 | OLD TYME POP CORN MACHINE |
| 1 | SONY WIDE SCREEN TV |
| LOT | APPX 50' WOOD BAR |
| 1 | FOSTER 11x10' METAL CLAD WALK-IN COOLER W/COMP |
| 1 | C/T S/C REFRIG DISPLAY |
| 1 | SENTRY SAFE |
| 1 | PANASONIC FAX |

674494.1

TWO MONTH OLD CLOTHING CHEST PURCHASED IN SALEM @ THE UNFINISHED FURNITURE STORE    500.00 - 600.W

2. NEW MOUNTAIN BIKE PURCHASED IN JULY OF 2001
      200.W

3. 1 LEATHER COUCH PURCHASED IN MAY OF 2001.
      200.W

4. 1 FAX MACHINE PURCHASED IN MARCH, 2001.
      150.W

5. 1 BOX OF COLLECTABLE LIQUORS ?

6. 1 AIR CONDITIONER PURCHASED IN MAY 2001.
      200-300.W

7. 1 15' X20^ SAFE PURCHASED IN SPRING OF 2001.
      180.W

8. 1 PLATINUM ALBUM SET WITH PICTURES SIGNED BY THE ROCK BAND, EXREME.

. 2 AWNINGS CUSTOM MADE BY PELLITIER AWNINGS IN SALEM, MA. APPROX    3000-4000.W

3. ASSORTED NEON LIGHTS ? GIVIN TO ME AS GIFTS.

1. LEATHER SWIVAL DESK CHAIR. X MAS PRESENT FROM EMPLOYEES.  100.W

2. COLLECTION OF VIDEOS OF BRUINS AND REST. FUNCTIONS HELD @ 3 LOCATIONS.  ?

3 PARROT STAND  200.W

EXHIBIT
25 B (AVAZZO
6/10/05    AC

# EXHIBIT 18

**UNITED STATES BANKRUPTCY COURT**

**District of Massachusetts**

In re:  Jenna's Pub, Inc.
04-3426339

Case No. **01-14500-WCH**

Chapter **11**

## STATEMENT OF FINANCIAL AFFAIRS

### 1.  Income from employment or operation of business

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced.  State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.)  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE | FISCAL YEAR PERIOD |
|---|---|---|
| 425,000.00 | Income | 1999 |
| 450,000.00 | Income | 2000 |
| 150,000.00 | Income | year to date |

### 2.  Income other than from employment or operation of business

None
☑

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case.  Give particulars.  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

### 3.  Payments to creditors

None
☐

a.  List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| Boston Gas<br>201 Rivermoor Street<br>West Roxbury, MA 02132 | | 800.00 | 500.00 |
| Massachusetts Electric<br>One South Station<br>Boston, MA 02110 | 5/24/01 | 1,500.00 | 3,000.00 |
| Salem Lafayette, LLC | | 4200 + 1,000.00 | |





None ☐    `b. List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| Joseph Horan mother's friend | | 1,000.00 | |

## 4. Suits and administrative proceedings, executions, garnishments and attachments

None ☐    a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| United Liqours v. Jenna's Pub | suit for monwy owed | Cambridge District Court | pending |
| Rhythm Coalition v. Jenna's Pub | suit for money owed | Salem District Court | default judgment |
| Stephen Smyrnios v. Jenna's Pub | | | |
| Salem Lafayette, LLC v. Jenna's Pub | termination of lease | Essex Superior | pending |

None ☐    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| United Liqours, LTD. c/o Leonard M. Krulewich 50 Staniford Street Boston, MA 02114 | 5/15/01 | 14,000.00  Liquor license |

## 5. Repossessions, foreclosures and returns

None ☑    List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 6. Assignments and receiverships

None
☑
    a.  Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None
☑
    b.  List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 7. Gifts

None
☑
    List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient.  (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 8. Losses

None
☑
    List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 9. Payments related to debt counseling or bankruptcy

None
☐
    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Curran Coffey, LLP**<br>**One Washington Mall**<br>**Boston, MA 02108** | 6/01 | 5,000.00 |

## 10. Other transfers

None
☑
    a.  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petiton is filed, unless the spouses are separated and a joint petition is not filed.)

## 11. Closed financial accounts

None
☑

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 12. Safe deposit boxes

None
☑

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 13. Setoffs

None
☑

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 14. Property held for another person

None
☑

List all property owned by another person that the debtor holds or controls.

## 15. Prior address of debtor

None
☑

If the debtor has moved within the two years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

## 16. Nature, location and name of business

None
☑

a. If the debtor is an individual, list the names and addresses of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within two years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the two years immediately preceding the commencement of this case.

b. If the debtor is a partnership, list the names and addresses of all businesses in which the debtor was a partner or owned 5 percent or more of the voting securities, within the two years immediately preceding the commencement of this case.

c. If the debtor is a corporation, list the names and addresses of all business in which the debtor was a partner or owned 5 percent or more of the voting securities within two years immediately preceding the commencement of this case.

## 17. Books, records and financial statements

None    a.  List all bookkeepers and accountants who within the six years immediately preceding the filing of
☐    this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|
| Joseph Mavilio, C.P.A.<br>Wakefield, MA 01880 | accounting |

None    b.  List all firms or individuals who within the two years immediately preceding the filing of this
☑    bankruptcy case have audited the books of account and records, or prepared a financial statement
of the debtor.

None    c.  List all firms or individuals who at the time of the commencement of this case were in
☐    possession of the books of account and records of the debtor.  If any of the books of account and
records are not available, explain.

| NAME | ADDRESS |
|---|---|
| Stephen Caiazza, President | 37 Layfette Street<br>Salem, MA |

None    d.  List all financial institutions, creditors and other parties, including mercantile and trade
☑    agencies, to whom a financial statement was issued within the two years immediately preceding the
commencement of this case by the debtor.

## 18. Inventories

None    a.  List the dates of the last two inventories taken of your property, the name of the person who
☑    supervised the taking of each inventory, and the dollar amount and basis of each inventory.

None    b.  List the name and address of the person having possession of the records of each of the two
☑    inventories reported in 18a., above.

## 19. Current partners, officers, directors and shareholders

None    a.  If the debtor is a partnership, list the nature and percentage of partnership interest of each
☑    member of the partnership.

None    b.  If the debtor is a corporation, list all officers and directors of the corporation, and each
☐    stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting
securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE<br>OF STOCK OWNERSHIP |
|---|---|---|
| Stephen Caiazza<br>37 Layfette Street<br>Salem, MA | director and officer | sole shareholder |

## 20. Former partners, officers, directors and shareholders

None    a.  If the debtor is a partnership, list each member who withdrew from the partnership within one
☑    year immediately preceding the commencement of this case.

## 21. Withdrawals from a partnership or distributions by a corporation

None
☐    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Stephen Calzza** | **salary various dates** | **$75,000.00** |

*[If completed on behalf of a partnership or corporation]*

I, declare under penalty that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date  6-18-01          Signature _____

                                 Stephen D. Calazzo
                                 President

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]



# EXHIBIT 19

# Commonwealth of Massachusetts
# ESSEX SUPERIOR COURT
# Case Summary
# Civil Docket

## Salem Lafayestte Llc v Caiazzo et al

Details for Docket: ESCV1999-02073

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | ESCV1999-02073 | **Caption:** | Salem Lafayestte Llc v Caiazzo et al |
| **Filing Date:** | 11/01/1999 | **Case Status:** | Dismissed |
| **Status Date:** | 05/20/2003 | **Session:** | Civil-CtRm 2 -rear (Salem) |
| **Lead Case:** | NA | **Case Type:** | Most |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 12/20/2001 |
| **Service Date:** | 01/30/2000 | **Disposition:** | 10/31/2002 |
| **Rule 15:** | 01/24/2001 | **Rule 12/19/20:** | 03/30/2000 |
| **Final PTC:** | 06/18/2002 | **Rule 56:** | 02/18/2002 |
| **Answer Date:** | 03/30/2000 | **Jury Trial:** | YES |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | ESCV1999-02073 | **Caption:** | Salem Lafayestte Llc v Caiazzo et al |
| **Filing Date:** | 11/01/1999 | **Case Status:** | Dismissed |
| **Status Date:** | 05/20/2003 | **Session:** | Civil-CtRm 2 -rear (Salem) |
| **Lead Case:** | NA | **Case Type:** | Declaratory judgement (231A) |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 12/20/2001 |
| **Service Date:** | 01/30/2000 | **Disposition:** | 10/31/2002 |
| **Rule 15:** | 01/24/2001 | **Rule 12/19/20:** | 03/30/2000 |
| **Final PTC:** | 06/18/2002 | **Rule 56:** | 02/18/2002 |
| **Answer Date:** | 03/30/2000 | **Jury Trial:** | YES |

## Parties Involved

4 Parties Involved in Docket: ESCV1999-02073

**Party**

| | | | |
|---|---|---|---|
| **Involved:** | | **Role:** | Defendant |
| **Last Name:** | Caiazzo | **First Name:** | Donna M |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Caiazzo | **First Name:** | Stephen D & Donna M |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Jenna's Pub Inc | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Plaintiff |
| **Last Name:** | Salem Lafayestte Llc | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

# Attorneys Involved

9 Attorneys Involved for Docket: ESCV1999-02073

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Landolphi | **First Name:** | F Kelley |
| **Address:** | 70 Washington Street | **Address:** | The Masonic Building Suite 40 |

| | | | |
|---|---|---|---|
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-740-9715 | **Tel Ext:** | |
| **Fascimile:** | | **Representing:** | Jenna's Pub Inc, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | ANDR12 |
| **Last Name:** | Strasnick | **First Name:** | Robert M |
| **Address:** | 70 Washington Street | **Address:** | Suite 212 |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-740-6633 | **Tel Ext:** | |
| **Fascimile:** | 978-740-6644 | **Representing:** | Jenna's Pub Inc, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Landolphi | **First Name:** | F Kelley |
| **Address:** | 70 Washington Street | **Address:** | The Masonic Building Suite 40 |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-740-9715 | **Tel Ext:** | |
| **Fascimile:** | | **Representing:** | Caiazzo, Donna M (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | DALY01 |
| **Last Name:** | Daly | **First Name:** | Kevin T |
| **Address:** | 32 Church Street | **Address:** | |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-745-0500 | **Tel Ext:** | |
| **Fascimile:** | 978-745-6606 | **Representing:** | Caiazzo, Donna M (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | ANDR12 |
| **Last Name:** | Strasnick | **First Name:** | Robert M |
| **Address:** | 70 Washington Street | **Address:** | Suite 212 |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-740-6633 | **Tel Ext:** | |
| | | | Caiazzo, Stephen D & Donna M |

| Fascimile: | 978-740-6644 | Representing: | (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Landolphi | **First Name:** | F Kelley |
| **Address:** | 70 Washington Street | **Address:** | The Masonic Building Suite 40 |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-740-9715 | **Tel Ext:** | |
| **Fascimile:** | | **Representing:** | Caiazzo, Stephen D & Donna M (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | META01 |
| **Last Name:** | Metaxas | **First Name:** | Anthony M |
| **Address:** | 900 Cummings Center | **Address:** | Suite 207T |
| **City:** | Beverly | **State:** | MA |
| **Zip Code:** | 01915 | **Zip Ext:** | |
| **Telephone:** | 978-927-8000 | **Tel Ext:** | |
| **Fascimile:** | 978-922-6464 | **Representing:** | |

| **Attorney Involved:** | | **Firm Name:** | DALY01 |
| **Last Name:** | Daly | **First Name:** | Kevin T |
| **Address:** | 32 Church Street | **Address:** | |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-745-0500 | **Tel Ext:** | |
| **Fascimile:** | 978-745-6606 | **Representing:** | Jenna's Pub Inc, (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | DALY01 |
| **Last Name:** | Daly | **First Name:** | Kevin T |
| **Address:** | 32 Church Street | **Address:** | |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-745-0500 | **Tel Ext:** | |
| **Fascimile:** | 978-745-6606 | **Representing:** | Caiazzo, Stephen D & Donna M (Defendant) |

# Calendar Events

11 Calendar Events for Docket: ESCV1999-02073

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|-----|-------------|-------------|------------------|------|----------------|
| 1 | 02/08/2001 | 14:00 | Motion/Hearing: Assess Atty Fees | A | Event not held--scheduled for another date |
| 2 | 02/20/2001 | 14:00 | Motion/Hearing: Assess Atty Fees | A | Event not held--scheduled for another date |
| 3 | 03/15/2001 | 14:00 | Motion/Hearing: Assess Atty Fees | A | Event not held--scheduled for another date |
| 4 | 03/27/2001 | 14:00 | Motion/Hearing: Assess Atty Fees | A | Event canceled not re-scheduled |
| 5 | 05/01/2001 | 14:00 | Motion/Hearing: Rule56 | A | Event not held--scheduled for another date |
| 6 | 05/14/2001 | 14:00 | Motion/Hearing: Rule56 | A | Event not held--scheduled for another date |
| 7 | 05/21/2001 | 09:00 | TRIAL: by jury | A | Event canceled not re-scheduled |
| 8 | 05/30/2001 | 09:30 | Motion/Hearing: show cause | A | Event held as scheduled |
| 9 | 05/31/2001 | 14:00 | Motion/Hearing: Rule56 | A | Event canceled not re-scheduled |
| 10 | 07/09/2001 | 09:00 | Motion/Hearing: Rule56 | A | Event held--Under Advisement |
| 11 | 07/17/2001 | 14:00 | Motion/Hearing: show cause | A | Event canceled not re-scheduled |

# Full Docket Entries

110 Docket Entries for Docket: ESCV1999-02073

| Entry Date: | Paper No: | Docket Entry: |
|-------------|-----------|----------------|
| 11/01/1999 | | Original: OR=1 TY=D13 TRK=A. |
| 09/16/2000 | | Stat at cnvrsn to cmputr 09/16/2000. |
| 09/16/2000 | | (see docket book for previous docket entries). |
| 10/16/2000 | 23 | Atty F Kelley Landolphi's notice of appearance for Jenna's Pub Inc |
| 10/27/2000 | 24 | Atty Kevin T Daly's notice of appearance for Stephen D & Donna M |
| 10/27/2000 | 24 | Caiazzo, and Jenna's Pub |
| 10/30/2000 | | Atty Robert M Strasnick's withdrawal of appearance filed re: Stephen |
| 10/30/2000 | | D & Donna M Caiazzo |
| 10/30/2000 | | Atty Robert M Strasnick's withdrawal of appearance filed re: Jenna's |
| 10/30/2000 | | Pub Inc |
| 11/07/2000 | 25 | Motion of the plaintiffs Salem Lafayette, LLC for additional Finding |
| 11/07/2000 | 25 | of Contempt filed in Court . Borenstein,J. dated 10/12/00 |
| 11/07/2000 | 26 | Motion of Plaintiff for Attorney fees, and Affidavit in support of |

| | | |
|---|---|---|
| 11/07/2000 | 26 | plaintiff 's motion for attorney's fees, filed in Court Borensten,J., |
| 11/07/2000 | 26 | dated 10/12/00 |
| 11/07/2000 | 27 | Motion to extend time for and further relief, filed in Court. by |
| 11/07/2000 | 27 | Jenna's Pub Inc and Stephen D and Donna M Caiazzo with Affidavit of |
| 11/07/2000 | 27 | Stephen D. Caiazzo. filed in Court. Borenstein,J., dated 10/12/00 |
| 11/07/2000 | | Atty Kevin T Daly's withdrawal of appearance filed re: Jenna's Pub Inc |
| 11/07/2000 | 28 | Atty Kevin T Daly's withdrawal of appearance filed re: Stephen D & |
| 11/07/2000 | 28 | Donna M Caiazzo |
| 01/11/2001 | 29 | Supplemental motion for attorney fees by Salem Lafayestte Llc, |
| 01/11/2001 | 29 | Affidavit in support of plaintiffs supplemental motion for attorneys' |
| 01/11/2001 | 29 | fees, defendants opposition to motion for attorney's fees and |
| 01/11/2001 | 29 | defendants request for a hearing. |
| 03/13/2001 | 30 | Motion for partial Summary Judgment pursuant to Mass.R.Civ.P. 56 by |
| 03/13/2001 | 30 | Salem Lafayestte Llc v Jenna's Pub Inc et al ; memorandum of law in |
| 03/13/2001 | 30 | support of plaintiff's motion for partial summary judgment; concise |
| 03/13/2001 | 30 | statement of undisputed facts and statement of the legal elements; |
| 03/13/2001 | 30 | defts' opposition to plaintiff's motion for summary judgment; defts' |
| 03/13/2001 | 30 | statement of legal elements; defts' statement of facts; plaintiff's |
| 03/13/2001 | 30 | request for hearing. Rec 3/12/01. |
| 03/21/2001 | | Notice sent to appear for trial by jury on May 21, 2001 |
| 03/26/2001 | | Motion (P#29) allowed in part. After review of the pleadings, and |
| 03/26/2001 | | based on the Court's work with counsel on the case, the court hereby |
| 03/26/2001 | | assesses attorneys fees against the deft in the sum of $2,250.00. |
| 03/26/2001 | | Borenstein, J. Notices mailed 3/26/01. |
| 05/04/2001 | | Notice sent to appear on May 14, 2001 for a hearing on partial |
| 05/04/2001 | | summary judgment |
| 05/25/2001 | 31 | Plaintiff's Motion for short order of notice., |
| 05/25/2001 | | Motion (P#31) Order to Show cause to issue returnable 5/30/01 at 9:30 |
| 05/25/2001 | | a.m.. (Merrick,, J). issued |
| 05/29/2001 | 32 | Complaint for contempt filed by Salem Lafayestte Llc; affidavit of |
| 05/29/2001 | 32 | Anthony Metaxas |
| 05/30/2001 | | Notice given to counsel at hearing of plaintiff's emergency motion to |
| 05/30/2001 | | appear on May 31, 2001 at 2PM for a hearing on Plaintiff's Motion for |
| 05/30/2001 | | Partial Summary Judgment |
| 05/30/2001 | 33 | Emergency motion for order compelling payment of water charges or, in |
| 05/30/2001 | 33 | the alternative, authorization to separate water service. Rec 5/25/01. |
| 05/30/2001 | 34 | Affidavit of Stephen M. Caizzo |
| 05/30/2001 | | Motion (P#33) allowed after hearing. The water and sewer bill in the |
| 05/30/2001 | | amount of $14,611.96 shall be paid by Jenna's Pub Inc., no later than |
| 05/30/2001 | | 4PM on June 7, 2001. Plaintiff shall take any and all steps necessary |
| 05/30/2001 | | to assist defts in complying with the courts order. In the event that |

| 05/30/2001 | | defts fail to pay the amount owed by the deadline date, the plaintiff |
| 05/30/2001 | | may take steps to separate meters and/or shut off the water, and may |
| 05/30/2001 | | seek a finding of contempt from this court.(Nancy Merrick, Justice) |
| 05/30/2001 | | Notices mailed May 30, 2001 |
| 05/31/2001 | 35 | ORDER This matter came on for hearing upon the Plaintiff's Emergency |
| 05/31/2001 | 35 | Motion for Order Compelling Payment of Water Charges or, In the |
| 05/31/2001 | 35 | Alternative, Authorization to Separate Water Service. After hearing, |
| 05/31/2001 | 35 | it is ORDERED that the water and sewer bill, in the amount of |
| 05/31/2001 | 35 | $14,611.96, shall be paid by defendant, Jenna's Pub, Inc. no later |
| 05/31/2001 | 35 | than 4:00 P.M. on Thursday, June 7, 2001. Plaintiff shall take any |
| 05/31/2001 | 35 | and all steps necessary to assist defendants in challenging the water |
| 05/31/2001 | 35 | bill. In the event that defendants fail to pay the amount owed by the |
| 05/31/2001 | 35 | deadline date, the plaintiff may take steps to separate meters and/or |
| 05/31/2001 | 35 | shut off the water, and may seek a finding of contempt from this |
| 05/31/2001 | 35 | court. (Nancy Merrick, Justice) |
| 06/01/2001 | 36 | Suggestion of bankruptcy by Jenna's Pub Inc |
| 06/07/2001 | | Short ORDER of notice to show cause issued to Salem Lafayestte Llc |
| 06/07/2001 | | returnable 7/17/2001 (Whitehead, J.,) 6/7/2001 |
| 06/07/2001 | | #32 Short ORDER of notice to show cause issued Returnable 7/17/2001 |
| 06/07/2001 | | at 2:00 p.m. (Whitehead, J.,) 6/7/2001 |
| 06/27/2001 | 37 | Suggestion of relief from stay by Salem Lafayestte Llc |
| 07/03/2001 | 38 | Request for hearing filed by Salem Lafayestte Llc on motion for |
| 07/03/2001 | 38 | partial summary judgment |
| 07/03/2001 | | Notice sent to appear on July 09, 2001 for a hearing on Salem |
| 07/03/2001 | | Lafayette's motion for partial summary judgment |
| 07/05/2001 | 39 | Emergency motion to stay hearing by Jenna's Pub Inc. |
| 07/05/2001 | | Motion (P#39) denied. Hearing will proceed as scheduled. (Nancy |
| 07/05/2001 | | Merrick, Justice) Notices mailed July 05, 2001 |
| 07/09/2001 | | Hearing on order of notice held held, matter taken under advisement. |
| 07/09/2001 | | (Nancy Merrick, Justice) |
| 07/18/2001 | | Motion (P#30) After hearing and review of memoranda affidavits and |
| 07/18/2001 | | relevant caselaw, this motion is allowed. Although normally the issue |
| 07/18/2001 | | of materiality of breach would be a jury question, this Court rules |
| 07/18/2001 | | that on the undisputed facts, the plaintiff has established multiple |
| 07/18/2001 | | material breaches, including (1) failing to provide copies of liquor |
| 07/18/2001 | | bills, (2) failing to pay rent increases, failure to fix leaks. In so |
| 07/18/2001 | | ruling, this Court directs parties attention to Lease-It v. Massport |
| 07/18/2001 | | Authority, 33 Mass App Ct. 391 (1992). As to the argument that |
| 07/18/2001 | | defendant was not given proper "notice" under the lease, this Court |
| 07/18/2001 | | finds that this action serves as more than adequate notice. Finally, |
| 07/18/2001 | | the defendants argument that their breaches are "minor" or somehow |

| 07/18/2001 | | not material, is without support in the record. It is hereby ORDERED |
| 07/18/2001 | | and DECLARED that the lease has been breached by defendant and is |
| 07/18/2001 | | hereby terminated. 7/16/01 (Nancy Merrick, Justice). Notices mailed |
| 07/18/2001 | | July 18, 2001 |
| 07/18/2001 | 40 | SUMMARY JUDGMENT for Salem Lafayette LLC, that the defendant, Jenna's |
| 07/18/2001 | 40 | Pub, Inc. has breached the parties October 1, 1998 lease agreement |
| 07/18/2001 | 40 | and that the plaintiff, Salem Lafayette, LLC, be and hereby is |
| 07/18/2001 | 40 | entitled to possession of the premises located at 73-75 Lafayette |
| 07/18/2001 | 40 | Street, Salem, Massachusetts.(Nancy Merrick, Justice). Copies mailed |
| 07/18/2001 | 40 | July 18, 2001 |
| 08/22/2001 | 41 | Notice of appeal of Jenna's Pub Inc on judgment entered on July 18, |
| 08/22/2001 | 41 | 2001. rec'd 8/20/01 |
| 04/18/2003 | | STATUS REVIEW of DOCKET. Copies mailed April 18, 2003 |
| 05/20/2003 | 42 | JUDGMENT of dismissal; failure to comply with STATUS REVIEW OF DOCKET |
| 05/20/2003 | 42 | dated April 18, 2003. (David Lowy, Justice) Copies mailed May 20, 2003 |

# EXHIBIT 20



# Trial Court of The Commonwealth
## The District Court Department
### Malden Division

89 Summer Street
Malden, Massachusetts 02148-3338
Tel. 322-7500


EXHIBIT 5

Middlesex, ss

Civil Action No. _____

JOSEPH CUTI??ChIA,
 Plaintiff

v.

DONNA'S PUB, ?:?.
 Defendant

## SUMMONS
### (Rule 4)

To defendant _____Donna's Pub, Inc._____ of _131 Exchange Street, Malden, MA_

(name)                                        (address)

You are hereby summoned and required to serve upon _Ronald W. Dunbar, Jr._____, plaintiff('s attorney), whose address is _197 Portland Street, Boston, MA 02114_____, a copy of your answer to the complaint which is herewith served upon you, within 20 days after service of this summons, exclusive of the day of service. You are also required to file your answer to the complaint in the office of the Clerk of this court either before service upon plaintiff('s attorney), or within 5 days thereafter. If you fail to meet the above requirements, judgment by default may be rendered against you for the relief demanded in the complaint. You need not appear personally in court to answer the complaint.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will be barred from making such claim in any other action.

WITNESS ___PAUL J. CAVANAUGH_____, Presiding Justice, on __February 25, 1998____.

(date)

(SEAL)

_Joseph E. Croken_
Clerk

Note: (1)  When more than one defendant is involved, the names of all defendants should appear in the action. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

(2)  The number assigned to the complaint by the Clerk at commencement of the action should be affixed to this summons before it is served.

## RETURN OF SERVICE

On _____    I served a copy of the within summons, together with a copy of the

(date of sevice)

?i??*? i? ?hi? ??ti?? ???? ?h? within named defendant. in the following manner (see Rule 4(d) (1-5):

Sheriff's Office, Middlesex County • Civil Process Division, P.O. Box 410180, Cambridge, MA 02141-1819 • (617) 547-1171

*Middlesex, ss.*

March 5, 1998

I hereby certify and return that on 03/03/98 at 12:45pm I served a true and attested copy of the summons and complaint & DEMAND FOR JURY TRIAL & STATEMENT OF DAMAGES, INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS in this action in the following manner: To wit, by delivering in hand to KAREN WARE, agent, person in charge at the time of service for DONNA'S PUB INC., 131 EXCHANGE ST., Malden, MA. Fees: Service $15.00, Conveyance $2.10, Attest $3.00, P&H $1.00, Travel $3.10, Total Fees $24.20

_____

_____
*Deputy Sheriff*

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

MALDEN DISTRICT COURT
CIVIL ACTION NO:    *illegible*

|  |  |  |
|---|---|---|
| JOSEPH CUTICCHIA, | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | **COMPLAINT AND DEMAND** |
| | ) | **FOR JURY TRIAL** |
| DONNA'S PUB, INC. | ) | |
| d/b/a Cias, | ) | |
| DEFENDANT | ) | |

## PARTIES

1. The Plaintiff, Joseph Cuticchia (hereinafter "Plaintiff") is an individual who resides at 15 Wicklow Avenue, Medford, Middlesex County, Massachusetts.

2. The Defendant, Donna's Pub, Inc., doing business as "Cias" (hereinafter "Cias") is a duly organized corporation under the laws of the Commonwealth of Massachusetts with its principal place of business at 131 Exchange Street, Malden, Middlesex County, Massachusetts.

## FACTS

3. On or about September 13, 1996, Cias operated a drinking establishment that is open to the public.

4. On or about September 13, 1996, the Plaintiff was a patron at Cias.

5. Cias negligently failed to monitor and control the other patrons at Cias and negligently exposed the Plaintiff to an unreasonable risk of injury.

6. Cias negligently failed to monitor and control its employees at Cias and negligently exposed the Plaintiff to an unreasonable risk of injury.

7. As a result of Cias' negligence, the Plaintiff suffered great pain of body and anguish of mind.

## COUNT I-NEGLIGENT HIRING AND RETENTION

8. Plaintiff realleges and incorporates all paragraphs material hereto.

9. Cias has a duty to use reasonable care in hiring and retaining its employees.

10. By hiring and retaining security personnel who were unable to perform their job satisfactorily, Cias breached the duty it owed to the Plaintiff.

10. As a direct and proximate result of Cias' negligence, the Plaintiff was injured.

   **WHEREFORE**, the Plaintiff prays for judgment against Cias as follows:

   1. For general damages;

   2. For medical and related expenses according to proof;

   3. For loss of earnings and earning capacity according to proof;

   4. For costs of suit herein incurred, together with interest; and

   5. For such other and further relief as the Court may deem proper.

## COUNT II-NEGLIGENCE

11. Plaintiff realleges and incorporates all paragraphs material hereto.

12. Cias owed a duty to the Plaintiff to exercise reasonable and ordinary care to keep and maintain the Premises in a condition reasonably safe for all visitors. In particular, Cias had a duty to take such precautions as were reasonably necessary to protect its patrons from acts which were reasonably foreseeable.

13. By failing to keep the Premises in a reasonably safe condition, Cias breached the duty it owed to the Plaintiff.

14. As a direct and proximate result of Cias' negligence, the Plaintiff was injured.

   **WHEREFORE**, the Plaintiff prays for judgment against Cias as follows:

   1. For general damages;

   2. For medical and related expenses according to proof;

3. For loss of earnings and earning capacity according to proof;

4. For costs of suit herein incurred, together with interest; and

5. For such other and further relief as the Court may deem proper.

## PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS

The Plaintiff,
Joseph Cuticchia,
by his attorney,

Ronald W. Dunbar, Jr.
Law Offices of Steven R. Whitman
BBO# 567023
Law Offices of Steven R. Whitman
197 Portland Street
Boston, MA 02114
(617)227-8118

c:\wp51\dc\plead\cuticchia.com

**Essex County Sheriff's Department** • PO Box 2019 • Salem, MA 01970 • 978-750-1900 ext. 3590

*Essex, ss*

March 26, 2002

I hereby certify and return that on 03/22/02 at 4:45pm I served a true and attested copy of the summons and complaint, civil action cover sheet, tracking order and exhibits in this action in the following manner: To wit, by leaving at the last and usual place of abode of Caiazzo, Stephen, 54 Pleasant Street, Rockport, MA. and by mailing first class to the above address on 03/25/02. Fees: Service $10.00, Conveyance $4.50, Attest $4.00, P&H $1.95, Travel $6.60, Total Fees $27.05

Deputy Sheriff Ulrick LaFontant

Deputy Sheriff

Dated:        , 20 .

N.B.   **TO PROCESS SERVER:-**
     PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN
     THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

, 20 .



EXHIBIT 6
Caiazzo
5/6/05

COMMONWEALTH OF
MASSACHUSETTS

SUPERIOR COURT
CIVIL ACTION
No.

ESSEX, ss.

Plaintiff(s)

v.

Defendant(s)

**SUMMONS**
(Mass. R. Civ. P. 4.)

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

ESSEX SUPERIOR COURT
CIVIL ACTION NO:

JOSEPH CUTICCHIA
    PLAINTIFF

v.

DONNA'S PUB, INC. d/b/a CIAS and
STEPHEN CAIAZZO
    DEFENDANTS

)
)
)
)
)
)
)
)
)
)

COMPLAINT AND
DEMAND FOR JURY TRIAL

1.    The Plaintiff, Joseph Cuticchia (hereinafter "Plaintiff") is an individual who resides at 502 Medford Street, Malden, Middlesex County, Massachusetts.

2.    The Defendant, Donna's Pub Inc. d/b/a Cias, is a duly organized Massachusetts corporation having a usual place of business 131 Exchange Street, Malden, Middlesex County, Massachusetts.

3.    The Defendant, Stephen Caiazzo is an individual currently residing at 54 Pleasant Street, Rockport, Essex County, Massachusetts.

4.    On September 13, 1996, the Plaintiff was injured due to the negligence of the Defendant Donna's Pub Inc. d/b/a Cias.

5.    On or about February 2, 1999, the Plaintiff received a judgment in the amount of $26,446.34 ($24,000.00 plus pre-judgment interest and costs), against Defendant Donna's Pub Inc. d/b/a Cias, from the Malden District Court in the case of Joseph Cuticchia v. Donna's Pub, Inc. d/b/a/ Cias, C.A. No: 9850CV237. See Malden District Court Writ of Execution on Money Judgment, attached hereto as EXHIBIT A, and incorporated herein by reference.

6.    The Plaintiff is still the owner and holder of the judgment, and the judgment remains in full force and effect.

7.    The Defendants have not satisfied said judgment in whole or in part.

8.    The Defendant, Stephen Caiazzo, holds all of the issued stock of Donna's Pub Inc. d/b/a Cias; he is its only officer; he uses said corporate accounts and assets as if individually owned by him; his personal business and that of said corporation are intermingled; the

corporation is not capitalized; as the single officer of said corporation he never observed corporate formalities or kept records; the corporation has never declared dividends; as a single corporate officer he used the corporation's assets as his own; as a single corporate officer he siphoned away the corporate assets to himself individually; the officers and the board of directors of said corporation were and are non-functioning in their corporate capacity; and said Defendant, Stephen Caiazzo, ran the corporation as if it were an individual enterprise.

9.    The corporate veil should be pierced, and the Defendant, Stephen Caiazzo, should be held individually responsible for the judgment against the corporation.


WHEREFORE, the Plaintiff demands judgment against the Defendants, Donna's Pub Inc. d/b/a Cais and Stephen Caiazzo, individually, for the full amount of the said judgment of $26,446.34, together with post-judgment interest and costs to date.

THE PLAINTIFF DEMANDS JURY TRIAL ON ALL ISSUES


Respectfully Submitted,
the Plaintiff, Joe Cuticchia

Daniel P. Munnelly, Esq.
Law Offices of Steven R. Whitman
197 Portland Street
Boston, MA 02114
617-227-8118
BBO #631223
S:\WP\Open\Pleading\caiachia\conccomplaint.wpd

# EXHIBIT 21

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# **ESCV2002-00498**

RE:  **Cuticchia v Donna's Pub Inc et al**

TO:Daniel P Munnelly, Esquire
   Whitman Law Offices (Steven R)
   197 Portland Street
   5th floor
   Boston, MA 02114

---

### DEFAULT ORDER (Mass. R. CIV. P.  55a)

The defendant(s) named below, having failed to plead or otherwise defend in the above referenced case as required by MRCP 12(a), is(are) hereby defaulted pursuant to MRCP 55(a):

**Default (55a) as to defendant(s) Stephen Caiazzo. Copies mailed September 09, 2002**

The plaintiff shall file:

   1. A motion for an assessment of damages and default judgment pursuant to Mass. R.Civ.P.55(b)2 and subject to Mass.R.Civ.P.54(b) by **10/09/2002**, or

   2. A request for Default Judgment pursuant to Mass.R.Civ.P. 55(b)1 and subject to Mass.R.Civ.P.54(b) by **10/09/2002**(contract-sum certain only).

   Dated at Salem, Massachusetts this 9th day of September, 2002.

                                        Thomas H. Driscoll Jr.,
                                        Clerk of Courts

                              BY:

                                        Kevin Jones
                                        Assistant Clerk

Telephone: (978) 687-7463

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET#: **ESCV2002-00498-C**

RE:    Cuticchia v Donna's Pub Inc et al

TO:    Daniel P Munnelly, Esquire
       Whitman Law Offices (Steven R)
       197 Portland Street
       5th floor
       Boston, MA 02114

## NOTICE OF DOCKET ENTRY

You are hereby notified that on **12/05/2002** the following entry was made on the above referenced docket:

   **Notice sent to appear on January 07, 2003 for a hearing on Motion for Real Estate attachment**

Dated at Lawrence,  Massachusetts this 5th day of December, 2002.

Thomas H. Driscoll Jr.,
Clerk of the Courts

BY: Kevin Jones
Assistant Clerk

Telephone: (978) 687-7463

cvdgeneric_2.wpd 382692 nxkbhrg melnickp

District Court Department     98 50 CV 237

| | Joseph Cuticchia | Donna's Pub, Inc. d/b/a Class |
|---|---|---|
| Malden District Court<br>89 Summer Street<br>Malden, MA. 02148 | **PLAINTIFF ATTORNEY**<br>L.O. of Steven R. Whitman<br>197 Portland Street<br>Boston,MA 02114 | **DEFENDANT ATTORNEY** |

| MONEY DAMAGE ACTION [TIME STANDARDS] | | |
|---|---|---|
| ☐ Remand ☐ District Court Filing | ☐ SUMMARY PROCESS | VICTIM ☐ VIOLENT CRIME ☐ OTHER CIVIL |

## WRIT OF EXECUTION ON MONEY JUDGMENT

**To the Sheriffs of the several counties of the Commonwealth or their deputies, or (subject to the limitations of G.L. c. 41, § 92) any Constable of any city or town within the Commonwealth:**

The plaintiff named above has recovered judgment against the defendant in the amount shown below.

WE COMMAND you, therefore, to cause payment to be made to the plaintiff in the amount of the judgment total shown below, plus postjudgment interest thereon until the date of payment in accordance with G.L. c. 235, § 8, and to collect your own fees as provided by law, from out of the value of any real or personal property of the defendant found within your territorial jurisdiction.

This execution is valid for twenty years from the date of judgment. It must be returned to the court along with your return of service within ten days after this judgment has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

| WITNESS: Paul Cavanaugh | **DATE OF ISSUE** 2-2-99 | **CLERK-MAGISTRATE OR ASSISTANT CLERK** X _____ |
|---|---|---|
| **OFFICER'S RETURN** | **DATE OF SERVICE:** | |
| Fees _____ _____ _____ _____ | | |
| TOTAL FEES _____ | | SIGNATURE OF OFFICER |

| DATE OF ENTRY OF JUDGMENT | | |
|---|---|---|
| 12-1-7? | ☒ CIVIL | ☐ SUMMARY PROCESS |

☒ Judgment for _____ Plaintiff

☒ Suit _____ damages, plus $ 17,?1.?? prejudgment interest and $ ?5.?? costs plus $ 39c.?? interest from date of judgment entry to date of execution

☐ Possession

| JUDGMENT TOTAL | $ 260,555.2 |
|---|---|
| EXECUTION TOTAL | $ 26,446.34 |

# EXHIBIT 22

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

ESSEX SUPERIOR COURT
CIVIL ACTION NO:

|   |   |   |
|---|---|---|

JOSEPH CUTICCHIA
    PLAINTIFF

v.

DONNA'S PUB, INC. d/b/a CIAS and
STEPHEN CAIAZZO
    DEFENDANTS

COMPLAINT AND
DEMAND FOR JURY TRIAL

1.    The Plaintiff, Joseph Cuticchia (hereinafter "Plaintiff") is an individual who resides at 502 Medford Street, Malden, Middlesex County, Massachusetts.

2.    The Defendant, Donna's Pub Inc. d/b/a Cias, is a duly organized Massachusetts corporation having a usual place of business 131 Exchange Street, Malden, Middlesex County, Massachusetts.

3.    The Defendant, Stephen Caiazzo is an individual currently residing at 54 Pleasant Street, Rockport, Essex County, Massachusetts.

4.    On September 13, 1996, the Plaintiff was injured due to the negligence of the Defendant Donna's Pub Inc. d/b/a Cias.

5.    On or about February 2, 1999, the Plaintiff received a judgment in the amount of $26,446.34 ($24,000.00 plus pre-judgment interest and costs), against Defendant Donna's Pub Inc. d/b/a Cias, from the Malden District Court in the case of Joseph Cuticchia v. Donna's Pub, Inc. d/b/a/ Cias, C.A. No: 9850CV237. See Malden District Court Writ of Execution on Money Judgment, attached hereto as EXHIBIT A, and incorporated herein by reference.

6.    The Plaintiff is still the owner and holder of the judgment, and the judgment remains in full force and effect.

7.    The Defendants have not satisfied said judgment in whole or in part.

8.    The Defendant, Stephen Caiazzo, holds all of the issued stock of Donna's Pub Inc. d/b/a Cias; he is its only officer; he uses said corporate accounts and assets as if individually owned by him; his personal business and that of said corporation are intermingled; the

corporation is not capitalized; as the single officer of said corporation he never observed corporate formalities or kept records; the corporation has never declared dividends; as a single corporate officer he used the corporation's assets as his own; as a single corporate officer he siphoned away the corporate assets to himself individually; the officers and the board of directors of said corporation were and are non-functioning in their corporate capacity; and said Defendant, Stephen Caiazzo, ran the corporation as if it were an individual enterprise.

9.     The corporate veil should be pierced, and the Defendant, Stephen Caiazzo, should be held individually responsible for the judgment against the corporation.

WHEREFORE, the Plaintiff demands judgment against the Defendants, Donna's Pub Inc. d/b/a Cais and Stephen Caiazzo, individually, for the full amount of the said judgment of **$26,446.34**, together with post-judgment interest and costs to date.

THE PLAINTIFF DEMANDS JURY TRIAL ON ALL ISSUES

Respectfully Submitted,
the Plaintiff, Joe Cuticchia

Daniel P. Munnelly, Esq.
Law Offices of Steven R. Whitman
197 Portland Street
Boston, MA 02114
617-227-8118
BBO #631223
S:\WP9\dpm\Pleading\cuticchiapiercecomplaint.wpd

# EXHIBIT A

| | |
|---|---|
| Trial Court of Massachusetts | |
| District Court Department | |

| PLAINTIFF | DEFENDANT |
|---|---|
| Joseph Cuticchia | Donna's Pub, Inc. d/b/a Ciasz |

Malden District Court
89 Summer Street
Malden, MA. 02148

| PLAINTIFF ATTORNEY | DEFENDANT ATTORNEY |
|---|---|
| L.O. of Steven R. Whitman<br>197 Portland Street<br>Boston,MA  02114 | |

MONEY DAMAGE ACTION (TIME STANDARDS)
☐ Remand  ☐ District Court Filing

☐ SUMMARY PROCESS  ☐ VICTIM VIOLENT CRIME  ☐ OTHER CIVIL

## WRIT OF EXECUTION ON MONEY JUDGMENT

**To the Sheriffs of the several counties of the Commonwealth or their deputies, or (subject to the limitations of G.L. c. 41, § 92) any Constable of any city or town within the Commonwealth:**

The plaintiff named above has recovered judgment against the defendant in the amount shown below.

WE COMMAND you, therefore, to cause payment to be made to the plaintiff in the amount of the judgment total shown below, plus postjudgment interest thereon until the date of payment in accordance with G.L. c. 235, § 8, and to collect your own fees as provided by law, from out of the value of any real or personal property of the defendant found within your territorial jurisdiction.

This execution is valid for twenty years from the date of judgment. It must be returned to the court along with your return of service within ten days after this judgment has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

| FIRST JUSTICE | DATE OF ISSUE | CLERK-MAGISTRATE OR ASSISTANT CLERK |
|---|---|---|
| WITNESS: Paul Cavanaugh | 2-2-99 | X _____ |

| OFFICER'S RETURN | DATE OF SERVICE: |
|---|---|
| Fees _____ | |
| _____ | |
| _____ | |
| _____ | |
| TOTAL FEES _____ | |

SIGNATURE OF OFFICER

DATE OF ENTRY OF JUDGMENT  1/21/99   ☒ CIVIL   ☐ SUMMARY PROCESS

☒ Judgment for  _PLAINTIFF_ .

☒ $24... damages, plus $ 1920.00 prejudgment interest and $ 135.00 costs
plus $ 390.82 interest from date of judgment entry to date of execution

☐ Possession

| JUDGMENT TOTAL |
|---|
| $ 26,055.52 |

| EXECUTION TOTAL |
|---|
| $ 26,446.34 |

**Essex County Sheriff's Department** • PO Box 2019 • Salem, MA 01970 • 978-750-1900 ext. 3590

*Essex, ss.*

March 26, 2002

I hereby certify and return that on 03/22/02 at 4:45pm I served a true and attested copy of the summons and complaint, civil action cover sheet, tracking order and exhibits in this action in the following manner: To wit, by leaving at the last and usual place of abode of Caiazzo, Stephen, 54 Pleasant Street, Rockport, MA. and by mailing first class to the above address on 03/25/02. Fees: Service $10.00, Conveyance $4.50, Attest $4.00, P&H $1.95, Travel $6.60, Total Fees $27.05

*Deputy Sheriff*

Deputy Sheriff Ulrick LaFontant

Dated:                    , 20      .

N.B.   TO PROCESS SERVER:-
PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

                                        , 20      .

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No.

Plaintiff(s)

v.

Defendant(s)

**SUMMONS**
(Mass. R. Civ. P. 4)

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# **ESCV2002-00498**

RE:    **Cuticchia v Donna's Pub Inc et al**

TO:Daniel P Munnelly, Esquire
    Whitman Law Offices (Steven R)
    197 Portland Street
    5th floor
    Boston, MA 02114

---

### DEFAULT ORDER (Mass. R. CIV. P.  55a)

The defendant(s) named below, having failed to plead or otherwise defend in the above referenced case as required by MRCP 12(a), is(are) hereby defaulted pursuant to MRCP 55(a):

**Default (55a) as to defendant(s) Stephen Caiazzo. Copies mailed September 09, 2002**

The plaintiff shall file:

    1. A motion for an assessment of damages and default judgment pursuant to Mass. R.Civ.P.55(b)2 and subject to Mass.R.Civ.P.54(b) by **10/09/2002**, or

    2. A request for Default Judgment pursuant to Mass.R.Civ.P. 55(b)1 and subject to Mass.R.Civ.P.54(b) by **10/09/2002**(contract-sum certain only).

    Dated at ~~Salem~~ Lawrence, Massachusetts this 9th day of September, 2002.

Thomas H. Driscoll Jr.,
Clerk of Courts

BY:

Kevin Jones
Assistant Clerk

Telephone: (978) 687-7463

cvddfl55a_2.wpd 344603 dfl55a collado

# Commonwealth of Massachusetts
## County of Essex
### The Superior Court

CIVIL DOCKET# **ESCV2002-00498**

Cuticchia
vs.
Donna's Pub Inc et al

## JUDGMENT BY DEFAULT  UPON ASSESSMENT OF DAMAGES
### PURSUANT TO MASS. R.CIV. P. 55(B)2

This action came on to be heard before the Court, Diane M. Kottmyer, Justice, presiding, upon the marking of plaintiff(s), Joseph Cuticchia, in the above entitled action, for a default Judgment by the Court, pursuant to Mass.R.Civ.P 55(b)2 and it appearing to the court that the complaint in said action was filed on 03/14/2002 and that the summons and complaint were duly served on the defendant(s), and that no answer or other defense has been filed by the said defendant, and that default was entered on             in the office of the clerk of this court, and that no proceedings have been taken by said defendant since said default was entered,

It is **ORDERED and ADJUDGED:**

That the Plaintiff (s), Joseph Cuticchia recover of the Defendant (s),Donna's Pub Inc,
Stephen Caiazzo the sum of **$36,231.48** plus interest from 03/14/2002 to 01/08/2003 in the amount of $3,573.55 and their costs of action.

Dated at Lawrence, Massachusetts this 8th day of January, 2003.

Thomas H. Driscoll Jr.,
Clerk of the Courts

By:......................................
Assistant Clerk

copies mailed 01/08/2003

cvdjud55b2_1.wpd 368787 df155b2 mercierm

## Commonwealth of Massachusetts
### County of Essex
### The Superior Court
#### EXECUTION

CIVIL DOCKET# **ESCV2002-00498**

RE: Cuticchia v Donna's Pub Inc et al

## To the Sheriffs of our Several Counties or their Deputies, GREETING:

**WHEREAS Joseph Cuticchia**, of Malden   by the consideration of our Justices of our Superior Court at Essex, aforesaid, on 01/08/2003 recovered Judgment against **Donna's Pub Inc, d/b/a CIAS and  Stephen Caiazzo**  of  in the County of Essex for the sum of **Thirty Nine Thousand Eight Hundred Five Dollars and Three Cents** debt or damages, attorney fees (if any) **Zero Dollars**

| | |
|---|---|
| DAMAGES: | $39,805.03 |
| ATTY FEES: | |
| COSTS: | $231.15 |
| POST JUD/INT: | $434.37 |
| | |
| **TOTAL:** | **$40,470.55** |

and **Two Hundred Thirty One Dollars and Fifteen Cents** costs of suit,

as to us appears of record, where execution remains to be done:

**We command you** therefore, that of the goods, chattels or land of the said judgment debtor(s) within your precinct, you cause to be paid and satisfied unto the said judgment creditor(s), at the value thereof in money, with interest thereon in the sum of **Four Hundred Thirty Four Dollars and Thirty Seven Cents** from day of the rendition of said Judgment to date of execution the aforesaid sums, being

$40,470.55 in the whole, and thereof also to satisfy yourself for your own fees.

Hereof fail not, and make return of this writ with your doing thereon into the Clerk's office of said Court at Salem, within our County of Essex, and to make return of this writ within twenty years after the date of the said judgment, or within ten days after this writ has been satisfied or discharged.

**Witness, Suzanne V. DelVecchio,** Esquire, Chief Justice of the Superior Court, at Salem, Massachusetts this 10th day of February, 2003.

*Thomas H. Driscoll Jr.* Clerk

**RETURN TO:**
Daniel P Munnelly, Esquire
Whitman Law Offices (Steven R)
197 Portland Street
5th floor
Boston, MA 02114

April 24, 2003
SATISFIED IN FULL

Signed this 4/23/03, the Plaintiff, Joseph
Cuticchia, by his Attorney,

*Daniel P. Munnelly*
Daniel P. Munnelly, Esq.

cvdexeiss_2.wpd 376210 exeiss anqlincy

# EXHIBIT 23





*Essex County Sheriff's Department*
*Division of Civil Process*

Frank G. Cousins, Jr.
Sheriff

Richard J. Roaf, Jr.
Director

381 Common Street
3rd Floor
Lawrence, MA 01840
2/11/2003

Telephone:
(978) 683-7810
Fax: (978) 683-8205
www.eccf.com

Robyn Clark
Office Manager
Law Office of Steven R. Whitman
97 Portland Street
Boston, MA 02114--171

Re:

*Joseph Cuticchia*
VS.
**Donna's Pub Inc, d/b/a CIAS and Stephen** Caiazzo

Book 16140  Page 586 & 587

Court of Issue: Salem Superior (Essex)    Execution # ESCV2002-00498

**Date and time of seizure**:
Date: 2/11/2003  Time: 11:10 am

Dear Sir or Madam:

The levy on the enclosed execution has been made and recorded at the Essex County Registry of Deeds. I have suspended further action as requested. The original execution is returned herewith to be held in your files. Should you find it necessary to have this office proceed further with this matter, please return the original execution to us and mention our control number 03002925.

Thank you.

Sincerely,

Deputy Sheriff





*Essex County Sheriff's Department*
*Division of Civil Process*

381 Common Street
3rd Floor
Date: 2/11/2003, MAname41:10 am

Plaintiff: Joseph Cuticchia

Frank G. Cousins, Jr.
Sheriff

Richard J. Roaf, Jr.
Director

Robyn Clarke
Office Manager

Telephone:
(978) 683-7810
Fax: (978) 683-8205
www.eccf.com

Plaintiff's Attorney:   Law Office of Steven R. Whitman
Attorney's telephone number:  (617)227-8118

Defendant:  **Donna's Pub Inc, d/b/a CIAS and Stephen** Caiazzo

**Book: 16140  Page:  586 & 587**

Court of Issue: Salem Superior (Essex)    Execution # ESCV2002-00498



  By virtue of the attached execution, the original of which is in my hands for the purpose of taking the above described real estate, I have this day levied upon, seized and taken all right, title and interest that the within named Judgment Debtor had in such real estate in Essex County.
  Attached is a true copy of this execution on the above so much of my return as relates to the levying upon, seizure, and taking of this real estate on the execution.
  And immediately afterward, I suspended the further levy on this execution upon the above described real estate by written request of the attorney for the within named judgment creditor.

Deputy Sheriff



**Frank G. Cousins, Jr.**
Sheriff

**Richard J. Roaf, Jr.**
Director

**Robyn Clarke**
Office Manager

*Essex County Sheriff's Department*
*Division of Civil Process*

381 Common Street
3rd Floor
Lawrence, MA 01840
Date: 2/11/2003   Time: 11:10 am

Telephone:
(978) 683-7810
Fax: (978) 683-8205
www.eccf.com

Plaintiff: Joseph Cuticchia

Plaintiff's Attorney:  Law Office of Steven R. Whitman
Attorney's telephone number:  (617)227-8118

Defendant: **Donna's Pub Inc, d/b/a CIAS and Stephen** Caiazzo

Book 16140  Page 586 & 587

Court of Issue: Salem Superior (Essex)      Execution # ESCV2002-00498

Acting on instructions from the Judgment Creditor (plaintiff), I have levied upon, seized and taken the right, title and interest of the Judgment Debtor (defendant) in the real estate described in the above specified certificate of title and/or at the above specified book and page.

I hereby make demand on the Judgment Debtor that he/she/they deliver to me the money due to the Judgment Creditor, the amount appearing below.

Please be advised that unless I have received payment of the monies due the Judgment Creditor or have been notified that satisfactory arrangements have been made, I may be obligated to proceed.  Payment or arrangements must be made within TWO WEEKS from the date of this notice.  Payment must be made by cash or certified check only.

The costs, fees and interest have already increased the amount due the Judgment Creditor.  By prompt attention to this matter you will avoid the additional cost of advertising and fees necessary for a sale.

| | |
|---|---:|
| Poundage | $   411.84 |
| Judgment & Costs | 40470.55 |
| Interest to 2/11/2003 | 13.31 |
| Service  (registry) | 10.00 |
| Travel | 11.00 |
| Prepare and serve | 15.00 |
| Demand | 5.00 |
| Copies | 10.00 |
| Postage and Handling | 4.45 |
| Registry Fee | 30.00 |
| ***T O T A L | $ 40981.15 |

Respectfully,

*[signature]*

Deputy Sheriff

> ***Interest has been calculated to 2/11/2003.  Add $13.31 for each additional day.  There will be a $45.00 additional fee due to this office in order to discharge the seizure at the Registry of Deeds when paid in full.

AMESBURY • ANDOVER • BEVERLY • BOXFORD • DANVERS • ESSEX • GEORGETOWN • GLOUCESTER • GROVELAND • HAMILTON • HAVERHILL
IPSWICH • LAWRENCE • LYNN • LYNNFIELD • MANCHESTER • MARBLEHEAD • MERRIMAC • METHUEN • MIDDLETON • NAHANT • NEWBURY • NEWBURYPORT
NORTH ANDOVER • PEABODY • ROCKPORT • ROWLEY • SALEM • SALISBURY • SAUGUS • SWAMPSCOTT • TOPSFIELD • WENHAM • WEST NEWBURY

# EXHIBIT 24

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3 - - - - - - - - - - - - - - -

 4 STEPHEN D. CAIAZZO,            :

 5            Plaintiff,          :

 6 VS.                            :   CASE NO.

 7 THE MEDALLION INSURANCE        :   1:04cv12627RCL

 8 AGENCIES, INC.,                :

 9            Defendant.          :

10 - - - - - - - - - - - - - - -

11          DEPOSITION OF THOMAS P. COLLINS, a

12 witness called by and on behalf of the

13 Plaintiff, taken pursuant to the applicable

14 provisions of the Federal Rules of Civil

15 Procedure, before Sandra L. Bray, Registered

16 Diplomate Reporter, CSR Number 103593, and

17 Notary Public in and for Commonwealth of

18 Massachusetts, at the offices of Melick Porter &

19 Shea, LLP, 28 State Street, Boston,

20 Massachusetts, on Wednesday, November 23, 2005,

21 commencing at 10:02 a.m.

22

23

24
```

Page 14

1  obtaining insurance proceeds as opposed to the
2  lien on the property?
3 A.  Yes.
4 Q.  And the response that you submitted to the BBO,
5     you said also addressed the claim of a
6     disability policy?
7 A.  Yes, it did.
8 Q.  And so it's your understanding that Mr. Caiazzo
9     in his complaint to the BBO included your
10    handling of this disability policy?
11 A.  What it involved was a statement basically that
12    I had failed to appropriately locate a
13    disability policy. What my response addressed
14    was the efforts I had made to determine whether
15    or not such a policy existed and the conclusions
16    I had reached as a result of that inquiry that
17    was made.
18 Q.  And what did you say in that regard?
19 A.  That based upon my investigation into the issue
20    of the disability policy, it had been my
21    determination made after what I believed was a
22    sufficient and thorough investigation of the
23    issue that there was not a disability policy on
24    which to base a claim on Mr. Caiazzo's behalf.

Page 15

1 Q.  And the efforts you made to make that
2     determination, we went over the last time you
3     were here in August, correct?
4 A.  That's correct.
5 Q.  And that included making several inquiries to
6     the Medallion agency as well as the potential
7     insurer, correct?
8 A.  That's correct.
9 Q.  And your response to the BBO also addressed the
10    handling of the business property claim?
11 A.  To be honest with you, I don't remember if, in
12    fact, I addressed that specifically. I believe
13    it would have been addressed in the form that
14    certainly the inquiry that was made concerning
15    the business property was included in one of the
16    letters I sent to Medallion relative to the
17    disability issue.
18       MR. MANNIX:  Just focusing on the
19    response. That's what she asked you.
20 Q.  Is it your memory that Mr. Caiazzo claimed that
21    you failed to appropriately handle the
22    processing of that claim?
23 A.  Now, when you say "claim," I just want to be
24    clear. Are you talking about in the allegations

Page 16

1     he raised to the BBO?
2 Q.  I should be more clear. In the context of the
3     allegations to the BBO, in addition to the
4     claims he made with respect to the negotiations
5     of the Cuticchia lien on Skipper Way and the
6     claim of failing to locate a disability policy,
7     did he also claim that you failed to properly
8     handle his claim for business or personal
9     property loss?
10 A.  I believe so.
11 Q.  Do you recall what his claim was in that regard?
12 A.  Well, basically that I had failed to identify
13    insurance coverage that he believed would cover
14    the loss.
15 Q.  And do you recall whether or not you responded
16    to that allegation to the BBO?
17 A.  The issue of the personal property is addressed
18    in the response, yes.
19 Q.  And what was your response?
20 A.  Well, this is an area now that I'm going to say
21    I'm a little concerned with. The full response
22    to your question may involve, in fact,
23    statements that would have been relied upon in
24    the context of the response to the BBO, but may

Page 17

1     in the context of this litigation be privileged.
2 Q.  Well, I'm not sure if I understand your response
3     exactly.
4 A.  Well --
5 Q.  Let me just ask a question. You submitted a
6     response to the BBO, and part of your response
7     included responding to the allegation that you
8     failed to properly handle the business or
9     personal property loss that Mr. Caiazzo claims
10    he sustained, correct?
11 A.  Yes.
12 Q.  And you're unable to tell me what your response
13    was to the BBO without disclosing privileged
14    communications?
15 A.  What my concern is is that in my response to the
16    BBO, I dealt with issues that had a bearing on
17    my approach to investigating the personal
18    property issue and I believe in the context of
19    this litigation would be privileged.
20 Q.  Well, I disagree. To the extent you can answer
21    without disclosing the specifics of a
22    conversation, I believe that the order requires
23    you to do so.
24       So my question is, what was your

5 (Pages 14 to 17)

**ESQUIRE DEPOSITION SERVICES**
**1-866-619-3925**

Page 18

1    response to the BBO with respect to
2    Mr. Caiazzo's claim that you failed to properly
3    handle the business, personal property claim?
4        MR. MANNIX:  The problem here is that
5    Attorney Carnahan said that he is going to raise
6    the privilege concerning that letter.  So we are
7    going to err on the side of caution.  To the
8    extent you can answer without disclosing the
9    substance of any conversations you had with
10   Mr. Caiazzo, go ahead and answer.
11 A.  What I'll say is I addressed the fact that my
12   conclusion on that issue was there was not a
13   sufficient basis to bring a claim concerning the
14   loss of the personal property.
15 Q.  Was that based on your investigation?
16 A.  Absolutely.
17 Q.  And what investigation was that?
18 A.  Well, certainly the investigation was, as you
19   saw from the letters that were entered into
20   evidence in the last deposition, to make inquiry
21   of Medallion to see if there was a policy that
22   covered that potential recovery and also to
23   investigate, in my view, what were the merits of
24   the underlying claim that was being asserted.

Page 19

1 Q.  The merits of the underlying claim for the
2    property loss?
3 A.  That's right.
4 Q.  And what was your conclusion based on your
5    inquiry to Medallion on whether there was a
6    policy that covered business or personal
7    property loss?
8 A.  I didn't believe that there was.
9 Q.  You concluded that there was no policy in effect
10   that would cover business or personal property
11   loss --
12 A.  That's correct.
13 Q.  -- at the time of the loss?  Did you ever see
14   any documents that indicated that there was a
15   policy in effect?
16 A.  No.
17 Q.  And you also conducted an investigation into the
18   merits of the -- of Mr. Caiazzo's claim?
19 A.  Yes.
20 Q.  And what investigation did you conduct into the
21   merits of the claim?
22 A.  Well, again, I believe part of that
23   investigation is going to bear directly on the
24   issue of the attorney-client privilege.

Page 20

1 Q.  Well, tell me about the part that doesn't
2    involve the privilege.
3 A.  I contacted an individual who represented --
4    well, I contacted two individuals.  I first
5    talked to a representative of the company called
6    Harbor Realty who had handled the transaction
7    involving the -- I believe it was the sale of
8    the property that Mr. Caiazzo's business was
9    located in in Salem, Mass.  That property had
10   been sold by the landlord to a bank, and I
11   believe it was Danvers Bank.  And I called
12   Harbor Realty to inquire concerning the items
13   that were the subject of the claim, and they
14   referred me to an attorney for Danvers Bank by
15   the name of Robert Holloway; and I talked with
16   him concerning the matter.  And the
17   conversations I had with him were part of the
18   basis for my determining that there was not a
19   sufficient basis to go forward with the claim.
20 Q.  What did he tell you that made you think there
21   wasn't a sufficient basis to go forward with the
22   claim?
23 A.  That it was his position that the issue
24   concerning the loss of these -- or the loss of

Page 21

1    the items in question had been addressed in the
2    bankruptcy proceeding during which the business
3    had declared bankruptcy and had been an issue
4    that had been addressed by the bankruptcy
5    trustee.
6 Q.  Do you know how it was addressed by the
7    bankruptcy trustee?
8 A.  I do not.
9 Q.  Did he tell you?
10 A.  Well, he told me that -- here again -- he told
11   me that based upon the bankruptcy proceedings
12   there was an inconsistency concerning the
13   ownership of these items that was present.
14 Q.  What does that mean, an inconsistency in the
15   ownership of these items?
16 A.  That it was Attorney Holloway's recollection
17   that the items in question had been dealt with
18   as assets of Scuttlebutts at the time that
19   Scuttlebutts declared the bankruptcy and were
20   not, therefore, personal property of
21   Mr. Caiazzo.
22 Q.  Did he tell you that they were seized as part of
23   the property of Scuttlebutts?
24 A.  When you say "seized," I don't think that's

6 (Pages 18 to 21)

Page 22

1   necessarily the connotation. I think what the
2   issue was is that they had been identified as
3   being part of the bankrupt estate that the
4   trustee was handling on behalf of Scuttlebutts.
5   So they were under the control of the bankruptcy
6   trustee.
7 Q.   Did Holloway tell you what happened to the
8       property?
9 A.   No.
10 Q.  Was it taken into custody by the trustee?
11 A.  Not that I'm aware of.
12 Q.  Do you know what happened to the property?
13 A.  No.
14 Q.  Do you know who the trustee was?
15 A.  I remember having his name and I remember
16      knowing who it was, but I can't recall right
17      now.
18 Q.  Do you know who the attorney was for the
19      trustee?
20 A.  I don't. I would believe that information would
21      be contained in whatever record of the
22      bankruptcy proceeding concerning Scuttlebutts is
23      on record with the court.
24 Q.  Was it your understanding that Mr. Caiazzo

Page 23

1   wanted to submit a claim for personal property
2   loss?
3 A.   Yes.
4 Q.   And that is a distinction I'm making from
5       business property loss.
6 A.   Yes.
7 Q.   And it was your understanding that it was a
8       claim for personal property loss?
9 A.   It was my understanding that the issues he was
10      asking me to identify and to investigate was
11      whether or not he could personally recover for
12      the loss of these items.
13 Q.  And my question is, was he claiming that he
14      could recover under a policy to cover personal
15      property loss as opposed to business property
16      loss?
17 A.  Well, I don't -- I don't know. Again, I think
18      this may be an area that's --
19      MR. MANNIX: If you can answer the
20      question without divulging the substance of any
21      conversations you had with Attorney Caiazzo, you
22      should answer the question.
23      THE WITNESS: Yes, I understand, but I
24      think the answer to the question is going to go

Page 24

1   and involve discussions we had with Mr. Caiazzo.
2 Q.   Let me ask you it this way: When you were
3       making the inquiries to Medallion regarding the
4       claim for this property loss, were you making a
5       claim for business property loss or personal
6       property loss?
7 A.   I believed I was making a claim as to whether or
8       not Mr. Caiazzo could recover personally for the
9       loss of these items.
10 Q.  Do you know whether you were making a claim for
11      business property loss or personal property
12      loss?
13 A.  I was not making a claim on behalf of
14      Scuttlebutts.
15 Q.  So does that mean you were making a claim for
16      personal property for -- on behalf of
17      Mr. Caiazzo?
18 A.  What I was doing was inquiring as to whether or
19      not there was a policy that would cover the loss
20      of these items that would allow Mr. Caiazzo to
21      recover personally for them.
22 Q.  But you were not making a claim for business
23      property loss on behalf of Mr. Caiazzo in his
24      capacity as the principal of Scuttlebutts?

Page 25

1 A.   That's my understanding.
2 Q.   And it was your understanding from your
3       conversations with Mr. Holloway that you could
4       not make a claim on behalf of Mr. Caiazzo for
5       the loss of this property because it was the
6       property of Scuttlebutts and part of the
7       bankruptcy proceeding?
8 A.   That's correct. And I want to make one point
9       very clear. You've used the term making a
10      claim. The extent of what I was doing was
11      investigating as to whether or not a claim
12      should be made and, in fact, no claim was, in
13      fact, made by me after the conduct of my
14      investigation.
15 Q.  Okay. So just to clarify, you were inquiring
16      about the possibility of recovery for
17      Mr. Caiazzo under any policy of insurance that
18      may have existed to cover this property that was
19      at Scuttlebutts?
20 A.  That's correct, and also I was trying to
21      determine if there was a basis for liability for
22      the loss of these items that should be addressed
23      through litigation or other means.
24 Q.  And did you do any further investigation

7 (Pages 22 to 25)

Page 26

1 regarding this property other than what we've
2 talked about?
3 A. No, the testimony I gave in August plus the
4 additional information I provided today was the
5 sum total of the investigation I conducted.
6 Q. Do you recall when you spoke to Attorney
7 Holloway regarding this property?
8 A. I would say it was probably in July or August of
9 2002.
10 Q. Approximately when was the property lost?
11 A. It was lost at the time that -- sometime after
12 Scuttlebutts closed. Now, I think -- and I
13 don't have a definite date. I think
14 Scuttlebutts was closed towards the end of 2001.
15 Q. And it was shortly after that the property was
16 lost?
17 A. Apparently.
18 Q. What do you mean "apparently"?
19 A. Well, my understanding was that the property was
20 in the premises at the time that the bank took
21 possession of the building from the landlord.
22 Q. Are you saying that the bank took possession of
23 that property?
24 A. What I am saying is that at some point this

Page 27

1 property was claimed to have been lost. When
2 that actually occurred, as a result of my
3 investigation, I was not able to determine
4 precisely when that --
5     MR. MANNIX: She's asking you about
6 the bank, though.
7     THE WITNESS: I know, and the problem
8 is to fully answer that question, I'm going to
9 have to get into a communication between myself
10 and Mr. Caiazzo.
11 Q. Do you think the property was lost at all?
12 A. I did not feel at the completion of my
13 investigation with the full extent of
14 information I had available to me that I had
15 sufficient basis to assert a claim with either
16 the insurance company to proceed with litigation
17 against any party.
18 Q. So there was certainly a question in your mind
19 regarding the circumstances surrounding the loss
20 of that property?
21 A. I guess the easy answer to that question is yes.
22 Q. Well, I'm looking for the honest answer to the
23 question.
24 A. Well, I'm giving you an honest answer to every

Page 28

1 question you provide.
2     MR. MANNIX: Objection to the
3 question.
4 Q. I understand, but I just don't want the easy
5 answer. I want the complete answer.
6 A. Well, the complete answer is --
7 Q. Let me just ask the question again. There was a
8 question in your mind surrounding the -- strike
9 that. There was a question in your mind
10 regarding the circumstances surrounding the loss
11 of the property at Scuttlebutts which resulted
12 in you not asserting a claim against the
13 insurance company or in litigation?
14 A. Correct. I believe that under my obligations
15 under Rule 11, there was not sufficient basis to
16 bring that claim.
17 Q. So you made a determination that you did not
18 have a good-faith basis to make a claim against
19 the insurance company?
20 A. Yes, yes.
21 Q. Did you communicate that to Mr. Caiazzo? That's
22 a yes-or-no question.
23     MR. CARNAHAN: Object.
24     MR. MANNIX: Yes, I don't think he can

Page 29

1 answer that. It is a yes-no question, but the
2 question applies to substance of conversation
3 between Attorney Collins and his client. Now,
4 Attorney Carnahan has objected, I assume,
5 because of the privilege?
6     MR. CARNAHAN: Yes.
7     MR. MANNIX: I'll advise you not to
8 answer.
9 Q. Did you have a conversation with Mr. Caiazzo
10 regarding your position with respect to the
11 property loss claim?
12     MR. MANNIX: Same objection. Attorney
13 Carnahan, are you going to object as well?
14     MR. CARNAHAN: Same objection.
15     MR. MANNIX: I'll advise you not to
16 answer. The question implies the substance of
17 the conversation.
18     MS. FLORIO: I'm just going to ask the
19 questions I need to ask, and you can object and
20 we can just move on.
21     MR. MANNIX: Absolutely.
22 Q. As a result of your investigation into the
23 alleged property loss, you decided not to make a
24 claim for insurance on behalf of Mr. Caiazzo?

8 (Pages 26 to 29)

Page 30

1 A.  Yes.
2 Q.  And was that the last of your involvement with
3      respect to the property loss?
4 A.  Yes.
5 Q.  And approximately when was it that you made the
6      determination that you did not have a good-faith
7      basis to assert a claim on behalf of Mr. Caiazzo
8      for that property loss?
9 A.  Well, I think it was -- the decision was made as
10     a culmination of the factors involving not only
11     my inquiry with Harbor Realty, with Attorney
12     Holloway, and also with the fact there was no
13     policy available to cover that claim through my
14     communications with Medallion Insurance. I
15     believe one of the exhibits that was entered
16     into the last deposition contains a question or
17     an inquiry concerning the status of those
18     items -- the claim for those items -- not the
19     claim, but the inquiry concerning if there was a
20     policy available for those items, and I think
21     that exhibit has been entered into the previous
22     deposition. So whatever date that was, that
23     would be the culmination of the date when I made
24     my final determination there was no basis for

Page 31

1      going forward.
2 Q.  Did you also have a conversation with someone at
3      Medallion which confirmed that there was no
4      policy to cover this property loss?
5 A.  I believe I had a discussion with I believe it
6      would have been Mr. D'Addario at Medallion. I
7      believe that was the individual that I spoke
8      with concerning that issue.
9 Q.  And who initiated that call?
10 A.  I believe I would have.
11 Q.  And were you calling to inquire about whether or
12     not there was a policy to cover that loss?
13 A.  And also if they had done anything in the way of
14     their own investigation on the issue.
15 Q.  And did Mr. D'Addario answer your question?
16 A.  It's my recollection that the answer was that
17     there was no policy that would cover the claim.
18 Q.  What else did he tell you?
19 A.  That's the substance of what I recall.
20 Q.  Did he tell you that Mr. Caiazzo declined to
21     have business property coverage?
22 A.  I don't recall the total substance of the
23     conversation.
24 Q.  In Mr. Caiazzo's submission to the BBO, did he

Page 32

1      assert that the documentation relative to his
2      alleged disability policy was in your possession
3      and that you lost it?
4 A.  Yes.
5 Q.  And you responded to that accusation in your
6      response to the BBO?
7 A.  Yes.
8 Q.  And what was your response to that accusation?
9 A.  That I had never seen a disability policy
10     covering Mr. Caiazzo.
11 Q.  Prior to providing that response to the BBO, you
12     would have done a thorough investigation of all
13     your documentation surrounding any
14     representation of Mr. Caiazzo to confirm that,
15     in fact, you had no documentation regarding that
16     policy?
17 A.  Of course.
18 Q.  When was the first time you heard about an
19     alleged disability policy?
20 A.  That goes to the issue, I think, of attorney-
21     client privilege.
22 Q.  You previously testified regarding your
23     investigation into that disability policy,
24     correct?

Page 33

1 A.  Yes.
2 Q.  Although there's no written correspondence with
3      Medallion regarding that policy, you had
4      telephone inquiries to Medallion to confirm that
5      there was no disability policy --
6 A.  That's right.
7 Q.  -- in effect?
8 A.  That's right.
9 Q.  And, in fact, you went beyond just what
10     Medallion told you and further inquired of the
11     potential insurer to make sure they had no
12     record of the disability policy that Mr. Caiazzo
13     was claiming was in effect at the time he became
14     disabled?
15 A.  Yes.
16 Q.  And that confirmed what Medallion told you,
17     which was there was no disability policy in
18     effect?
19 A.  Yes.
20 Q.  And based upon that investigation, did you
21     determine that there was no good-faith basis for
22     you to make any claim for a disability or --
23     under a disability policy on behalf of
24     Mr. Caiazzo?

9 (Pages 30 to 33)

Page 34

1 A.  Yes.
2 Q.  So did you take no further actions with respect
3      to that disability policy -- disability claim,
4      rather?
5 A.  No further actions were taken.
6 Q.  And you never saw any documents to support
7      Mr. Caiazzo's claim that there was a policy in
8      effect to cover the property loss at
9      Scuttlebutts?
10 A. No, I did not.
11 Q. And it was based upon your investigation into
12     the existence of a policy to cover the property
13     loss as well as your investigation into the
14     merits of the underlying loss that you
15     determined that there was not a good-faith basis
16     to assert a claim on behalf of Mr. Caiazzo for
17     the property loss at Scuttlebutts?
18 A. That's correct.
19 Q. Just getting back to the Cuticchia claim, your
20     first involvement with respect to this claim was
21     in December of 2002?
22 A. That's correct.
23 Q. Did you ever see any documentation that
24     indicated that Mr. Caiazzo knew of the Cuticchia

Page 35

1      claim prior to December of 2002?
2             MR. CARNAHAN:  Objection.
3             MR. MANNIX:  What's the basis of your
4      objection?
5             MR. CARNAHAN:  I think the question
6      was whether Caiazzo knew of the claim prior to.
7             MR. MANNIX:  No.
8             MR. CARNAHAN:  Would you repeat the
9      question?
10            MS. FLORIO:  Can you read it back?
11     (Reporter read back the last question.)
12            MR. CARNAHAN:  I'll withdraw my
13     objection unless it's a letter from Mr. Caiazzo.
14            MR. MANNIX:  To the extent that it's
15     not correspondence from Mr. Caiazzo.
16 A. Well, I did see in the Malden District Court
17     file the return of service on the summons, and
18     that would be, I believe, the only response I
19     would have to your question.
20 Q. Do you recall what type of service was made in
21     that case?
22 A. I don't specifically recall.  I do know that
23     there was a return of service and that return of
24     service had been taken into account at the time

Page 36

1      the default judgment had entered in Malden.
2 Q.  Do you recall the address on the return of
3      service?
4 A.  I don't.
5 Q.  Okay.  Other than the return of service that you
6      saw when you reviewed the documents at Malden
7      District Court, did you see any other
8      documentation that indicated that Mr. Caiazzo
9      had notice of the Cuticchia claim --
10 A. No.
11 Q. -- prior to 2002?
12 A. No.
13 Q. Did you ever see any correspondence from an
14     attorney to Mr. Caiazzo or Cai's Pub regarding
15     the Cuticchia claim?
16 A. I did not.
17 Q. You submitted information to Medallion to assist
18     Mr. Caiazzo in asserting a claim for the loss at
19     Cai's that occurred in 1996, correct?
20 A. I'm sorry.  Could you just repeat that question?
21 Q. Sure.  You submitted information to Medallion on
22     May 16th, 2003 to assist Medallion in filing a
23     claim with the insurance company regarding the
24     loss at Cai's in 1996?

Page 37

1 A.  Well, you're referring to the May letter.  I
2      believe I also testified that I had previously
3      submitted that information to Medallion by fax
4      transmission in December of 20- --
5 Q.  It's 2002, right?
6 A.  2002, right.  But I did submit information to
7      Medallion to assist in the investigation of that
8      claim.
9 Q.  And after you submitted the documentation in
10     December, which I believe was the summons and
11     complaint -- is that correct?
12 A. No, it was the entire Malden District Court file
13     that I had copied.  There was the summons; there
14     was the complaint.  My recollection, there was
15     also the default judgment that had entered as
16     well as the allowed motion for assessment of
17     damages that had been entered by Judge Cavanaugh
18     in Malden.
19 Q. And when you submitted that information to
20     Medallion, did you know whether or not Medallion
21     had been the agency that placed the insurance in
22     1996 on behalf of Cai's?
23 A. Yes, I did.
24 Q. And were they?

10 (Pages 34 to 37)

ORIGINAL

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

C.A. NO. 1:04CV12627

```
*   *   *   *   *   *   *   *   *   *   *
                                        *
                                        *
STEPHEN D. CAIAZZO,                     *
                Plaintiff,              *
                                        *
vs.                                     *
                                        *
THE MEDALLION INSURANCE                 *
AGENCIES, INC.,                         *
                Defendant.              *
                                        *
                                        *
*   *   *   *   *   *   *   *   *   *   *
```

DEPOSITION OF THOMAS COLLINS,
taken on behalf of the Defendant, pursuant
to the Massachusetts Rules of Civil
Procedure, before Melinda M. Piccirilli,
Notary Public within and for the
Commonwealth of Massachusetts, at the law
offices of Melick, Porter & Shea, 28 State
Street, Boston, Massachusetts, on
Wednesday, August 3, 2005, commencing at
10:10 a.m.

1  Q. Do you have any documentation in your file

2     regarding that property damage claim or

3     your communication with Mr. Daddario?

4  A. No, I don't.

5  Q. The first time you spoke to Mr. Daddario

6     regarding the Cuticchia matter was in

7     December of 2002?

8  A. That's my recollection.

9  Q. Was that the first time you had any

10    information regarding that claim?

11 A. Yes.

12         Well, let me back up.  I had

13    learned of the presence of the Cuticchia

14    matter several days before receiving this

15    letter, but this was the first time I

16    receive anything in the way of information

17    concerning it.

18 Q. Nonetheless, it was in December of 2002

19    that you first learned of the existence of

20    the Cuticchia matter?

21 A. That's right.

22 Q. The first time you had any documentation

23    regarding that matter was when you

24    received the documents enclosed with the

25    letter from Attorney Whitman in the letter

41

```
 1        dated December 12, 2002?

 2   A.   Yes.

 3   Q.   Other than the documents you received from

 4        Attorney Whitman and the documents that

 5        you said you obtained from the Malden

 6        District Court, did you ever see any other

 7        documents relating to the Cuticchia

 8        matter?

 9   A.   No.

10   Q.   Those were the only documents you ever saw

11        relating to that?

12   A.   That's correct.

13   Q.   Tell me what you recall regarding your

14        conversation with Mr. Daddario in December

15        of 2002.

16   A.   Basically that they would investigate the

17        claim.

18   Q.   You called him and reported the claim to

19        him?

20   A.   Yes, that's right.

21   Q.   Do you know whether that was the first

22        time the claim had been reported to them?

23   A.   I don't know if -- all I know is that at

24        the time we talked, it's my recollection,

25        he said they would investigate the claim.
```

```
1        I really don't have a specific
2        recollection of any statements that he
3        made to me concerning whether or not that
4        was the first indication of this claim or
5        not.
6   Q.  Was it your impression that you were
7        reporting the claim to Mr. Daddario for
8        the first time?
9   A.  Yes, it was.
10  Q.  At that time you made the call you were
11       reporting the claim and advising him you
12       were going to forward the information
13       regarding the claim?
14  A.  That's correct.
15  Q.  Do you remember anything else regarding
16       the conversation with Mr. Daddario at that
17       point?
18  A.  I don't.
19  Q.  You remember specifically talking to him
20       and not anyone else in the office?
21  A.  Yes.
22  Q.  Then you sent the fax with the documents
23       that you received from Mr. Whitman?
24  A.  Yes.
25  Q.  After that did you have any further
```

1       conversations with Mr. Daddario regarding

2       that claim?

3  A. I believe that sometime within the next

4       month or so I called Mr. Daddario to ask

5       on the status of the investigation.

6  Q. Sometime in December or 2002 or January of

7       2003?

8  A. I would say it probably would have been

9       January to February 2003.

10  Q. Did you speak with Mr. Daddario?

11  A. I don't recall if I spoke on that occasion

12       to Mr. Daddario or to Mr. DiVincentis.

13  Q. How did you bill Mr. Caiazzo for your

14       time?

15  A. I hadn't been.

16  Q. Were you keeping track of the work that

17       you were doing for him?

18  A. I was not keeping any formal time records,

19       no.

20  Q. You wouldn't have any billing records for

21       these different telephone conversations?

22  A. No.

23  Q. Were you keeping any notes regarding these

24       telephone conversations?

25  A. I don't recall keeping any notes, no.

1   Q.  In review of the file materials before the

2       deposition today, did you see any notes

3       regarding these conversations?

4   A.  I did not.

5   Q.  Sometime in January or February of 2003

6       you spoke to either Mr. Daddario or Mr.

7       DiVincentis?

8   A.  Yes.

9   Q.  You don't recall which one?

10  A.  Well, I think from my recollection I

11      initially attempted to speak to Mr.

12      Daddario and he may not have been in the

13      office that occasion and I spoke to -- if

14      he wasn't in the office, I would have

15      spoken to Mr. DiVincentis.  I was trying

16      to determine the status of the

17      investigation.

18  Q.  Did you obtain an update in January or

19      February of 2003 regarding the claim?

20  A.  At that point I believe that Mr.

21      DiVincentis or Mr. Daddario informed me

22      that the insurance company that had

23      carried the liability policy for Cai's Pub

24      in Malden did not have a record of a

25      policy that covered the period of the

# **EXHIBIT 25**

# THOMAS P. COLLINS
## ATTORNEY AT LAW
### 10 MAIN STREET
### SUITE L9
### ANDOVER, MASSACHUSETTS 01810



#### Tel. No. 1 (978) 475-8846
#### Fax No. 1 (978) 475-7947

May 16, 2003

Mr. Joseph DiVincentis
Medallion Insurance Company
110 Florence Street
Malden, MA. 02148

Re: Joseph Cuttichia v. Donna's Pub, Inc. d/b/a Cai's
    Malden District Court Docket No. 9850CV 0237

Dear Mr. DiVincentis,

I have been able to complete the following research into the above referenced matter that I have been discussing with you and your staff. It is my hope that this information, together with the package that I had previously faxed to Jack Dadario of your office shall aid in the processing of the claim for reimbursement of the funds paid by Steve Caiazzo in settlement of this matter.

From the Court records, the following are the apparent facts that led to the payment of $ 35,000.00 in settlement of the claim at the time of the closing on real estate owned by Mr. Caiazzo located at 19-21 Skipper Way, Gloucester, MA. on April 23, 2003.

The incident occurred on September 13, 1996 when Mr. Cuttichia, who was allegedly a patron in the Cai's establishment was struck in the face by another patron at approximately 1:30 AM. The police were evidently not called, and the victim did not seek medical attention until 10:00 AM the following morning at Lawrence Memorial Hospital Emergency Room in Medford, MA. at that time he was treated for a 1 ½ " laceration on his left cheek, a swollen left eye and face. The cut was stitched, and x-rays were taken that revealed no fracture. The total medical bill was $ 741.00 of which the victim was responsible for $ 291.00.

No further treatment history was reported, nor was there any indication of permanent injury. He was released from the emergency room at 11:55AM that same morning. To the best of my knowledge there was never a licensing board hearing conducted on any complaints raised as a result of the incident.

Suit was commenced in 1998 with two separate counts for relief alleged. The first was a claim that the Defendant had negligently failed to train or retain help, the second a claim of negligent conduct of its business affairs in a manner that caused the injury to occur.

A default judgment entered after hearing on December 10, 1998. The Plaintiff claimed lost wages ( he is a self employed plasterer d/b/a Nino's Plastering in Medford, MA. ) of 3 weeks @ $750.00 / week for a total of $ 2250.00. Judge Cavanaugh, the presiding judge awarded the Plaintiff $ 24,900.00. Execution issued on February 2, 1999. The matter was enforced by a judgment in Essex Superior Court in late 2002, that awarded additional interest for a total recorded execution of approximately $ 41,000.00.

Mr. Caiazzo did not receive notice of the original suit in Malden, or the later Essex Superior Court matter. He was never called before the licensing board nor did the police investigate the incident. Please forward this information to the company who held the insurance policy covering the premises during the period of the incident.

I wish to also inquire concerning Mr. Caiazzo's claim for compensation for the loss of his personal and business memorabilia at the time that Harbor Realty took possession of the former Scuttlebutts location in Salem, MA. I believe that Jack Dadario was handling this claim.

Thank you for your interest and efforts in these matters

Very truly yours,

Thomas P. Collins

# **EXHIBIT 26**

EXHIBIT 4/
J. Collins
8-3-05
M. PICCIRILLI

# FIRST STATE MANAGEMENT GROUP, INC.

*150 Federal Street, Boston, MA 02110-1753    Tel. (617) 526-7600    FAX (617) 526-0600*

June 9, 2003

Thomas P. Collins, Esq.
10 Main Street
Suite L9
Andover, MA 01810

RE:    Insured:              Donna's Pub, Inc.
                             D/B/A Cai's Food & Spirits
       Claimant:            Joseph Cuticchia
       Date of Loss:        September 13, 1996
       Policy No.:          ZQ0002802
       Claim No.:           3054106

Dear Attorney Collins:

We represent Pacific Insurance Company, Limited for the above-referenced matter. This correspondence will serve to acknowledge receipt of a Summons and Complaint for the above-referenced matter. We incorporate these materials by reference as an attachment to this letter. The case was filed in the Malden District Court of Middlesex County under C.A. No.: 9850CV237.

Pacific Insurance Company, Limited issued to Donna's Pub, Inc. D/B/A Cai's Food & Spirits a liquor liability policy under policy number ZQ0002802, for the period of 08/29/96 to 08/29/97. The limits of liability are $500,000 each common cause and $500,000 aggregate.

Based upon the information that has been provided to date, Pacific Insurance Company, Limited is unable afford defense and indemnity coverage to Donna's Pub, Inc. D/B/A Cai's Food & Spirits in connection with any actions or proceedings relating to the above-captioned claim under the policy of insurance issued to it by Pacific.

In accordance with Liquor Liability Coverage Form CL161 (10-93), it states:

## SECTION I – LIQUOR LIABILITY COVERAGE

### 1. Insuring Agreement.

*WITH OFFICES IN ATLANTA, CHICAGO, LOS ANGELES, NEW YORK, SAN FRANCISCO*

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "injury" and settle any claim or "suit" that may result.

The Complaint alleges Mr. Cuticchia was a patron at Donna's Pub, Inc. D/B/A Cai's Food & Spirits located at 122 Commercial Street in Malden, Massachusetts. While at this location, Mr. Cuticchia was struck on the left eye by a bottle. The Complaint alleges further that this eye injury and subsequent damages arose out of the Negligent Hiring and Retention of insured employees; as well as the Negligent Maintenance of the insured premises. The Complaint makes no allegation that said negligence arose out of the "...selling, serving or furnishing of any alcoholic beverage". Therefore, we must deny defense and indemnity coverage to your client and our insured.

In addition to the aforementioned coverage denial, Pacific Insurance Company, Limited also reserves rights as a result of the following policy condition. Liquor Liability Coverage Form CL 161 (10-93) states:

### SECTION IV – LIQUOR LIABILITY CONDITIONS

### 2. Duties In The Event Of Injury, Claim Or Suit.

a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim.
   To the extent possible, notice should include:
   (1) How, when and where the "injury" took place;
   (2) The names and addresses of any injured persons and witnesses; and
   (3) The nature and location of any "injury" arising out of an occurrence.

b. If a claim is made or "suit" is brought against any insured, you must:
   (1) Immediately record the specifics of the claim or "suit" and the date received; and
   (2) Notify us as soon as practicable.
   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:
   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in
      Connection with the claim of "suit";
   (2) Authorize us to obtain records and information;
   (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization

which may be liable to the insured because of "injury" to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur

any expense, other than for first aid, without our consent.

Our investigation indicates that suit was filed for the above-referenced case on February 17, 1998. Service of the suit was made on March 3, 1998. A Request For Default Judgment was requested on April 1, 1998. Plaintiff's Motion for Assessment of Damages was filed on October 6, 1998. On October 21, 1998 the Court allowed the Motion for Assessment of Damages. Default Judgment entered on December 10, 1998 in the amount of $26,446.35. A Writ Of Execution On Money Judgment was issued on February 2, 1999 in the amount of $26,446.35. This Judgment was enforced in the Essex Superior Court in 2002 in the final amount of $41,000. You satisfied the Judgment at a real estate closing of the insured premises on April 23, 2003 for the amount of $35,000.

Pacific Insurance Company, Limited did not receive notice of this claim until May 27, 2003. The notification was dated May 16, 2003. As a result of the aforementioned policy condition, we must reserve our right to deny defense and indemnity coverage due to late notice of this claim and "suit".

In the event that you have additional information or materials, which you believe we should consider, please forward same to me at your earliest convenience. Thank you for your consideration of these matters. Please contact me if you have any questions or comments.

Sincerely,

C. J. Connon

C. J. Connon
Senior Claim Supervisor
Tel. No.: (617) 526-7624

Enclosure

CC: H.T. Bailey Insurance Agency, Inc.
22 Mill Street, Suite 403
Arlington, MA 02476

Jean D'Addario
The Medallion Insurance Agencies, Inc.
P.O. Box 367
Malden, MA 02148

JUN 1 0 2003