UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                            )
STEPHEN D. CAIAZZO,                         )
      Plaintiff                             )
                                            )          CIVIL ACTION NO.
v.                                          )          04-12627  RCL
                                            )
THE MEDALLION INSURANCE                     )
AGENCIES, INC.,                             )
      Defendant                             )
                                            )
_____)

### PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

      The plaintiff, Stephen D. Caiazzo ("Caiazzo"), submits this Response to Defendant's Statement of Facts in support of his opposition to defendant's motion for summary judgment. Caiazzo admits the numbered facts asserted by defendant to which he does not respond herein.

4.      Caiazzo admits that he did obtain an insurance agent's license in the Commonwealth of Massachusetts. However, this was in about 1976 while Caiazzo worked for a few months for Metropolitan Life selling life insurance policies. Defendant's Exhibit 1A, deposition of Caiazzo, pp. 18-21.

<div align="center">"Disability Policy" Claim</div>

5.      Caiazzo claims that he had a disability income policy in effect when he became disabled in August 2001.  Defendant Medallion Insurance Agencies, Inc. ("Medallion") claims that there is not evidence that such a policy existed.  However, Caiazzo requested a disability income policy to protect the income he was making and because he moved kegs of beer, cases of beer and liquor, tables and chairs and a stage for bands.  Defendant's Exhibit 5, Interrogatory Answer

PDF created with pdfFactory trial version www.pdffactory.com

No. 7.  John D'Addario of Medallion came to Caizzo's restaurant/bar and went over his income figures to complete the amount of coverage.  Caizzo had to submit tax returns to establish his income.  Id.  After Caiazzo's knee was reinjured in 2001, he called John D'Addario regarding his policy.  D'Addario told Caizzo that there was no policy. Caiazzo insisted that there was.  Id.  Caiazzo stated that he did receive disability policy in a package of policies with a quote for a year of coverage.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 138; Exhibit 1, attached hereto, which shows disability income (business income) in effect from 2/19/00 to 2/19/01.  However, Caiazzo stored the policy at his business and his personal property, including this policy, was thrown away by his commercial landlord after the doors to his business were locked.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 140.  Caiazzo also saw a copy of the cover sheet for this policy in the office of his attorney, Thomas Collins, in 2002.  Defendant's Exhibit 1B, deposition of Caiazzo, pp. 139-141.  Caiazzo then asked Attorney Collins to submit a claim under the policy to Medallion, but Attorney Collins failed to do so and failed to return Caiazzo's calls.  Defendant's Exhibit 1B, deposition of Caiazzo, P. 142.

6.     Caiazzo admits that he does not have cancelled checks for this disability income policy, but states that this disability income policy was part of a package of policies.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 138.   Thus, there would be no separate checks for this disability income policy.

7.     Caiazzo stated that his disability income policy was part of a package policy financed by Standard Funding.  Caiazzo stated that the documents used by Medallion at his deposition did not show any disability income policy or payment for same, but that he had received disability income policies.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 145.  The earlier policies were destroyed in a flood at Caiazzo's business in Malden.  Id. at p. 152.

PDF created with pdfFactory trial version www.pdffactory.com

8.      The financing agreement set forth in defendant's Exhibit 5, does not show that a disability income policy was financed on March 22, 2001.  Caiazzo stated that there was a delay in issuing the policy, so that it would not appear on the policies financed on March 22, 2001.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 160.

9.      Caiazzo admits that he has no documentation showing any disability income policy, but his policy documents were destroyed by a flood at his Malden business and other policy documents were later thrown away by third parties at his Salem bar/restaurant.  Defendant's Exhibit 1B, deposition of Caiazao, pp. 140, 152.  Caiazzo also told his attorney to assert a claim under the policy, but that Attorney Collins failed to do so and failed to send the disability income policy cover page to Caiazzo.  Id., pp. 139, 142.

10.     Caiazzo stated that the policy was to pay him $1,500.00 per week if he became disabled, that he saw the policy, but was not familiar with all of the policy provisions. Defendant's Exhibit 5, Interrogatory Answer No. 5; Defendant's Exhibit No. 1B, deposition of Caiazzo, pp. 155-156.

11.     Caiazzo admits that Attorney Collins stated that he did not see a disability policy for Caiazzo.  Caiazzo also admits that Attorney Collins said that he investigated whether a disability policy existed upon which to make a claim on behalf of Caiazzo and determined that there was no policy in existence.  However, Caiazzo saw a disability income policy cover sheet in Attorney Collin's office.  See  Response No. 5 above.  In addition, Caiazzo filed a complaint against Attorney Collins before the Board of Bar Overseers.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 142; Defendant's Exhibit 24, deposition of Attorney Collins, p. 14.  As a result, no one would believe that Attorney Collins would admit his mistakes.  In addition, Attorney Collins admitted that his "investigation" was only his contacting two worker's compensation companies to see if they issued policies to Caiazzo.  Exhibit 2, Affidavit of Dean Carnahan, par. 2.  Also,

3

PDF created with pdfFactory trial version www.pdffactory.com

Attorney Collins did not produce either of these two letters to the insurance companies of their responses. Id.

12.     Caiazzo has sued Attorney Collins for malpractice.  One of the claims in that action is that the $24,000.00 worker's compensation settlement was unreasonably low and that Attorney Collins failed to obtain documents which would have resulted in a much higher award.  Exhibit 2, Affidavit of Dean Carnahan, par. 3.

<u>Property Claim</u>

13.     Medallion states that its Exhibit 6 shows a cancellation by the finance company. However, Defendant's Exhibit 6 does not show a non-payment, but only shows a cancellation, which could be for other reasons.

16.     Caiazzo testified that he did not operate his bar/restaurant between January and March 2001 without any insurance since the prior year's insurance ran from March 2000 to March 2001.  Defendant's Exhibit No. 1B, pp. 220-221; Exhibit 1, attached hereto.  Defendant's Exhibit No. 8 is a request for a quote "with and without liquor."  This request left intact the original request for a quote including property insurance and business income (disability) coverage as shown in Defendant's Exhibit No. 7.

17.     Medallion states that its Exhibit 9 is a March 15, 2001 quotation including coverage for general liability and liquor liability.  However, Exhibit 9 is an actual quotation for general liability without any liquor liability dated January 9, 2001, including property coverage and disability coverage as in Defendant's Exhibit No. 7.  Medallion's Exhibit does state, "As discussed, prefer to pass on property due to fact that applicant has been bare."  This was not what Caiazzo discussed with Medallion.  <u>See</u> following Response No. 18.  Caiazzo was never "bare"

4

PDF created with pdfFactory trial version www.pdffactory.com

regarding his insurance coverage, but only in the shower and in bed with his wife while they were together.  The quotation makes no sense and was not the coverage Caiazzo requested.

18.    Caiazzo denies that he declined property coverage.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 212, where Caiazzo states that he discussed the reduction of his total annual premium by reducing the coverage for liquor liability from $1M to $500,000.00 and by eliminating the coverage for business interruption. Id., pp. 212-213.  Medallion asserts that Exhibit 10 shows that Caiazzo declined property coverage.  However, Defendant's Exhibit 10 only shows general liability coverage.  It says in handwriting that it is for general liability and liquor liability, but the actual printed language says it is for general liability with an exclusion for liquor liability.  Exhibit 10 does not show that property coverage was excluded or declined.

19.    Defendant's Exhibit 10 only shows part of the package, which is general liability coverage.

20.    The finance agreement (Defendant's Exhibit 11) is only for general liability, liquor liability and worker's compensation coverage.  It does not address, include or exclude property coverage.  It was not the policy package he discussed with Medallion.  See Response No. 18 above.

27.    Caiazzo also seeks to recover for the loss of his own personal property as well as the corporate property he purchased from the bankruptcy trustee.  See Exhibit 3, attached hereto.

28.    Caiazzo did not list his own personal property in the corporate bankruptcy and he was not required to do so.

29.    See preceding Response No. 28.

30.    There was no need to list this current lawsuit in the bankruptcy Statement of Affairs because this is a personal and individual action of Caiazzo and it has nothing to do with the

PDF created with pdfFactory trial version www.pdffactory.com

corporate bankruptcy.

36.     Caiazzo's personal property would be covered under a policy issued to Jenna's Pub, Inc. Exhibit 4, attached hereto, showing coverage for personal property of others located in the premises.

37.     Attorney Collins testified that the only "investigation" he made as to whether property coverage existed was an inquiry to Medallion.  Defendant's Exhibit 24, deposition of Attorney Collins, p. 18.  Caiazzo admits that Attorney Collins testified that Caiazzo has no basis for any claim for his loss of personal property.  However, Caiazzo did sue Beverly Co-operative Bank and Harbor Rental and Realty, Inc. for this property loss, which resulted in a jury verdict in his favor in the amount of $25,000.00.  Exhibit 2, Affidavit of Dean Carnahan, par. 4.

38.     See previous Response No. 37.

<div align="center">Liability Claim</div>

40.     Caiazzo admits that the summons and complaint were served in hand to Karen Ware, an employee of Caiazzo's business.  However, Caiazzo testified that he did not remember if he saw the summons and complaint and that if he had seen them, he would have given them to Medallion.  Defendant's Exhibit 1A, deposition of Caiazzo, pp. 94-95. Caiazzo testified that he received a letter from Cuttichia's attorney before suit was filed, called John D'Addario of Medallion and that D'Addario came to Caiazzo's restaurant/bar and picked up the letter. Defendant's Exhibit 1A, deposition of Caiazzo, pp. 58-59; See Exhibit 5, attached hereto.  This Exhibit shows letters from Cuttichia's attorney dated 11/5/96 and 1/9/97.  The 11/5/97 letter references a prior 9/30/96 letter.  This is important because Medallian says that its computer system and paper files did not go back to 1996. Id., p. 3.  Medallion also stated that it appeared that its files regarding this claim had been lost when they moved.  Thus, it appears that

PDF created with pdfFactory trial version www.pdffactory.com

Medallion lost the letter or letters Caiazzo gave to John D'Addario regarding the claim.  Caiazzo testified that he had been in business as a bar owner since 1982.  Id., p. 38.  He also testified that he has had four or five fights in his bar/restaurants and whenever he learns of a claim, he submits it to his insurance agent.  Id., p. 72.

41.    Caiazzo was not aware of the defaults, assessments of damages or judgments against him until late 2002 or early 2003.  Defendant's Exhibit 1A, deposition of Caiazzo, p. 85.  Attached hereto as Exhibit 7 are the documents Caiazzo's wife withheld from Caiazzo for several months. These documents are dated from March 26, 2002 through October 7, 2002.

43.    Caiazzo was not aware of the Superior Court default judgment entered in December 2002.  Defendant's Exhibit 1A, deposition of Caiazzo, p. 85.  Medallion refers to a court order attached as its Exhibit 22, but this court order does not appear in Exhibit 22.

44.    Caiazzo learned of the judgment against him just before a real estate attachment was allowed, execution issued and a lien was placed on his personal real estate.  Defendant's Exhibit 1B, deposition of Caiazzo, p. 114.  Caiazzo stated that he thought Cuttichia had moved to Canada or dropped his case.  Id., p. 115.  Caiazzo testified, "Do you honestly think I would allow someone to go unnoticed over at court and have them apply a $36,000.00 lien on my property without defending at all?"  Id.

46.    Defendant asserts that Caiazzo, through his attorney, first notified Medallion of the Cuttichia claim in December 2002.  However, Caiazzo reported the claim to John D'Addario of Medallion before the suit was filed.  Defendant's Exhibit No. 1A, deposition of Caiazzo, pp. 58-59; Exhibit 5, attached hereto.

53.    Medallion submitted the claim to the liquor liability carrier, which was the incorrect insurance company.  This insurance denied the claim because the incident did not arise from the

7

selling or furnishing of alcohol and was not covered under the liquor liability policy.  Medallion should have sent the claim to the general liability carrier.

54.    Attorney Collins testified that he became aware of the Cuttichia matter in December 2002 and spoke with John D'Addarion about it in December 2002.  Defendant's Exhibit 24, deposition of Attorney Collins, pp. 40-41.  This would have been sufficient time for an attorney to appear in court before execution was issued on February 10, 2003.  Defendant's Exhibit 22.

<u>Additional Facts</u>

55.    Caiazzo filed a complaint against Medallion with the Division of Insurance.  *See* Exhibit 8, attached hereto.  John D'Addario responded saying that the liability policy and liquor liability policy were cancelled on 12/15/01.  Id., pp. 1-2.  Caiazzo responded pointing out that a cancellation on 12/15/01 was after his business had closed and had nothing to do with a claim arising in September 2001.  Id., pp. 3-4.

By Plaintiff's Attorney,

/s/ Dean Carnahan
DEAN CARNAHAN
BBO #074580
LAW OFFICES OF DEAN CARNAHAN
51 Newcomb Street
Arlington, MA  02474
(781) 641-2825
ddcarnahan@rcn.com

Dated:  April 3, 2004

8

PDF created with pdfFactory trial version www.pdffactory.com

<u>CERTIFICATE OF SERVICE</u>

      I, Dean Carnahan, hereby certify that on this day I served this pleading on defendant by filing through the ECF system which will send the pleading electronically to Kerry D. Florio, Attorney for the Defendant.


Date: April 3, 2006                    /s/ Dean Carnahan                 
                                      DEAN CARNAHAN


B-2274-RSF

PDF created with pdfFactory trial version www.pdffactory.com

# EXHIBIT 1

No. **S007808**

Renewal of Number
New



**GENERALI**

Assicurazioni Generali
United States Branch
One Liberty Plaza, New York, N.Y. 10006

CANCEL

Item 1. Named Insured and Mailing Address          (No., Street, Town, County, State, Zip)
Jenna's Pub, Inc. d/b/a
Scuttlebutts
73 Lafayette Street
Salem                          MA     01970

**International Excess & Treaty Managers, Inc.**
**400 Massasoit Avenue - Suite 113**
**East Providence, RI 02914**
401-434-6180

Item 2.   Policy Period          Years
          From          02/19/00     to     02/19/01     12:01 A.M., standard time at the address of the named insured as stated herein.

Item 3.   The named insured is
          [ ] Individual    [ ] Partnership   [x] Corporation   [ ] Joint Venture   [ ] Other:

Item 4.   Designated Premises (enter below)                                              Occupancy of Premises
                                                                                         Tavern
          No. 1   Same
          No. 2
          No. 3

          [ ] Additional buildings or premises as designated on Supplemental Declarations attach

Item 5.   Insurance is provided with respect to the designated premises and with respect to those coverages and kinds of property for which a specific limit of
          liability is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof.

| SECTION I PROPERTY COVERAGE | | | Building(s) | Personal Property of the Insured | Personal Property of Others | DEDUCTIBLE | |
|---|---|---|---|---|---|---|---|
| | | | | | | each occurrence | aggregate each occurrence |
| Coinsurance Percentage Applicable | | | 80 % | 80 % | % | $1,000.00 | —— |
| Limit of Liability | Loc. No. | Bldg. No. | | | | no deductible stated above, the deductible shall b | |
| | 1 | 1 | | $150,000.00 | | | |
| | 1 | 1 | $30,000.00 | (Improvement & | Betterment) | $100 | $1,000 |
| | 1 | 1 | $2,000.00 | (Awning) | | each occurrence | aggregate each occurrence |

Additional Cov. (Specify)        Earnings per MP1593                    **NO FLAT CANCELLATIONS PERMITTED**

| SECTION II LIABILITY COVERAGE | SMP-LIABILITY INSURANCE | | | | Bodily Injury Liability | Property Damage Liability | Premises Medical |
|---|---|---|---|---|---|---|---|
| | Bodily Injury & Property Damage Liability | | Premises Medical Payments | | IF NO LIMIT SHOWN FOR SMP-LIABILITY INSURANCE REFER TO COVERAGE PART OR ENDORSEMENT | | |
| | Combined Single Limit | | | | | | |
| Limit of Liability | each occurrence | aggregate | each person | each accident | | | |
| | See L6112 | See L6112 | See L6111 | See L6111 | | | |

Additional Cov. (Specify)

Audit Per: Non-Auditable Unless Indicated By an "X".   [X] Annual   [ ] Semi-Annual   [ ] Quarterly   [ ] Monthly   [ ] Other:

| [ ] | SECTION III - CRIME COVERAGE | } As stated in the endorsement, made part of this Policy, if Indicated by [x] |
|---|---|---|
| [ ] | SECTION IV - BOILER AND MACHINERY COVERAGE | |

Item 6.  Forms & Endorsements made part of this policy at time of issue in addition to Special Multi-Peril Policy Conditions & Definitions(insert no. and edition d
         IEX-GEMA, MP0107, MP0101
         a. Section  I - Forms and Endorsements Only:       IEX-GEMA, MP0107, MP0090, MP0101, MP0014, MP0013, IEX-162, IL0014, MP0420, IEX-184,
                                                            IEX-160
         b. Section  II - Forms and Endorsements Only:      IEX-GEMA, MP9991, MP0093, L6113a, L9194, IEX-161, IEX-129, L6112, L6111, IL0014
         c. Section III - Forms and Endorsements Only:
         d. Section IV - Forms and Endorsements Only:

Item 7.  Mortgage Clause: Subject to the provisions of the mortgage clause, loss on building items shall be payable to: (insert Name(s) of Mortgagee(s) &
         mailing address(es))

         Salem Lafayette, LLC c/o Stven Faber, 1238 Washington Street, Canton, MA 02021

Item 8.  The Total Advance Premium is:  (enter below)
         **$4,400.00** , and is payable      **$4,400.00**   at inception, and    N/A   at each anniversary.

         [ ] NOT APPLICABLE  Unless Indicated by X in the box as "NOT APPLICABLE", the premium for installments subsequent to the initial
             installment shall be subject to adjustment on the basis of the rates in effect at each anniversary date.

         Countersignature Date          **04/12/00**

                                                        Thomas A Kelly
                                                        Authorized Signature

*Package Policy*

*Location:  73 Lafayette Street Salem  MA 01970*

*Company:  Generali US Branch*

*Effective:  02/19/2000 - 02/19/2001*

| *Coverage: Business Personal Property* | *$ 150,000* |
|---|---|
| *Loss of Earnings* | *$ 125,000* |
| *Deck Addition* | *$   30,000* |
| *Awning* | *$     2,000* |
| *Deductible* | *$     1,000* |

*\*\*80% Co-Insurance-Replacement Cost*
*All Risk excluding flood & earthquake*

| *Comprehensive General Liability* | |
|---|---|
| *General Aggregate* | *$1,000,000* |
| *Products/Completed Operations* | *$1,000,000* |
| *Personal & Advertising Injury* | *$1,000,000* |
| *Each Occurrence* | *$1,000,000* |
| *Fire Legal* | *$    50,000* |
| *Medical Payments* | *$      5,000* |

*\*\*\*Based on total sales of $1,000,000*

## *LIQUOR LIABILITY*

*Company:* **Generali US Branch**

*Effective:*  **02/19/2000 – 02/19/2001**

*Coverage: Each Common Cause:*    **$1,000,000**
           *Aggregate:*          **$1,000,000**

*\*\*(Premium based on $800,000 liquor receipts)*

| *EXPIRING PREMIUM* | | *RENEWAL PREMIUM* |
|---|---|---|
| *Based on total receipts: $500,000* | | *$1,000,000* |
| *Liquor receipts:* | *$400,000* | *$ 800,000* |
| | | |
| *Contents:* | *$150,000* | *$ 150,000* |
| *Business Income:* | *$120,000* | *$ 125,000* |
| *Awning:* | *$ 2,000* | *$ 2,000* |
| *Deck Addition:* | | *$ 30,000* |
| | | |
| *$ 11,200.00* | | *$ 11,245.72* |

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                          )
STEPHEN D. CAIAZZO,                       )
      Plaintiff                         )
                                          )        CIVIL ACTION NO.
v.                                        )        04-12627  RCL
                                          )
THE MEDALLION INSURANCE                   )
AGENCIES, INC.,                           )
      Defendant                         )
                                          )
_____)

## AFFIDAVIT OF DEAN CARNAHAN

      I, Dean Carnahan, under oath, state the following:

1.      I am the attorney for Stephen D. Caiazzo, the plaintiff in this action.

2.      On August 3, 2005. I attended the deposition of Attorney Collins taken by Medallion's attorneys.  At that deposition:

      a.      Attorney Collins testified that he first learned of the personal injury claim against Caiazzo in December 2002 and that he sent a letter to Medallion on December 14, 2002;

      b.      Attorney Collins testified that he never saw any documents relating to a disability income policy for Caiazzo; and

      c.      Attorney Collins was not asked if he had any policy documents showing personal or business property coverage when Caiazzo's property was lost.

3.      In July 2005, Attorney Collins produced his files relating to Caiazzo's claims against Medallion (and other claims) pursuant to a subpoena from Medallion's attorneys.  His files did not contain notes or memoranda of conversations with Caiazzo, but only correspondence, pleadings and other documents sent or received by Attorney Collins.  In the documents produced:

      a.      There were no documents for 1998 and no documents until 2002 regarding the personal injury claim against Caiazzo;

PDF created with pdfFactory trial version www.pdffactory.com

b.    There were no documents concerning a disability income policy for Caiazzo; and

c.    There were no documents showing personal or business property coverage in effect at the date of loss or for any other dates.

Signed under the pains and penalties of perjury this 5th day of October 2005.


/s/ Dean Carnahan
Dean Carnahan


B-2274-DCAFF

PDF created with pdfFactory trial version www.pdffactory.com

# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF MASSACHUSETTS**
Proceeding Memorandum/Order of Court

In re:  Jenna's Pub Inc.                                                    Case#:  01-14500    Ch: 7

DOCKETED

**MOVANT/APPLICANT/PARTIES:**
1.  #80 Motion of Chapter 13 Trustee for Authority to Conduct Private Sale of
Restaurant Property
        Notice of Sale
    #90 Offer to Purchase by F. K. Landolphi
    #100 Objection to Trustee's Notice of Intended Private Sale of Restaurant
Property Free and Clear of Liens, Claims and Encumbrances
(Yellin, Sheehan) (obj. 11/21/01 by 4:00)

**OUTCOME:**

____ By Agreement of the Parties

____ Granted - Approved - Sustained
____ Denied - Denied without prejudice - Withdrawn in open court - Overruled
____ OSC enforced/released

____ Continued to:_____ For:_____

____ Formal order/stipulation to be submitted by:_____ Date due_____
____ Findings and conclusions dictated at close of hearing incorporated by reference.

____ Taken under advisement:  Brief(s) due_____ From_____

                                Response(s) due_____ From_____

____ Fees allowed in the amount of:_$_____ Expenses of:_$_____

____ No appearance/response by:_____

____ DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:

#50. Sale approved to Caiazzo for $5,500.00.

Trustee may abandon neon signs.

IT IS SO NOTED:

_Patrick F. Heaney_
Courtroom Deputy

IT IS SO ORDERED:

_William C. Hillman_  Dated: 11/28/N
William C. Hillman, U.S. Bankruptcy Judge

/03

# EXHIBIT 4

COINSURANCE CONTRACT

**SPECIAL MULTI-PERIL POLICY**
**SECTION I—SPECIAL PERSONAL PROPERTY FORM**

MP 00 14
(Ed 10 83)

## I. PROPERTY COVERED

**PERSONAL PROPERTY OF THE INSURED:** Business personal property owned by the insured and usual to the occupancy of the insured, including the insured's interest in personal property owned by others to the extent of the value of labor, materials and charges furnished, performed or incurred by the insured, all while (1) in or on the building(s). or (2) in the open (including within vehicles) on or within 100 feet of the designated premises

This coverage shall also include Tenant's Improvements and Betterments, meaning the insured's use interest in fixtures, alterations, installations or additions constituting a part of the building(s) occupied but not owned by the insured and made or acquired at the expense of the

insured exclusive of rent paid by the insured, but which are not legally subject to a removal by the insured

**PERSONAL PROPERTY OF OTHERS:** This insurance shall cover for the account of the owner(s) (other than the named insured) personal property belonging to others in the care, custody or control of the insured, while (1) in or on the building(s), or (2) in the open (including within vehicles) on or within 100 feet of the designated premises

Loss shall be adjusted with the named insured for the account of the owners of the property except that the right to adjust any loss with the owners is reserved to the Company and the receipts of the owners in satisfaction thereof shall be in full satisfaction of any claim by the named insured for which payments have been made.

## II. ADDITIONAL COVERAGE

**COLLAPSE**—This policy insures against risk of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following

  a  fire, lightning windstorm, hail explosion, smoke, aircraft, vehicles, riot; civil commotion, vandalism or malicious mischief  breakage of glass, falling objects  weight of snow, ice or sleet  water damage, all only as insured against in this policy

  b  hidden decay

  c. hidden insect or vermin damage,

  d  weight of people or personal property,

  e  weight of rain which collects on a roof.

  f  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation

This Company shall not be liable for loss to the following types of property, if otherwise covered in this policy, under items b., c., d., e. and f, unless the loss is a direct result of the collapse of a building

  outdoor radio or television antennas, including their lead-in wiring, masts or towers, awnings  gutters and downspouts  yard fixtures, outdoor swimming pools: fences; piers, wharves and docks. beach or diving platforms or appurtenances; retaining walls, walks  roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion

This Additional Coverage does not increase the amount(s) of insurance provided in this policy

## III. PROPERTY NOT COVERED

This policy does not cover

**A.** Property sold by the insured under conditional sale, trust agreement, installment payment or other deferred payment plan  after delivery to customers

**B.** Aircraft, watercraft  including motors  equipment and accessories (except rowboats and canoes, while out of water and on the designated premises) and automobiles, trailers  semi-trailers or any self-propelled vehicles or machines, except such property not licensed for use on public thoroughfares and operated principally on the premises of the insured

This provision does not apply to the following types of property when held for sale or sold but not delivered

  1  Watercraft (including motors  equipment and accessories) while not afloat.

  2. Motorcycles  motorscooters and snowmobiles, or

  3. Trailers designed for use with private passenger vehicles for general utility purposes or carrying boats

This provision does not apply to the following types of property when manufactured, processed or warehoused by the insured.

  1. Aircraft,

  2. Watercraft  including motors  equipment and accessories, while not afloat, or

  3. Automobiles  trailers  semi-trailers or any self-propelled vehicles or machines.

**C.** Personal property while waterborne

**D.** Household and personal effects contained in living quarters occupied by the insured  any officer, director, stockholder or partner of the insured or relatives of any of the foregoing, except as provided in the Extensions of Coverage

**E** Accounts, bills, currency  deeds, evidences of debt, money and securities.

**F.** Outdoor signs, whether or not attached to a building or structure.

**G** Growing crops and lawns

**H.** Property which is more specifically covered in whole or in part by this or any other contract of insurance  except for the amount of loss which is in excess of the amount due from such more specific insurance.

## IV. PROPERTY SUBJECT TO LIMITATIONS

The following property is subject to these additional limitations:

  1. Except for loss caused by the "specified perils"

   (a) Fur and fur garments are covered for  not exceeding loss in the aggregate of $2 500 in any one occurrence for all contributing insurance

   (b) Jewelry and watches  watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals are covered for not exceeding loss in the aggregate of $2,500

in any one occurrence for all contributing insurance. This limitation shall not apply to jewelry and watches valued at $50 or less per item.

   (c) Patterns  dies, molds, models and forms are covered for not exceeding loss  in the aggregate of $2 500 in any one occurrence for all contributing insurance.

   (d) Stamps, tickets and letters of credit are covered for not exceeding loss  in aggregate of $250 in any one occurrence for all contributing insurance.

2. Valuable papers and records meaning computer programs and books of account, manuscripts, abstracts, drawings, card index systems and other records including film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, are covered only against loss caused by the "specified perils".

3. Animals and pets are not covered, except when held for sale or sold but not delivered, and then only against death or destruction directly resulting from or made necessary by the "specified perils".

4. Outdoor trees, shrubs and plants are not covered, except: (a) when held for sale or sold but not delivered, and then only against direct loss by the "specified perils", or (b) as provided in the Extensions of Coverage.

5. Glass, glassware, statuary, marbles, bric-a-brac, porcelains and other articles of a fragile or brittle nature are covered against loss by breakage only if directly caused by the "specified perils".

This limitation shall not apply to bottles or similar containers of property for sale or sold but not delivered, nor to lenses of photographic or scientific instruments

6. Steam boilers, steam pipes, steam turbines and steam engines are not covered against loss caused by bursting, rupture, cracking or explosion originating therein (other than explosion of accumulated gases or unconsumed fuel within a fire box or combustion chamber).

7. Machines and machinery are not covered against loss caused by rupture, bursting or disintegration of their rotating or moving parts resulting from centrifugal or reciprocating force.

The term "specified perils" shall mean direct loss by fire, lightning, aircraft, explosion, riot, civil commotion, smoke, vehicles, windstorm or hail to property contained in any building, vandalism and malicious mischief leakage or accidental discharge from automatic fire protective systems.

## V. EXTENSIONS OF COVERAGE

Each of the limits of liability specified or the following Extensions of Coverage applies as an additional amount of insurance. The Coinsurance Clause shall not apply to loss under the Extensions of Coverage.

The total amount recoverable under the Extensions of Coverage in this form and Extensions of Coverage in any other form made a part of this policy are not cumulative and shall not exceed the largest amount recoverable under any single form made a part of this policy.

When, in accordance with the Other Insurance condition, there is Contributing Insurance, the Company shall not be liable for more than its pro rata share of the limits set forth in the following Extensions of Coverage.

A. Property at Newly Acquired Locations: The insured may apply up to 10% of the limit of liability specified for Personal Property of the Insured, but not exceeding $10,000, to cover direct loss in any one occurrence by a peril not otherwise excluded to such property at any location (except fairs and exhibitions) acquired by the insured for similar occupancies or warehousing purposes, elsewhere than at the designated premises within the territorial limits of this policy. This coverage shall cease 30 days from the date of such acquisition or on the date values at such locations are reported to the Company, or on the expiration date of the policy, whichever occurs first. Additional premium shall be due and payable for values so reported from the date the property is acquired

B. Personal Effects: The insured may apply up to $500 to cover direct loss in any one occurrence by the perils not otherwise excluded to personal effects while located on the designated premises, belonging to the insured, officers, partners or employees thereof, and limited to $100 on personal effects owned by any one individual. This Extension of Coverage does not apply if the loss is covered by any other insurance whether collectible or not, or which would have been covered by such other insurance in the absence of this policy. At the option of the Company, loss under this Extension of Coverage may be adjusted with and payable to the insured.

C. Valuable Papers and Records: The insured may apply up to $500 to cover direct loss in any one occurrence by a peril not otherwise excluded to valuable papers and records consisting of computer programs and books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records, all the property of the insured at designated premises. This Extension of Coverage covers only the cost of research and other expense necessarily incurred by the insured to reproduce, replace or restore such valuable papers and records. The total amount payable in any one occurrence under this Extension of Coverage shall not exceed the limit specified above, regardless of the number of premises designated in the Declarations.

D. Outdoor Trees, Shrubs and Plants: The insured may apply up to $1,000 to cover outdoor trees, shrubs and plants at the designated premises against direct loss in any one occurrence by the perils of fire, lightning, explosion, riot, civil commotion or aircraft, but only to the extent such perils are insured against herein. The Company shall not be

liable for more than $250 on any one tree, shrub or plant, including expense incurred for removing debris thereof

E. Extra Expense. The insured may apply up to $1,000 to cover the necessary extra expense incurred by the insured in order to continue as nearly as practicable the normal operations of the insured's business immediately following damage by a peril not otherwise excluded under this form to the buildings or personal property situated at the designated premises

Extra expense means the excess of the total cost incurred during the period of restoration chargeable to the operations of the insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred. Any salvage value of property obtained for temporary use during the period of restoration which remains after the resumption of normal operations shall be taken into consideration in the adjustment of any loss hereunder

"Period of restoration" means that period of time commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of said buildings or personal property as have been damaged

The Company shall not be liable under this Extension of Coverage for

1. loss of income,

2. the cost of repairing or replacing any of the described property, or the cost of research or other expense necessary to replace or restore computer programs and books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records that have been damaged by a peril not otherwise excluded, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing the total amount of extra expense. In no event shall such excess exceed the amount by which the total extra expense otherwise payable under this Extension of Coverage is reduced, or

3. any other consequential or remote loss

2. Valuable papers and records meaning computer programs and books of account, manuscripts, abstracts, drawings, card index systems and other records including film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, are covered only against loss caused by the "specified perils".

3. Animals and pets are not covered, except when held for sale or sold but not delivered, and then only against death or destruction directly resulting from or made necessary by the "specified perils".

4. Outdoor trees, shrubs and plants are not covered, except: (a) when held for sale or sold but not delivered, and then only against direct loss by the "specified perils", or (b) as provided in the Extensions of Coverage.

5. Glass, glassware, statuary, marbles, bric-a-brac, porcelains and other articles of a fragile or brittle nature are covered against loss by breakage only if directly caused by the "specified perils".

This limitation shall not apply to bottles or similar containers of property for sale, or sold but not delivered, nor to lenses of photographic or scientific instruments.

6. Steam boilers, steam pipes, steam turbines and steam engines are not covered against loss caused by bursting, rupture, cracking or explosion originating therein (other than explosion of accumulated gases or unconsumed fuel within a fire box or combustion chamber).

7. Machines and machinery are not covered against loss caused by rupture, bursting or disintegration of their rotating or moving parts resulting from centrifugal or reciprocating force.

The term "specified perils" shall mean direct loss by fire, lightning, aircraft, explosion, riot, civil commotion, smoke, vehicles, windstorm or hail to property contained in any building, vandalism and malicious mischief, leakage or accidental discharge from automatic fire protective systems.

## V. EXTENSIONS OF COVERAGE

Each of the limits of liability specified or the following Extensions of Coverage applies as an additional amount of insurance. The Coinsurance Clause shall not apply to loss under the Extensions of Coverage.

The total amount recoverable under the Extensions of Coverage in this form and Extensions of Coverage in any other form made a part of this policy are not cumulative and shall not exceed the largest amount recoverable under any single form made a part of this policy.

When, in accordance with the Other Insurance condition, there is Contributing Insurance, the Company shall not be liable for more than its pro rata share of the limits set forth in the following Extensions of Coverage.

A. Property at Newly Acquired Locations: The insured may apply up to 10% of the limit of liability specified for Personal Property of the Insured, but not exceeding $10,000, to cover direct loss in any one occurrence by a peril not otherwise excluded to such property at any location (except fairs and exhibitions) acquired by the insured for similar occupancies or warehousing purposes, elsewhere than at the designated premises within the territorial limits of this policy. This coverage shall cease 30 days from the date of such acquisition or on the date values at such locations are reported to the Company, or on the expiration date of the policy, whichever occurs first. Additional premium shall be due and payable for values so reported from the date the property is acquired.

B. Personal Effects: The insured may apply up to $500 to cover direct loss in any one occurrence by the perils not otherwise excluded to personal effects while located on the designated premises, belonging to the insured, officers, partners or employees thereof, and limited to $100 on personal effects owned by any one individual. This Extension of Coverage does not apply if the loss is covered by any other insurance, whether collectible or not, or which would have been covered by such other insurance in the absence of this policy. At the option of the Company, loss under this Extension of Coverage may be adjusted with and payable to the insured.

C. Valuable Papers and Records: The insured may apply up to $500 to cover direct loss in any one occurrence by a peril not otherwise excluded to valuable papers and records consisting of computer programs and books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records all the property of the insured at designated premises. This Extension of Coverage covers only the cost of research and other expense necessarily incurred by the insured to reproduce, replace or restore such valuable papers and records. The total amount payable in any one occurrence under this Extension of Coverage shall not exceed the limit specified above, regardless of the number of premises designated in the Declarations.

D. Outdoor Trees, Shrubs and Plants: The insured may apply up to $1,000 to cover outdoor trees, shrubs and plants at the designated premises against direct loss in any one occurrence by the perils of fire, lightning, explosion, riot, civil commotion or aircraft, but only to the extent such perils are insured against herein. The Company shall not be liable for more than $250 on any one tree, shrub or plant, including expense incurred for removing debris thereof.

E. Extra Expense: The insured may apply up to $1,000 to cover the necessary extra expense incurred by the insured in order to continue as nearly as practicable the normal operations of the insured's business immediately following damage by a peril not otherwise excluded under this form to the buildings or personal property situated at the designated premises.

"Extra expense" means the excess of the total cost incurred during the period of restoration chargeable to the operations of the insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred. Any salvage value of property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

"Period of restoration" means that period of time, commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of said buildings or personal property as have been damaged.

The Company shall not be liable under this Extension of Coverage for:

1. loss of income;

2. the cost of repairing or replacing any of the described property or the cost of research or other expense necessary to replace or restore computer programs and books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records that have been damaged by a peril not otherwise excluded, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing the total amount of extra expense. In no event shall such excess exceed the amount by which the total extra expense otherwise payable under this Extension of Coverage is reduced; or

3. any other consequential or remote loss.

# EXHIBIT 5

LAW OFFICES
OF
STEVEN R. WHITMAN
197 PORTLAND STREET
BOSTON, MASSACHUSETTS 02114-1716
TEL. (617) 227-8118
FAX. (617) 523-1345

WALTHAM • (617) 893-8118
WOBURN • (617) 937-8118

STEVEN R. WHITMAN*
RONALD W. DUNBAR, JR.

*ALSO ADMITTED IN FLORIDA

November 5, 1996

Mr. Stephen Ciazzo
307 Edgemere Road
Lynnfield, MA 01940

Re:    Joseph Cuticchia

Dear Mr. Ciazzo:

        As you know, on September 30, 1996, this office sent you a letter regarding Mr.
Cuticchia who was injured while at Cias. As of today, I have not heard from your insurance
company regarding this incident. If this office does not hear from your insurance company
within fifteen days (15), we will file a lawsuit against you. Do not directly contact this office.
Simply forward this notice to your insurance company immediately.    Govern yourself
accordingly.

Sincerely,

Ronald W. Dunbar, Jr.

c:\wp51\rwd\cuti0930.96

LAW OFFICES
OF
## STEVEN R. WHITMAN
197 PORTLAND STREET
BOSTON, MASSACHUSETTS 02114-1716
TEL. (617) 227-8118
FAX. (617) 523-1345

WALTHAM • (617) 893-8118
WOBURN • (617) 937-8118

STEVEN R. WHITMAN•
RONALD W. DUNBAR, JR
STEVEN M. CARR

•ALSO ADMITTED IN FLORIDA

January 9, 1997

Cias
131 Exchange Street
Malden, MA 02148
Attn: Stephen Ciazzo

RE:    Joseph Cuticchia

Dear Mr. Ciazzo:

As you know, on September 30, 1996, this office sent you a letter regarding Mr. Cuticchia who was injured while at Cias. As of today, I have not heard from your insurance company regarding this incident. If this office does not hear from your insurance company within fifteen (15) days, we will file a lawsuit against you. Do not directly contact this office. Simply forward this notice to your insurance company immediately. Govern yourself accordingly.

Sincerely,

Ronald W. Dunbar, Jr.
RWD/dmb
c:\wp51\dmb97\cuti0109 97

110 Florence Street
PO Box 367
Malden, MA 02148

Tel(781)324-4118
Fax(781)397-9270

**The Medallion
Insurance Agencies,
Inc.**



| To | Commercial Liability Claims | | **From:** | Jean D'Addario |
|---|---|---|---|---|
| **Co:** | RCA | | **Email:** | |
| **Fax:** | 413-739-7416 | | **Pages:** | |
| **Phone:** | 800-851-9200 | | **Date:** | 2/28/2003 |
| **Insured:** | Stephen Caiazzo/Donna's Pub | | **CC:** | |
| **RE:** | General Liability, | | | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

Dear RCA,

Please see the attached legal documents that were received in our office regarding the above mentioned. I am not sure whether this was written through RCA or not as the date of loss is 9/13/96.

Our computer system and our paper files do not go back to 1996.

Thanks for your help in this matter.

Sincerely,

# EXHIBIT 6

110 Florence Street
PO Box 367
Malden, MA  02148

Tel(781)324-4118
Fax(781)397-9270

**The Medallion
Insurance Agencies,
Inc.**

# Fax

| To: | Claims Dept. | From: | Jean D'Addario |
|-----|--------------|-------|----------------|
| **Cc:** | HT Bailey | **Email:** | |
| **Fax:** | 781-646-3911 | **Pages:** | |
| **Phone:** | 781-641-4400 | **Date:** | 4/25/2003 |
| **Insured:** | Donna's Pub Inc. dba Cai's Food & | **CC:** | |
| | Spirits | | |
| **RE:** | Pacific : Liquor Liability: Pol # ZQ0002802 | | *Policy Period - 8/96 - 8/97* |
| | Interstate: Gen Liab: Pol#IGL11025816 | | |
| | Claim: DOL: 9/13/1996 | | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

Please forward attached claim to both of the insurance companies named above.  We have been trying to locate our file and it appears it was lost when we moved and our files went to storage.  The lawyaer for our insured, Tom Collins, is requesting a copy of the policies.  Could you please request copies faxed to my attention as soon as possible.  Thank you so much.

Sincerely,

Jean D'Addario

**EXHIBIT 7**

ATTACHMENT 4

**Essex County Sheriff's Department** • PO Box 2019 • Salem, MA 01970 • 978-750-1900 ext. 3590

*Essex, ss.*

March 26, 2002

I hereby certify and return that on 03/22/02 at 4:45pm I served a true and attested copy of the summons and complaint, civil action cover sheet, tracking order and exhibits in this action in the following manner: To wit, by leaving at the last and usual place of abode of Caiazzo, Stephen, 54 Pleasant Street, Rockport, MA. and by mailing first class to the above address on 03/25/02. Fees: Service $10.00, Conveyance $4.50, Attest $4.00, P&H $1.95, Travel $6.60, Total Fees $27.05

_____ #911
*Deputy Sheriff*

∟ Deputy Sheriff Ulrick LaFontant

Dated: _____ , 20 ____ .

_____

N.B.    TO PROCESS SERVER:-
PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

| |
|---|
| , 20 . |

COMMONWEALTH OF
MASSACHUSETTS

SUPERIOR COURT
CIVIL ACTION
No.

ESSEX, ss.

Plaintiff(s)

v.

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)



STEPHAN D     CAIAZZO
85 HIGH ST APT 3
ROCKPORT     MA
01966217I



**Statement** for account number: 5544 5520 3362 0362

FIRST CARD®

| New Balance | Payment Due Date | Past Due Amount | Minimum Payment |
|---|---|---|---|
| $1,733.96 | 08/13/02 | $76.00 | $109.00 |

Amount Enclosed $ .

Make your check payable to First USA Bank, N.A.
New address or e-mail? Print on back

5544552033620362000109000017339б1

FIRST USA BANK, NA
P O. BOX 15153
WILMINGTON DE 19886-5153

STEPHAN D CAIAZZO
110A THATCHER ROAD
GLOUCESTER MA 01930

5001626

⑆5000160281⑆ 238 20336 2036 29⑈

1-2

FIRST CARD®

Statement Date: 06/20/02 - 07/19/02
Payment Due Date: 08/13/02
Minimum Payment Due: $109.00

CUSTOMER SERVICE
In U.S. 1-877-272-VISA
Español 1-888-446-3308
TDD 1-800-955-8060
Outside U.S. call collect
1-302-594-8200

## MASTERCARD ACCOUNT SUMMARY

Account Number: 5544 5520 3362 0362

| | |
|---|---|
| Previous Balance | $1,661.70 |
| Payments, Credits | - $0.00 |
| Purchases, Cash, Debits | + $35.00 |
| Finance Charges | + $37.26 |
| New Balance | $1,733.96 |

| | |
|---|---|
| Total Credit Line | $3,000 |
| Available Credit | $0 |
| Cash Access Line | $3,000 |
| Available for Cash | $0 |

ACCOUNT INQUIRIES
P.O. Box 8650
Wilmington, DE 19899-8650

PAYMENT ADDRESS
P.O. Box 15153
Wilmington, DE 19886-5153

## TRANSACTIONS

| Trans Date | Reference Number | Merchant Name or Transaction Description | Amount Credit | Amount Debit |
|---|---|---|---|---|
| 07/19 | | LATE FEE | | $35.00 |
| 07/19 | | *FINANCE CHARGE* | | 37.26 |

WE CAN HELP YOU KEEP YOUR CREDIT CARD

Stephen Caiazzo
54 Pleasant Street
Rockport, MA 01966

CAEA057   0136639C6 160S 17 03/10/02
NOTIFY SENDER OF NEW ADDRESS
CAIAZZO
65 HIGH ST APT 3
ROCKPORT MA 01966-2171

LAW OFFICES OF
STEVEN R. WHITMAN
197 PORTLAND STREET
BOSTON, MASSACHUSETTS 02114-1716

LAW OFFICES
OF
STEVEN R. WHITMAN
197 PORTLAND STREET
BOSTON, MASSACHUSETTS 02114-1716
TEL. (617) 227-8118
FAX. (617) 523-1345

WALTHAM • (781) 893-8118
WOBURN • (781) 937-8118
MALDEN • (781) 662-8118

STEVEN R. WHITMAN*
DANIEL P. MUNNELLY

*ALSO ADMITTED IN FLORIDA

TARA M. HOLMES, CLA
PARALEGAL

August 28, 2002

Essex Superior Court
Civil Clerk's Office
34 Federal Street
Salem, MA 01970

Re:    Joseph Cuticchia v. Donna's Pub d/b/a Cias and Stephen Caiazzo
       Essex Superior Court, Civil Action No: 02-0498
       Our File No: SW1794

Dear Sir/Madam:

Enclosed please find the following with reference to the above entitled action:

1.    Request for Default and
2.    Certificate of Service.

Kindly docket and file same.

Thank you.

Very truly yours,

Daniel P. Munnelly

enclosures
S:\WP9\cttxt\cut\072802.wpd

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

**ESSEX SUPERIOR COURT
CIVIL ACTION NO: ESCV2002-00498**

)
JOSEPH CUTICCHIA             )
    PLAINTIFF           )
                    )
v.                       )      **REQUEST FOR DEFAULT**
DONNA'S PUB, INC. d/b/a CIAS and  )
STEPHEN CAIAZZO        )
    DEFENDANTS       )
)

I, Daniel P. Munnelly, Esq. attorney for the above-named plaintiff, Joseph Cuticchia, states that the complaint in which a judgment for affirmative relief is sought against the defendants herein, was filed on March 14, 2002 and the Original Summons, copy of the Complaint, Civil Action Cover Sheet, and Tracking Order have been served on the defendant herein on March 22, 2002 as appears from the officer's return (a copy of which is attached); that the time within which the defendants shall serve a responsive pleading or otherwise defend pursuant to Rule 55(a), has expired and the defendant herein has failed to serve or file an answer or otherwise defend as to the complaint.

Wherefore, the plaintiff makes application that the defendants, Donna's Pub Inc and Stephen Caizzo be defaulted.

SIGNED UNDER THE PENALTIES OF PERJURY THIS _28_ DAY OF _August_ ___, 2002.

Plaintiff,
By His Attorney,

Daniel P Munnelly, Esq.
Law Office of Steven R. Whitman
197 Portland Street
Boston, MA 02114
(617) 227-8118
BBO# 631223
S:\WP9\ctd\Pleading\CourtForms\Ccuticchia082802.wpd

## CERTIFICATE OF SERVICE

I, Daniel P. Munnelly, attorney for the Plaintiff, hereby certify that I served a copy of the within document on the defendant, by mailing a copy of same, first class mail, to:

Stephen Caiazzo
54 Pleasant Street
Rockport, MA 01966


Daniel P. Munnelly, Esq.

Dated:    August 28, 2002

United States Postal Service

**Sorry We Missed You! We ♥ Deliver for You**

Item is at:

☐ Post Office (See back)

Sender's Name  LINDSEY  CUMMINGS MANN

Today's Date  8-27-02

We will redeliver or you or your agent can pick up. See reverse.

Available for Pick-up After  8-27-02

Date: 8-28      Time: 8:30

☐ If checked, you or your agent at time of delivery to sign for item

**Notice Left Section**

Article Number(s)

7001 0320 0003 0105

3889

Customer Name and Address

STEPHEN CAIAZZO

28 HIGH ST

For Delivery: (Enter total number of items — delivered by service type)

For Notice Left: (Check applicable item)

☒ Letter

☐ Large envelope, magazine, catalog, etc.

☐ Parcel

Express Mail (We will attempt to deliver on the next delivery day unless you instruct the post office to hold it.)

☐ Restricted Delivery

☐ Perishable Item

☐ Other:

☒ Certified

☐ Recorded Delivery

☐ Firm Bill

☐ Registered

☐ Insured

☐ Return Receipt for Merchandise

☐ Delivery Confirmation

☐ Signature Confirmation

Article Requiring Payment

Amount Due

☐ Postage Due   ☐ COD   ☐ Customs   $ _____

☐ **Final Notice:** Article will be returned to sender on _____

PS Form **3849,** November 1999      Delivery Notice/Reminder/Receipt

P.O. BOX 850309
BOSTON, MA 02185-0309

**DO NOT FORWARD**
**ADDRESS SERVICE REQUESTED**

STEPHEN CAIAZZO
6 KING ST

CAIA006 019662021 1602 08 09/17/02
NOTIFY SENDER OF NEW ADDRESS
CAIAZZO
85 HIGH ST APT 3
ROCKPORT MA 01966-2171

ALAN TATE
INVESTIGATOR
P.O. BOX 850309 · BOSTON MA 02185
TELEPHONE 1-800-818-2296 EXT. 3031

LAW OFFICES OF
STEVEN R. WHITMAN
197 PORTLAND STREET
BOSTON, MASSACHUSETTS 02114-1716

Stephen Caiazzo
AT 54 Pleasant Street
Rockport, MA 01966

CAIA057 01966E003
NOTIFY SENDER OF NEW ADDRESS
CAIAZZO 1602A17 11/27/02
85 HIGH ST APT 3
ROCKPORT MA 01966-2171

## CERTIFICATE OF SERVICE

I, Daniel P. Munnelly, attorney for the Plaintiff, hereby certify that I served a copy of the within document on the defendant, by mailing a copy of same, first class mail, to:

Stephen Caiazzo
54 Pleasant Street
Rockport, MA 01966


Daniel P. Munnelly, Esq.

Dated:    November 25, 2002

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

**ESSEX SUPERIOR COURT**
**CIVIL ACTION NO:00498-C**

|  |  |
|---|---|
| **JOSEPH CUTICCHIA** | ) |
| **PLAINTIFF** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **DONNA'S PUB, INC. d/b/a CIAS and** | ) |
| **STEPHEN CAIAZZO** | ) |
| **DEFENDANTS** | ) |
|  | ) |

### Affidavit of Plaintiff's Attorney in Support of Motion For
### Approval of Real Estate Attachment

In support of Plaintiff's motion, Plaintiff's Attorney deposes and says as follows:

1.     Defendant is indebted to Plaintiff in the amount of $36,231.48 as evidence by the judgment rendered by the Malden District Court on 2/2/99..

2.     To the best of Plaintiff's knowledge, Defendant has no valid defense to the claim.

3.     This action against Defendants is based on an underlying judgment, a copy of which is attached to Plaintiff's Complaint.

4.     The total amount of the indebtedness is approximately $36,231.48, as of the date of filing this present collection action.

5.     Demand for payment has been made by Plaintiff and Plaintiff's attorneys and Defendant have made no response and no payment has been received.

6.     Plaintiff is informed that Defendant owns real estate located in Essex County.

7.     Plaintiff knows of no insurance owned by Defendant which would provide coverage for the claim as set forth in Plaintiff's complaint.

8.     If the said real estate should be sold or conveyed, it is unlikely that Plaintiff would be able to satisfy any judgement that it may recover against Defendants.

WHEREFORE, Plaintiff seeks this approval for a real estate attachment and files this affidavit in support thereof, the information set forth therein being true to the best of Plaintiff Attorney's knowledge, information and belief.

Subscribed and sworn to under the penalties of perjury this 5th day of December, 2002.

By _____

Daniel P. Munnelly, Esq, Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, Daniel P. Munnelly, attorney for the Plaintiff, hereby certify that I served a copy of the within document on the defendant, by mailing a copy of same, first class mail to:

Stephen Caiazzo
54 Pleasant Street
Rockport, MA 01966

_____
Daniel P. Munnelly, Esq.

Dated:  December 5, 2002

LAW OFFICES OF
STEVEN R. WHITMAN
197 PORTLAND STREET
BOSTON, MASSACHUSETTS 02114-1716



Stephen Caiazzo
54 Pleasant Street
Rockport, MA 01966

# Commonwealth of Massachusetts
## County of Essex
### The Superior Court

CIVIL DOCKET# **ESCV2002-00498-C**

RE:    Cuticchia v Donna's Pub Inc et al

TO:Daniel P Munnelly, Esquire
Whitman Law Offices (Steven R)
197 Portland Street
5th floor
Boston, MA 02114



## NOTICE OF SCHEDULED APPEARANCE

You are required to appear in the above referenced case for a:
**Motion/Hearing: Assess damages.**

Your appearance is scheduled as follows:

DATE: **12/05/2002**
TIME: **02:00 PM**
LOCATION: **CtRm 3 (Lawrence)** in  Lawrence

**Plaintiff to notify all parties and bring a copy of said notice to the hearing.
The plaintiff shall file, at or before the hearing, an affidavit as required by
Mass.R.Civ.P.55(b)(6) and submit a proposed Judgment and finding at the time of
the hearing.**

Dated at  Lawrence, Massachusetts this 17th day of October,
2002.

Diane M. Kottmyer, Justice

BY:

Kevin Jones
Assistant Clerk

Telephone: (978) 687-7463

cvcevnota_2.wpd 28568 hrgdam mercierm

# EXHIBIT 8

# COMMONWEALTH OF MASSACHUSETTS
### Office of Consumer Affairs and Business Regulation
## DIVISION OF INSURANCE
One South Station · Boston, MA 02110-2208
(617) 521-7777 · FAX (617) 521-7575
Springfield Office (413) 785-5526
TTY/TDD (617) 521-7490
http://www.state.ma.us/doi

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

BETH LINDSTROM
DIRECTOR CONSUMER AFFAIRS
AND BUSINESS REGULATION

JULIANNE M. BOWLER
COMMISSIONER OF INSURANCE

*LLYODS OF LONDON*
*212 424 8000*

*Summary*
*1. NO PROPERTY POLICY WRITTEN INSURANCE PREMIUM WAS too EXPENSIVE FOR INSURED*
*POL # LG10126032. LIABILITY POLICY WRITTEN 3/22/01 CANCELLED NON PAY 12/15/*

May 4, 2004

Mr. John Daddario
Medallion Insurance Agencies, Inc
110 Florence Street
Malden, MA 02148

RE: Stephen D. Caiazzo
DOI File Number    571500

Dear Mr. Daddario

Attached herewith please find a copy of a complaint recently received by the Consumer Service
Section

Kindly review this complaint, and provide two (2) copies of your detailed, substantive, written
response to the issue(s) raised in the complaint. Your response must include any and all
documentation that supports your response. Such supporting documentation may include, but
not be limited to, the following: (1) the application for insurance; (2) the insurance policy; (3)
relevant notices; (4) internal memos; (5) correspondence; and (6) the appropriate DOI
registration number for Stephen D. Caiazzo.

Please be advised that your response is due no later than **fourteen (14) days** after receipt of this
letter. Your failure to file a timely response may result in a separate administrative action

In advance, I thank you for your anticipated cooperation. If you have any questions or need to
speak to me, I can be reached at 617-521-7465 or, in the alternative, at
Richard Rose@state.ma.us.

*POL # LG L0126033. Liquor Liability Policy. Written 3/22/01 Cancelled Non Pay 12/15/01*

Sincerely,

Richard Rose
Insurance Compliance Analyst

*POL# WC60934301*

*4. Workers Compensation Policy Written 2/23/0 Cancelled Non Pay 10/17/01*

Date   By     Policy Eff Date     Tran   Action Description
06/10/2003   JN     Y0632311A   05/19/2001    RWL   Claim  Received declination
for 9/13/1996 claim for Donna's Pub Inc from Pacific, the liquor carrier. I ca
2     06/10/2003   JN     Y0632311A   05/19/2001    RWL   Claim  Faxed lawyer's
letter to Carrie Robinson @ HT Bailey re Donna's Pub claim 9/13/1996. A& B claim
2     05/21/2003   JN     Y0632311A   05/19/2001    RWL   Claim  Faxed
Lawyers letter re Donna's Pub claim to Carrie Robinson @ HT Bailey. DOL: 9/13/1996

2     04/28/2003   JN     GHL01342   12/15/2001    CNP   Claim  Fax to Carrie
Robinson re Donna's Pub claim.
04/28/2003   JN     LGL012603   03/22/2001    REW   Claim  Faxed Loss Accord
to Carrie Robinson @ HT Bailey for Donna's Pub claim.
04/28/2003   JN     GHL01342   12/15/2001    CNP   Telephone OutCalled Atty
Tom Collins re Donna's Pub claim 9/13/1996. Need more info regarding lawsuit.
Company do
2     04/28/2003   JN     Y0632311A   05/19/2001    RWL   Claim  Faxed Donna's
Pub claim to HT Bailey/Pacific Ins on Liquor/Interstate on GL
2     02/28/2003   DG     LGL012603   12/15/2001    CNP   Claim  faxed to
Insurance Innovators claim date of loss 9/10/01
02/28/2003   DG     GHL01342   03/22/2001    NBS   Claim  Claim faxed to
Insurance Innovators
02/28/2003   JN     GHL01342   03/22/2001    NBS   Claim  Claim

02/28/2003   JN     GHL01342   03/22/2001    NBS   Claim  Claim

01-28/2002   JN     GHL01342   12/15/2001    CNP   Billing Cancel, non pay/bus
closed
01/28/2002   JN     LGL012603   12/15/2001    CNP   Billing Cancel, non-
pay/CLosed bus. Standard Funding did not cancel until 12/15/2001. Last payment made
was
2     10/10/2001   MEDEA2   WC60934301 03/23/2001    REW   Form
Letter[Category]=Renewals [Title]=CNXNOT  Canc eff 10/17/01, $935 14 (343095)
Standard Ti

*Lia bili* *LIQUOR* *LIAbil* *workers* *compensa*

July 6, 2004

DEAR MR. ROSE,

THE SUMMARY RECEIVED FROM JOHN D'ADDARIO REPRESENTS THE EXACT REASON FOR CONCERN OVER HOW THIS AGENCY CONTINUES TO OPERATE IN A POSITIVE MANNER FOR THE INSURED.

1. JOHN D'ADDARIO IS NOT AN EMPLOYEE OF MEDALLION INS. AGENCY ACCORDING TO PHONE CALL TO MEDALLION.

2. #1 - THE PROPERTY POLICY WAS TOO EXPENSIVE? THE AGENCY SAID WE HAD NO POLICY AT ALL.

   #2. CANCELLED IN 12-15-01 (OF COURSE, WE WERE CLOSED IN SEPT?!

   #3 NON-PAY IN 12/15/01 - AGAIN CLOSED in SEPT. (COMPLETELY IRRELIVENT)

   #4 CANCELLED in 10/17/01 - AGAIN WHAT DOES CANCELLATION IN OCT 1? HAVE TO DO WITH A CLAIM DURING SEPT-01

3. THEY NEVER MENTIONED CASE WITH DONNA'S AND INC. WITH

4. NEVER MENTIONED HARBOR REALITY

5. NEVER RESPONDED TO DISABILITY INCOME CLAIM

3

6.J: DEVINCENTIS HAS SAID All Along THAT
WE DID NOT HAVE INS. COVERAGE.

A. LLOYDS OF LONDON PKG.
   (INCLUDES EITHER INCOME DISABILITY,
    OR MEMORABILIA TAKEN FROM
    LOCATION.
   AlSO (BEVERLY CO-OP AUTHORIZED)
        SO-CALLED CLEANERS TO
        CLEAN SCUTTLEBUTTS.
B. LEGION PKG AlSO SHOWS COVERAGE

4