UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
STEPHEN D. CAIAZZO,                 *
                                    *
        Plaintiff,                  *
v.                                  *
                                    *   CIVIL ACTION NO. 04-12627 RCL
                                    *
THE MEDALLION INSURANCE             *
AGENCIES, INC.,                     *
        Defendant                   *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM SUMMARY JUDGMENT ON PROPERTY LOSS CLAIM

The defendant, The Medallion Insurance Agencies, Inc., hereby opposes the plaintiff's Motion for Relief under Fed. R. Civ. P. 60(b) from the court's allowance of Summary Judgment in defendant's favor on Count III of the complaint ( the property claim). The plaintiff's motion is based on a series of new, outrageous, and potentially perjurious assertions by Mr. Caiazzo. The motion should be denied and the defendant should be awarded sanctions in having to respond. As its statement of reasons in support of this Opposition, defendant states as follows:

1.  The plaintiff is alleging that he lost certain personal property which was removed from his business location. The items of alleged personal property were attached to defendant's summary judgment papers as Exhibit 17.

2.  As basis for his motion, the plaintiff asserts that defense counsel "misrepresented that the date of loss was September 1, 2001 or sometime in September, 2001", and that representation was in some unidentified way relevant to the court's allowance of summary judgment on *standing* grounds. As the transcript of the hearing will

reflect, in his argument to the court, defense counsel was simply reading from the plaintiff's own deposition transcript regarding the time of the loss. The plaintiff's *entire* deposition transcript was before the court as part of the summary judgment record, as Exhibits 1A and 3 to the defendant's motion. The plaintiff's testimony is certainly no secret to plaintiff's counsel. As defense counsel pointed out, in response to specific questions about the exact time at which the Count III property loss occurred (Ex. 1A, pp. 189-191), the plaintiff testified that (a) he was locked out of Scuttlebutts by Essex County sheriffs on or about September 1, 2001 and he was forced to leave the subject personal property at that time (Ex. 1A, pp. 189-192)[1]; (b) he was allowed back into the property later in September 2001 or early October, 2001 in order to remove his personal property, which he did with a "bunch of people" (Ex. 1A, , pp. 192 - 195); (c) rather than removing it with the other property, he left the subject personal property at the "top of the stairs" at Scuttlebutts, because he was "tired" during this late-September 2001 visit (Ex. 1A, p. 193); (d) within "a month, month and a half" later - i.e., *by late October to early November, 2001*, the plaintiff returned to Scuttlebutts, and learned the subject property was gone. (Ex. 1A, p. 197)[2].

3. This plaintiff's deposition testimony cannot be squared with the plaintiff's brand

---

[1] On Day 2 of his deposition which took place over one month later, Mr. Caiazzo *advanced* this date to "some time in August, 2001". (Defendant's summary judgment Ex. 3, p. 42-43).

[2]   Q.   So by roughly November of '01, you learn that all this personal property you had at Scuttlebutt's is gone?
     A.   Correct.

(Incredibly - in a claim for alleged failure by an agent to report an insured claim - the plaintiff then testified that he "did not remember" when he told his insurance agent about the supposedly-missing personal property. (Ex. 1A, p. 198).)

new claim - incredibly, asserted for the first time *at and after* the summary judgment hearing (see, 9-25-06 Affidavit of Stephen Caiazzo in support of plaintiff's motion) - that by early November 2001 the subject property was *not lost*, but rather he purchased the subject property from the bankruptcy trustee as the result of a November 28, 2001 order by the bankruptcy court, and that the subject property was lost *some time in January of the following year.* (Caiazzo Affidavit 9-26-06, para. 6)[3].

4. The summary judgment record flatly shows that the plaintiff's new claim is false. The property he purchased on 11-28-01 from the bankruptcy trustee, according to his deposition testimony, was the business property listed in his deposition exhibit no. 25A. (D MSJ Ex. 3, pp.105[4]). Deposition exhibit 25A is contained in Exhibit 17 to defendant's summary judgment papers. He testified that, after he purchased these items from the trustee, *he removed* them from Scuttlebutts and brought them to a different bar he worked at, the Blue Parrot (D MSJ Ex. 3, pp. 105; Ex. 1A, pp. 7-11). He testified that the owner of the Blue Parrot misappropriated that property, and he had a claim against this other person for that property. (Ex. 1A,

---

[3] Plaintiff also cavalierly ignores the fact that, when the bankruptcy trustee went into the property after it was seized but before the subject property was allegedly lost, the trustee took a detailed inventory of all the business property, but the trustee's inventory *for some reason did not include any of the property which Caiazzo is now saying was left behind and for which he now seeks recovery in this case.* (Def. MSJ Ex. 3, pp. 103-105).

[4]
    Q.    Okay. What happened with the items listed on Exhibit 25A?

    A.    He gave me an opportunity to buy back these for $5,500, which I did. ....

    Q.    Okay. So you bought back these items, and these are the items that you then took over to the Blue Parrot?

    A.    Yes.

pp. 10-11). In his deposition, Mr. Caiazzo actually *denied that the items he bought from the trustee were part of his personal property claim against Medallion.* (D MSJ Ex. 3, p. 106). Notwithstanding this sworn testimony, the plaintiff is now falsely asserting that these items *were* part of the personal property which was lost from Scuttlebutts, and/or that he purchased *all* the items in Exhibit 17 from the bankruptcy trustee[5]. Either way, the plaintiff's current post-summary judgment claim is directly at odds with the summary judgment record. In his current motion, the plaintiff makes no attempt to square the glaring differences between his prior testimony and his current version of the facts of his property claim.

5. Insofar as the plaintiff is alleging an uninsured loss of personal property (as compared to business property), the plaintiff agrees that he never sought any personal property coverage through Medallion. (D MSJ Ex. 1A, 191-192).

6. However, as a result of the defendant's standing arguments and the fact that he knew he had no personal insurance through Medallion, the plaintiff then shifted to a desperate "plan B", which was to attach an unidentified, unverified, incomplete, non-specific, and random segment of an insurance policy form in support of his assertion that *his* policy would have covered the loss, *if* it had been in effect. (Plff. MSJ Response to Statement of Facts, para. 36; Plff MSJ Opp. Ex. 4). The plaintiff was, at least for a time, a licensed insurance agent in the Commonwealth

---

[5] Plaintiff states in his current motion "The date of loss is crucial since Caiazzo *purchased the corporate property from the corporate bankruptcy trustee on November 28, 2001.*" Motion, p. 2 (emphasis added). He then states that that property was "removed by third parties without the knowledge of Caiazzo on December 7 and 12, 2001, and on January 7-10, 2002." As noted, this testimony is directly at odds with his own deposition testimony and other exhibits which constituted the summary judgment record.

of Massachusetts (Ex. 1A, p. 18-19). In making these assertions now the plaintiff wholly ignores the fact that, at the time of loss, the corporation had no coverage of any kind for property damage, because Caiazzo had ordered it removed to save premium. (See generally, Defendants summary judgment memo, pp. 11-12).

7. Either way, no matter how the court views the summary judgment record, it makes no difference to the court's allowance of summary judgment on Count III. As the court observed, if the property was the corporation's, the claim became vested in the bankruptcy trustee and not the plaintiff. If the property was the plaintiff's personal property and not the corporation's, then the plaintiff had no claim because he agreed he had no personal lines of insurance through Medallion, and he otherwise presented no cognizable evidence that coverage should have been in place through Medallion for his personal property at the time of loss.

8. The defendant filed its summary judgment papers in March, 2006. The plaintiff filed his opposition papers in April, 2006. After a full, almost two-hour hearing and the allowance of the defendant's motion, the plaintiff is now trying to introduce new evidence - indeed, new claims - to the summary judgment record. As the court itself indicated on several occasions during the hearing, the plaintiff was required to be prepared at and before the hearing on these points. The plaintiff utterly fails to provide any justification for his failure to come forward with these new claims and this purported supporting evidence until after the extensive briefing, hearing, and rulings on the motion.

9. In numerous, significant respects outlined above, the plaintiff's current motion is at odds with the summary judgment record. The plaintiff's motion must be denied

on this basis, alone. In Massachusetts, if a plaintiff is not allowed to avoid summary judgment by offering affidavits which contradict its own sworn testimony, *Phinney v. Morgan*, 39 Mass. App. Ct. 202 (1995), then *a fortiori* the plaintiff should not be allowed to do so *after* the summary judgment motion has been filed, heard, and ruled upon. *See, Phinney,* 39 Mass. App. Ct. at 207. ("The plaintiffs' affidavits and that of their expert cannot be used to contradict previous statements made by the plaintiffs under oath in order to create a material issue of fact to defeat summary judgment." (citations omitted)).

10. The court may well find, based on the current record, that plaintiff has filed a frivolous Rule 60(b) motion, based upon deliberate misstatements of fact in a desperate attempt to "save" his claim. Such a motion must be denied, and the party opposing such a motion should recover sanctions. See, *Roger Edwards, LLC v. Fiddes & Son Ltd.,* 437 F.3d 140 (1st Cir. 2006) (affirming denial of plaintiff's Rule 60(b) motion which was based on defendant's alleged misrepresentation / fraud, and upholding award of sanctions against plaintiff). Sanctions are particularly appropriate in this case, insofar as the defendant specifically notified the plaintiff, by letter dated March 16, 2006, that it would seek sanctions if the plaintiff proceeded with this claim. Not only did the plaintiff proceed, it then lost, and is now trying to re-characterize and reinvent the claim in order to avoid summary judgment.

11. Last and perhaps least, the plaintiff has failed to follow the applicable Rules in filing his motion for relief, including but not limited to Local Rule 7.1. Accordingly, the plaintiff's motion should be denied.

WHEREFORE, the defendant Medallion prays that (a) the plaintiff's Rule 60(b) motion be denied, (b) that defendant's motion to strike be allowed, and (c) that defendant's motion for sanctions be allowed.

                    THE MEDALLION INSURANCE AGENCIES, INC.
                    By its attorneys,

                    /s/ William D. Chapman
                    William D. Chapman, BBO# 551261
                    MELICK, PORTER AND SHEA, LLP
                    28 State Street
                    Boston, MA 02109
                    (617) 523-6200

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

Dated: October 3, 2006