UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEPHEN D. CAIAZZO,<br>    Plaintiff<br><br>v.<br><br>THE MEDALLION INSURANCE<br>AGENCIES, INC.,<br>    Defendant | CIVIL ACTION NO.<br>04-12627 RCL |

## MOTION IN LIMINE BY THE MEDALLION INSURANCE AGENCIES, INC., TO PRECLUDE INTRODUCTION OF EVIDENCE OR ARGUMENT CONCERNING LACK OF NOTICE OF SUIT

The defendant, The Medallion Insurance Agencies, Inc., hereby moves to preclude the plaintiff, Stephen D. Caiazzo, from seeking to introduce evidence that he did not receive notice of the underlying District Court action in March of 1998, or of the underlying Superior Court action in March of 2002.  The plaintiff should be precluded from introducing any such evidence based on the principles of collateral estoppel.  Plaintiff alleges in this case and is expected to testify that he did not become aware of the underlying suits until late 2002, after defaults had been entered.  Such alleged unawareness is a key element of his liability claim against the defendant, Medallion.  Such testimony should be barred by the Essex Superior Court's specific finding and judgment that the Essex Superior Court action was "duly served on" the plaintiff in March of 2002.  His testimony as to the Malden District Court action should be barred by the Malden District Court's finding, which is either express or implied in that court's default judgment, that that action was duly served on the plaintiff's corporation in March of 1998.

I.    **Procedural Background**

In 1998, an individual named Joseph Cuttichia sued a corporation known as Donna's Pub Inc. d/b/a Cai's Food & Spirits (hereinafter, "Cai's"), in the Malden District Court. Cuttichia alleged he sustained personal injuries on or about September 13, 1996 as a result of an altercation at Cai's. Service was made in hand at the corporate business address of Cai's, at 131 Exchange Street, Malden, MA, on March 3, 1998 (see Return of Service, attached hereto as "Exhibit A"). Cai's defaulted, damages were assessed, judgment entered, and an execution issued. (Exhibit B, Writ of Execution 2-2-99)

Cuttichia later filed suit against Caiazzo, individually, in the Essex Superior Court, to pierce the corporate veil and enforce the underlying judgment. The Essex Superior Court action was served upon Mr. Caiazzo as an individual at his last and usual place of abode on March 22, 2002 (see Return of Service, attached hereto as "Exhibit C"). Caiazzo failed to appear and was defaulted under Rule 55(a) on September 9, 2002. (Exhibit D). Cuttichia's counsel then moved for an assessment of damages and a default judgment. (Exhibit E).

The plaintiff acknowledges that he became aware of the underlying actions by December, 2002. (Exhibit F, Plaintiff's deposition, Vol. I, pp. 106-109).

On December 5, 2002, the court held an assessment hearing, and awarded damages. (Exhibit G). In this order, the court specifically ruled that "Defts did not appear although notices was given." (Exhibit G). At the same, the court issued notice that a real estate attachment hearing would be held on January 7, 2003. (Exhibit H).

The default judgment was entered against Caiazzo in his individual capacity. Following the December 2002 default and assessment proceedings before Judge Kottmyer, a judgment was entered against Caiazzo in the amount of $39,805.03. The Judgment which entered on January

8, 2003 specifically states that "the summons and complaint were duly served upon the defendant(s)", including Mr. Caiazzo (see Judgment of Default Upon Assessment of Damages Pursuant to Mass.R.Civ.P. 55(b)(2), attached hereto as Exhibit I).

Following that judgment, the Essex Superior Court issued an execution against Caiazzo in the amount of approximately $41,000. In connection therewith, Cuttichia obtained a lien against Caizzo's real property. In April, 2003, Caiazzo allegedly agreed to pay Cuttichia $35,000 from the sale of his encumbered property and the Essex Superior Court action, and this amount now constitutes plaintiff's alleged damages in the case against Medallion.

## II.     Argument

Any evidence which might be proferred by the plaintiff that he did not receive proper service, and therefore notice, of the aforementioned summons and complaints, should be precluded based on principles of collateral estoppel. A Judgment by Default pursuant to Mass.R.Civ.P. 55(b), was entered in both the Malden District Court case and the Essex Superior Court case. In both cases, the courts ruled, either expressly or impliedly, that the summons and complaints had been duly served.

Whether a federal court is to accord collateral estoppel effect to a state court judgment is controlled by state law. See *New Hampshire Motor Transp. Ass'n v. Town of Plaistow*, 67 F.3d 326, 328 (1st Cir.1995). Under Massachusetts law, "collateral estoppel precludes relitigation of issues determined in prior actions between the parties or those in privity with the parties, [provided the issues were] actually litigated in the first action, and determined by a 'final judgment on the merits.'" *Sena v. Commonwealth*, 417 Mass. 250 (1994) (citations omitted). A default judgment operates as a final disposition of the claims brought in the complaint and has

the same effect as a judgment rendered after a trial on the merits. *United States v. $23,000 in United States Currency*, 356 F.3d 157, 163 (1st Cir.2004).

The Judgments of Default entered in Malden District Court and Essex Superior Court state that service was proper in both cases. Indeed, such findings as to the propriety of service then became, both factually and as a matter of law, the foundation on which the courts then assessed damages and entered default judgments. When he did indisputably learn of the underlying actions, by December 2002, if there was a problem with service it was incumbent upon him to challenge service at that time. Indeed, at that time, the default judgment had not even been entered yet. The plaintiff could have filed a Rule 55 ( c) request to set aside the default, based upon allegedly improper service. The plaintiff did not do so, and should not now be allowed to do so.

Likewise, after the default judgment had been entered, in January 2003, the plaintiff could have filed a Rule 60 (b) motion for relief from the judgment, based upon allegedly improper service. The plaintiff did not do so – indeed, rather than challenging service, he settled with Cuttichia and allegedly paid him out of his own pocket.

Proper service of the summons and complaint is implicit in a ruling for Entry of Default Judgment pursuant to Mass. R.Civ.P. 55(b). Therefore, the plaintiff is collaterally estopped in the present case from testifying that he did not get notice of the prior actions, which he will presumably try to do in an effort to show he acted reasonably. He should not be allowed to do so, because this issue has been twice adjudicated against him. The issue of service has been resolved by actual judicial determination, and should be given preclusive effect in this subsequent litigation.

### III. <u>Conclusion</u>

For the foregoing reasons, the defendant, The Medallion Insurance Agencies, Inc., respectfully requests that its motion be ALLOWED.

THE MEDALLION INSURANCE AGENCIES, INC.

By its attorney,

*/s/ William D. Chapman*
William D. Chapman
BBO #551261
Melick, Porter & Shea, LLP
28 State Street
Boston, MA 02109
(617) 523-6200

Electronic Service 12-6-06
s/WDC




# Trial Court of The Commonwealth
## The District Court Department
### Malden Division

89 Summer Street
Malden, Massachusetts 02148-3338
Tel. 322-7500

Middlesex, ss

JOSEPH CUTICCHIA,
  Plaintiff

v.

DONNA'S PUB, INC.,
  Defendant

Civil Action No. _____

## SUMMONS
(Rule 4)

To defendant __Donna's Pub, Inc.__ of __131 Exchange Street, Malden, MA__
              (name)                                (address)

    You are hereby summoned and required to serve upon __Ronald W. Dunbar, Jr.__, plaintiff('s attorney), whose address is __197 Portland Street, Boston, MA 02114__, a copy of your answer to the complaint which is herewith served upon you, within 20 days after service of this summons, exclusive of the day of service. You are also required to file your answer to the complaint in the office of the Clerk of this court either before service upon plaintiff('s attorney), or within 5 days thereafter. If you fail to meet the above requirements, judgment by default may be rendered against you for the relief demanded in the complaint. You need not appear personally in court to answer the complaint.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will be barred from making such claim in any other action.

WITNESS __PAUL J. CAVANAUGH__, Presiding Justice, on __February 25, 1998__.
                                                        (date)

(SEAL)

_____
        Clerk

Note: (1) When more than one defendant is involved, the names of all defendants should appear in the action. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
(2) The number assigned to the complaint by the Clerk at commencement of the action should be affixed to this summons before it is served.

## RETURN OF SERVICE

On _____ I served a copy of the within summons, together with a copy of the
   (date of service)
complaint in this action, upon the within named defendant, in the following manner (see Rule 4(d) (1-5):

Sheriff's Office, Middlesex County • Civil Process Division, P.O. Box 410180, Cambridge, MA 02141-1819 • (617) 547-1171
Middlesex, ss.

                                                                    March 5, 1998

I hereby certify and return that on 03/03/98 at 12:45pm I served a true and attested copy of the summons and complaint & DEMAND FOR JURY TRIAL & STATEMENT OF DAMAGES, INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS in this action in the following manner: To wit, by delivering in hand to KAREN WARE, agent, person in charge at the time of service for DONNA'S PUB INC., 131 EXCHANGE ST., Malden, MA. Fees: Service $15.00, Conveyance $2.10, Attest $3.00, P&H $1.00, Travel $3.10, Total Fees $24.20

_____
                                  Deputy Sheriff

| Trial Court of Massachusetts District Court Department | 02/17/98 | 98 50 CV 237 |
|---|---|---|
| | PLAINTIFF<br>Joseph Cuticchia | DEFENDANT<br>Donna's Pub, Inc. d/b/a Ciasc |
| Malden District Court<br>89 Summer Street<br>Malden, MA. 02148 | PLAINTIFF ATTORNEY<br>L.O. of Steven R. Whitman<br>197 Portland Street<br>Boston, MA 02114 | DEFENDANT ATTORNEY |

MONEY DAMAGE ACTION (TIME STANDARDS)
☐ Remand  ☐ District Court Filing  ☐ SUMMARY PROCESS  ☐ VICTIM VIOLENT CRIME  ☐ OTHER CIVIL

## WRIT OF EXECUTION ON MONEY JUDGMENT

To the Sheriffs of the several counties of the Commonwealth or their deputies, or (subject to the limitations of G.L. c. 41, § 92) any Constable of any city or town within the Commonwealth:

The plaintiff named above has recovered judgment against the defendant in the amount shown below.

WE COMMAND you, therefore, to cause payment to be made to the plaintiff in the amount of the judgment total shown below, plus postjudgment interest thereon until the date of payment in accordance with G.L. c. 235, § 8, and to collect your own fees as provided by law, from out of the value of any real or personal property of the defendant found within your territorial jurisdiction.

This execution is valid for twenty years from the date of judgment. It must be returned to the court along with your return of service within ten days after this judgment has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

WITNESS: FIRST JUSTICE Paul Cavanaugh  
DATE OF ISSUE: 2-2-99  
CLERK-MAGISTRATE OR ASSISTANT CLERK: X [signature]

OFFICER'S RETURN  
DATE OF SERVICE:  
Fees _____  
TOTAL FEES _____  
SIGNATURE OF OFFICER

DATE OF ENTRY OF JUDGMENT: 12/1/97  
☒ CIVIL  ☐ SUMMARY PROCESS

☒ Judgment for _Plaintiff_

☒ $ _____ damages, plus $ 1920.00 prejudgment interest and $ 135.00 costs plus $ 390.32 interest from date of judgment entry to date of execution

☐ Possession

JUDGMENT TOTAL: $ 26055.52  
EXECUTION TOTAL: $ 26,446.34

**Essex County Sheriff's Department** • PO Box 2019 • Salem, MA 01970 • 978-750-1900 ext. 3590

*Essex, ss.*

March 26, 2002

I hereby certify and return that on 03/22/02 at 4:45pm I served a true and attested copy of the summons and complaint, civil action cover sheet, tracking order and exhibits in this action in the following manner: To wit, by leaving at the last and usual place of abode of Caiazzo, Stephen, 54 Pleasant Street, Rockport, MA. and by mailing first class to the above address on 03/25/02. Fees: Service $10.00, Conveyance $4.50, Attest $4.00, P&H $1.95, Travel $6.60, Total Fees $27.05

Deputy Sheriff Ulrick LaFontant

_____
Deputy Sheriff

Dated: _____, 20 ___.

N.B.  TO PROCESS SERVER:-
PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

[ , 20 . ]

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT CIVIL ACTION
No.

ESSEX, ss.

Plaintiff(s)

v.

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# ESCV2002-00498

RE: Cuticchia v Donna's Pub Inc et al

TO: Daniel P Munnelly, Esquire
Whitman Law Offices (Steven R)
197 Portland Street
5th floor
Boston, MA 02114

## DEFAULT ORDER (Mass. R. CIV. P. 55a)

The defendant(s) named below, having failed to plead or otherwise defend in the above referenced case as required by MRCP 12(a), is(are) hereby defaulted pursuant to MRCP 55(a):

**Default (55a) as to defendant(s) Stephen Caiazzo. Copies mailed September 09, 2002**

The plaintiff shall file:

    1. A motion for an assessment of damages and default judgment pursuant to Mass. R.Civ.P.55(b)2 and subject to Mass.R.Civ.P.54(b) by **10/09/2002**, or

    2. A request for Default Judgment pursuant to Mass.R.Civ.P. 55(b)1 and subject to Mass.R.Civ.P.54(b) by **10/09/2002** (contract-sum certain only).

Dated at Lawrence, Massachusetts this 9th day of September, 2002.

Thomas H. Driscoll Jr.,
Clerk of Courts

BY:

Kevin Jones
Assistant Clerk

Telephone: (978) 687-7463

cvddfl55a_2.wpd 344603 dfl55a collado

EXHIBIT F

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

ESSEX SUPERIOR COURT
CIVIL ACTION NO: ESCV2002-00498

JOSEPH CUTICCHIA )
    PLAINTIFF )
)
v. )
DONNA'S PUB, INC. d/b/a CIAS and )
STEPHEN CAIAZZO )
    DEFENDANTS )
)



### REQUEST FOR A DEFAULT JUDGMENT
### PURSUANT TO MASS.R.CIV.P 55(B) 1

Now comes the plaintiff, Joseph Cuticchia, in the above matter and requests that this Honorable Court assess damages against the defendant, Stephen Caiazzo. As ground therefore plaintiff states as follows:

1. The defendant has been defaulted on September 9, 2002, pursuant to M.R.C.P. Rule 55(a) for failure to answer the Complaint. (A copy of Default Order Pursuant to Rule 55(a) is attached hereto as Exhibit A).

2. The judgment demanded against the defendant in this case is for a sum certain.

**WHEREFORE**, plaintiff, Joseph Cuticchia, requests that this Request be allowed.
SIGNED UNDER THE PENALTIES OF PERJURY THIS 7th DAY OF OCTOBER.

Plaintiff,
By His Attorney,

_[signature]_

Daniel P. Munnelly, Esq.
Law Office of Steven R. Whitman
197 Portland Street
Boston, MA 02114
(617) 227-8118
BBO# 631223

c:\wp51\pleading\lake55b.def

VOLUME I
PAGES 1 TO 245
EXHIBITS: SEE INDEX

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:04CV12627

STEPHEN D. CAIAZZO,
    Plaintiff,
vs.
THE MEDALLION INSURANCE
AGENCIES, INC.,
    Defendant.

DEPOSITION OF STEPHEN D. CAIAZZO, a witness called on behalf of the Defendant, pursuant to the Massachusetts Rules of Civil Procedure before Lisa Abdo, Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Melick, Porter & Shea, LLP, 28 State Street, Boston, Massachusetts, on Friday, May 6, 2005, commencing at 10:11 a.m.

---

APPEARANCES:

Melick, Porter & Shea, LLP
(by William D. Chapman, Esq.,
and Kerry D. Florio, Esq.)
28 State Street
Boston, Massachusetts 02109
617.523.6200,
for the Plaintiff.

Law Offices of Dean Carnahan
(by Dean Carnahan, Esq., via telephone)
126 Broadway
Arlington, Massachusetts 02474,
for the Defendant.

---

I N D E X

DEPONENT:                    DIRECT
Stephen D. Caiazzo
  (by Mr. Chapman)          6

E X H I B I T S

| NO. | | PAGE |
|---|---|---|
| 1 | Complaint | 53 |
| 2 | Plaintiff's initial disclosure documents sent to Mr. Chapman from Mr. Carnahan on March 11, 2005 | 60 |
| 3 | One-page supplementation faxed to Mr. Chapman from Mr. Carnahan on May 3, 2005 | 60 |
| 4 | Plaintiff's Answers to Interrogatories | 74 |
| 2A | Letter from Mr. Collins to Mr. DeVincentis dated May 16, '03 | 82 |
| 2B | Request For Default Judgment | 87 |
| 5 | Summons and a three-page complaint | 93 |
| 6 | Complaint and a return of service | 101 |
| 7 | Letter dated December 12, '02 from the Law Offices of Stephen Whitman to Thomas Collins | 106 |
| 8 | Order of Notice | 112 |
| 9 | Clerk's Notice | 113 |
| 10 | Workers' Comp Employer's First Report of Injury | 177 |

E X H I B I T S

| NO. | | PAGE |
|---|---|---|
| 11 | Workers' Comp Employer's First Report of Injury | 182 |
| 2C | Handwritten List | 201 |
| 2D | Handwritten List | 201 |
| 12 | Proposal For Insurance For Scuttlebutt's | 207 |
| 2E | Draft Financing Contract | 213 |
| 13 | Quotation | 214 |
| 14 | Quotation | 220 |
| 15 | Premium Financing Agreement | 222 |
| 16 | Certificate of Insurance and Commercial General Liability Coverage Declarations | 235 |
| 17 | Reinstatement Warranty | 237 |
| 18 | Bank Check | 239 |
| 19 | Notice of Cancellation | 239 |

**Page 105**

```
 1        married, correct?
 2   A.   Yes.
 3   Q.   And your wife had permission to receive your
 4        mail?
 5   A.   To receive my mail?
 6   Q.   Right.
 7   A.   Yes.  Not sign for it.  Or if she signed for
 8        it, why I was never handed.  There's no
 9        reason I would sign your name if we were
10        living in the same complex and -- you know,
11        do whatever.  But I was never handed this.
12   Q.   Right.  But all I'm saying is when you
13        were -- mail would come to where she was
14        living addressed to you; and she would accept
15        it and then later give it to you, correct?
16   A.   Oh, that happened on quite a few occasions.
17        But it also didn't happen because I was never
18        there all the time.  I mean I would come in.
19        I was there for an hour and a half, two
20        hours, and then I'd get up and gone.
21   Q.   Right.
22   A.   This certainly would have come to mind as
23        being an important document.  It was left on
24        the kitchen table along with, you know, an
25        hour and a half of, "What happened?  What's
```

**Page 106**

```
 1        going on?" blah, blah, blah, so on and so
 2        forth.  That does not ring a bell.  So that
 3        got there, or whether it was returned -- it
 4        could have been returned.  I don't know.
 5   Q.   In terms of -- I mean obviously it's a
 6        summons and complaint.  And if I understood
 7        one of your prior answers correctly, this is
 8        the kind of thing that your wife would become
 9        excited about basically, right?
10   A.   Absolutely.
11   Q.   And she would say -- the gist of it would be,
12        "Oh, no.  What's this?  It's a lawsuit.  You
13        better take a look at this"?  She would say
14        that kind of thing to you, right?
15   A.   Exactly.
16   Q.   And would it be fair to say based upon, you
17        know, how she was during your marriage this
18        is the kind of thing that she would try to
19        bring to your attention as soon as possible?
20   A.   I would think so.  It's not something to be
21        hanging around the house for long, I'll tell
22        you that.
23             (Document marked as Caiazzo
24             Exhibit 7 for identification)
25             MR. CHAPMAN:  Dean, Exhibit 7 is a
```

**Page 107**

```
 1        letter dated December 12, '02 from the Law
 2        Offices of Stephen Whitman to Thomas Collins.
 3             MR. CARNAHAN:  Okay.
 4   Q.   Mr. Caiazzo, I'm going to hand you Exhibit 7
 5        and ask if you've ever seen that letter?
 6   A.   (Witness reviews document)  Yes, I have.
 7   Q.   And do you remember seeing that back in
 8        December of '02?
 9   A.   It's familiar.  I remember seeing Stephen
10        Whitman.  And I remember seeing this as one
11        of the envelopes that was taken by my wife
12        and signed because there were two or three of
13        them by the Law Offices of Stephen Whitman.
14   Q.   Okay.  And you see it's a letter addressed to
15        Mr. Collins?
16   A.   Right.
17   Q.   And Mr. Collins was representing you at that
18        time?
19   A.   Yes, he was.
20   Q.   And Mr. Collins was representing you at that
21        time in connection with Mr. Cuttichia's
22        claim, correct?
23   A.   This is when I received all this information
24        from my wife that I started to open it up and
25        said this is the Whitman -- I mean Cuttichia
```

**Page 108**

```
 1        case that's been lagging.  And this was the
 2        reason why the lien was put on the property.
 3        And that's when I decided to call Joe and
 4        settle it, find out.  And then I went to Tom,
 5        and I said, "Here's the guy.  Call him and
 6        get this thing squared away."  And that's
 7        what this is.
 8   Q.   So would it be fair to say that you had
 9        engaged Mr. Collins to get involved in the
10        Cuttichia claim prior to the date of that
11        letter?
12   A.   This was part of a stack of letters which I
13        have from the Law Offices of Stephen Whitman
14        that were mailed to King Street, maybe
15        Pleasant Street, all of them.  Some of which
16        were secured by return request mail that was
17        not signed by me.  My wife signed my name.
18        These were opened by me when I found them.
19        These were backdated because the time period
20        extended it from the time she held on.  I
21        called Tom.  I says, "Get something -- this
22        is what the deal is."
23   Q.   Again, I don't want to interrupt you, but
24        that doesn't -- what you just said doesn't
25        apply to this letter.
```

## Page 109

```
 1  A.  Why wouldn't it?
 2  Q.  Because it's not addressed to you.
 3  A.  I understand this.  But this is something
 4      that Collins had called Whitman on because
 5      Whitman is the one that I called Collins on
 6      after I received the stack of mail.
 7  Q.  Yes.
 8  A.  So he contacted Whitman and Whitman
 9      apparently wrote a letter here.
10  Q.  Right.  All I'm saying is this letter that
11      you have that you're holding, Exhibit 7,
12      that's not a letter that was in the stack of
13      documents that you got from your wife and
14      that you gave to Mr. Collins, correct?
15  A.  No.  This is the type of letters from Stephen
16      Whitman that I recognized as being part of a
17      group of letters that were sent to the other
18      address that I never got until later.
19      Subsequently, this was the follow-up letter
20      that I -- after Tom Collins contacted
21      Attorney Whitman.  This is made out to
22      Collins.  But the other ones were made out to
23      me.  This is just a follow up from an
24      attorney to an attorney to try and settle.
25  Q.  And where are all these prior letters from
```

## Page 110

```
 1      Whitman's office to you?
 2  A.  Tom Collins has them.  I have a copy.
 3  Q.  Where is the copy you have, because it hasn't
 4      been produced?
 5  A.  Oh, I got plenty of copies.
 6  Q.  Well, where are they?
 7  A.  Where are they?  I have them.
 8  Q.  Where in your possession?
 9  A.  Well, I don't have them with me today.  But I
10      have them.  Tom Collins had copies.  I made
11      enough copies for everybody.  Tom Collins was
12      handling it.  I held on to them.
13  Q.  Where do you keep all these documents?  Is
14      there a particular place?  Are they down in
15      Florida?
16  A.  Yes.
17  Q.  And where -- do you own the property in
18      Florida?
19  A.  No, I don't.
20  Q.  Okay.  Your girlfriend does?
21  A.  Yes.
22  Q.  And is there -- where do you keep it?  Do you
23      have a desk or a filing cabinet?
24  A.  I have them in my garage.
25  Q.  In your garage.  Do you have boxes in the
```

## Page 111

```
 1      garage?
 2  A.  Yes.
 3  Q.  So it's your testimony that you have some
 4      letters that pertain to this case in your
 5      garage in Florida but that haven't been
 6      produced yet; is that accurate?
 7  A.  I have a whole lot of documentation that is
 8      relevant to this case, none of which would
 9      excuse the fact that the Joseph Cuttichia
10      case was not handled properly.  You know,
11      copies of letters and stuff are fine.  But
12      the bottom line is this is years.  And
13      obviously two attorneys are trying to get
14      ahold of me that they couldn't do and, you
15      know, attach my real estate, attach the lien
16      on my real estate and got paid $45,000 for an
17      injury that never occurred.
18          MR. CHAPMAN:  And, Dean, I'll say
19      this for the record, I am requesting that any
20      other letters -- any documents that are
21      within the scope of either the pending
22      document requests or the scope of the initial
23      disclosure obligations be produced.  Okay?
24          MR. CARNAHAN:  Yes.  I made a note
25      of that.
```

## Page 112

```
 1  Q.  Now that you've seen Exhibit 7, does that
 2      help you to tell me when relative to the date
 3      of this letter that you engaged Mr. Collins
 4      to help you with the Cuttichia claim?
 5  A.  Well, this letter is dated December 12, 2002.
 6  Q.  Right.
 7  A.  So I probably received this maybe a month
 8      before.  I mean it was a short time.  As soon
 9      as I received all the mail and went through
10      it, I immediately went up to Collins.  And he
11      then did what he had to do to write a letter
12      to Whitman or call him.  And then, you know,
13      Attorney Whitman got in touch with Collins.
14  Q.  So your best testimony is you retained or you
15      engaged Mr. Collins to help with the
16      Cuttichia claim sometime in November of '02?
17  A.  I mean, that's what it looks like.
18          (Document marked as Caiazzo
19          Exhibit 8 for identification)
20          MR. CHAPMAN:  Dean, No. 8 is an
21      order of notice.
22          MR. CARNAHAN:  Okay.
23  Q.  I'm handing you Exhibit 8.  And do you
24      remember getting that document back in late
25      '02?
```

Commonwealth of Massachusetts
County of Essex
The Superior Court

Civil Docket **ESCV2002-00498**

RE: Cuticchia v Donna's Pub Inc et al

TO: Daniel P Munnelly, Esquire
Whitman Law Offices (Steven R)
197 Portland Street
5th floor
Boston, MA 02114



## CLERK'S NOTICE

This is to notify you that in the above referenced case the Court's action on **12/05/2002**:

*RE: Request upon clerk for default judgment (55b1) re: Stephen Caiazzo by Joseph Cuticchia, Donna's Pub Inc, CIAS*

is as follows:

**MOTION (P#4) After hearing, the court finds that the plff is entitled to recover damages in the amount of $36,231.48 plus interest of 3/6/02. Defts did not appear although notices was given. (Diane M. Kottmyer, Justice). Notices mailed December 06, 2002**

Dated at Salem, Massachusetts this 6th day of December, 2002.

BY:

Thomas H. Driscoll Jr.,
Clerk of the Courts

Kevin Jones
Assistant Clerk

Telephone: (978) 687-7463

Copies mailed 12/06/2002

Commonwealth of Massachusetts
County of Essex
The Superior Court

CIVIL DOCKET# ESCV2002-00498-C

Cuticchia
vs.
Donna's Pub Inc,
Stephen Caiazzo



### ORDER OF NOTICE

To the above-named Defendant:

**YOU ARE HEREBY NOTIFIED** that application has been made in said action, as appears in the Motion, for a Real Estate attachment and that a hearing upon such Motion will be held at the court house at said Lawrence Superior Court, Essex County, on **01/07/2003 A.D. at 02:00 PM in CtRm 3 (Lawrence) MA**

at which time you may appear and show cause why such Motion for Real Estae Attachment should not be granted.

**Witness, Suzanne V. DelVecchio**, Esquire, Chief Justice of the Superior Court, at Lawrence, Massachusetts this 5th day of December, 2002.

### RETURN

Essex, ss.                                Date:................................

I hereby certify and return that on ........................... I served a copy of the within summons, together with a copy of the Complaint in this action, upon the within-named defendant, in the following manner (See Mass.R.Civ.P. 4(d) (1-5):

TOTAL P.11

Commonwealth of Massachusetts
County of Essex
The Superior Court

CIVIL DOCKET# ESCV2002-00498

Cuticchia
vs.
Donna's Pub Inc et al

## JUDGMENT BY DEFAULT UPON ASSESSMENT OF DAMAGES
## PURSUANT TO MASS. R.CIV. P. 55(B)2

This action came on to be heard before the Court, Diane M. Kottmyer, Justice, presiding, upon the marking of plaintiff(s), Joseph Cuticchia, in the above entitled action, for a default Judgment by the Court, pursuant to Mass.R.Civ.P 55(b)2 and it appearing to the court that the complaint in said action was filed on 03/14/2002 and that the summons and complaint were duly served on the defendant(s), and that no answer or other defense has been filed by the said defendant, and that default was entered on          in the office of the clerk of this court, and that no proceedings have been taken by said defendant since said default was entered,

It is **ORDERED and ADJUDGED**:

That the Plaintiff (s), Joseph Cuticchia recover of the Defendant (s), Donna's Pub Inc,
Stephen Caiazzo the sum of **$36,231.48** plus interest from 03/14/2002 to 01/08/2003 in the amount of $3,573.55 and their costs of action.

Dated at Lawrence, Massachusetts this 8th day of January, 2003.

Thomas H. Driscoll Jr.,
Clerk of the Courts

By: /s/ ................
Assistant Clerk

copies mailed 01/08/2003

cvdjud55b2_1.wpd 368787 df155b2 mercierm