UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN D. CAIAZZO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 04-12627 RCL |
| THE MEDALLION INSURANCE | ) |
| AGENCIES, INC., | ) |
| | ) |
| Defendant | ) |
| | ) |

## MEMORANDUM OF LAW OF DEFENDANT, MEDALLION INSURANCE AGENCIES, INC., IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Now comes the Defendant, Medallion Insurance Agencies, Inc. (hereinafter

"Medallion"), in the above captioned matter, and hereby files its Memorandum of Law in

support of its Motion to Dismiss Plaintiff's Complaint.

### FACTUAL BACKGROUND

1.    Plaintiff's Complaint was filed on November 23, 2004, and sounds in three

counts: that Medallion failed to properly report a liability claim, which caused the plaintiff to

sustain a $35,000 uninsured loss (Count I); that Medallion failed to report a disability claim

which caused the plaintiff to sustain a $234,000 uninsured loss (Count II); and that Medallion

failed to properly report a property insurance claim which caused Caiazzo to sustain an

uninsured loss of $25,100 (Count III).

2. In support of the property losses alleged in Count III of the Complaint, Plaintiff submitted the following documents, appraisals, and photographs of the subject property in response to Discovery requests, and testified at Deposition as to their contents and accuracy:

a. handwritten itemized list of property (attached hereto as Exhibit "A");

b. itemized list of property from Scuttlebutts (attached hereto as Exhibit "B");

c. appraisal of sports memorabilia by Phil Castinetti (attached hereto as Exhibit "C"); and

d. photographs of bar evidencing the subject property (attached hereto as Exhibit "D").

3. On September 21, 2004, two months prior to filing the subject Complaint, Plaintiff filed a separate suit styled, *Stephen D. Caiazzo v. Beverly Co-Operative Bank and Harbor Rental and Realty*, Salem District Court, C.A. No. 0436-CV-1048 (hereinafter "Salem Case") (attached hereto as Exhibit "E"). Plaintiff was represented in that case by Attorney Dean Carnahan.

4. In support of the property losses alleged in the Salem Case, Plaintiff submitted the following documents, appraisals, and photographs of the subject property in response to Discovery requests, and testified at Deposition as to their contents and accuracy:

a. handwritten itemized list of property (attached hereto as Exhibit "F");

b. itemized list of property from Scuttlebutts (attached hereto as Exhibit "G");

c. appraisal of sports memorabilia by Phil Castinetti (attached hereto as Exhibit "H"); and

d. photographs of bar evidencing property subject property (attached hereto as Exhibit "I").

5. A comparison of the Exhibits A-D to Exhibits F-I shows that Caiazzo was claiming the exact same property losses in the Salem case as in the instant Federal Court action.

2

6.      A jury trial in the Salem Case was held on December 12, 2005. After a verdict in Caiazzo's favor, a Judgment for the Plaintiff in the amount of $29,118.76 entered on 1/3/2006 (attached hereto as Exhibit "J"). This amount included all interests and costs. As Medallion has just recently learned, this judgment was then *paid to Caiazzo.* Specifically, as between the two defendants in the Salem case, a Judgment in the amount of $6,001.57 was *paid* to Plaintiff by Harbor Rental and Realty, and a Judgment in the amount of $23,585.68 was *paid* to Plaintiff by Beverly Co-operative Bank, on or about March 23, 2006 (attached hereto as Exhibit "K"). At no time has plaintiff ever notified Medallion, or this court, of the fact that Caiazzo was paid in full for his property losses which were the same losses he was claiming in Count III of the subject Complaint.

7.      Medallion filed a Motion for Summary Judgment with this Court on all three Counts of the Complaint on March 6, 2006.

8.      Plaintiff filed an Opposition to Medallion's Motion for Summary Judgment, along with a Response to Defendant's Statement of Facts, on April 3, 2006. It is in Plaintiff's Response to Defendant's Statement of Facts, that Plaintiff first makes any reference to the Salem Case in Paragraph 37, "However, Caiazzo did sue Beverly Co-operative Bank and Harbor Rental and Realty, Inc. for this property loss, which resulted in a jury verdict in his favor in the amount of $25,000.00." Plaintiff never disclosed, however, that he had been *paid*; to the contrary, his position was that his uninsured loss claim remained valid and due to be paid by Medallion.

9.      A hearing on Medallion's Motion for Summary Judgment took place on September 18, 2006. At this hearing, plaintiff's counsel never disclosed that his client had been *paid* on the losses alleged in Count III. To the contrary, he argued that Caiazzo's uninsured loss

3

claim remained valid and due to be paid by Medallion. At the hearing, Judge Lindsay allowed Medallion's motion as to Counts II and III, for reasons unrelated to the current motion.

10. Plaintiff filed a "Motion for Relief from Summary Judgment on Claim for Property Loss" in this court on September 29, 2006. In that Motion, Plaintiff argued "that justice would be denied if Caiazzo were not allowed to pursue his legitimate claim for loss of his personal property." He emboldened that statement in his supporting memorandum by stating, "that justice would be denied and an abuse of justice would result if Caiazzo were not allowed to pursue his legitimate claim against Medallion for his personal property loss."

11. In response, Medallion filed an opposition and a motion for sanctions on October 6, 2006. Plaintiff filed his Opposition to the Motion for Sanctions on October 17, 2006, stating that "Caiazzo's motion for relief from summary judgment is not frivolous, does not contain misstatements of fact…". In this paper, for the first time, plaintiff acknowledged having received some payment. However, in the process of doing so he made a further material misrepresentation to the court and Medallion when he stated "he recovered for *part of his property loss*." This statement is patently false and misleading, because it is beyond dispute that plaintiff was paid *in full* for the value of all property losses in Count III, as determined by an Essex County jury, plus interest and costs.

12. Plaintiff's motion for relief from judgment on Count III was denied by this court on November 9, 2006.

13. In its recent trial preparation Medallion has learned that not only did Plaintiff previously recover *the entire amount* of the property loss claimed in Count III of the Complaint, but that he systematically withheld that information from this Court and Medallion throughout the duration of this case. In doing so Plaintiff intentionally violated Medallion's subrogation

rights, insofar as Medallion would have rights to collect any judgment in the instant action from any third party tortfeasor which had caused the plaintiff's underlying property loss. Furthermore, after the property loss claim was decided on summary judgment, Plaintiff made affirmative misrepresentations to this Court concerning the viability of the claim and the potential injustice to the Plaintiff. In reality, Plaintiff had previously recovered the entire amount of damages for the property loss claimed in Count III of the Complaint, and was seeking, in effect, an impermissible double recovery of those damages, to the extreme prejudice and detriment of Medallion.

13. Making the situation even more egregious, Medallion has recently learned that most of the property which plaintiff claimed had been lost or stolen, was in reality not lost or stolen, and rather was sold by the plaintiff to an individual named Joseph Bocelli. *See Affidavit of Kathleen A. Bugden, Esquire* (attached hereto as Exhibit L). Defense counsel provided Mr. Bocelli with plaintiff's itemized property claim, which plaintiff submitted in the instant action, as well as the Salem District Court action. Mr. Bocelli reviewed the items on this list. He said he purchased most of the items on the list from Mr. Caiazzo after Scuttlebutts closed, and that, in fact, he still possesses many of them. By marking on the list, Mr. Bocelli identified which specific items he had purchased from Mr. Caiazzo. A review of Exhibit L shows that Mr. Bocelli purchased most of the listed items from Mr. Caiazzo. The items were never lost. Mr. Caiazzo sold them, for money. He then claimed, in two separate lawsuits, that the items were lost and that he was entitled to monetary compensation for them. This is fraud. The plaintiff committed a fraud in the Salem District Court action, and in the instant Federal Court action. In addition to his fraudulent attempt to conceal his prior full recovery of damages in the Salem action, it is apparent that the underlying property loss claim itself was fraudulent and false.

5

Plaintiff has, in effect, already been paid for this property twice – once by Mr. Bocelli, and then by the defendants in the Salem action.   In the current case, he was, in effect, seeking to be paid a *third time* for the property.

## STANDARD OF REVIEW

In Federal Court, the specific sanction of dismissal has been recognized as appropriate in response to abusive litigation practices, in accordance with the court's inherent power to levy sanctions. *Link v. Wabash Railroad Co*, 370 U.S. 626, 632 (1962).   The First Circuit has stated "It strikes us as elementary that a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud upon the court." *Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir. 1989) (considering motions to dismiss based on fraud on court).   When fraud on the court is shown through clear and convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power and broad discretion to fashion a judicial response warranted by the fraudulent conduct, including dismissal of claims, dismissal of the entire action, or entry of default judgment. *See generally Rockdale Management Co., Inc. v. Shawmut Bank, NA*, 418 Mass. 596, 598 (1994) (motion judge did not abuse her discretion in dismissing action based upon fraud upon the court, where plaintiff forged a document, provided misleading answers to interrogatories and proffered false deposition testimony).

The court's authority to dismiss an action may also arise under Fed. R. Civ. P. 11, where a party acts in bad faith in instituting, conducting and furthering litigation. *See generally Pope v. Federal Express Corporation*, 138 F.R.D. 675, 681-683 (W.D.Mo. 1990) (plaintiff violated Rule 11 and dismissal was appropriate sanction where plaintiff manufactured a document which was frivolous and contained false statements in support of her case).

6

The United States Supreme Court has held that a fraud on the court occurs when a party hampers with the fair administration of justice by deceiving "the institutions set up to protect and safeguard the public" or otherwise abusing or undermining the integrity of the judicial process. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 249 (1944). The First Circuit defined the concept as:

> "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."

*Aoude v. Mobil Oil Corporation*, 892 F.2d at 1118 (1st Cir. 1989) (attaching fabricated purchase agreement to complaint and thereby representing it as authentic to gain unfair advantage against opposing party amounted to a "near classic example" of fraud upon the court). The misconduct need not be as egregious as that committed in *Aoude*, however, as the court cited a number of other fraud cases where the conduct was "less reprehensible than in the case at bar." *Aoude v. Mobil Oil Corporation*, 892 F.2d at 1120.

The SJC adopted the fraud standard set in Aoude in determining that a motion judge did not abuse her discretion in dismissing the action where plaintiff forged a document, provided misleading answers to interrogatories and proffered false deposition testimony. See generally Rockdale Management Co., Inc. v. Shawmut Bank, NA, 418 Mass. 596, 598 (1994). There are numerous cases standing for the proposition that it is within the trial court's authority and discretion to terminate an action in situations where fraud or abusive litigation practices have been committed. See, Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11-12 1985) (affirming district court's entry of default judgment under court's inherent powers in response to defendant's abusive litigation practices); Hazel-Atlas Glass Co. v. Hartford-

Empire Co., 322 U.S. at 250 (1944) (creating and presenting false evidence in support of a claim or defense); Nichols v. Klein Tools, Inc., 949 F.2d 1047, 1049 (8th Cir.1991) (contradictory deposition testimony, deliberate efforts to conceal evidence and repeated concealing of material facts); Combs. v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir.1991) (authorizing counsel to falsify past deposition testimony and swearing that plaintiff made changes personally); Eppes v. Snowden, 656 F.Supp. 1267, 1279 (E.D.Ky.1986) (introducing backdated letters and encouraging a witness to perjure himself); Synanon Church v. United States, 579 F.Supp. 967, 974 (D.D.C.1984) (destroying evidence and otherwise impeding the discovery process).

## ARGUMENT

Plaintiff's counsel stood before this court on September 19, 2007 and argued that Count III was viable and should go to trial. In doing so, he abused the integrity of the litigation process and this court. At that time, he knew that his client had already been paid, in full, for the losses claimed under Count III. (See, Ex. K). As a matter of law, he knew or should have known that the plaintiff's position in this litigation was not only a misrepresentation of material fact, it was an intentional violation of Medallion's legal rights to subrogation. In the instant action, plaintiff was seeking recovery from Medallion of rights he allegedly had under his property insurance policy through Medallion. In Massachusetts, a property insurer who pays its insured for a loss caused by a third party tortfeasor becomes subrogated, either by operation of the insurance contract, a specific assignment, or by operation of equity, to all of the insured's legal rights against the tortfeasor, to the extent of its claim payment(s). *See, Safety Ins. Co. v. Massachusetts Bay Transp. Authority*, 58 Mass.App.Ct. 99 (2003). In this jurisdiction, where *property insurance* is involved, subrogation has clearly been recognized, based in either equity

8

or contract, going back at least to the early 1800s[1].   "Subrogation is an equitable adjustment of

rights that operates when a creditor or victim of loss is entitled to recover from two sources, one

of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the

obligation, it *succeeds to the rights of the party it has paid* (the creditor or loss victim, called the

subrogor) against the third, primarily responsible party." *Safety,* at 103, citing: *Frost v. Porter*

*Leasing Corp.*, 386 Mass. 425, 426-427 (1982). "Subrogation facilitates the speedy payment of

claims to an injured person, avoids the necessity of engaging in a lengthy, cumbersome and

expensive legal battle, and *prevents the pitfalls of double recovery or double payment.*

Subrogation rights may be reserved by an agreement between the insurer and insured, may, in

some instances, arise by implication of law, or may be authorized by statute." *Frost,* at 427.

(Subrogation) allows "the substitution of one person in place of another ... so that he who is

substituted succeeds to the rights of the other." *East Boston Sav. Bank v. Ogan*, 428 Mass. 327,

701 N.E.2d 331 (1998).   Typically, where the plaintiff can recover from two sources – his

property insurance policy, or a third party tortfeasor – he will pursue the policy rather than the

---

[1]   The case of *Hart v. Western R. Corp.*, 13 Metcalf 99 (1847) supports all of the arguments being made herein by Medallion. In this case, Chief Justice Lemuel Shaw stated as follows: " Now, when the owner, who prima facie stands to the whole risk, and suffers the whole loss, has engaged another person to be at that particular risk for him, in whole or in part, the owner and the insurer are, in respect to that ownership and the risk incident to it, in effect one person, having together the beneficial right to an indemnity provided by law for those who sustain a loss by that particular cause. *If, therefore, the owner demands and receives payment of that very loss from the insurer, as he may, by virtue of his contract, there is a manifest equity in transferring the right to indemnity, which he holds for the common benefit, to the assurer.* It is one and the same loss, for which he has a claim of indemnity, and he can equitably receive but one satisfaction. So that, if the assured first applies to the rail road company, and receives the damages provided, it diminishes his loss pro tanto, by a deduction from, and growing out of, a legal provision attached to, and intrinsic in, the subject insured. The liability of the rail road company is, in legal effect, first and principal, and that of the insurer secondary; not in order of time, but in order of ultimate liability. The assured may *106 first apply to whichever of these parties he pleases; to the rail road company, by his right at law, or to the insurance company, in virtue of his contract. *But if he first applies to the rail road company, who pay him, he thereby diminishes his loss, by the application of a sum arising out of the subject of the insurance, to wit, the building insured, and his claim is for the balance.* And it follows, as a necessary consequence, that if he first applies to the insurer, and receives his whole loss, he holds the claim against the rail road company in trust for the insurers. Where such an equity exists, the party holding the legal right is conscientiously bound to make an assignment, in equity, to the person entitled to the benefit; and if he fails to do so, the cestui que trust may sue in the name of the trustee, and his equitable interest will be protected." Id., at 105-106 (Emphasis added). See also, *Jackson Co. v. Boylston Mut. Ins. Co.*, 139 Mass. 508 (1885).

9

tortfeasor because he does not have to prove fault and damages; he just has to establish that a loss occurred and what the value of that loss was.

In the current case, the plaintiff recovered from the tortfeasors his full damages, and then withheld the fact of that recovery and attempted to recover for the loss again by virtue of the instant E&O/insurance claim. The necessary and inescapable corollary to the cases cited above is that, where the plaintiff has already been paid in full by the tortfeasor, his rights with respect to his insurance policy terminate and may not be pursued. *Hart v. Western R. Corp.*, 13 Metcalf 99 (1847) (plaintiff's rights against insurance defendant are diminished to the extent of his recovery against tortfeasor).  Otherwise, the plaintiff would be reaping a double recovery, in contradiction to the insurance defendant's longstanding and well recognized right of subrogation.  The legal prohibition against double recoveries is well known and well-recognized among lawyers.   In pressing Count III in this case, after he had been paid in full, the plaintiff and his counsel were violating well established law in this commonwealth. *Hart v. Western R. Corp.*, 13 Metcalf 99 (1847).  "Subrogation is built into insurance policies to avoid unjust enrichment through double recoveries." *Money Store/Massachusetts, Inc. v. Hingham Mut. Fire Ins. Co.*, 46 Mass.App.Ct. 636, 640 (1999).  "The reason for implied subrogation under contracts of insurance is to prevent an unwarranted windfall to the insured." *Frost v. Porter Leasing Corp.*, 386 Mass. 425, 428 (1982) citing *Travelers Ins. Co. v. Graye*. 358 Mass. at 241. "If the insured recovers from both the insurer and the tortfeasor, his compensation may exceed his actual loss. Duplicative recovery is "a result which the law has never looked upon with favor." *Frost,* citing *Travelers Ins. Co. v. Graye*, 358 Mass. at 241.

Whether by operation of law or contract, the fact that plaintiff accepted loss payments for its property damage from the tortfeasors meant, as a matter of law, that his rights against

10

Medallion terminated. *Hart v. Western R. Corp.*, 13 Metcalf 99 (1847). Rather than disclosing the fact of the full payment and dismissing Count III, as he should have done, plaintiff appeared before this court and insisted that his claim against Medallion was viable and should be tried.

Going one enormous step beyond the foregoing transgression, it appears that the alleged loss never occurred in the first place.   The property was not lost, as Caiazzo alleged in the Salem District Court case and in this case.   Rather, Caiazzo sold it, and then concealed the sale and made false tort and insurance claims for that property.   (Exhibit L).   In pursuing Count III in this case, the plaintiff was in effect pursuing an illegal scheme to obtain a *triple* recovery of damages.   If the court finds that the property was never lost and the plaintiff acted fraudulently in pursuing Count III, then Medallion is entitled, at a minimum, to dismissal of this action.   See, *Gegichian v. Richmond Ins. Co.*, 305 Mass. 132, 25 N.E.2d 191 (1940) (claim may be voided even where plaintiff only exaggerates the value of an otherwise legitimate claim in order to secure a better bargaining position with insurer).

11

## CONCLUSION

For the aforementioned reasons, Plaintiff's Complaint in its entirety must be dismissed pursuant to Fed. R. Civ. P. 11, and the inherent power of the federal court to regulate and control fraud upon the court.

Defendant,
MEDALLION INSURANCE AGENCIES,
INC.
By its attorneys,

William D. Chapman
BBO #551261
Kathleen A. Bugden
BBO #662498
Melick, Porter & Shea, LLP
28 State Street
Boston, MA 02109
(617) 523-6200

12

## CERTIFICATE OF SERVICE

I, Kathleen A. Bugden, hereby certify that on this day, I forwarded notice of the foregoing document(s) by hand to the following:

Dean Carnahan, Esq.
LAW OFFICES OF DEAN CARNAHAN
126 Broadway
Arlington, MA 02474

Kathleen A. Bugden
Kathleen A. Bugden

Date: February 26, 2007

1. TWO MONTH OLD CLOTHING CHEST PURCHASED IN SALEM @ THE UNFINISHED FURNITURE STORE   500.00 - 600. W

2. NEW MOUNTAIN BIKE PURCHASED IN July OF 2001   200. W

3. 1 LEATHER COUCH PURCHASED IN MAY OF 2001.   600. W

4. 1 FAX MACHINE PURCHASED IN MARCH, 2001.   150. W

5. 1 BOX OF COLLECTABLE LIQUORS ?

6. 1 AIR CONDITIONER PURCHASED IN MAY 2001.   200 - 300. W

7. 1 15' X 20" SAFE PURCHASED IN SPRING OF 2001,   180. W

8. 1 PLATINUM ALBUM SET WITH PICTURES SIGNED BY THE ROCK BAND, EXTREME.

9. 2 AWNINGS CUSTOM MADE BY PELLITIER AWNINGS IN SALEM, MA. APPROX   3000 - 4000. W

10. ASSORTED NEON LIGHTS ? GIVIN TO ME AS GIFTS.

11. LEATHER SWIVAL DESK CHAIR. X MAS PRESENT FROM EMPLOYEES.   100. W

12. COLLECTION OF VIDEOS OF BRUINS AND REST. FUNCTIONS HELD @ 3 LOCATIONS.   ?

13. PARROT STAND   200. W

VARIOUS OTHER ITEMS REMOVED FROM
    SCUTTLEBUTTS

1- 2 MONTH OLD UNFINISHED ARMOUR pd. 500.00
1- NEW MOUNTAIN BIKE PURCHASED 1 MO PRIOR
                                        200.00
1 LEATHER COACH - 200.00
1 FAX MACHINE 150.00 (CANNON)
1 BOX OF COLLECTIBLE LIQUORS ?
1 AIR CONDITIONIOR - 200.00
1 15" X 20" SAFE - 180.00
ASSORTED BOOTS & SHOES

2



24 (Biazzo)
6/14/05   AC

1- 10 FOOT FIBERGLASS HAMMERHEAD SHARK
$1400.00

1- SIGNED PICTURE OF BAND "EXTREME" WITH
PLATINUM CD'S ENCASED.

'- NEW 28" All TERRAIN BIKE (400.00)

- BOX OF COLLECTABLE LIQUORS - (2.000.00)

'- NEW ARMOUR      (- 600.00)

'- DENNIS LEARY PICTURE SIGNED
'- ROBERT URICK PICTURE SIGNED
'- SYLVESTER STALON PICTURE SIGNED
'- 3'x 2' PICTURE OF BRUINS,
   CAM NEELY, LYNDON BYERS, BILL O'DWYER
   AND MYSELF

- ISLAND OASIS MACHINE - (3.000.00)

- LEATHER COUCH (NEW) 600.00

- AIR CONDITIONER IN WINDOW (OFFICE) 300.00

3 - CUSTOM AWNINGS w/ SCUTTLEBUTTS LOGO
   PRINTED - 3.000.00

(2 - BOXES OF VARIOUS SPORTS PICTURES)

EXHIBIT "A"

EXHIBIT
25A (PA220)
6/10/05    AC

## SCUTTLEBUTTS, 73 LAFAYETTE STREET, SALEM, MA.

| QTY | DESCRIPTION |
|---|---|
| 1 | 7' BEV. AIRE S/C BEER COOLER |
| 2 | 4' BEV. AIRE S/C BEER COOLER |
| 1 | 3' BEV. AIRE S/C MUG CHILLER |
| 1 | 6' SS 3-COMP BAR SINK |
| 1 | 3' SS BAR SINK |
| 2 | 2' SS BAR SINKS |
| 3 | ASST ECR'S |
| 4 | 6-SPIGOT DRAFT BEER HEADS |
| 72 | WOOD BAR STOOLS |
| 7 | FOEM TOP TABLES |
| 1 | BEV. AIRE SS S/C FREEZER |
| 1 | VULCAN 6-BURNER STOVE |
| 1 | IMPERIAL 3' CHAR GRILLE W/3' SS STAND |
| 1 | BAKERS PRIDE #GP51 SS PIZZA OVEN |
| 1 | PITCO 14"FRYER |
| 1 | KOLD-DRAFT TOP MNTED ICE MAKER |
| 1 | RAETONE 2-DR SS S/C REFRIGERATOR (LEASED?) |
| 1 | 4' HOT FOOD TABLE |
| 1 | 2' SS SINK |
| 1 | 2' SS TABLE |
| 1 | 10' SS HOOD W/SS BACK WALL, FILTERS & FIRE SYSTEM |
| LOT | POTS, PANS, and SMALLWARES |
| 1 | 3' HEAT LAMP |
| LOT | APPX 17 ASST NEON LIGHTS |
| 2 | COLOR TV's |
| 3 | SMOKEATERS |
| 4 | CEILING FANS |
| 16 | HANGING LIGHT FIXTURES |
| 1 | OLD TYME POP CORN MACHINE |
| 1 | SONY WIDE SCREEN TV |
| LOT | APPX 50' WOOD BAR |
| 1 | FOSTER 11x10' METAL CLAD WALK-IN COOLER W/COMP |
| 1 | C/T S/C REFRIG DISPLAY |
| 1 | SENTRY SAFE |
| 1 | PANASONIC FAX |

674494.1

# *SPORTSWORLD*

*New England's Largest Sports Memorabilia Shoppe*

429 BROADWAY (RTE 99) EVERETT, MASSACHUSETTS 02149
Phone: (617) 387-7220      Fax: (617) 387-6177
www.sportsworld-usa.com      Email: info@sportsworld-usa.com

PHIL CASTINETTI
PRESIDENT

To Whom it May concern,

I, Phil Castinetti, have appraised the items that were owned by Mr. Steve Caiazzo as follows.

- LYNDON BYERS GAME USED BRUINS ROAD JERSEY — $2,500.-
- CRAIG JANNEY GAME USED BRUINS HOME JERSEY — $1,500.-
- LYNDON BYERS TEAM SIGNED SHARKS JERSEY — $2,000.-
- DREW BLEDSOE SIGNED PATRIOTS JERSEY — $250.-
- NOLAN RYAN LIMITED EDITION SIGNED PRINT — $500.-
- RAY BOURQUE SIGNED 8×10 PHOTO — $100.-
- CAM NEELY SIGNED 8×10 PHOTO — $75.-
- GERRY CHEEVERS SIGNED 8×10 PHOTO — $50.-
- LYNDON BYERS SIGNED 8×10 PHOTO — $25.-
- KEN HODGE SIGNED 8×10 PHOTO — $25.-
- ANDY MOOG SIGNED 8×10 PHOTO — $40.-
- GARY DOAK SIGNED 8×10 PHOTO — $25.-
- BOBBY ORR SIGNED 8×10 PHOTO — $150.-
- 1 BOX OF 45 LESSER NAME PLAYERS SIGNED PHOTOS @ $15 ea. — $675.-
- ROBERT URICH SIGNED 8×10 PHOTO — $100.-
- DENNIS LEARY SIGNED 8×10 PHOTO — $75.-
- SYLVESTER STALLONE SIGNED 8×10 PHOTO — $200.-
- LARGE BRUINS PHOTO - NEELY-BYERS etc. — $200.-
- 4 FT. × 7 FT. BRUINS TEAM PHOTO — $1,000.-
- RAY BOURQUE GAME USED STICK — $350.-
- ASST. GAME USED STICKS - NEELY, HODGE etc. — $1,000.-
- CAM NEELY GAME USED HOCKEY GLOVES — $1,500.-
- 8 FT. FIBERGLASS SHARK - WALL MOUNTED — $1,500.-

TOTAL $13,840.-

Phil Castinetti

OPEN MON. – SAT. AT 9:00 A.M.

   









































# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

DISTRICT COURT DEPARTMENT
OF THE TRIAL COURT
SALEM DIVISION
CIVIL NO.

STEPHEN D. CAIAZZO,
    Plaintiff

v.

COMPLAINT

BEVERLY CO-OPERATIVE BANK and
HARBOR RENTAL AND REALTY,
    Defendants

1.     The plaintiff, Stephen D. Caiazzo ("Caiazzo"), is a resident of Cape Coral, Florida.

2.     The defendant, Beverly Co-operative Bank ("Beverly Co-op") is a bank licensed to conduct business in the Commonwealth of Massachusetts and has offices in Beverly, Massachusetts.

3.     The defendant, Harbor Rental and Realty ("Harbor") is a Massachusetts corporation, with offices in Salem, Massachusetts.

4.     In 2001, Caiazzo was the manager of Scuttlebutts, an eating and drinking establishment located at 73 Lafayette Street in Salem, Massachusetts.

5.     At that time, Caiazzo kept personal property, acquired during his years of business, in his office and at other places inside and outside of the premises.

6.     A lease for the premises was held by Jenna's Pub, Inc. d/b/a Scuttlebutts, a commercial tenant.

7.     The commercial landlord for the premises alleged a violation of the lease and Jenna's Pub, Inc. d/b/a Scuttlebutts was evicted from the premises.

8.    On or about September, Beverly Co-op purchased the land and building containing the premises.

9.    Harbor was appointed keeper of the premises and of Caiazzo's personal property.

10.   Caiazzo was able to remove some of his personal property from the premises. However, without notice to Caiazzo, Beverly Co-op, its agents, servants or employees and/or Harbor, its agents, servants or employees removed the remainder of Caiazzo's personal property from the premises and sold, transferred or destroyed the remaining personal property of Caiazzo

## COUNT I – NEGLIGENCE

11.   Caiazzo restates and incorporates herein the allegations set forth in Paragraphs 1-10 of this Complaint.

10.   Beverly Co-op and/or Harbor had the duty to place Caiazzo's personal property in storage, to keep in contact with Caiazzo regarding his personal property and to otherwise protect and preserve Caiazzo' personal property.

11.   In breach of this duty, Beverly Co-op and/or Harbor failed to place the personal property in storage, filed to contact Caiazzo regarding the status of his property and otherwise failed to protect and preserve Caiazzo's personal property.

12.   As a result thereof, Caiazzo suffered damages, consisting of the loss of his personal property.

## COUNT II – CONVERSION

13.   Caiazzo restates and incorporates herein the allegations set forth in Paragraphs 1-10 of this Complaint.

14.   Caiazzo had a right to immediate possession of his personal property.

15.    Beverly Co-op and/or Harbor converted Caizzzo's personal property to its own use by exercising dominion over the property which was inconsistent with Caizzzo's right.

16.    As a result thereof, Caiazzo suffered damages, consisting of the loss of his personal property.

WHEREFORE, plaintiff, Stephen D. Caiazzo, requests this Court to enter judgment against the defendant, Beverly Co-operative Bank and/or against the defendant, Harbor Rental and Realty, for monetary damages, interest, costs and such additional relief as the Court deems just and reasonable.

By Plaintiff's Attorney,

DEAN CARNAHAN
BBO #074580
LAW OFFICES OF DEAN CARNAHAN
126 Broadway
Arlington, MA 02474
(781) 641-2825

Dated: September 21, 2004

B-2273-C

TWO MONTH OLD CLOTHING CHEST PURCHASED IN SALEM
@ THE UNFINISHED FURNITURE STORE    500.00 - 600. w

5. NEW MOUNTAIN BIKE PURCHASED IN JULY OF 2001
                                                        200.w

1 LEATHER COUCH PURCHASED IN MAY OF 2001.
                                                        600.w

1 FAX MACHINE PURCHASED IN MARCH, 2001.
                                                        150.w

1 BOX OF COLLECTABLE LIQUORS ?

1 AIR CONDITIONER PURCHASED IN MAY 2001.
                                                        200 - 300. w

1 15' x 20" SAFE PURCHASED IN SPRING OF 2001.
                                                        180. w

1 PLATINUM ALBUM SET WITH PICTURES SIGNED
   BY THE ROCK BAND, EXREME.

2 AWNINGS CUSTOM MADE BY PELLITIEN AWNINGS
   IN SALEM, MA. APPROX         3000 - 4000. w

3. ASSORTED NEON LIGHTS ? GIVIN TO ME AS GIFTS.

1. LEATHER SWIVAL DESK CHAIR. X MAS PRESENT
    FROM EMPLOYEES.    100. w

2. COLLECTION OF VIDEOS OF BRUINS AND REST.
    FUNCTIONS HELD @ 3 LOCATIONS. ?

3 PARROT STAND   200.w

— VARIOUS OTHER ITEMS REMOVED FROM
    SCUTTLEBUTTS

1- A month old UNFINISHED ARMOUR pd. 500.i
1- NEW MOUNTAIN BIKE PURCHASED 1 MO PRIOR
                                        200.w
1 LEATHER COACH - 200. W
1 FAX MACHINE 150. W (CANNON)
1- BOX - OF COLLECTIBLE LIQUORS ?

AIR CONDITIONIONR - 200. W
15" X 20" SAFE - 180. W
ASSORTED BOOTS & SHOES

1- 10 FOOT FIBERGLASS HAMERHEAD SHARK
$1400.00

1- SIGNED PICTURE OF BANK "EXTREME" WITH
PLATINUM CD'S ENCASED.

- NEW 28" ALL TERRAIN BIKE (400. W)

- BOX OF COLLECTABLE LIQUONS -(2000. W)

1- NEW ARMOUR                    (- 600. W)

- DENNIS LEARY PICTURE SIGNED
- ROBERT URICK PICTURE SIGNED
- SYLVESTER STALON PICTURE SIGNED
- 3' X 2' PICTURE OF BRUINS,
    CAM NEELY, LYNDON BYERS, BILL O'DWYER
    AND MYSELF

- ISLAND OASIS MACHINE - (3000. W)

- LEATHER COUCH (NEW) 600. W

- AIR CONDITIONER IN WINDOW (OFFICE) 300. W

3- CUSTOM AWNINGS W/SCUTTLEBUTTS LOGO
    PRINTED - 3000. W

2- BOXES OF VARIOUS SPORTS PICTURES.

Exh. C

# EXHIBIT "A"

## SCUTTLEBUTTS, 73 LAFAYETTE STREET, SALEM, MA.

All- EACH

| QTY | DESCRIPTION |
|---|---|
| 1 | 7' BEV. AIRE S/C BEER COOLER — 1,000 |
| 2 | 4' BEV. AIRE S/C BEER COOLER — 400 (EACH) |
| 1 | 3' BEV. AIRE S/C MUG CHILLER — 250 |
| 1 | 6' SS 3-COMP BAR SINK — 100 |
| 1 | 3' SS BAR SINK — 50 |
| 2 | 2' SS BAR SINKS — 25 |
| 3 | ASST BCR'S |
| 4 | 6-SPIGOT DRAFT BEER HEADS — COPPER — 2500 |
| 72 | WOOD BAR STOOLS — 3000 - 4000 |
| 7 | FORM TOP TABLES — 500 |
| 1 | BEV. AIRE SS S/C FREEZER — 1500 |
| 1 | VULCAN 6-BURNER STOVE — 600 |
| 1 | IMPERIAL 3' CHAR GRILLE W/3' SS STAND — 150 |
| 1 | BAKERS PRIDE #GP51 SS PIZZA OVEN — 200 |
| 1 | PITCO 14"FRYER — 150 |
| 1 | KOLD-DRAFT TOP MNTED ICE MAKER — 1000 |
| 1 | RAETONE 2-DR SS S/C REFRIGERATOR (LEASED?) 500 |
| 1 | 4' HOT FOOD TABLE — 500 |
| 1 | 2' SS SINK — 50 |
| 1 | 2' SS TABLE — 50 |
| 1 | 10' SS HOOD W/SS BACK WALL, FILTERS & FIRE SYSTEM — 3000 |
| LOT | POTS, PANS, and SMALLWARES — 100 |
| 1 | 3' HEAT LAMP — 10 |
| LOT | APPX 17 ASST NEON LIGHTS — 1000 |
| 2 | COLOR TV's — 400 |
| 3 | SMOKEATERS — 100 |
| 4 | CEILING FANS — 25 |
| 16 | HANGING LIGHT FIXTURES — 10 |
| 1 | OLD TYME POP CORN MACHINE - 150 |
| 1 | SONY WIDE SCREEN TV — 800 |
| LOT | APPX 50' WOOD BAR — 15,000 |
| 1 | FOSTER 11x10' METAL CLAD WALK-IN COOLER W/COMP — 2500 |
| 1 | C/T S/C REFRIG DISPLAY — 200 |
| 1 | SENTRY SAFE — 10 |
| 1 | ~~PANASONIC FAX — 50~~ |

674494.1

Exh. A

# *SPORTSWORLD*

*New England's Largest Sports Memorabilia Shoppe*

429 BROADWAY (RTE 99) EVERETT, MASSACHUSETTS 02149
Phone: (617) 387-7220       Fax: (617) 387-6177
www.sportsworld-usa.com     Email: info@sportsworld-usa.com



EXHIBIT
# 4    SDC
2/22/05   BLL

PHIL CASTINETTI
PRESIDENT

To Whom it May concern,

I, Phil Castinetti, have appraised the items,
that were owned by Mr. Steve Carozzo as follows.

- LYNDON BYERS GAME USED BRUINS ROAD JERSEY - $2,500.-
- CRAIG JANNEY GAME USED BRUINS HOME JERSEY - $1,500.-
- LYNDON BYERS TEAM SIGNED SHARKS JERSEY —— $2,000.-
- DREW BLEDSOE SIGNED PATRIOTS JERSEY —— $250.-
- NOLAN RYAN LIMITED EDITION SIGNED PRINT —— $500.-
- RAY BOURQUE SIGNED 8×10 PHOTO —— $100.-
- CAM NEELY SIGNED 8×10 PHOTO —— $75.-
- GERRY CHEEVERS SIGNED 8×10 PHOTO —— $50.-
- LYNDON BYERS SIGNED 8×10 PHOTO —— $25.-
- KEN HODGE SIGNED 8×10 PHOTO —— $25.-
- ANDY MOOG SIGNED 8×10 PHOTO —— $40.-
- GARY DOAK SIGNED 8×10 PHOTO —— $25.-
- BOBBY ORR SIGNED 8×10 PHOTO —— $150.-
- 1 BOX OF 45 LESSER NAME PLAYERS SIGNED PHOTOS @ $15 EA.
  —— $675.-
- ROBERT URICH SIGNED 8×10 PHOTO —— $100.-
- DENNIS LEARY SIGNED 8×10 PHOTO —— $75.-
- SYLVESTER STALLONE SIGNED 8×10 PHOTO —— $200.-
- LARGE BRUINS PHOTO - NEELY - BYERS etc. —— $200.-
- 4 FT. × 7 FT. BRUINS TEAM PHOTO —— $1,000.-
- RAY BOURQUE GAME USED STICK —— $350.-
- ASST. GAME USED STICKS - NEELY, HODGE etc. —— $1,000.-
- CAM NEELY GAME USED HOCKEY GLOVES —— $1,500.-
- 8 FT. FIBERGLASS SHARK - WALL MOUNTED —— $1,500.-

                              TOTAL $13,840.-

Phil Castinetti

EN MON. - SAT. AT 9:00 A.M.

   

































































| **JUDGMENT FOR PLAINTIFF(S)** | 200436CV001048 | **Trial Court of Massachusetts** **District Court Department** | |
|---|---|---|---|

| CASE NAME   STEPHEN D. CAIAZZO vs. BEVERLY CO-OPERATIVE BANK | | |

| PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT | CURRENT COURT |
|---|---|
| P01 STEPHEN D. CAIAZZO | Salem District Court |
| | 65 Washington Street |
| | Salem, MA 01970-3572 |
| | (978) 744-1167 |

| DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT | | |
|---|---|---|
| D01 BEVERLY CO-OPERATIVE BANK | | ←←←← WHEN YOU MUST APPEAR ←←←← |
| D02 HARBOR RENTAL AND REALTY | | |
| | ROOM/SESSION | |

| PARTY TO WHOM THIS COPY OF JUDGMENT IS ISSUED | FURTHER ORDERS OF THE COURT |
|---|---|
| D01 BEVERLY CO-OPERATIVE BANK | |
| BEVERLY, MA 01915 | |

| ATTORNEY FOR PARTY TO WHOM THIS COPY OF JUDGMENT IS ISSUED |
|---|
| D01 JON T. SKERRY |
| 6 LYNDE ST. |
| SALEM, MA 01970 |

## JUDGMENT FOR PLAINTIFF(S)

On the above action, upon verdict of a jury, the issues having been duly tried or heard, and a finding or verdict having been duly rendered, IT IS ORDERED AND ADJUDGED by the Court ( Brennan, Hon. Robert A. ) that the Plaintiff(s) named above recover of the Defendant(s) named above the "Judgment Total" shown below plus such other costs as may be taxed pursuant to law, with postjudgment interest thereon pursuant to G.L. c. 235, §8 at the "Annual Interest Rate" shown below from the "Date Judgment Entered" shown below until the date of payment.

## NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ P. 54, 58, 77(d) and 79(a), this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties. Attached are any rulings of law, or any findings of fact and rulings of law, which may have been made by the Court pursuant to Mass. R. Civ. P. 52(c) or 64A(c).

| 1. Date of Breach, Demand or Complaint | | 9/23/2004 |
|---|---|---|
| 2. Date Judgment Entered | | 1/3/2006 |
| 3. Number of Days of Prejudgment Interest  *(Line 2 - Line 1)* | | 467 |
| 4. Annual Interest Rate of  12.00%/ 365 = Daily Interest Rate | | 0.032877% |
| 5. Single Damages | | $25,000.00 |
| 6. Prejudgment Interest    *(lines 3x4x5)* | | 838.36 |
| 7. Double or Treble Damages Awarded by Court  *(where authorized by law)* | | $0.00 |
| 8. Costs | Filing Fee & Surcharge | $205.00 |
| 9. | Attorney Fees Awarded by Court *(where authorized by law)* | $0.00 |
| 10. | Other Costs Awarded by Court | $75.40 |
| 11. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)**    *(lines 5+6+7+8+9+10)* | | $26,118.76 |

| DATE JUDGMENT ENTERED 1/3/2006 | CLERK-MAGISTRATE/ASST. CLERK X | |
|---|---|---|

**CLERK/MAGISTRATE**

Date/Time Printed: 01/03/2006 11:51 AM                                                                 FORM NO.

# LAW OFFICES OF DEAN CARNAHAN

## 126 BROADWAY, ARLINGTON, MA 02474

Telephone: (781) 641-2825
Facsimile: (781) 641-2825
E-mail: ddcarnahan@rcn.com

March 23, 2006

Clerk's Office – Civil Business
Salem District Court
65 Washington Street
Salem, MA 01970

**RE: Stephen D. Caiazzo v.**
     **Beverly Co-operative Bank and**
     **Harbor Rental and Realty**
     **Civil No. 0436CV1048**
**OUR FILE #2772**

Dear Sir/Ms.:

Enclosed please find Execution against Beverly Co-operative Bank, which I have
endorsed as "satisfied in full."

Kindly docket and file same.

Thank you for your attention to this matter.

Very truly yours,

DEAN CARNAHAN

cc: Jon T. Skerry, Esq.

B-2272-FL

| **EXECUTION** | **200436CV001048** | Trial Court of Massachusetts<br>District Court Department |
|---|---|---|



CASE NAME  **STEPHEN D. CAIAZZO  vs.  BEVERLY CO-OPERATIVE BANK**

| JUDGMENT CREDITOR(S) IN WHOSE FAVOR EXECUTION IS ISSUED<br>P01     STEPHEN D. CAIAZZO | CURRENT COURT<br>Salem District Court<br>65 Washington Street<br>Salem, MA 01970-3572<br>(978) 744-1167 |
|---|---|
| JUDGMENT CREDITOR (OR CREDITOR'S ATTORNEY) WHO MUST ARRANGE SERVICE OF EXECUTION<br>P01  DONALD DEAN CARNAHAN<br>LAW OFFICES OF DEAN CARNAHAN<br>126 BROADWAY<br>ARLINGTON, MA 02474 | FURTHER ORDERS OF THE COURT |
| JUDGMENT DEBTOR  AGAINST WHOM EXECUTION IS ISSUED<br>D01  BEVERLY CO-OPERATIVE BANK<br><br>BEVERLY, MA 01915 | |

## TO THE SHERIFFS OF THE SEVERAL COUNTIES OR THEIR DEPUTIES, OR (SUBJECT TO THE LIMITATIONS OF G.L. c. 41 § 92) ANY CONSTABLE OF ANY CITY OR TOWN WITHIN THE COMMONWEALTH:

The judgment creditor(s) named above has recovered judgment against the judgment debtor named above in the amount shown below.

**WE COMMAND YOU,** therefore, from out of the value of any real or personal property of such judgment debtor found within your territorial jurisdiction, to cause payment to be made to the judgment creditor(s) in the amount of the "Execution Total" shown below, plus additional postjudgment interest as provided by G.L. c. 235 § 8 on the "Judgment Total" shown below commencing from the "Date Execution Issued" shown below at the "Annual Postjudgment Interest Rate" shown below, and to collect your own fees, as provided by law. This Writ of Execution is valid for twenty years from the "Date Judgment Entered" shown below. It must be returned to the court, along with your return of service, within ten days after this judgment has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

| | |
|---|---|
| 1. Judgment Total | $23,585.68 |
| 2. Date Judgment Entered | 03/01/2006 |
| 3. Date Execution Issued | 03/01/2006 |
| 4. Number of Days from Judgment to Execution *(Line 3 - Line 2)* | 0 |
| 5. Annual Postjudgment Interest Rate of 12.00% / 365 = Daily Interest Rate | 0.032877% |
| 6. Postjudgment Interest from Judgment to Execution *(Lines 1x4x5)* | $0.00 |
| 7. Postjudgment Costs *(if any)* | $0.00 |
| 8. Credits *(if any)* | $0.00 |
| 9. **EXECUTION TOTAL** *( Lines 1 + 6 + 7, minus Line 8)* | $23,585.68 |
| LEVYING OFFICER:      (a) Add daily interest from date execution issued. | |
| (b) Add your fees as provided by law: | |

| TESTE OF FIRST JUSTICE | DATE EXECUTION ISSUED | CLERK-MAGISTRATE/ASST. CLERK |
|---|---|---|
| **WITNESS:**    Hon. Robert A. Cornetta | 03/01/2006 | X *Margaret V. Farmer* |

Date/Time Printed:   03/01/2006 04:05 PM

FORM NO.

**JUDGMENT FOR PLAINTIFF(S)**

**200436CV001048**

**Trial Court of Massachusetts**
**District Court Department**



CASE NAME   **STEPHEN D. CAIAZZO vs. BEVERLY CO-OPERATIVE BANK**

| PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT<br><br>P01 STEPHEN D. CAIAZZO | CURRENT COURT<br>Salem District Court<br>65 Washington Street<br>Salem, MA 01970-3572<br>(978) 744-1167 | |
|---|---|---|
| DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT<br>D02 HARBOR RENTAL AND REALTY | | ←←←←←<br>WHEN<br>YOU<br>MUST<br>APPEAR |
| | ROOM/SESSION | ←←←←← |
| PARTY TO WHOM THIS COPY OF JUDGMENT IS ISSUED<br>D02 HARBOR RENTAL AND REALTY<br><br>SALEM, MA 01970 | FURTHER ORDERS OF THE COURT | |
| ATTORNEY FOR PARTY TO WHOM THIS COPY OF JUDGMENT IS ISSUED<br>D02 PAUL A. PRISBY<br>14 MAY STREET<br>SALEM, MA 01970 | | |

## JUDGMENT FOR PLAINTIFF(S)

On the above action, upon verdict of a jury, the issues having been duly tried or heard, and a finding or verdict having been duly rendered, IT IS ORDERED AND ADJUDGED by the Court ( Brennan, Hon. Robert A. ) that the Plaintiff(s) named above recover of the Defendant(s) named above the "Judgment Total" shown below plus such other costs as may be taxed pursuant to law, with postjudgment interest thereon pursuant to G.L. c. 235, §8 at the "Annual Interest Rate" shown below from the "Date Judgment Entered" shown below until the date of payment.

## NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ P. 54, 58, 77(d) and 79(a), this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties. Attached are any rulings of law, or any findings of fact and rulings of law, which may have been made by the Court pursuant to Mass. R. Civ. P. 52(c) or 64A(c).

| | | |
|---|---|---|
| 1. Date of Breach, Demand or Complaint | | 9/23/2004 |
| 2. Date Judgment Entered | | 3/1/2006 |
| 3. Number of Days of Prejudgment Interest  (Line 2 - Line 1) | | 524 |
| 4. Annual Interest Rate of  12.00%/ 365 = Daily Interest Rate | | 0.032877% |
| 5. Single Damages | | $5,000.00 |
| 6. Prejudgment Interest   (lines 3x4x5) | | $861.37 |
| 7. Double or Treble Damages Awarded by Court  (where authorized by law) | | $0.00 |
| 8. Costs | Filing Fee & Surcharge | $102.50 |
| 9. | Attorney Fees Awarded by Court (where authorized by law) | $0.00 |
| 10. | Other Costs Awarded by Court | $37.70 |
| 11. JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)    (lines 5+6+7+8+9+10) | | $6,001.57 |
| DATE JUDGMENT ENTERED<br>3/1/2006 | CLERK-MAGISTRATE/ASST. CLERK<br>X | |

Date/Time Printed: 03/01/2006 04:04 PM          CLERK/MAGISTRATE          FORM NO.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN D. CAIAZZO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 04-12627 RCL |
| ) | |
| THE MEDALLION INSURANCE ) | |
| AGENCIES, INC., ) | |
| ) | |
| Defendant ) | |
| ) | |

## **AFFIDAVIT OF KATHLEEN A. BUGDEN, ESQUIRE**

I, Kathleen A. Bugden, under oath, depose and state the following:

1. I am an attorney for the Defendant, the Medallion Insurance Agencies, Inc., in the above-captioned matter.

2. On February 15, 2007, I spoke with Mr. Joseph Bocelli on the telephone.

3. Mr. Bocelli informed me that after Scuttlebutt's closed down, he purchased and removed a large amount of property from the Plaintiff, Stephen D. Caiazzo ("Caiazzo"), for the lump sum of $1,500.00.

4. Mr. Bocelli informed me that he is still in possession of the majority of the property he purchased from Caiazzo, including a large amount of sports memorabilia.

5. Also on February 15, 2007, I faxed to Mr. Bocelli the complete list of exhibits submitted by the Plaintiff, Caiazzo, in support of his property claim and damages, Count III of the Complaint.

6. On February 16, 2007, I spoke again to Mr. Bocelli on the telephone.

7. During that conversation, I requested Mr. Bocelli indicate the property which he purchased from Caiazzo, on the list of exhibits previously faxed to him.

8. On February 16, 2007, Mr. Bocelli faxed the list of exhibits back to my attention, with the items he had purchased from Caiazzo, circled and starred (attached as Exhibit "A").

Signed under the pains and penalties of perjury this 23rd day of February, 2007.

Kathleen A. Bugden
Kathleen A. Bugden



# MELICK, PORTER & SHEA, LLP
### COUNSELLORS AT LAW

## ORIGINAL WILL NOT BE SENT

RICHARD J. SHEA
ROBERT P. POWERS
JOHN F. ROONEY, III *(CT, DC & NH)
WILLIAM D. CHAPMAN
MICHAEL J. MAZURCZAK *(NY & WI)
ROBERT T. TREAT
WILLIAM L. KEVILLE, JR.
MICHAEL R. BYRNE
ANDREA A. SANSOUCY
ROBERT R. HAMEL, JR.
ROBERT W. HEALY
JENNIFER B. HARDY
ANGELA L. LACKARD
MAUREEN E. LANE *(NH)
ADAM M. GUTTIN *(RI)
T. DOS URBANSKI *(RI)
MEGAN E. KURES
MATTHEW GRYGORCHWICZ
JESSICA M. FARRELLY *(FL)
DEBRA I. LERNER *(DC & TX)
ALEXANDRA CLARK
JEREMY Y. WELTMAN
ERIN J.M. ALARCON *(NH)
J. PAUL VANCE JR (CT ONLY)
ERIN K. DESMARAIS *(NH)
DENNIS M. LINDGREN
GREGORY BOUCHNA
DONNA CONVICCH (CT ONLY)
NICOLE L. COOK *(NH)
DIANA D. DELANEY
ANDREW M. McKINNEY
KATHLEEN A. BUGDEN

OF COUNSEL
THOMAS W. PORTER, JR.
DONNA M. MARCIN
VINCENT P. DUNN, JR.

*ALSO ADMITTED

28 STATE STREET
BOSTON, MA 02109
(617) 523-6200
FAX (617) 523-8130

360 SOUTH MAIN STREET
PROVIDENCE, RI 02903
(401) 941-0909
FAX (401) 941-6269

65 BANK STREET, SUITE 200
WATERBURY, CT 06708
(203) 596-0500
FAX (203) 596-0040

1087 ELM STREET, SUITE 302
MANCHESTER, NH 03101
(603) 627-4678

65 MAIN STREET
PLYMOUTH, MA 02360
(508) 746-5976

**DATE:**  2/15/2007

**FROM:** Kathleen A. Bugden

**TO:**  Joe Bocelli

**RE:**  Caiazzo property loss

**PAGES (Incl. Cover Page):**  7

**FAX:**  (781) 233-7953

### COMMENTS:

As discussed, attached are the lists of items allegedly lost during the Scuttlebutts' bankruptcy. Could you check off the items that you purchased from Caiazzo (even if you don't still have them) and fax it back to me at (617) 502-9786?

Thanks for your help, it's greatly appreciated!

Kathleen

617 502-9786

### CONFIDENTIALITY NOTICE:
The information contained in this facsimile message is privileged and confidential and intended only for the use of the individual(s) and/or entity(ies) named above. Any unauthorized disclosure, copying, distribution or taking of any action in reliance of the contents of the telecopied materials is strictly prohibited, and review by any individual other than the intended recipient shall not constitute waiver of the attorney-client privilege. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the materials.
Thank you,

# LAW OFFICES OF DEAN CARNAHAN

## 126 BROADWAY, ARLINGTON, MA 02474
### TELEPHONE (781) 641-2825

## FAX COVER SHEET

DATE: 5/3/05

TO: Kerry Florio, Esc.

FAX NUMBER: (617) 523-5130

FROM: Dean Carnahan, Esq.

NUMBER OF PAGES (including this page): Two (2)

RE: Cala330 v. Medallion Ins.

---

I reviewed your document request.
all of the documents that are
responsive to you requests are in
the Initial Disclosure Documents I
set to you on 3/11/05, except
the attached document (Sportsworld
appraisal of P's property).

THIS MESSAGE IS ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN CONFIDENTIAL AND PRIVILEGED
INFORMATION. Any dissemination, use or copying of this communication other than by the intended recipient is strictly prohibited.
If you receive this communication in error, please notify me immediately by telephone and destroy all copies of this communication.

TWO MONTH OLD CLOTHING CHEST PURCHASED IN SALEM
@ THE UNFINISHED FURNITURE STORE  500.00 - 600.W

· NEW MOUNTAIN BIKE PURCHASED IN July OF 2001
                                          200.W

I LEATHER COUCH PURCHASED IN MAY OF 2001.
                                    600. W

· I FAX MACHINE PURCHASED IN MARCH 2001.
                                    (150. W)    ✳

· I BOX OF COLLECTABLE LIQUORS ?

· I AIR CONDITIONER PURCHASED IN MAY 2001.
                                    200 - 300 - W

· I 15' x20' SAFE PURCHASED IN SPRING OF 2001.    ✳
                                    (180. W)

·· I PLATINUM ALBUM SET WITH PICTURES SIGNED
    BY THE ROCK BAND, EXTREME.

· 2 AWNINGS CUSTOM MADE BY PELLITIER AWNINGS    ✳
    IN SALEM, MA. APPROX        3000 - 4000 - W

3. ASSORTED NEON LIGHTS ? GIVIN TO ME AS (GIFTS.)

1. LEATHER SWIVAL DESK CHAIR . XMAS PRESENT
    FROM EMPLOYEES. 100. W

2. COLLECTION OF VIDEOS OF BRUINS AND REST.
    FUNCTIONS HELD @ 3 LOCATIONS. ?

3 PARROT STAND 200·W



# SPORTSWORLD

*New England's Largest Sports Memorabilia Shoppe*

429 BROADWAY (RTE 99) EVERETT, MASSACHUSETTS 02149
Phone: (617) 387-7220     Fax: (617) 387-6177
www.sportsworld-usa.com     Email: info@sportsworld-usa.com

PHIL CASTINETTI
PRESIDENT

To Whom it may concern,

I, Phil Castinetti, have appraised the items
that were owned by Mr. Steve Colazzo as follows.

| Item | Price |
|---|---|
| LYNDON BYERS GAME USED BRUINS HOME JERSEY | $2,500.- |
| CRAIG JANNEY GAME USED BRUINS HOME JERSEY | $1,500.- |
| LYNDON BYERS TEAM SIGNED SHARKS JERSEY | $2,000.- |
| DREW BLEDSOE SIGNED PATRIOTS JERSEY | $250.- |
| NOLAN RYAN LIMITED EDITION SIGNED PRINT | $500.- |
| RAY BOURQUE SIGNED 8x10 PHOTO | $100.- |
| CAM NEELY SIGNED 8x10 PHOTO | $75.- |
| GERRY CHEEVERS SIGNED 8x10 PHOTO | $50.- |
| LYNDON BYERS SIGNED 8x10 PHOTO | $25.- |
| KEN HODGE SIGNED 8x10 PHOTO | $25.- |
| ANDY MOOG SIGNED 8x10 PHOTO | $40.- |
| GARY DOAK SIGNED 8x10 PHOTO | $25.- |
| BOBBY ORR SIGNED 8x10 PHOTO | $150.- |
| 1 BOX OF 45 LESSER NAME PLAYERS SIGNED PHOTOS @ $15 ea. | $675.- |
| ROBERT URICH SIGNED 8x10 PHOTO | $100.- |
| DENNIS LEARY SIGNED 8x10 PHOTO | $75.- |
| SYLVESTER STALLONE SIGNED 8x10 PHOTO | $200.- |
| LARGE BRUINS PHOTO - NEELY-BYERS etc. | $200.- |
| 4 FT. x 7 FT. BRUINS TEAM PHOTO | $1,000.- |
| RAY BOURQUE GAME USED STICK | $350.- |
| ASST. GAME USED STICKS - NEELY, HODGE etc. | $1,000.- |
| CAM NEELY GAME USED HOCKEY GLOVES | $1,500.- |
| 8 FT. FIBERGLASS SHARK - WALL MOUNTED | $1,500.- |
| TOTAL | $13,840.- |

Phil Castinetti

OPEN MON. - SAT. AT 9:00 A.M.

VARIOUS OTHER ITEMS REMOVED FROM
Scuttlebutts

1- a month O/O UNFINISHED ARMOUR pd. 500.w
1- NEW MOUNTAIN BIKE PURCHASED 1 MO PRIOR ✳
    (200.w)
1 LEATHER COUCH - 200. W
1 FAX MACHINE 150. W (CANNON) ✳
1 BOX OF COLLECTIBLE LIQUORS ?

AIR CONDITIONIONR - 200.w
15" x 20" SAFE (180. W) ✳
ASSORTED BOOTS & SHOES

2



EXHIBIT
24 CAIAZZO
6/14/05 AC

1- 10 FOOT FIBERGLASS HAMERHEAD SHARK
$1,400.00

1- SIGNED PICTURE OF BANK "EXTREME" WITH
PLATINUM CD'S ENCASED.

- NEW 28" AII TERRAIN BIKE (400. W)

- BOX OF COLLECTABLE LIQUORS - (2,000. W)

1- NEW ARMOUR ( - 600 W)

- DENNIS LEARY PICTURE SIGNED
- ROBERT URICK PICTURE SIGNED

- SYLVESTER STALON PICTURE SIGNED

- 3' X 2' PICTURE OF BRUINS
  CAM NEELY, LYNDON BYERS, BIll O'DWYER
  AND MYSELF

- ISLAND OASIS MACHINE - (3,000. W)

- LEATHER COUCH (NEW) 600. W

- AIR CONDITIONER IN WINDOW (OFFICE) 300. W

3.- CUSTOM AWNINGS W/ SCUTHEBUTTS LOGO
  PRINTED - 3,000. W

2- BOXES OF VARIOUS SPORTS PICTURES

EXHIBIT "A"

## SCUTTLEBUTTS, 73 LAFAYETTE STREET, SALEM, MA.

| QTY | DESCRIPTION |
|-----|-------------|
| 1 | 7' BEV. AIRE S/C BEER COOLER |
| 2 | 4' BEV. AIRE S/C BEER COOLER |
| 1 | 3' BEV. AIRE S/C MUG CHILLER |
| 1 | 6' SS 3-COMP BAR SINK |
| 1 | 3' SS BAR SINK |
| 2 | 2' SS BAR SINKS |
| 3 | ASST ECR'S |
| 4 | 6-SPIGOT DRAFT BEER HEADS |
| 72 | WOOD BAR STOOLS |
| 7 | FORM TOP TABLES |
| 1 | BEV. AIRE SS S/C FREEZER |
| 1 | VULCAN 6-BURNER STOVE |
| 1 | IMPERIAL 3' CHAR GRILLE W/3' SS STAND |
| 1 | BAKERS PRIDE #GP51 SS PIZZA OVEN |
| 1 | PITCO 14"FRYER |
| 1 | KOLD-DRAFT TOP MNTED ICE MAKER |
| 1 | RAETONE 2-DR SS S/C REFRIGERATOR (LEASED?) |
| 1 | 4' HOT FOOD TABLE |
| 1 | 2' SS SINK |
| 1 | 2' SS TABLE |
| 1 | 10' SS HOOD W/SS BACK WALL, FILTERS & FIRE SYSTEM |
| LOT | POTS, PANS, and SMALLWARES |
| 1 | 3' HEAT LAMP |
| LOT | APPX 17 ASST NEON LIGHTS |
| 2 | COLOR TV's |
| 2 | SMOKEATERS |
| 4 | CEILING FANS |
| 16 | HANGING LIGHT FIXTURES |
| 1 | OLD TYME POP CORN MACHINE |
| 1 | SONY WIDE SCREEN TV |
| LOT | APPX 50' WOOD BAR |
| 1 | FOSTER 11x10' METAL CLAD WALK-IN COOLER W/COMP |
| 1 | C/T S/C REFRIG DISPLAY |
| 1 | SENTRY SAFE |
| 1 | PANASONIC FAX |

674494.1