UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| STEPHEN D. CAIAZZO, ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 04-12627  RCL |
| ) | |
| THE MEDALLION INSURANCE ) | |
| AGENCIES, INC., ) | |
| Defendant ) | |
| ) | |
| _____ ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION
## FOR RELIEF FROM JUDGMENT

The plaintiff, Stephen D. Caiazzo ("Caiazzo"), has filed a Motion for Relief from

Judgment and hereby files this Memorandum in support of his Motion for Relief from Judgment.

## FACTUAL BACKGROUND

1.     Caiazzo's Complaint was filed on November 24, 2004 and asserted claims in

three counts: that Defendant Medallion Insurance Agencies, Inc. ("Medallion") failed to properly

report a liability claim, causing Caiazzo to pay $35,000.00 out of his own pocket Count I); that

Medallion failed to procure disability insurance for him (Count II); and that Medallion failed to

properly report a property insurance claim which caused Caiazzo to sustain a loss of $25, 100.00

(Count III).

2.     Caiazzo had filed suit against Beverly Co-operative Bank and Harbor Rental and

Realty, Inc. in Salem District Court on September 21, 2004, asserting a claim of conversion and

seeking a recovery for his personal property losses.

3.     Caiazzo filed his Complaint in this Court seeking in Count III to recover against Medallion for failure to report his personal property loss to the applicable insurance company. Count III sought to recover for the property losses that were the subject matter of the case pending in Salem District Court.  The defendants in the Salem District Court case denied responsibility for Caiazzo's losses, so that recovery against those defendants was uncertain.

4.     The defendants in the Salem District Court case never made any settlement offers and forced Caiazzo to proceed to a jury trial.  The jury awarded Caiazzo $25,000.00 for the conversion of his personal property.  The recovery Caiazzo sought in this Court was for the property loss less the amount received as a result of the Salem District Court jury.

5.     At the Salem District Court trial, Caiazzo submitted exhibits and testimony showing that the value of the property lost was approximately $58,000.00, less the value of the property he was able to remove before those defendants converted his personal property.  See Exhibits B, C, and D attached to Medallion's Motion to Dismiss Plaintiff's Complaint.[1]

6.     Caiazzo stated in his Response to Defendant's Statement of Facts on April 3, 2006, that he had sued Beverly Co-operative Bank and Harbor Rental and Realty, Inc. for his personal property loss, which resulted in a jury verdict of $25,000.00.[2]

7.     At the hearing on Medallion's Motion for Summary Judgment, this Court dismissed Caiazzo's claim for his property loss (Count III) on the grounds that he could not prove that he had property insurance coverage at the time of his loss.  The Court also dismissed Caiazzo's claim for Medallion's failure to procure disability insurance for him (Count II),

---

[1]   As shown below, Caiazzo's damages against Medallion would be reduced by the amount of the jury verdict in Salem District Court.

[2]   Medallion, in its Motion to Dismiss Plaintiff's Complaint, argues that Caiazzo did not state that he had been *paid*. However, any knowledgeable attorney would know that a judgment against a bank and a realty company would most likely result in payment of the judgment.  Caiazzo never denied being paid and Medallion never asked him.

PDF created with pdfFactory trial version www.pdffactory.com

leaving only his claim for Medallion's failure to properly report the liability claim, causing Caiazzo to pay $35,000.00 out of his own pocket. (Count I).

8.　　Caiazzo has only been paid for part of his loss.  Thus, he made no false or misleading statement at any time during the present action against Medallion.

9.　　Caiazzo was able to remove a portion of his personal property before the rest was converted by Beverly Co-operative Bank and Harbor Rental and Realty, Inc.  Caiazzo took the property he removed to an establishment known as the Blue Parrot, owned by Joseph Bocelli. Bocelli stole this property from Caiazzo and converted it to his own use.  Bocelli gave Caiazzo a $5,000.00 depostion for the property worth $150,000.00 and later stole the property from Caiazzo.  See Affidavit of Stephen D. Caiazzo, ¶10, attached hereto as **Exhibit A**.  The personal property that Caiazzo was able to remove from the Salem business was never a part of the case against the Salem District Court defendants or against Medallion.

10.　　Medallion alleges that Caiazzo was paid once by Bocelli, then a second time by the defendants in the Salem District Court case, and then sought to recover a third time in this Court.  However, the property that Caiazzo removed from his Salem business and that Bocelli stole was never a part of his claim in Salem District Court or in this Court.[3]

11.　　Thus, the allegations made by Medallion in its Motion to Dismiss Plaintiff's Complaint are false.

12.　　On February 26, 2007, this case was scheduled for trial.  At 9:00 A.M. on that day, Medallion's attorneys presented me with a copy of Medallion's Motion to Dismiss the Complaint, moving the Court to dismiss his action pursuant to Fed. R. Civ. P. 11, and the inherent power of the federal court to regulate and control fraud upon the court.  I read it over

---

[3]　The jury award of $25,000.00 suggests that a juror or jurors in the Salem District Court jury knew that the jurisdictional amount for Massachusetts District Courts is $25,000.00.

PDF created with pdfFactory trial version www.pdffactory.com

quickly, then discussed it with my client, Mr. Caiazzo.[4]  Caiazzo and his attorney only had about ten minutes to review Defendant's Motion and converse.  Then, counsel for the parties took part in a lobby conference to discuss Medallion's motion to dismiss.  Defendant's motion pertained to Caiazzo's claim for property loss, which the Court had dismissed at the summary judgment stage.  The Court was apparently misled into believing that Caiazzo and his attorney had fraudulently pursued the claim for property loss.  The Court then chose to dismiss Caiazzo's remaining claim for Medallion's failure to report the liability claim against him, causing him to pay $35,000 out of his own pocket, on the grounds that Caiazzo did not have any documents or competent testimony to establish that he had liability coverage or that an exclusion to coverage would not apply.

## ARGUMENT

### A.     Caiazzo Could Have Asserted a Valid Claim for Defendant's Failure to Report the Liability Claim Asserted Against Him.

Commercial General Liability policies provide coverage for claims against an insured for personal injury or property damage, subject to exclusions.  *See* Affidavit of Stephen D. Caiazzo, attached hereto as **Exhibit A** at ¶ 7 and policy terms attached to the affidavit.

The personal injury claim asserted against Caiazzo arose from an incident on September 13, 1996.  Caiazzo reported the claim to Defendant in 1996, when he received a letter from the injured party's attorney.  Caiazzo thought the case had been settled or that the injured party had moved away and dropped the claim.  In 2003, Caiazzo first learned that the case had gone to judgment against him.  Caiazzo again contacted Defendant about the claim.  On April 25, 2003, Defendant sent a fax requesting the liquor liability policy and commercial general liability policy

---

[4]  This was, at the least, sharp practice by defense counsel.  Defense counsel could have faxed or e-mailed this motion to plaintiff's counsel prior to the trial day.  If this had been done, plaintiff's counsel could have filed a meritorious opposition.

4

for the period from August 1996 through August 1997. **Exhibit B.** The Complaint filed by the injured party alleged injury from another patron and asserted claims for negligence and negligent hiring. After Defendant received the policies, it submitted a claim to the liquor liability carrier, who denied coverage, since the complaint of the injured party did not allege that liquor was involved. Defendant failed to report the claim to the commercial general liability carrier. As a result of Defendant's failure to report the claim in 1996 and the failure to report the claim to the correct insurance carrier in 2003, Caiazzo had to pay $35,000.00 out of his own pocket.

The Commercial General Liability policy would have provided coverage to Caiazzo for the personal injury claim, subject to any exclusion. The contractual duty to defend is dependent upon commencement of a lawsuit and is measured by the allegations of the underlying complaint. John Beaudette, Inc. v. Sentry Ins., 94 F. Supp. 2d 77, 100 (D. Mass. 1999). A plaintiff can testify that policy terms submitted are complete and accurate renditions of the original policy. Id. at 136.[5] Moreover, it is the duty and burden of proof of Defendant to show that an exclusion would apply. Id. at 134. [6]

Thus, the Court should not have dismissed Caiazzo's claim for Defendant's failure to report the personal injury claim to the proper insurance carrier, since he could have presented a *prima facie* case at trial.

---

[5] Thus, Caiazzo could testify that the Commercial General Liability policy in effect on September 13, 1996 was the same as the policy terms in the 2001-2002 policy produced by Defendant.

[6] At the lobby conference on February 26, 2007, Defendant's attorney orally cited a case and claimed that it held that it was the duty of the plaintiff to produce the insurance policy. This case was not cited in Defendant's summary judgment materials or in its motion to dismiss. Obviously, plaintiff's attorney had no opportunity to research that case or any other relevant case. The case cited above gives an alternative method for a plaintiff to establish the terms of a policy.

5

PDF created with pdfFactory trial version www.pdffactory.com

**B.       Neither Caiazzo nor His Attorney Engaged in Any Fraudulent Actions.**

On February 27, 2007, the parties appeared in this Court for trial.  Medallion's attorney

then gave Caiazzo's attorney a copy of Defendant Medallion's Motion to Dismiss Plaintiff's

Complaint.[7]   In Medallion's motion and memorandum, Medallion alleged that Caiazzo had

pressed his claim for his property loss (which had been dismissed by this Court at the summary

judgment stage) after having been paid in full for the loss, without disclosing this fact to

Medallion or the Court, in a fraudulent attempt to recover twice for the same loss.  Medallion

also asserted that it had located a witness that had purchased the same property from Caiazzo,

showing a fraudulent intent to be paid a third time for the lost property.

All of these assertions by Medallion were false.  Caiazzo received $25,000.00 for the lost

property in Salem District Court.  However, in Salem District Court, Caiazzo put into evidence

documents and testimony that the value of the lost property was $58,000.00, and excluded the

property he had been able to remove from his bar/restaurant.[8]

In addition, Caiazzo would have testified that he received $5,000.00 from the individual

named Joseph Bocelli, who claimed he had purchased property from Caiazzo.  However, Bocelli

only paid for the use of this property, which was worth $150,000.00.  **Exhibit A** at ¶ 10.

Caiazzo attempted to go into business with this individual, Joseph Bocelli, and moved the items

he was able to remove from his Salem business, mostly items such as tables, chairs and other

---

[7]   On Friday, February 23, 2007, at 6:23 P.M., Medallion's attorney sent a email to Caiazzo's attorney stating that he had learned that Caiazzo has been paid in full for the losses he was seeking to recover in Count III by the defendants in the Salem District Court case and that Caiazzo and his attorney had proceeded as if payment had never been received.  The email also stated that an individual had purchased most of the items from Caiazzo.  *See* **Exhibit C**.  The email invited Caiazzo's attorney to call Medallion's attorney, but his office was closed when Caiazzo's attorney attempted to call.

[8]   At the lobby conference, the Court stated that the jury in Salem District Court may have determined that the value of the lost property was only $25,000.00.  However, Caiazzo would have testified that it was worth much more and it would have been for the federal jury to determine that amount of his damages.  It is likely that the jury in Salem District Court awarded Caiazzo $25,000.00, because one or more of the jurors knew that the jurisdictional limit in district court is $25,000.00.

6

PDF created with pdfFactory trial version www.pdffactory.com

equipment.  Bocelli stole these items from Caiazzo and sold them at auction and to the subsequent owner of his business.  Id.  Bocelli never had other items, such as sports memorabilia, furniture or large screen television sets, unless he purchased these items from the agent for Beverly Co-operative Bank who removed these items from Caiazzo's Salem bar/restaurant.  Id.  If Medallion paid Caiazzo for these losses, Medallion could have made recovery against Mr. Bocelli by subrogation.

In its motion to dismiss, Medallion stated that in April 2006, Caiazzo stated that he did sue Beverly Co-Operative Bank and Harbor Rental and Realty, Inc. for this property loss, which resulted in a jury verdict of $25,000.00.[9]  Medallion argued that Caiazzo had not told Medallion that these two defendants had paid the judgment.  However, Medallion should have realized that a bank and a realty company would pay the judgment.  Medallion's assumption that Caiazzo was not paid is ridiculous.  Caiazzo always intended to sue Medallion for the lost property worth $58,000.00 less the $25,000.00 he has received.

Thus, neither Caiazzo nor his attorney attempted to defraud Medallion or this Court and did not do so.

Medallion has time to serve its motion to dismiss and memorandum on Caiazzo's counsel before the trial date of February 27, 2007.  If Medallion had done so, Caiazzo's counsel would have had time to review the motion and memorandum and would have submitted a meritorious opposition thereto.  Unfortunately, the Court used the motion to dismiss, with its false allegations, to become prejudiced against Caiazzo and his counsel.  The Court, based on the false information provided by Medallion, then dismissed Caiazzo's remaining claim.  However, as

---

[9]   At the lobby conference, the Court asked Caiazzo's attorney if this jury verdict had been disclosed.  Caiazzo's attorney could not answer this question, since he had not had time to carefully review Medallion's memorandum which stated that the disclosure had been made!

PDF created with pdfFactory trial version www.pdffactory.com

shown above, Caiazzo's remaining claim, for Medallion's failure to report the liability claim, has merit.

### C.    The Court Should Set Aside the Dismissal of Caiazzo's Remaining Claim.

Rule 60(b)(1) provides relief on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Relief may be available of mistakes made by counsel, the litigants or the court. *See* Fed. R. Civ.P. 60(b) advisory committee's note (1946); MacArthur v. San Juan County, 405 F. Supp. 2d 1302, 1306 (D. Utah 2005).

Caiazzo's counsel was certainly surprised by being handed Medallion's Motion to Dismiss at 9:00 A.M. on the day of trial. Caiazzo's attorney did not have the time to carefully review the motion, memorandum or exhibits and could not answer the questions posed by the court at the lobby conference. Medallion could have served the motion and memorandum before the day of trial. If Medallion had served the motion and memorandum before the trial date, Caiazzo's counsel could have reviewed the documents and could have prepared a meritorious opposition thereto.

This situation not only constituted surprise, but also resulted in excusable neglect. Caiazzo's counsel's inability to answer the Court's questions was excusable neglect.

Rule 60(b)(2) provides relief for newly discovered evidence. As mentioned above, Caiazzo's counsel, on February 27, 2007, could not answer the Court's question of whether Caiazzo had ever disclosed that he received $25,000.00 from the defendants in the Salem District Court case. After the Court, sua sponte, dismissed Caiazzo's remaining claim, Caiazzo's counsel discovered that in its memorandum, Medallion itself admitted that Caiazzo had made the disclosure in Plaintiff's Response to Defendant's Statement of Facts.[10] Since this important

---

[10]    Medallion's attorney could have answered this question by the court, but chose not to do so.

PDF created with pdfFactory trial version www.pdffactory.com

disclosure was not brought to the court's attention on February 27, 2007, it is newly discovered evidence, not known to Caiazzo's attorney at the lobby conference, but discovered only later.

Rule 60(b)(3) provides that the court may set aside a judgment because of fraud, misrepresentation or other misconduct. The improper conduct must have been perpetrated by the opposing party. Larshaw v. Trainer Wortham & Co., Inc., 452 F. 3d 1097, 1102 (9th Cir. 20060. Most courts require the moving party to demonstrate that the fraud or misconduct prevented him from fully and fairly presenting his case. Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F. 3d 1303, 1314 (11th Cir. 2007); Muniz v. Rovira-Martino, 453 F. 3d 10, 12 (1st Cir. 2006).

Medallion's motion to dismiss was grounded on the false allegation that Caiazzo pursued his claim after having been paid in full for his property loss and that a witness would testify that he had purchased the lost property from Caiazzo.

As discussed above, Caiazzo had disclosed that he had received $25,000.00 from the Salem District Court jury verdict. However, the property loss that he pursued in Salem District Court was worth $58,000.00, and was the property he had been unable to remove from his Salem business. This property claim had nothing to do with the property he removed and provided for his business venture with Bocelli. Bocelli later sold this other property at an auction and to the subsequent owner of his bar/restaurant, and was not a part of his claim in Salem District Court or in this Court. Medallion's motion to dismiss prevented Caiazzo from fully and fairly presenting his claim to a federal jury.

Thus, the factual basis of Medallion's motion to dismiss was false and constituted misrepresentation to and fraud on the Court.

Relief under Rule 60(b)(6) is available for any other reason justifying relief from the judgment. Some courts consider a fraud on the court to be an extraordinary circumstance

9

PDF created with pdfFactory trial version www.pdffactory.com

meriting relief under Rule 60(b)(6).  U.S. v. 6 Fox Street, 480 F. 3d 38, 47 (1ˢᵗ Cir. 2007).  In

order to obtain relief under this subpart, the moving party must be faultless.  Caiazzo was

faultless and engaged in no improper actions whatsoever.  Justice requires that the Court grant

relief under this subpart if relief is not available under Rule 60(b)(1), Rule 60(b)(2) or Rule

60(b)(3).

**Conclusion**

Based on the foregoing, Caiazzo respectfully requests the Court to set aside the dismissal

of his claim and to allow him to proceed to trial.

By Plaintiff's Attorney,


/s/ Dean Carnahan_____
DEAN CARNAHAN
BBO #074580
LAW OFFICES OF DEAN CARNAHAN
51 Newcomb Street
Arlington, MA  02474
Dated:  November 6, 2007          (781) 641-2825


CERTIFICATE OF SERVICE

I, Dean Carnahan, hereby certify that this document(s) filed through the EDF system will
be sent electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants.


Date:  November 6, 2007          /s/ Dean Carnahan_____
                                 DEAN CARNAHAN


B-2274-MIS2

PDF created with pdfFactory trial version www.pdffactory.com

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN D. CAIAZZO,<br>    Plaintiff<br><br>v.<br><br>THE MEDALLION INSURANCE<br>AGENCIES, INC.,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.
04-12627  RCL

## <u>AFFIDAVIT OF STEPHEN D. CAIAZZO</u>

I, Stephen D. Caiazzo, under oath, state the following:

1.      I am the plaintiff in this action.

2.      I worked for an insurance company in 1976 for about a year and had an insurance license, so I have some knowledge of insurance policies.

3.      From 1983 to 2001, while I was in business as owner of bar/restaurants, I reviewed my insurance policies every year, including my Commercial General Liability policies.

4.      My insurance policies were destroyed in a flood in 1995 or 1996 and the later policies were removed from my business by third persons in 2001.

5.      The only Commercial General Liability policy I have is for the period from March 22, 2001 to March 22, 2002, a copy of which is attached hereto.

6.      The personal injury claim that I had to pay out of my own pocket arose on September 13, 1996.

7.      I can state with certainty that the coverage for my Commercial General Liability policy in effect on September 13, 1996 was identical to the coverage terms of the 2001-2002 policy attached hereto, that is, that the policy covers all sums that the insured becomes liable to pay as damages for bodily injury or property damages.

8.      Thus, the insurance policy in effect on September 13, 1996 covered the personal injury claim asserted against me, subject to any exclusions.

9.      I have read the Factual Background, Paragraphs 1-12 in Plaintiff's Memorandum in Support of Motion for Relief from Judgment and state that the facts set forth therein are true of my own personal knowledge.

10.     When my bar/restaurant in Salem closed, I intended to go into business with Joseph Bocelli.  He paid me $5,000.00 for the use of property, including tables, chairs and other equipment, which I

had removed from the Salem property and which was worth $150,000.00. Some of these items were used in his bar/restaurant and some items were placed in storage. When we parted ways, he would not return my property and sold some of it at auction and sold the rest to the subsequent owner of his business. I did not remove from my Salem business other items such as sports memorabilia, furniture, large screen TV's and other items. These items were worth $58,000.00 and were removed by agents of Beverly Co-Operative Bank. This is the property for which I received $25,000.00 from the jury at Salem District Court.

Signed under the pains and penalties of perjury this $3\textbf{1}$ day of October, 2007.

Stephen D. Caiazzo

B-2774-CA

COMMERCIAL GENERAL LIABILITY
CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

#### 2. Exclusions

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

CG 00 01 01 96

Copyright, Insurance Services Office, Inc., 1994

Page 7 of 13



**COMMERCIAL LINES**
**COMMON DECLARATIONS**

NO. LGL012603

PREVIOUS NO: NEW

EFFECTED WITH UNDERWRITERS AT LLOYD'S, LONDON, ENGLAND (NOT INCORPORATED)

IN ACCORDANCE WITH LIMITED AUTHORIZATION GRANTED TO INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. BY CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

UNDER CONTRACT NO. NAC0259/01

(SUCH UNDERWRITERS BEING HEREINAFTER CALLED THE "UNDERWRITERS"), THE UNDERWRITERS DO HEREBY BIND THEMSELVES IN THE PROPORTIONS UNDERWRITTEN BY THEM, EACH FOR HIS OWN PART, AND NOT FOR ANOTHER,  THEIR HEIRS, EXECUTORS AND ADMINISTRATORS, IN FAVOR OF:

JENNA'S PUB, INC.
DBA SCUTTLEBUTTS
73 LAFAYETTE ST.
SALEM, MA 01970

| INCEPTION (MO. DAY YR.) | EXPIRATION (MO. DAY YR.) | ONE YEAR | INCEPTION AND EXPIRATION (AT 12:01 AM STANDARD TIME AT LOCATION OF DESCRIBED PROPERTY |
|---|---|---|---|
| 03/22/01 | 03/22/02 | | |

IN CASE OF LOSS, NOTIFY INSURANCE INNOVATORS AGENCY OF NEW ENGLAND, INC. AT ONCE IN WRITING

BUSINESS DESCRIPTION:    TAVERN

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS CERTIFICATE, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED  IN THIS CERTIFICATE.

THIS CERTIFICATE CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.   THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | $ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 3,000.00* |
| COMMERCIAL CRIME COVERAGE PART | $ |
|  | $ |
| TOTAL ADVANCE PREMIUM PAYABLE AT INCEPTION | $ 3,000.00* |

* MINIMUM AND DEPOSIT

FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS AND MADE A PART OF THIS CERTIFICATE AT TIME OF ISSUE:CERTIFICATE PROVISIONS, IL0017(11/85), LIA-102(5/77), NMA2802(17/12/1997), CL150(11/85)
25% MINIMUM AND FULLY EARNED PREMIUM IN THE EVENT OF CANCELLATION BY THE INSURED.

THIS CERTIFICATE OF INSURANCE IS MADE AND ACCEPTED SUBJECT TO THE FOREGOING STIPULATIONS AND CONDITIONS, AND TO THE CONDITIONS ATTACHED HERETO, WHICH ARE SPECIFICALLY REFERRED TO AND MADE A PART OF THE CERTIFICATE OF INSURANCE, TOGETHER WITH SUCH OTHER PROVISIONS, AGREEMENTS OR CONDITIONS AS MAY BE ENDORSED OR ADDED HERETO.

DATED AT WEST SPRINGFIELD, MA

APRIL 12, 2001  SS

INSURANCE INNOVATORS AGENCY OF
NEW ENGLAND, INC.

BY: _Brenda Labrie_

# EXHIBIT B

EXHIBIT 4
T. Collins
8-3-05
M. PICCIRILLI

# 1-FIRST
## STATE
## FIRST STATE MANAGEMENT GROUP, INC.

*150 Federal Street, Boston, MA 02110-1753    Tel. (617) 526-7600    FAX (617) 526-0600*

June 9, 2003

Thomas P. Collins, Esq.
10 Main Street
Suite L9
Andover, MA 01810

|       | RE: | Insured: | Donna's Pub, Inc. |
|-------|-----|----------|-------------------|
|       |     |          | D/B/A Cai's Food & Spirits |
|       |     | Claimant: | Joseph Cuticchia |
|       |     | Date of Loss: | September 13, 1996 |
|       |     | Policy No.: | ZQ0002802 |
|       |     | Claim No.: | 3054106 |

Dear Attorney Collins:

We represent Pacific Insurance Company, Limited for the above-referenced matter. This correspondence will serve to acknowledge receipt of a Summons and Complaint for the above-referenced matter. We incorporate these materials by reference as an attachment to this letter. The case was filed in the Malden District Court of Middlesex County under C.A. No.: 9850CV237.

Pacific Insurance Company, Limited issued to Donna's Pub, Inc. D/B/A Cai's Food & Spirits a liquor liability policy under policy number ZQ0002802, for the period of 08/29/96 to 08/29/97. The limits of liability are $500,000 each common cause and $500,000 aggregate.

Based upon the information that has been provided to date, Pacific Insurance Company, Limited is unable afford defense and indemnity coverage to Donna's Pub, Inc. D/B/A Cai's Food & Spirits in connection with any actions or proceedings relating to the above-captioned claim under the policy of insurance issued to it by Pacific.

In accordance with Liquor Liability Coverage Form CL161 (10-93), it states:

**SECTION I – LIQUOR LIABILITY COVERAGE**

**1. Insuring Agreement.**



EXHIBIT

*WITH OFFICES IN ATLANTA, CHICAGO, LOS ANGELES, NEW YORK, SAN FRANCISCO*

110 Florence Street
PO Box 367
Malden, MA  02148

Tel(781)324-4118
Fax(781)397-9270

**The Medallion
Insurance Agencies,
Inc.**

# Fax

| To: | Claims Dept. | From: | Jean D'Addario |
|---|---|---|---|
| Cc: | HT Bailey | Email: | |
| Fax: | 781-646-3911 | Pages: | |
| Phone: | 781-641-4400 | Date: | 4/25/2003 |
| Insured: | Donna's Pub Inc. dba Cai's Food & Spirits | CC: | |
| RE: | Pacific : Liquor Liability: Pol # ZQ0002802 Interstate: Gen Liab: Pol#IGL11025816 Claim: DOL: 9/13/1996 | | *Policy Period - 8/96 - 8/97* |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

Please forward attached claim to both of the insurance companies named above.  We have been trying to locate our file and it appears it was lost when we moved and our files went to storage.  The lawyaer for our insured, Tom Collins, is requesting a copy of the policies.  Could you please request copies faxed to my attention as soon as possible.  Thank you so much.

Sincerely,

Jean D'Addario

**EXHIBIT**

EXHIBIT C





RCN Home    RCN Portal  |  My RCN    Help

---

**Email**    Video Mail

Check Mail  |  Compose New Mail  |  Addresses  |  Search Mail  |  Mail Settings  |  Mail Options  |  Webmail Help    Logout

**Delete**   Reply/All   Forward/Inline   All Headers   Print

Previous / Next

Message 11 of 17 from your Inbox    Inbox    Move

**Date:** Fri 23 Feb 18:22:42 EST 2007
**From:** "William Chapman" <wchapman@melicklaw.com>  **Add To Address Book**  |  **This is Spam**
**Subject:** Caiazzo trial
**To:** <ddcarnahan@rcn.com>

Good Afternoon Dean:

In preparing for trial I have learned that Mr. Caiazzo was paid in full for the losses he was seeking to recover from Medallion in Count III, and worse yet, that no loss ever occurred in the first place.   We have learned that Mr. Caiazzo was paid in full by the defendants in the Salem District Court action.  This critical fact has never been disclosed by the plaintiff in the instant action.  Rather, this case was prosecuted as though payment had never been received and the claim remained valid.   Further, we have also identified a witness who will testify that he purchased most of the items which were the  subject of Count III from Mr. Caiazzo, and that he has these items in his possession.  I have no choice but to bring this to the attention of the judge on Monday morning.   Please call me if you wish to discuss this.

William D. Chapman
Melick, Porter & Shea, LLP
28 State Street
Boston MA 02109
617 523 6200 (t)
617 523 8130 (f)
wchapman@melicklaw.com

*Boston ~ Providence ~ Waterbury CT ~ Manchester NH*

**Delete**   Reply/All   Forward/Inline   All Headers

Previous / Next

Message 11 of 17 from your Inbox    Inbox    Move

© 2006 RCN Corporation. All rights reserved.

2/24/2007 8:04 AM